**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

**Case No. 0:20-CV-60633-RS**

VINCENT J. MORRIS, STEVEN SIMMONS,
YOLANDA UPTON, and MICHAEL LUZZI,
on behalf of themselves and all others similarly
situated,

       Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability Company,

       Defendants.

_____/

**PHH Mortgage Corporation's Motion to Dismiss the Amended Complaint
and Incorporated Memorandum of Law**

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ......................................................................................................... i

INTRODUCTION ...................................................................................................................... 1

STATEMENT OF THE CASE ...................................................................................................... 2

ARGUMENT ........................................................................................................................... 5

I.  **Plaintiffs have no valid or plausible FDCPA claim** ................................................ 5

    A.  **Defendants' convenience fees do not violate the FDCPA.** .............................. 5

        1.  A convenience fee is not a debt or incidental to a debt ........................... 6

        2.  Convenience fees are permitted by law and expressly authorized
            by the agreement creating the debt. ........................................................ 9

            *a.*  *Convenience fees are permitted by law.* ....................................... 9

            *b.*  *Convenience fees are expressly authorized by Plaintiffs'*
               *loan documents.* ......................................................................... 13

    B.  **Plaintiffs have failed to satisfy the FDCPA statutory prerequisites** .............. 14

        1.  Defendants did not "collect" the convenience fee. ................................. 14

        2.  Defendants are not "debt collectors" ...................................................... 14

II.  **Plaintiffs have not plausibly alleged a breach of contract claim.** ............................ 17

III.  **The Court should dismiss the claims against PHH of non-resident absent
      class members.** ...................................................................................................... 19

CONCLUSION ........................................................................................................................ 20

CERTIFICATE OF SERVICE ..................................................................................................... 21

TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Anderman v. JP Morgan Chance Bank, NA*,
　803 F. App'x 290, 293 (11th Cir. 2020) ...................................................15, 16, 17

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) .............................................................................................15

*Babul v. Golden Fuel, Inc.*,
　990 So. 2d 680 (Fla. 2d DCA 2008) ....................................................................17

*Bristol-Myers Squibb Co. v. Superior Court*,
　137 S. Ct. 1773 (2017) .....................................................................................2, 19

*Carpenter v. PetSmart, Inc.*,
　441 F. Supp. 3d 1028 (S.D. Cal. 2020) ...............................................................19

*CFPB v. Ocwen Loan Serv.*,
　No. 1:13-cv-02025 (D.D.C., signed Feb. 26, 2014) ............................................12

*Chizniak v. CertainTeed Corp.*,
　No. 1:17-CV-1075, 2020 WL 495129 (N.D.N.Y. Jan. 30, 2020) ........................19

*Coles v. Zucker Goldberg & Ackerman*,
　No. 14-cv-1612, 2015 WL 4578479 (D.N.J. July 29, 2015) ...............................16

*Collins v. BSI Fin. Servs.*,
　No. 2:16-cv-262-WH, 2017 WL 1045062 (M.D. Ala. Mar. 17, 2017) ................16

*Cox v. Old Republic Nat'l Title Ins.*,
　No. 15-cv-02253-BLF, 2016 WL 301974 (N.D. Cal. Jan. 25, 2016) ...................15

*Daimler AG v. Bauman*,
　571 U.S. 117 (2014) .............................................................................................19

*Davidson v. Capital One Bank (USA), N.A.*,
　797 F.3d 1309 (11th Cir. 2015) ...........................................................................14

*Dayhoff v. Wells Fargo Home Mortg., Inc.*,
　No. 6:13-cv-1132-Orl-37KRS, 2013 WL 6283583 (M.D. Fla. Dec. 4, 2013) ......14

*DeFazio v. Leading Edge Recovery Sols., LLC*,
　No. 2:10-cv-02945, 2010 WL 5146765 (D.N.J. Dec. 13, 2010) .....................15, 16

i

*In re Dental Supplies Antitrust Litig.*,
  No. 16 Civ. 696 (BMC) (GRB), 2017 WL 4217115 (E.D.N.Y. Sept. 20, 2017) ...................19

*Estate of Derrick Campbell v. Ocwen Loan Serv., LLC*,
  No. 9:20-cv-80057-SINGHAL (S.D. Fla. Apr. 30, 2020) ................................................2, 9, 18

*Duncan v. Assert Recovery Specialists*,
  907 F.3d 1016 (7th Cir. 2018) ..........................................................................................14

*Edwards v. Ocwen Loan Serv., LLC*,
  24 F. Supp. 3d 21 (D.D.C. 2014) .......................................................................................17

*Estate of Egenious Coles*,
  658 F. App'x 108 (3d Cir. 2016) ....................................................................................15, 17

*Elmirah Reid v. Ocwen Loan Serv., LLC*,
  No. 9:20-cv-80130-SINGHAL (S.D. Fla. May 4, 2020).....................................................2, 9

*Flores v. Collection Consultants of California*,
  No. SA CV 14-0771-DOC, 2015 WL 4254032 (C.D. Cal. Mar. 20, 2015) .............................8

*Geary v. Wenworth Labs., Inc.*,
  760 A.2d 969 (Conn. Ct. App. 2000)...................................................................................11

*Harco Energy, Inc., v. Re-Entry People, Inc.*,
  23 S.W.3d 389 (Tex. App. 2000)..........................................................................................11

*Hogan v. Praetorian Ins. Co.*,
  No. 1:17-cv-21853-UU, 2018 WL 8266803 (S.D. Fla. Jan. 11, 2018)..................................17

*Horsley v. Feldt*,
  304 F.3d 1125 (11th Cir. 2002) .............................................................................................4

*Johnson v. Elizabeth R. Wellborn, P.A.*,
  418 F. App'x 809 (11th Cir. 2011) .......................................................................................17

*Johnson v. Robertson, Anschutz & Schneid, PL*,
  No. No. 20-20002-CIV, 2020 WL 913343 (S.D. Fla. Feb. 26, 2020) ....................................16

*Kelly v. Ocwen Loan Serv., LLC*,
  No. 3:20-cv-00050-TJC-JRK (M.D. Fla. July 31, 2020).....................................................2, 9

*Kier v. Ocwen Loan Serv.*,
  122 F. Supp. 3d 786 (N.D. Ill. 2015) ...................................................................................13

*Kimbrough v. United States*,
  552 U.S. 85 (2007).............................................................................................................10

*Kurtzman v. Nationstar Mortg. LLC*,
709 F. App'x 655 (11th Cir. 2017) ............................................................15, 16, 17

*Lang v. Ocwen Loan Serv., LLC*,
No. 8:19-cv-1111-SCB-TGW (M.D. Fla. July 21, 2020)........................................2, 9

*Lee v. Main Accounts*,
125 F.3d 855, 1997 WL 618803 (6th Cir. 1997) (Table) ..........................................8

*Lewis v. ACB Bus. Servs.*,
911 F. Supp. 290 (S.D. Ohio 1996) .........................................................................8

*Mann v. Nat'l Asset Mgmt. Enters.*,
No. 04-1304, 2005 WL 8163297 (C.D. Cal. Feb. 24, 2005) ..........................8, 11, 14

*McFadden v. U.S. Bank N.A.*,
No. 8:14-cv-2068, 2015 WL 10352994 (M.D. Fla. October 7, 2015)......................17

*Meintzinger v. Sortis Holdings, Inc.*,
No. 18-cv-2042 (BMC), 2019 WL 1471338 (E.D.N.Y. Apr. 3, 2019) .........8, 10, 11, 18

*Nadalin v. Auto. Recovery Bureau*,
169 F.3d 1084 (7th Cir. 1986) ...............................................................................14

*Pacific Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*,
12 Cal. App. 5th 200 (Cal. Ct. App. 2017) .............................................................11

*Perry v. Oxford Law, LLC*,
No. 12-cv-3312, 2012 WL 3731802 (E.D. Pa. Aug. 29, 2012) ...............................15

*Rashied v. Ditech Financial, LLC*,
No. 1:18-cv-02955, 2018 WL 6720501 (N.D. Ga. Oct. 10, 2018) ...........................16

*Reese v. Ellis, Painter, Ratterree & Adams, LLP*,
678 F.3d 1211 (11th Cir. 2012) .............................................................................16

*Scissum v. Hawkside Fin., Inc.*,
No. 1:17-cv-00645, 2017 WL 8217641 (N.D. Ga. Dec. 5, 2017) ...........................16

*Setka v. JP Morgan Chase Bank, N.A.*,
No. CV 16-5861-R, 2017 WL 8186741 (C.D. Cal. Jan. 9, 2017) ...........................18

*SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*,
600 F.3d 1334 (11th Cir. 2010) ...............................................................................4

*St. Joe Corp. v. McIver*,
875 So. 2d 375 (Fla. 2004).....................................................................................11

iii

*TD Bank N.A. v. Hill*,
   928 F.3d 259 (3d Cir. 2019) ........................................................................10

*Turner v. Ocwen Loan Serv., LLC*,
   No. 8:20-cv-137-T-30SPF (M.D. Fla. Feb. 24, 2020) ...........................2, 9

*Tuttle v. Equifax Check*,
   190 F.3d 9 (2d Cir. 1999) .............................................................................8

*Veale v. Citibank*,
   85 F.3d 577 (11th Cir. 1996) .................................................................7, 13

**Statutes**

15 U.S.C. § 1637 .............................................................................................12

15 U.S.C. § 1692a ......................................................................................6, 15

15 U.S.C. § 1692e .........................................................................................14

15 U.S.C. § 1692f ....................................................................................*passim*

15 U.S.C. § 1693c .........................................................................................12

CAL. GOV'T CODE § 6159 ..............................................................................11

CAL. PUB. UTIL. CODE § 755 ..........................................................................11

FLA. ADMIN. CODE § 69C-4.0045 ..................................................................11

FLA. STAT. § 215.322 .....................................................................................11

TEX. EDUC. CODE § 54.5011 ..........................................................................11

TEX. GOV'T CODE § 411.0135 ........................................................................11

TEX. TRANSP. CODE § 501.176 .......................................................................11

TEX. TRANSP. CODE § 502.191 .......................................................................11

**Rules**

Fed. R. Civ. P. 12(b)(2) ....................................................................................2

Fed. R. Civ. P. 12(b)(6) ....................................................................................2

**Other Authorities**

12 C.F.R. Pt. 1026, Supp. I, Part 1 ................................................................13

12 C.F.R. § 205.7 .................................................................................................12

12 C.F.R. § 226.10 ...............................................................................................12

12 C.F.R. § 1005.7 ...............................................................................................12

12 C.F.R. § 1026.10 .............................................................................................12

38 C.F.R. § 36.4529 .............................................................................................13

53 Fed. Reg. at 50,107 .........................................................................................12

53 Fed. Reg. at 50,108 .........................................................................................12

67 Fed. Reg. 72618-01, 72618–19 (Dec. 6, 2002) ..............................................7

81 Fed. Reg. 74382-0174385 (Oct. 26, 2016) ....................................................13

*Incidental*, SHORTER OXFORD ENGLISH DICTIONARY ..................................................7

*On the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097-02, 50108
   (Dec. 13, 1988) .................................................................................................8

# INTRODUCTION

As a monthly mortgage late fee or delinquency deadline approaches, borrowers like Plaintiffs face a choice: Pay by mail for free and risk incurring a large late fee, negative credit reporting, or the commencement of foreclosure, or pay a small convenience fee to take advantage of a faster, entirely-optional online or telephonic payment methods with same-business-day payment processing, which the servicer has chosen to offer even though it is not required to do so. This expedited payment service is purely optional. No one is required to pay by telephone or the internet. No one is charged a fee for paying by telephone or internet unless they expressly agree to the fee at the time they use the service.

Depending on the timing of the borrower's monthly mortgage payment, this optional expedited payment service provides important consumer benefits: not only providing convenience, but providing a backup method of avoiding much higher contractual late fees, adverse credit reporting, and even foreclosure, all of which are express consequences of late or missed payments under the borrower's note and mortgage. The small fee for the optional expedited payment service is fully disclosed to the borrower, who must consent before paying the fee and using the service. Presumably, borrowers like Plaintiffs will pay the small fee only when that fee is less than, say, the late fees the borrowers would otherwise incur, or this payment method avoids other costs or burdens that mailing a check for free would not. So, the separate payment service benefits consumers.

In the Amended Complaint, Plaintiffs allege their payment of convenience fees (1) violated the Fair Debt Collection Practices Act and (2) breached their Mortgages. Plaintiffs' claims are insufficiently pleaded and legally deficient. The FDCPA does not prohibit a debt collector from charging borrowers convenience fees for expedited payment. In this year alone, this Court and the

Middle District of Florida have held in five substantially similar cases that Ocwen's convenience fees do not violate the FDCPA.[1] This Court should join these recent, well-reasoned opinions.

Plaintiffs' breach of contract claims fail for lack of privity. Neither PHH nor Ocwen is party to Plaintiffs' Mortgages. Plus, Plaintiffs have not adequately alleged that their Mortgages were actually breached. Nothing in Plaintiffs' Mortgages prohibits the assessment of fully disclosed, consented-to convenience fees to allow a borrower to use optional alternative payment methods. Instead, the crux of Plaintiffs' claim is that Defendants breached the Mortgages by allegedly violating the FDCPA. But that bootstrap cannot secure a breach of contract claim. Defendants did not violate the FDCPA, so they did not breach Plaintiffs' Mortgages. Finally, this Court lacks personal jurisdiction over the claims against PHH of absent class members who are not residents of Florida. *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773 (2017).

For all these reasons, Defendant PHH Mortgage Corporation ("PHH"), individually and as successor by merger to named defendant Ocwen Loan Servicing, LLC ("Ocwen"), respectfully moves the Court to dismiss the Amended Complaint (Doc. 11) of Plaintiffs Vincent J. Morris, Steven Simmons, Yolanda Upton, and Michael Luzzi under Rules 12(b)(2) and 12(b)(6).

### STATEMENT OF THE CASE

Most mortgage loan documents contemplate that borrowers will pay by mailing a check to their lender or servicer. In addition to accepting payments by check, however, Ocwen and PHH also offered purely optional expedited payment processing via telephone or online, which allowed

---

[1] *See* Order, *Estate of Derrick Campbell v. Ocwen Loan Serv., LLC*, Case No. 9:20-cv-80057-SINGHAL (S.D. Fla. Apr. 30, 2020) (attached as **Exhibit A**); Order, *Elmirah Reid v. Ocwen Loan Serv., LLC*, Case No. 9:20-cv-80130-SINGHAL (S.D. Fla. May 4, 2020) (attached as **Exhibit B**); Order, *Kelly v. Ocwen Loan Serv., LLC*, Case No. 3:20-cv-00050-TJC-JRK (M.D. Fla. July 31, 2020) (attached as **Exhibit C**); Order, *Lang v. Ocwen Loan Serv., LLC*, Case No. 8:19-cv-1111-SCB-TGW (M.D. Fla. July 21, 2020) (attached as **Exhibit D**); Order, *Turner v. Ocwen Loan Serv., LLC*, Case No. 8:20-cv-137-T-30SPF (M.D. Fla. Feb. 24, 2020) (attached as **Exhibit E**).

payments to be posted the same day they were made or, if that day was not a business day, the next

business day. Declaration of Derrick Raleigh ("Raleigh Decl.") ¶ 9 (attached as **Exhibit F**). Ocwen

and PHH were not required to offer such expedited payment processing, but they did so for a small

fee. No borrower was required to pay by this method. Ever.

The fee was optional because borrowers only incurred it if they chose to pay online or by

telephone. Borrowers could avoid the fee entirely simply by mailing in their payments, as their

loan documents contemplate. *See, e.g.*, Raleigh Decl., Exs. F-1 § 3, F-3 § 3, F-5 § 3, F-7 § 3.

Throughout the relevant period, Ocwen and PHH offered three means of making such

optional, expedited payments: by telephone via a live operator, by telephone via an interactive

voice response telephone system (IVR), or online. *See* Raleigh Decl. ¶ 9. Both loan servicers'

standard procedure was to disclose to the borrower (a) that she was using an optional payment

method, (b) that she would be charged a convenience fee to use the optional payment method, and

(c) the amount of that fee. *See* Raleigh Decl. ¶ 10; *id.*, Exs. F-13 – F-18. Ocwen and PHH then

obtained the borrower's express consent to proceed with the transaction and be charged the fee.

*See id.* ¶¶ 10, 16. Some borrowers approaching payment deadlines chose to pay the small fee in

return for expedited payment processing to avoid bigger negative consequences such as late fees,

adverse credit reporting, or even foreclosure. *Id.* ¶ 9.  A portion of the convenience fees was passed

along to a third-party processor.  Am. Compl. ¶ 26; Raleigh Decl. ¶ 10.  PHH and Ocwen retained

the balance.  Am. Compl. ¶ 26; Raleigh Decl. ¶ 10.

Each of the four Plaintiffs made certain expedited monthly payments by telephone or the

internet on mortgage loans serviced by Defendants.  Am. Compl. ¶¶ 15, 16, 19, 22.  Plaintiff

Morris, for example, takes issue with twelve convenience payments made to PHH, as set forth in

Exhibit F-9 to the Raleigh Declaration.  *Id.* ¶ 15; Raleigh Decl., Ex. F-9.  Four payments were

made by telephone via a live operator, and Morris paid convenience fees of $17.50 for each.  Am. Compl. ¶ 15; Raleigh Decl., Ex. F-9.  Eight were made via IVR for a $7.50 convenience fee.  *Id.* Morris also made convenience payments to Ocwen via IVR or live operator, which are also reflected in Exhibit F-9.

Plaintiff Simmons paid Ocwen online six times since March 25, 2016, and was charged a $10 convenience fee each time.  Am. Compl. ¶ 18; Raleigh Decl., Ex. F-10.  Plaintiff Upton made a single convenience payment to Ocwen by telephone via live operator on November 15, 2018, and paid a convenience fee of $17.50.  Am. Compl. ¶ 21; Raleigh Decl., Ex. F-11.  Plaintiff Luzzi paid a single convenience payment by IVR to PHH on February 28, 2020, and paid a convenience fee of $7.50.  Am. Compl. ¶ 24; Raleigh Decl., Ex. F-12.

Nothing in Plaintiffs' loan documents authorized them to make monthly payments by telephone or the internet or required Defendants to accept such expedited payment methods. Raleigh Decl. ¶ 15; *id.*, Exs. F-1, F-2 (Morris Note & Mortgage), Exs. F-3, F-4 (Simmons Note & Mortgage), Exs. F-5, F-6 (Upton Note & Mortgage), Exs. F-7, F-8 (Luzzi Note & Mortgage).[2] But Defendants voluntarily offered borrowers, including each Plaintiff here, these optional alternative, expedited payment methods in return for a convenience fee.  *Id.*

Although Plaintiffs allege that Defendants fraudulently concealed the profitability of

---

[2] The Court can consider the content of documents attached to or incorporated by reference in a complaint and need not credit allegations that are inconsistent with those documents.  *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002); *SFM Holdings, Ltd. v. Banc of Am. Sec., LLC*, 600 F.3d 1334, 1337 (11th Cir. 2010). Because Morris's Mortgage is attached as an exhibit to the Amended Complaint (*see* Doc. 11-1), the Court may consider it. *SFM Holdings*, 600 F.3d at 1337. The Court also may consider Morris's Note and the Mortgages and Notes of each of the other Plaintiffs, all of which are incorporated by reference in the Complaint: Plaintiffs claim it was unlawful for Defendants to assess them convenience fees because the "contract creating the debt" does not expressly authorize such fees. *See* Am. Compl. ¶ 25. Thus, the Amended Complaint necessarily relies upon the content of those loan documents, including the Note. *See SFM Holdings*, 600 F.3d at 1337 (documents whose authenticity is not in dispute and that are "central to the plaintiff's claims" are "incorporated by reference" in the complaint).

convenience fees (Am. Compl. ¶ 40), Plaintiffs knew they paid the fee when they voluntarily paid it. For each convenience fee paid by Plaintiffs, Defendants disclosed to them that they would be charged the convenience fee to use the optional payment method, disclosed the amount of the fee, and obtained Plaintiffs' advance consent before they paid the fee. Raleigh Decl. ¶ 16.  Recordings of Morris's four payments made telephonically to a live operator are included as Exhibits F-13 through F-15 of the Raleigh Declaration; in each, PHH disclosed the amount of the fee and obtained Morris's express consent to be charged the fee before processing the transaction. The same is true for Upton's lone telephonic payment to Ocwen. *Id*. ¶ 16. Likewise, for his online payments to Ocwen, Simmons would have clicked through the website disclosures attached as Exhibit F-17 to the Raleigh Declaration. And PHH's IVR call flow, which shows that the convenience fee was fully disclosed to Morris and Luzzi before each of their IVR payments, is Exhibit F-18 to the Raleigh Declaration.

Finally, although Plaintiffs assert breach of contract claims against Defendants, there also is no dispute that Defendants only serviced, and did not own, Plaintiffs' loans. Raleigh Decl. ¶ 4.

**ARGUMENT**

**I.**     **Plaintiffs have no valid or plausible FDCPA claim.**

Plaintiffs' FDCPA claims should be dismissed for two reasons.  First, as a matter of law, Defendants' assessment of fully disclosed, consented-to convenience fees for the use of optional, additional payment methods does not violate the FDCPA.  Second, the FDCPA does not apply because Plaintiffs have not alleged facts sufficient to satisfy the Act's statutory prerequisites.

**A.     Defendants' convenience fees do not violate the FDCPA.**

Defendants' assessment of convenience fees for Plaintiffs' use of optional, expedited online or telephonic payment methods did not violate the FDCPA. Plaintiffs' theory is that the convenience fees violated § 1692f(1) because those fees were incidental to their mortgage debts

5

and neither permitted by law nor expressly authorized by the underlying loan documents. Am. Compl. ¶ 44. The FTC and numerous federal courts, including *this Court* in several recent decisions involving Ocwen, have confirmed that optional convenience fees for an optional expedited payment service, charged only after advance disclosure and the express agreement of the borrower at the time, do not run afoul of the FDCPA.

1.    A convenience fee is not a debt or incidental to a debt.

To be actionable under § 1692f(1), a charge must be either a debt or incidental to a debt. 15 U.S.C. § 1692f(1). This section of the FDCPA prohibiting debt collectors from collecting "any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). An optional fee for an optional service not required by the underlying loan documents is not a "debt" under the FDCPA because it is agreed to, assessed contemporaneously, and not "obligat[ory]." *See id.* § 1692a(5). And indeed, Plaintiffs have not alleged that the convenience fees at issue here were themselves debts. As a result, Defendants necessarily were not collecting a debt in assessing the convenience fee—*i.e.*, they were not engaged in the primary activity the FDCPA was designed to regulate. *See* § 1692f.

Nor are the small convenience fees charged in return for Defendants' immediate processing of Plaintiffs' payments "incidental to" Plaintiffs' mortgage debts. The fees at issue here were contemporaneously agreed-to fees for an immediately provided and entirely optional, extra service. Raleigh Decl. ¶¶ 9–10, 15–16. Plaintiffs voluntarily agreed to pay the fees. *Id*. Plaintiffs' loan documents did not require Defendants to accept payment by phone or online. Am. Compl., Ex. A; Raleigh Decl. ¶ 15, Exs. F-1 – F-8. Nevertheless, Plaintiffs requested Defendants allow them to make payments online or by telephone so their payments could be processed immediately. For example, Plaintiff Upton's convenience payment was made on November 15, 2018, the day

her grace period would have expired. *See* Raleigh Decl., Ex. F-5 § 6(A). Had she paid by mail, her payment certainly would have been late, resulting in a late penalty, interest charges, or other adverse consequences. *See id*., Ex. F-5 § 6(A) (late charge provisions). Ocwen agreed to allow Upton to make payments in that manner in exchange for a convenience fee explicitly disclosed and agreed to in advance. Raleigh Decl. ¶ 16.

An event is incidental when it is "[l]iable to happen to; naturally attaching to." *Incidental*, SHORTER OXFORD ENGLISH DICTIONARY. But these fees were not automatic.  They were always entirely optional and avoidable. Whether the payment would be late or not, Plaintiffs could always have paid their mortgages without incurring any convenience fees simply by mailing checks or money orders. Raleigh Decl. ¶¶ 9, 15; Exs. F-1 § 3, F-3 § 3, F-5 § 3, F-7 § 3. As a result, the convenience fees did not "naturally attach[ ]" to Plaintiffs' payments. The convenience fees did not result from Plaintiffs' obligations to pay their loans; they resulted from Plaintiffs' request for PHH and Ocwen to accept payment online or by telephone and process and post a mortgage payment the same day, even though Ocwen and PHH were not required to offer or accept payment by those methods. *See* 67 Fed. Reg. 72618-01, 72618–19 (Dec. 6, 2002) ("A fee charged for expediting a consumer's payment would not appear to be incidental to the extension of credit if this payment method is not established as the regular payment method for the account."); *Veale v. Citibank*, 85 F.3d 577, 579 (11th Cir. 1996) ("If the borrower can choose to avoid the Federal Express fee by having the documents sent via regular mail, then the fee is not imposed as an incident to the extension of credit."). Thus, the fees were not incurred because of the underlying

loan. They were incurred because extra services were requested and agreed to. The fees were incident to those extra services, not to the underlying mortgage debts.[3]

Simply put, "[n]othing in the FDCPA . . . prohibits [a company] from offering to enter into a new contract with the debtor" for payment by phone—a separate service not required by the mortgage loan documents. *Meintzinger v. Sortis Holdings, Inc.*, No. 18-cv-2042 (BMC), 2019 WL 1471338, at *2 (E.D.N.Y. Apr. 3, 2019).[4] A separate fee for a separate service incurred voluntarily cannot be incidental to the underlying mortgage debt because "[a] consumer must choose to affirmatively and separately opt-in to this alternative method." *Flores v. Collection Consultants of California*, No. SA CV 14-0771-DOC (RNBx), 2015 WL 4254032, at *10 (C.D. Cal. Mar. 20, 2015). Indeed, finding that such a voluntary fee does not violate the FDCPA is logically consistent with the FTC's guidance acknowledging that a merchant may charge a bounced check fee by posting a "sign on the merchant's premises allowing such a charge" and demonstrating the consumer "knew of the charge" at the time of payment. *Statements of General Policy or Interpretation Staff Commentary On the Fair Debt Collection Practices Act*, 53 Fed. Reg. 50097-02, 50108 (Dec. 13, 1988). *See Tuttle v. Equifax Check*, 190 F.3d 9, 15 (2d Cir. 1999). The FTC explains that this is because the consumer has effectively entered a separate "agreement" to pay the fee. *Id.* So too here.

---

[3] To illustrate the point by contrast, if a servicer charged a fee for the payment methods provided for in the loan agreement, that fee would be incidental to payment of the mortgage obligation and would need to be permitted by law or expressly authorized in the agreement itself.

[4] *Mann v. Nat'l Asset Mgmt. Enters.*, No. 04-1304, 2005 WL 8163297, *2 (C.D. Cal. Feb. 24, 2005) (endorsing authority summarily rejecting § 1692f claim over convenience fee "because the fee was optional and the debt collector was passing the fee along to the consumer," not collecting it for another); *see also Lee v. Main Accounts*, 125 F.3d 855, 1997 WL 618803, at *1 (6th Cir. 1997) (Table); *Lewis v. ACB Bus. Servs.*, 911 F. Supp. 290, 293 (S.D. Ohio 1996), *order aff'd*, 135 F.3d 389 (6th Cir. 1998)).

In similar litigation against Ocwen, Southern District of Florida Judge Singhal recently concluded that Ocwen's convenience fees did not violate the FDCPA because "[t]he convenience fees are a separate transaction neither part of, nor incidental to, the transferred debt." *Campbell* Order (Ex. A) at 3–5; *see also Reid* Order (Ex. B) at 1 (noting the holding of *Campbell* that a "convenience fee charged by Defendant . . . was not part of the debt and, therefore the plaintiff could not state a claim under" either statute). Likewise, Judge Moody, Judge Corrigan, and Judge Schlesinger of the Middle District of Florida also recently concluded that convenience fees do not violate the FDCPA because they are "incurred in a separate agreement between the parties to ensure same-day posting and processing of [the plaintiff's] mortgage payments—an optional service . . . voluntarily incurred." *Turner* Order (Ex. E) at 4; *see also Kelly* Order (Ex. C) at 4–7 (same); *Lang* Order (Ex. D) at 4–5 (same).

This Court should join these recent, well-reasoned opinions in finding that "convenience fees are a separate transaction neither part of, nor incidental to, the [mortgage] debt," and thus do not violate the FDCPA.

2.    <u>Convenience fees are permitted by law and expressly authorized by the agreement creating the debt.</u>

Even if the Court concludes that the convenience fees were "incidental" to Plaintiffs' debts, Plaintiffs still have no valid FDCPA claim. The FDCPA permits debt collectors to collect fees or "permitted by law" or "expressly authorized by the agreement creating the debt." 15 U.S.C. § 1692f(1). Convenience fees satisfy both statutory conditions.

a.    *Convenience fees are permitted by law.*

The convenience fees at issue are "permitted by law" because Defendants were entitled to assess them under both state and federal law. As used in § 1692f(1), "permitted by law" cannot mean "expressly authorized by statute." Congress clearly knows how to say "expressly authorized"

when it wants, as Congress chose to use "expressly authorized" in the very same sentence of § 1692f(1) with respect to the "agreement creating the debt." By not using the same language with respect to the "law," Congress recognized that legal permission could be authorized by silence. *TD Bank N.A. v. Hill*, 928 F.3d 259, 272–73 (3d Cir. 2019) ("[W]here, as here, 'Congress has shown that it knows how to [adopt a measure] in express terms,' it is 'particularly inappropriate' to extend that policy to another subsection lacking such language.") (alteration in original) (quoting *Kimbrough v. United States*, 552 U.S. 85, 103 (2007)). After all, in America, a country founded on freedom, "permitted by law" typically means "not prohibited by law."

Thus, "permitted by law" cannot mean "expressly authorized by statute," and must mean that there is *some law*, whether statute *or common law*, that would permit the debt collector to collect the fee. That law could be a statute expressly authorizing the fee, but need not be. For example, under settled and uniform state ***common law contractual principles***, the fees at issue here were legally chargeable because they were part of a separate agreement for a separate service. *Meintzinger*, 2019 WL 1471338 at *2 (reasoning that "[n]othing in the FDCPA . . . prohibits [a company] from offering to enter into a new contract with the debtor" for payment by phone—a separate service not required by the mortgage loan documents). Ocwen and PHH offered borrowers expedited payment processing for payments made by telephone or the internet. Raleigh Decl. ¶ 9. In return, Defendants charged small convenience fees. *Id*. ¶ 10. Plaintiffs accepted those extra services and agreed to pay the convenience fees, either verbally to a live representative, through pressing a button on their phone for IVR calls, or through clicking a button online. *Id*. In consideration for the convenience of using these payment methods and for same-day processing and posting of their payments, Plaintiffs then paid the fees to Ocwen and PHH. In short, for each transaction, there was an offer, an acceptance, and the mutual exchange of consideration.

10

Under settled principles of contract law, Ocwen and PHH had a legal basis to recover the convenience fees from Plaintiffs. *See, e.g.*, *Harco Energy, Inc., v. Re-Entry People, Inc.*, 23 S.W.3d 389, 392 (Tex. App. 2000) (to form a contract in Texas, "there must be an offer, an acceptance, and valid consideration"); *St. Joe Corp. v. McIver*, 875 So. 2d 375, 381 (Fla. 2004) (same, Florida); *Pacific Bay Recovery, Inc. v. Cal. Physicians' Servs., Inc.*, 12 Cal. App. 5th 200, 215 (Cal. Ct. App. 2017) (same, California); *Geary v. Wenworth Labs., Inc.*, 760 A.2d 969, 972 (Conn. Ct. App. 2000) (same, Connecticut). So, the fees were "permitted by law" because they were permitted by the common law of contract. Nothing in the FDCPA prevents borrowers from forming separate contracts to purchase separate optional services in exchange for separate fees. *Meintzinger*, 2019 WL 1471338 at *2.

Convenience fees also are permitted by law because numerous ***courts across the country*** have so held. *See supra* Part I.A.1 & n.4. The earliest case directly on point was decided in 2005— more than 10 years before the earliest date covered here—and it summarily rejected a § 1692f(1) challenge to a convenience fee "because the fee was optional and the debt collector was passing the fee along to the consumer," not collecting it for another. *Mann v. Nat'l Asset Mgmt. Enters.*, No. 04-1304, 2005 WL 8163297, *2 (C.D. Cal. Feb 24, 2005).

***State statutes*** also permit convenience fees. For example, Florida, California, and Texas law permit public agencies to charge convenience fees for same-day payments made by phone or online. *See* FLA. STAT. § 215.322(3)(b); FLA. ADMIN. CODE § 69C-4.0045 ("Convenience Fees"); CAL. GOV'T CODE § 6159; CAL. PUB. UTIL. CODE § 755; TEX. GOV'T CODE § 411.0135; TEX. TRANSP. CODE §§ 501.176 & 502.191; TEX. EDUC. CODE § 54.5011. And there is no applicable statute or regulation in Florida, California, Texas, or Connecticut that prohibits convenience fees on expedited mortgage payments.

In addition, convenience fees are also permitted by ***federal statutes and regulations***. The FTC acknowledges that the FDCPA does not prohibit debt collectors from assessing fees or charges that are "reasonably avoidable by the consumer." 53 Fed. Reg. at 50,107. In fact, the FTC went out of its way to recognize that when a debt collector puts a consumer on notice that use of optional services will result in fees, before the consumer is charged such a fee, charging that fee for use of an optional service is not a violation of the FDCPA. 53 Fed. Reg. at 50,108.[5] The Electronic Fund Transfers Act expressly permits a borrower's bank to charge convenience fees for electronic transfers and requires disclosure of the terms and conditions at the time the charge is agreed to by the account holder. 15 U.S.C. § 1693c(a)(4). EFTA regulations mirror this statutory requirement. 12 C.F.R. §§ 205.7 & 1005.7(b)(5).

Notably, the Truth in Lending Act and its regulations generally prohibit convenience fees on open-ended consumer credit plans (credit cards) but exempt such fees on closed-ended (home-secured) plans and specifically allow convenience fees for an "expedited service" facilitated by a customer service representative. 15 U.S.C. § 1637(*l*); 12 C.F.R. § 226.10(e) ("For credit card accounts under an open-end (not home-secured) consumer credit plan, a creditor may not impose a separate fee to allow consumers to make a payment by any method, such as mail, electronic, or telephone payments, unless such payment method involves an expedited service by a customer service representative of the creditor. For purposes of paragraph (e), the term 'creditor' includes a third party that collects, receives, or processes payments on behalf of a creditor."); 12 C.F.R.

---

[5] The Consumer Financial Protection Bureau agreed with this interpretation in implementing Ocwen's 2014 National Mortgage Settlement. Under this settlement, Ocwen may assess a fee if (1) "it is not prohibited by law, this Agreement or the loan instruments" and (2) it is "a reasonable fee for a specific service requested by the borrower that is collected only after clear and conspicuous disclosure of the fee is made available to the borrower." Consent Judgment, *CFPB v. Ocwen Loan Serv.*, No. 1:13-cv-02025 (D.D.C., signed Feb. 26, 2014) (Doc. No. 12-1 at A-39). The same rule should apply to Ocwen's successor, PHH.

§ 1026.10(e) (same). The CFPB's regulations governing TILA exempt from strict disclosure fees "charged for arranging a single payment on the credit account, upon the consumer's request (regardless of how frequently the consumer requests the service), if the credit plan provides that the consumer may make payments on the account by another reasonable means, such as by standard mail service, without paying a fee to the creditor." 12 C.F.R. Pt. 1026, Supp. I, Part 1, ¶ 6(a)(2).2.x. *See Veale*, 85 F.3d at 579 (11th Cir. 1996) (holding $21 overnight fee does not violate TILA because "the borrower can choose to avoid the Federal Express fee by having the documents sent via regular mail"); *Kier v. Ocwen Loan Serv.*, 122 F. Supp. 3d 786, 790–91 (N.D. Ill. 2015) (holding Ocwen's SpeedPay charges do not violate TILA).

Most important, the Veterans Administration recently surveyed the mortgage servicers and found convenience fees ranging from $9 to $20 are "standard in private industry." 81 Fed. Reg. 74382-0174385 (Oct. 26, 2016). As result, the VA adopted its own regulation permitting convenience fees on vendee loans. 38 C.F.R. § 36.4529(a)(6)–(7). The VA may charge a borrower up to $12 "when a payment is made by phone and handled by a servicing representative" and up to $10 "when payment is made by phone and handled through an interactive voice response system, without contacting a servicing representative." *Id.*

Because state and federal law permit convenience fees, they do not violate the FDCPA.

                    b.    *Convenience fees are expressly authorized by Plaintiffs' loan documents.*

In addition, convenience fees are expressly authorized by Plaintiffs' loan documents. The Note expressly states, "This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located." Am. Compl., Ex. A § 15. As demonstrated above, federal law permits a borrower to separately agree to pay a convenience fee at the time an expedited

payment service is used. By incorporating governing principles of federal law, the Note expressly authorized Defendants to charge Plaintiffs a convenience fee.

**B.    Plaintiffs have failed to satisfy the FDCPA statutory prerequisites.**

   1. Defendants did not "collect" the convenience fee.

First, Ocwen did not "collect" the convenience fee. 15 U.S.C. § 1692f(1). Rather, the fee was a contemporaneously agreed to fee, for an entirely optional, extra service. Plaintiffs voluntarily agreed to pay the fee.  Because it was not obligatory, Ocwen did not "collect" the fee according to the plain language of the FDCPA. *See Duncan v. Assert Recovery Specialists*, 907 F.3d 1016, 1017–18 (7th Cir. 2018) (holding $100 fee paid for recovery of personal property from repossessed vehicle is not governed by § 1692f because it was a fee paid to the collector, not the creditor, separate from a demand for repayment on the underlying loan); *Nadalin v. Auto. Recovery Bureau*, 169 F.3d 1084, 1086 (7th Cir. 1986) (same, with respect to $25 inventory and storage fee); *Mann*, 2005 WL 8163297 at *2 (rejecting § 1692f claim over convenience fee "because the fee was optional and the debt collector was passing the fee along to the consumer," not collecting it for another).

   2. Defendants are not "debt collectors."

By its plain text, the FDCPA applies only to "debt collectors." 15 U.S.C. § 1692e ("A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt."); *id.* § 1692f (applying to debt collectors); *see also Dayhoff v. Wells Fargo Home Mortg., Inc.*, No. 6:13-cv-1132-Orl-37KRS, 2013 WL 6283583, at *1–2 (M.D. Fla. Dec. 4, 2013). To survive PHH's motion to dismiss, Plaintiffs must have pleaded "factual content that allows the court to draw the reasonable inference that [Defendants were] 'debt collector[s]' under the FDCPA." *Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015). Plaintiffs have not done so.

The FDCPA defines a "debt collector" as: "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Thus, there are two separate definitions of debt collector: (1) a person whose "principal purpose" is the collection of debts, or (2) a person who "regularly" collects debts that are owed to others. *Id.* Excluded from both definitions of debt collector is "any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity … (iii) concerns a debt which was not in default at the time it was obtained by such person … ." *Id.* § 1692a(6)(F)(iii).

Plaintiffs have not adequately alleged that Defendants meet either definition of "debt collector." In conclusory fashion, Plaintiffs allege that Defendants "regularly collect debts owed others" and that Defendants' "principal purpose" is "the collection of … debts." Am. Compl. ¶ 45. But these conclusory allegations should not be credited because they are nothing more than bare recitations of the statutory definitions of debt collector. *See Anderman v. JP Morgan Chase Bank, NA*, 803 F. App'x 290, 293 (11th Cir. 2020) (rejecting plaintiff's assertion that defendant was a debt collector when it only "restated the definition in their complaint, without alleging any factual support"); *Kurtzman v. Nationstar Mortg. LLC*, 709 F. App'x 655, 658–59 (11th Cir. 2017) (affirming dismissal of complaint that "generally only asserts that [loan servicer] 'regularly attempts to collect debts not owed to [it]'").[6] The conclusory allegation that Defendants "regularly

---

[6] *See also Ashcroft v. Iqbal,* 556 U.S. 662, 680–81 (2009) (disregarding allegations that were "nothing more than a formulaic recitation of the elements of a constitutional discrimination claim") (internal quotation marks omitted); *Estate of Egenious Coles*, 658 F. App'x 108, 110–11 (3d Cir. 2016) (same); *DeFazio*, 2010 WL 5146765 at *3 (same); *Perry v. Oxford Law, LLC*, No. 12-cv-3312, 2012 WL 3731802, *4 (E.D. Pa. Aug. 29, 2012) (refusing to credit allegation that defendant "regularly attempts to collect debts alleged to be due another, and therefore is a 'debt collector' as defined by the FDCPA" because it "merely parrot[ted] the applicable statutory language"); *Cox v.

collect debts owed to others" says nothing about any of the factors that courts generally evaluate when determining whether a defendant's debt collection activities are sufficiently "regular" to be actionable under the FDCPA. *See Reese v. Ellis, Painter, Ratterree & Adams, LLP*, 678 F.3d 1211, 1218–1219 (11th Cir. 2012) (holding plaintiffs' complaint provided enough facts indicating defendant "regularly attempts to collect debts" by alleging the defendant "sent to more than 500 people 'dunning notices'" within the past year).[7] Such a content-less conclusion does not provide the necessary factual basis from which the Court can plausibly infer that Defendants in fact "regularly" collected debts owed to others. *See Kurtzman*, 709 F. App'x at 658–59; *DeFazio v. Leading Edge Recovery Sols., LLC*, No. 2:10-cv-02945, 2010 WL 5146765, at *3 (D.N.J. Dec. 13, 2010) (same).

So too, Plaintiffs' bare conclusion that Defendants' "principal purpose" is "the collection of any debts" is deficient.  *See Anderman*, 803 F. App'x at 293 (allegation that "the principal purpose of [defendant's] business is to collect on defaulted debts … simply restated the [statutory] definition, without alleging any factual support").  That allegation "'lacks factual content and, in essence, amounts to a legal conclusion that the Court will not consider.'" *Rashied v. Ditech Financial, LLC*, No. 1:18-cv-02955 2018 WL 6720501, at *5 (N.D. Ga. Oct. 10, 2018) (quoting *Scissum v. Hawkside Fin., Inc.*, No. 1:17-cv-00645, 2017 WL 8217641, at *6 (N.D. Ga. Dec. 5, 2017)); *Johnson v. Robertson, Anschutz & Schneid, PL*, No. 20-20002-CIV, 2020 WL 913343, at

---

*Old Republic Nat'l Title Ins.*, No. 15-cv-02253-BLF, 2016 WL 301974, *11 (N.D. Cal. Jan. 25, 2016) (same).

[7]*See also Coles v. Zucker Goldberg & Ackerman*, No. 14-cv-1612, 2015 WL 4578479, at *6-7 (D.N.J. July 29, 2015) (dismissing FDCPA claims where the complaint did not allege facts "indicating the number of debt collection communications issued, [] the frequency of such communications," or "whether [defendant] ha[d] personnel specifically assigned to work on debt collection activity").

*2 (S.D. Fla. Feb. 26, 2020) (dismissing FDCPA claim where complaint contained only bare legal conclusions that defendant as a "debt collector"); *Collins v. BSI Fin. Servs.*, No. 2:16-cv-262-WHA, 2017 WL 1045062, at *4 (M.D. Ala. Mar. 17, 2017) (same); *McFadden v. U.S. Bank N.A.*, No. 8:14-cv-2068, 2015 WL 10352994, at *3–5 (M.D. Fla. October 7, 2015) (same).

Simply quoting the relevant definitions of "debt collector," as Plaintiffs do here, is insufficient to survive a motion to dismiss. *Anderman*, 803 F. App'x at 293; *Kurtzman*, 709 F. App'x at 658–59; *Estate of Egenious Coles*, 658 F. App'x 108, 111 (3d Cir. 2016). Plus, Plaintiffs effectively concede that even if Defendants did meet either of the FDCPA's definitions of "debt collector," Defendants would not have been debt collectors *as to Morris and Simmons*; neither were in default when Defendants became their servicers. *See* Am. Compl. ¶¶ 20, 23, 45 (alleging only that Luzzi and Upton were in default when Defendants became their servicers, not Morris and Simmons).

## II.     Plaintiffs have not plausibly alleged a breach of contract claim.

Plaintiffs also have not plausibly alleged a valid breach of contract claim. The thrust of their breach of contract claim is that in violating the FDCPA, Defendants also violated Plaintiffs' Mortgages. Am. Compl. ¶¶ 56–64. But for all the reasons just discussed, Plaintiffs have not plausibly alleged a violation of the FDCPA. *See supra* Argument § I.

Additionally, Defendants are not parties to Plaintiffs' Mortgages and cannot be held liable for the alleged breach of those agreements. Plaintiffs allege that Ocwen and PHH "became parties to the Mortgages when they became Plaintiffs' and Class Members' servicers." Am. Compl. ¶ 55. But it is well settled that a mortgage servicer is not in privity of contract with the mortgagor and cannot be sued for breach of the mortgage agreement.[8] *See, e.g.*, *Hogan v. Praetorian Ins. Co.*,

---

[8] Mortgage servicers generally are the agents of lenders. *See Edwards v. Ocwen Loan Serv., LLC*, 24 F. Supp. 3d 21, 28 (D.D.C. 2014).  It is well-settled that an agent cannot be found liable for its

No. 1:17-cv-21853-UU, 2018 WL 8266803, at *7 (S.D. Fla. Jan. 11, 2018) (applying Florida law and holding that a servicer not party to mortgage and "cannot be liable for breach"); *Setka v. JP Morgan Chase Bank, N.A.*, No. CV 16-5861-R, 2017 WL 8186741, at *2 (C.D. Cal. Jan. 9, 2017) (same, California law).

Finally, none of the conduct of which Plaintiffs complain amounts to a breach of their Mortgages. Plaintiffs contend that in charging convenience fees, Defendants breached Paragraphs 7, 13, and 15 of Morris's Mortgage (and similar provisions in the other Plaintiffs' Mortgages). Am. Compl. ¶¶ 54–65. But none of those sections prohibited Defendants from charging a fully disclosed, consented-to-in-advance convenience fee in return for allowing Plaintiffs to use an expedited payment method that Defendants were not required to offer under the terms of the loan documents, but made available anyway on a purely optional basis. Paragraph 15 was not breached because, as explained above, federal law *permits* a borrower to separately agree to pay a convenience fee at the time an expedited payment service is used. So, by incorporating governing principles of federal law, the Note expressly authorized Defendants to charge Plaintiffs a convenience fee. Paragraph 7 concerns the rights and obligations of the lender to secure and protect its mortgage interest in Morris's property in certain situations, such as if Morris breached the Mortgage or abandoned the property. *Id.* ¶ 7. That provision has nothing to do with a mortgage servicer charging convenience fees to allow the borrower to use additional and purely optional payment methods other than the mailed check contemplated by the original loan documents. Finally, although Paragraph 13 indicates that a lender may not charge "*loan* charges" that exceed

---

principal's contractual obligations, even if that agent negotiated or was charged by the principal with performing those obligations. *See Johnson v. Elizabeth R. Wellborn, P.A.*, 418 F. App'x 809, 816 n.8 (11th Cir. 2011) (citing *Babul v. Golden Fuel, Inc*., 990 So. 2d 680, 683 (Fla. 2d DCA 2008)).

"permitted limits" (*id*. ¶ 13 (emphasis added)), convenience fees are not "loan charges." Instead, they are an entirely separate charge incurred for providing an entirely separate service. *See Meintzinger*, 2019 WL 1471338, at *2.

**III.**     **The Court should dismiss the claims against PHH of non-resident absent class members.**

Finally, the Court should dismiss the claims against PHH of absent class members who do not reside in Florida for lack of personal jurisdiction. In *Bristol-Myers Squibb*, the Court held that a state court lacked personal jurisdiction over a defendant in a mass tort action as to the claims of nonresident plaintiffs because the conduct relevant to the nonresident plaintiffs' claims had no connection to the forum state. *Id*. at 1781. This is as true in a class action as in a mass tort action; "[t]he constitutional requirements of due process do[ ] not wax and wane when the complaint is individual or on behalf of a class." *In re Dental Supplies Antitrust Litig.*, No. 16 Civ. 696 (BMC) (GRB), 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017). "Personal jurisdiction in class actions must comport with due process just the same as any other case." *Id.* The principles of *Bristol-Myers Squibb* therefore bar the claims of non-resident, absent class members just as they apply to consolidated tort plaintiffs. *See, e.g.*, *Carpenter v. PetSmart, Inc.*, 441 F. Supp. 3d 1028, 1035–38 (S.D. Cal. 2020); *Chizniak v. CertainTeed Corp.*, No. 1:17-CV-1075 (FJS/ATB), 2020 WL 495129, at *4 (N.D.N.Y. Jan. 30, 2020); *Dental Supplies Antitrust Litig.*, 2017 WL 4217115, at *9.

Here, the Court does not have general or specific jurisdiction over PHH as to the claims of absent class members who do not reside in Florida. The Court does not have general jurisdiction over PHH because PHH is not incorporated in and does not have its principal place of business in Florida. Raleigh Decl. ¶ 20; *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). And the Court does not have specific jurisdiction over the claims of absent class members who do not reside in

Florida, because those persons' claims have no connection to Florida and do not arise out of or relate to any activities that PHH purposefully and intentionally directed at Florida. *Bristol-Myers Squibb*, 137 S. Ct. at 1781. The Court should dismiss the claims against PHH of absent class members who do not reside in Florida.

CONCLUSION

For all of the foregoing reasons, the Court should dismiss the Amended Complaint in its entirety with prejudice.

Dated: August 7, 2020

Respectfully submitted,

*/s/ Timothy A. Andreu*

Timothy A. Andreu (Fla. Bar No. 443778)
BRADLEY ARANT BOULT CUMMINGS LLP
100 North Tampa Street, Suite 2200
Tampa, FL  33602
Telephone:     (813) 559-5500
Facsimile:      (813) 229-5946
tandreu@bradley.com

*Attorney for PHH Mortgage Corporation, individually and as successor by merger to Ocwen Loan Servicing, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2020 I electronically filed the foregoing with the Clerk of Court using the CM/ECF System which will send an electronic notification of such filing to all counsel of record in the Court's ECF filing system.

Adam M. Moskowitz (Fla. Bar No. 984280)
adam@moskowitz-law.com
Howard M. Bushman (Fla. Bar No. 364230)
howard@moskowitz-law.com
Joseph M. Kaye (Fla. Bar No. 117520)
joseph@moskowitz-law.com
Barbara C. Lewis (Fla. Bar No. 118114)
barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Tel. (305) 740-1423

Joshua Adam Migdal
josh@markmigdal.com
Yaniv Adar
yaniv@markmigdal.com
eservice@markmigdal.com
**Mark, Migdal & Hayden**
80 SW 8th Street
Suite 1999
Miami, FL 33130
Tel. (305) 374-0440
*Attorneys for Plaintiffs and the putative class*

James L. Kauffman (Fla. Bar No. 12915)
jkauffman@baileyglasser.com
**BAILEY & GLASSER, LLP**
1055 Thomas Jefferson Street NW, Suite 540
Washington, DC 20007
Tel. (202) 463-2101
*Attorney for the Proposed Intervenors*

*/s/ Timothy A. Andreu*
Attorney for Defendant PHH Mortgage Corporation

21