**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS, STEVEN
SIMMONS, YOLANDA UPTON, and
MICHAEL LUZZI, on behalf of themselves
and all others similarly situated,

       Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability
Company,

      Defendants.

_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS**

Plaintiffs are very proud to present to this Court the Global settlement they reached with Defendants—after many months of extensive Zoom and telephone mediation sessions before the nationally recognized mediator Rodney Max—that will fully resolve this nationwide class action. The Parties were fortunate to have as a guide and resource the similar Ocwen/PHH national settlement in *McWhorter v. Ocwen*, which was granted final approval by The Honorable Madeline Hughes Haikala on August 1, 2019[1] based upon Eleventh Circuit law, and was considered by all of the relevant state and federal mortgage regulators who carefully reviewed the proposed terms of Stipulation of Settlement and Release sent to them as required by the Class Action Fairness Act.[2] While this proposed Settlement is structured on the same overall framework as the *McWhorter* settlement, this proposed Settlement actually provides ***more monetary and injunctive relief*** than the national class settlement certified and approved in *McWhorter*. This global Settlement has been reached while courts are ruling these claims are not actionable and dismissing other plaintiffs' materially identical claims with prejudice—including claims against these Defendants.

Accordingly, Plaintiffs request entry of an Order granting preliminary approval of the class action settlement as set forth in the parties' Stipulation of Settlement and Release (finding that the proposed settlement "falls within the range of reasonableness"), preliminarily certifying a nationwide class for settlement purposes, and approving notice to all Settlement Class Members. Defendants have agreed to the proposed Settlement and do not oppose the relief sought herein.

## <u>INTRODUCTION</u>

Plaintiffs respectfully move for preliminary approval of this Settlement, which offers significant direct cash payments or cash credits to all mortgagors nationwide who paid "processing" or "convenience" fees when they made their mortgage payments over the telephone or online to Defendants PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") and Defendant Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "PHH Defendants" or

---

[1] *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019).

[2] *McWhorter* was also mediated by Mr. Max's office. The *McWhorter* court granted certification of a similar settlement class and finally approved a very similar settlement based specifically on 11th Circuit caselaw.

"Defendants"), as well as injunctive relief that would greatly benefit Settlement Class Members.[3] Defendants provide these alternate payment avenues as an option, and in many instances, they allow borrowers to avoid paying much greater late charges on their mortgages. Mailing a check or money order as specified in the borrowers' loan documents does not require payment of any Convenience Fee.[4] Rather, the legal dispute in this action is whether charging Convenience Fees for other, more expedited payment methods is permissible under FDCPA and other applicable law.

The Parties have executed a Stipulation of Settlement and Release (the "Agreement"), the terms of which, including all exhibits attached thereto, constitute the Parties' settlement ("Settlement"), and agreed upon the form of the proposed Class Notice to the Settlement Class. **Exhibit 1.** Under the Settlement, Defendants have agreed, among other things, to offer *direct cash* credits into the mortgage accounts of a vast majority of Settlement Class Members, and a simplified claims process to facilitate the sending of checks to a very small percentage of borrowers whose loans are no longer serviced by the Defendants (experience from *McWhorter* shows roughly half of mailed checks went uncashed when the consumer was no longer a PHH or Ocwen customer).

Under the proposed settlement, Defendants will pay cash refunds of 28% or 18%, as explained below, of every Convenience Fee received and retained by the Defendants from Settlement Class Members for all of their telephone and/or web-based mortgage payments. These different percentages of refunds for each payment are based upon the status of Settlement Class Member loans when they boarded with Ocwen or PHH, as well as when the Convenience Fees were paid. The Settlement's benefits were the result of rigorous, arm's-length negotiations by the Parties and their counsel under the direction of a distinguished mediator, the Rodney Max. *See* Declaration of Rodney Max dated August 25, 2020 (hereinafter "Max. Decl.) (attached as **Exhibit 2**). Notice of this Settlement will be disseminated to Class Members via (i) direct mail, (ii) internet notice, and (iii) establishment of a settlement website.

Undersigned counsel were very well-positioned to evaluate and negotiate this Settlement because they have been investigating these specific mortgage practices for over a year (with actions

---

[3] Ocwen no longer exists as a standalone entity. PHH is Ocwen's successor by merger for the purposes of the claims asserted against Ocwen in this action.

[4] Unless otherwise indicated, capitalized terms shall have the same meanings here as given to them in the Agreement.

pending against multiple servicers before this Court) and have spent the last thirteen years litigating and resolving over 32 nationwide class actions for mortgage holders against all of the major mortgage providers in the country. Further, the informal discovery during mediation of this action included the production *of thousands of pages of documents* regarding transaction data and Defendants' business practices. Despite that work, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution.[5] Given the immediate and substantial benefits the settlement will provide, there is no question that the settlement is "within the range of reasonableness" and warrants preliminary approval.

## FACTUAL BACKGROUND

This action alleges that charging Convenience Fees for phone and web payments violates the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and class members' mortgage contracts. Plaintiffs allege that the "Convenience Fees" violate the FDCPA because they are neither expressly authorized by the applicable mortgage agreements nor expressly permitted by applicable law. And because they are not allowable fees under the FDCPA, Plaintiffs allege that charging them also violates the standard form mortgage contracts of Settlement Class Members. Plaintiffs' counsel filed multiple class action lawsuits regarding these practices against numerous servicers, after having spearheaded class action litigation in over 32 nationwide class actions brought against the largest banks, mortgage servicers and force-placed insurers across the country, reaching 30 settlements to date totaling over $4.2 billion dollars for the proposed nationwide classes of over 5.3 million homeowners.[6] Ocwen was a defendant in one of those

---

[5] Indeed, many similar claims have ***been dismissed*** here in Florida and elsewhere. *See Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims brought by the Bailey Firm with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, ECF No. 21 (M.D. Fla. July 17, 2020); *Turner v. PHH Mortg. Corp.*, No. 8:20-CV-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596 (N.D. Cal. April 17, 2020) (dismissing nationwide breach of contract and FDCPA claim).

[6] *See e.g.*, *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.) (final approval granted); *Saccoccio v. JPMorgan Chase Bank N.A.*, No. 13-cv-21107 (S.D. Fla.) (final approval granted); *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.) (final approval granted); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.) (final approval granted); *Hamilton v. SunTrust Mortg., Inc.*, No. 13-cv-60749 (S.D. Fla.) (final approval granted); *Hall v. Bank of*

successful nationwide force-placed insurance class action settlements.

Based on Plaintiffs' counsel's previous experience in successfully litigating and settling a hard-fought nationwide class action with Ocwen, Defendants agreed in April 2020 to commence complex and thorough settlement negotiations. Plaintiffs retained Rodney Max of Upchurch Watson White & Max (whose office mediated the *McWhorter* nationwide settlement). Max Decl. at 17. Although Mr. Max did not personally mediate the *McWhorter* action—his partner, Marty Van Tassel, did— he is familiar with that litigation and settlement. *Id.* In *McWhorter*, the finally approved settlement consisted of the following specific relief:

    a. Settlement of a nationwide class with a class period starting one year prior to the action being filed.

    b. A settlement fund to provide credits and payments based upon the profits retained by Ocwen for payments.

    c. Improved disclosures.

    d. A class-wide Note Amendment to Class Member mortgages which legally authorized the acceptance by Ocwen of payments via optional means not specifically authorized by their mortgages.

    e. A freeze on the amounts Ocwen could charge for these payments for a period of one-year from the final approval order.

    f. Attorneys' Fees and Expenses in the amount of 33.3% of the Settlement Fund, plus expenses. Class representative awards of $15,000 per representative.

*McWhorter*, 2019 WL 9171207 (N.D. Ala. 2019). Based on Eleventh Circuit law, the court granted final approval of the *McWhorter* settlement, without the objection from any federal or state regulator. Naturally, *McWhorter* greatly guided the negotiations in this matter.

---

*Am., N.A.,* No. 12-cv-22700 (S.D. Fla.) (final approval granted); *Lee v. Ocwen Loan Servicing, LLC,* No. 14-cv-60649 (S.D. Fla.) (final approval granted); *Braynen v. Nationstar Mortg.*, LLC, No. 14-cv-20726 (S.D. Fla.) (final approval granted); *Wilson v. Everbank,* N.A., No. 14-cv-22264 (S.D. Fla.) (final approval granted); *Montoya v. PNC Bank, N.A.,* No. 14-cv-20474 (S.D. Fla.) (final approval granted); *Almanzar v. Select Portfolio Servicing,* No. 14-cv-22586 (S.D. Fla.) (final approval granted); *Jackson v. U.S. Bank, N.A.,* No. 14-cv-21252 (S.D. Fla.) (final approval granted); *Circeo-Loudon v. Green Tree Servicing, LLC,* No. 14-cv-21384 (S.D. Fla.); *Beber v. Branch Banking & Trust Co.*, No. 15-cv-23294 (S.D. Fla.) (final approval granted); *Ziwczyn v. Regions Bank, No.* 15-cv-24558 (S.D. Fla.) (final approval granted); *McNeil v. Selene Finance, LP,* No. 16-cv-22930 (S.D. Fla.); *McNeil v. Loancare, LLC,* No. 16-cv-20830 (S.D. Fla.) (final approval granted); *Edwards v. Seterus, Inc.*, No. 15-cv-23107 (S.D. Fla.) (final approval granted); *Cooper v. PennyMac Loan Servicing*, LLC, No. 16-cv-20413 (S.D. Fla.) (final approval granted). *Strickland, et al. v. Carrington Mortgage Services, LLC, et al.*, 16-cv- 25237 (S.D. Fla.) (final approval granted for three separate settlements); *Quarashi et al v. Caliber Home Loans Inc. et al.;* 16-9245 (D.N.J.) (final approval granted).

Recognizing that many different courts have reached diametrically opposed conclusions on claims just like this, and given the existence of contradictory regulatory guidance on the issue, the Parties decided to mediate this dispute. Beginning in or around April 2020, the Parties agreed to participate in a mediation with independent mediator Rodney Max. Mr. Max had already mediated claims brought against the PHH Defendants in two other class actions, *Bardak v. Ocwen Loan Servicing, LLC,* Case No. 8:19-cv-01111-SCB-TGW (M.D. Fla.), and *Torliatt v. Ocwen Loan Servicing, LLC,* Case No. 3:19-cv-04303-WHO (N.D. Cal.).

Plaintiffs here actually invited to this second mediation all of the plaintiffs' counsel from *Bardak* and *Torliatt* cases, as well as the counsel from another class action, *Bell v. PHH Mortgage Corp.,* Case No. 1:20-CV-03187 (D. N.J.), all of whom were represented by, among others, the same lead counsel (the "Bailey Firm"). On May 4, 2020, the Parties obtained a 30-day stay of all case management deadlines in this case pending mediation (ECF No. 8). Prior to the mediation, the PHH Defendants provided extensive informal discovery and class-related data to Plaintiffs here, which information and data had also been provided to the Bailey Firm.

On May 12, 2020, counsel for the Parties and counsel for the *Bardak, Torliatt*, and *Bell* plaintiffs participated in a mediation with Mr. Max by videoconference and continued with calls and emails throughout the process. That mediation continued for a full day by videoconference on May 20, 2020, with additional discussions in the days that followed. After many calls and conferences among all counsel, the mediation attempt resulted in an agreed impasse between the Bailey Firm, the Defendants and Plaintiffs.[7]

Immediately thereafter, Plaintiffs here and the PHH Defendants began a separate mediation of this case only, as suggested by Mr. Max, with only the parties to this case participating. The Parties obtained a further extension of the stay of case management deadlines (ECF No. 10) to attempt a resolution of this matter. The Bailey Firm was fully aware that Plaintiffs and the Ocwen/PHH Defendants would next embark on a separate mediation without them, as discussed with Plaintiffs' counsel and Mr. Max. Over the next two-and-a-half months, the Parties participated in numerous telephonic or videoconference mediation sessions, including with Mr. Max on June 9, 2020, June 26, 2020, August 5, 2020, and August 7, 2020, with ongoing telephonic mediation discussions between those dates. The mediation process included continuing exchanges

---

[7] Without disclosing any of the substance of the mediation sessions, The Bailey Firm and counsel for Plaintiffs here disagreed on the best approach to resolving this litigation.

by the Parties of informal discovery and confirmatory due diligence information and data concerning the PHH Defendants' procedures for accepting loan payments by telephone with a live operator, by telephone via an interactive voice response system ("IVR"), or by internet; the PHH Defendants' policies and procedures for authorization and collection of Convenience Fees associated with loan payments made by such means; various data regarding each of the Plaintiffs; and the total volume and dollar amount of Convenience Fees collected during the relevant time period from borrowers within Plaintiffs' class definitions.

The second mediation continued over the last two-and-a-half months. On August 7, 2020, the parties reached agreement on the principle terms of a potential settlement, subject to further negotiation of the remaining details through the still ongoing mediation.[8] As described below, the settlement reached is far superior to the approved *McWhorter* settlement as it is greater in total amount, compensates a greater amount of class members for a broader range of Convenience Fee payments over a longer class period, provides enhanced injunctive relief, and seeks a lower percentage of attorneys' fees and smaller class representative awards from the settlement fund. No one in the proposed class here was a member of the class in *McWhorter*.

On August 10, 2020, the Settling Parties announced their settlement and filed a joint motion to stay the case while the Settling Parties formalized their Agreement. (ECF No. 29.) The parties

---

[8] After Plaintiffs filed an Amended Complaint and it was understood that the mediation sessions before Rodney Max were productive, without knowing any of the terms being discussed, the Bailey Firm wrote to Plaintiffs on July 27, 2020 and stated that they would use every means at their disposal to derail any global settlement. After learning that a settlement was reached, the Bailey Firm moved to intervene in this case—again, without knowing any of the substance of the Settlement. However, it is clear that *none* of the Bailey Firm's clients who have sought intervention are actually Settlement Class Members as defined in the proposed Settlement. This is because the class definition excludes all individuals that had pending cases against Ocwen or PHH as of August 7, 2020 challenging the Convenience Fees. There is no dispute that all of the Bailey Firm's clients who have sought intervention had cases pending against Ocwen or PHH as of August 7, 2020, so they are clearly not members of the proposed class and thus have no standing to object to the proposed settlement nor to intervene. Plaintiffs filed an Opposition to the Motion to Intervene [ECF No. 32] and Defendants filed their own Opposition [ECF No. 31], contending that the sole purpose of Bailey Firm's attempt to intervene in this matter was to "kill" any proposed settlement and to simply "overtake control of the litigation." Neither of which are permissible reasons to intervene. Each and every person who is a member of the Settlement Class will be able to choose for himself or herself whether to accept the Settlement or opt out. The Bailey Firm and their clients do not have the right to deprive them of that choice.

subsequently executed the Agreement. A copy of the Agreement is attached as **Exhibit 1**.[9]

3.     <u>**The Settlement Terms and Agreement**</u>

     **A.** *The Proposed Settlement Class*

The Agreement provides relief to "all borrowers on home mortgage loans in the United States that were serviced by either or both of the PHH Defendants who, according to the PHH Defendants' records, were charged and paid a Convenience Fee for making a loan payment by telephone, IVR, or the internet between March 25, 2016 and August 21, 2020. Excluded from the Class are (a) borrowers whose loans were included as class loans in the class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action, other than this Action, initiated against either PHH Defendant on or before August 7, 2020 asserting any claim arising from the payment of Convenience Fees to Ocwen or PHH; (c) borrowers whose promissory note and/or mortgage agreement, deed of trust, or other like security instrument has already been amended to add language affirmatively and explicitly stating that the lender and any servicing agent may collect 'Convenience Fees' for payments made by telephone, IVR, or online; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them."

     **B.** *Monetary Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary and injunctive relief. (*Id.* ¶ 4.) A settlement fund in the amount of $12,587,048.58 will be created to reimburse Settlement Class Members for a portion of the Convenience Fees paid to the PHH Defendants during the Class Period as explained below. The percentage payments to each class member will be allocated as follows:

    1.  For Settlement Class Members whose: (1) home mortgage loans were not owned by the PHH Defendants, (2) to which the PHH Defendants acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and (3) were charged a Convenience Fee from March 25, 2019 to August 25, 2020, 28% of such amounts charged to them as Convenience Fees during that time period.

    2.  For payments not described in (1) above, Settlement Class Members will receive

---

[9] The following documents are attached to the Settlement Agreement as exhibits: Class Notice (Exhibit A); Operative Complaint (Exhibit B); [proposed] Preliminary Approval Order (Exhibit C); and Proof of Claim form and instructions (Exhibit D).

18% of the amounts charged by Ocwen or PHH as Convenience Fees from March 25, 2016 to August 25, 2020.

The Settlement Fund will be allocated as follows: first it will be used to pay any attorneys' fee and expense awards to Class Counsel that are approved by this Court and any incentive award to Lead Plaintiffs. The remaining balance will be divided and distributed as individual allocations to the Settlement Class Members who do not opt out. Settlement Class Members will receive an amount equal to 28% of the Convenience Fees covered by paragraph (1) above, and 18% of any remaining Convenience Fees paid during the Class Period not covered by paragraph (1), less their pro rata shares of any attorneys' fee, expense, and incentive awards.

For loans still serviced by the PHH Defendants at time of preliminary approval (which are estimated to be approximately 80% of the class, depending upon the timing of entry of the Preliminary Approval Order), Settlement Class Members will receive their individual allocations as set forth above as a direct cash credit from the settlement fund to their loan accounts, first to reduce any late fee balance, and then to reduce the balance of their unpaid loans, with the following exceptions: loans still being serviced by PHH Defendants that are in foreclosure or to which the PHH Defendants in their judgment determine that they otherwise are not readily able to apply a direct cash credit to reduce their unpaid balance shall be sent a check mailed to their most recent address that PHH has on file.

For Settlement Class Member loans not currently being serviced by the PHH Defendants at the time of preliminary approval (which are estimated to be approximately 20% of the Settlement Class), each Settlement Class Member will be entitled to complete a basic Proof of Claim form (attached as Exhibit D to the Agreement). The simple Proof of Claim form *will require no supporting documents*, and if completed, the Settlement Class Member will receive their individual allocation as set forth above by check mailed to the address they indicate on their Claim Form.[10] Any amounts not claimed shall revert to Defendants.

### C. *Injunctive Relief*

In addition to the monetary relief and release described above, the parties have agreed in the settlement to a number of very important injunctive relief components *(that have not been*

---

[10] Informal discovery in this matter showed that, in *McWhorter*, *nearly 50% of the checks sent to class members whose loans were no longer serviced by the Defendants went uncashed,* creating logistical difficulties and a waste of resources.

*included in the above-stated value of the proposed Settlement).* These include: (1) a more than 13% reduction on the amount that can be charged for online/web payments, (2) a three-year freeze on those charges, freezing internet charges at that reduced level for 3 years, (3) a three-year freeze on the amounts that can be charged for telephone/IVR payments, and (4) improved specific disclosures that will be implemented on the Defendants' website of the amounts to be charged for convenience fees, so that more important information is provided to the consumer on the applicable payment pages.

Finally, as approved in *McWhorter,* citing Eleventh Circuit precedent and without any objection from a single state or federal regulator, the parties agreed upon a class-wide note amendment to expressly authorize optional payment methods that Defendants are not required to offer, but that many borrowers use. The amendment will ensure that the borrowers' loan documents expressly authorize Defendants to accept payments via purely optional means of internet, IVR or phone, and to charge a fee to do so. *See McWhorter*, 2019 WL 9171207 (approving settlement where "Settlement Class Members have agreed that for Class Loans still serviced by Ocwen . . . the loan documents shall be deemed amended . . . to expressly authorize Ocwen to accept payments made through means not specifically provided for in the borrower's loan documents, and to charge Convenience Fees in return for accepting those payments.").

In *McWhorter*, Judge Haikala noted the benefits of the note amendment and found that providing this type of relief "preserves Settlement Class Members' ability to make payments via more rapid, expeditious methods." *See McWhorter*, 2019 WL 9171207 at 10. *"Because these payment methods and the fees charged for them are not mandatory, and the fees to be charged for them are less than the late fees that borrowers contractually can be charged if their payments are made beyond the grace period …, this amendment preserves the ability of Settlement Class Members to use these otherwise potentially unavailable optional methods of rapid payment when necessary to avoid higher late charges, adverse credit reporting, or foreclosure, or when otherwise preferable for them." Id.* at 11.[11] The court found that the total settlement, including the Note Amendment was "fair, adequate, and reasonable," and the relief was "substantial" in light of the fact that Plaintiffs faced "substantial challenges to prevailing on the merits." *Id.*

---

[11] The Court ruled that "the statute of frauds does not limit the power of the Court to enter injunctions and orders that amend loan documents by operation of law." *Id*. at 13.

It appears to Plaintiffs and their experts that Defendants could insist on an individual note amendment unilaterally for any borrower that wants to pay online or over the telephone. Plaintiffs and Class Counsel recognize this, and view the class-wide modification, as Judge Haikala in *McWhorter* did, as a positive aspect of the settlement for several reasons. First, borrowers will continue to be able to use these payment methods on a purely optional and voluntary basis, which may help late-paying borrowers avoid higher late charges, adverse credit reporting, or foreclosure. Secondly, Defendants' agreement to lower online/web payments and to freeze the price of any fee for a period of three years is a benefit for the class, given the fact that courts in Florida and elsewhere have found Defendants' existing practices not actionable.

### D.  *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, Settlement Class Members will release the Defendants, as well as all other entities included in the definition of "Released Persons" set forth in the Settlement Agreement from:

> each and all of the claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages (whether punitive, statutory, or compensatory and whether liquidated or unliquidated), losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any regulatory bulletin, guidelines, handbook, opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, that relate to or arise out of Convenience Fees charged by the PHH Defendants to Settlement Class Members, during the period from March 25, 2016 through and including August 21, 2020, for making loan payments by telephone, IVR, the internet, and other payment methods.

### E.  *Class Notice*

Settlement Class members will receive notice of the settlement, as well as a claim form and instructions (if necessary), by first-class mail at their last-known mailing address in the forms attached to the Settlement Agreement as Exhibits A, and D, respectively, assuming they are approved by the Court. The Class Notice also will contain a provision directing Spanish-speaking class members to the Settlement Website, which will include the relevant settlement information in Spanish and a Spanish version of the Notice. (*Id.*) The notice will be mailed within 28 days of the entry of the Preliminary Approval Order. (*Id.*). The Settlement Administrator shall perform a search of the National Change of Address database for each mailing address prior to the mailing of the Notice. (*Id.*). The Settlement Administrator will also establish a website on which Settlement

Class members may review the Settlement Agreement and its exhibits, and for those class members who must file a claim, the ability to download and print a Proof of Claim form. The Settlement Administrator will also advertise the Settlement on the internet. The notice will provide a toll-free number to call for settlement information. Settlement Class Members may opt out or object by following the prescribed process.

**F.   *Class Counsel Fees and Expenses and Named Plaintiffs' Case Contribution Award***

The Parties stipulate in the Agreement that The Moskowitz Law Firm PLLC, will serve as Class Counsel. Class Counsel's application for attorneys' fees and expenses for all of the law firms involved shall not exceed 30% of the Settlement Fund, inclusive of expenses—a percentage lower than that approved (33.3%) in *McWhorter*. Defendants will also pay the named Plaintiffs a service award approved by the Court not to exceed $5,000.00 each (for a total of $20,000)—again lower than the awards in *McWhorter*. The Court may consider whether to approve these awards separate and apart from its analysis of the fairness, reasonableness, and adequacy of the settlement.

**G.   *Final Approval and Objections***

Class members may object to the settlement no later than 35 days prior to the Fairness Hearing. The Motion for Attorneys' Fees shall be filed 49 days prior to the Fairness Hearing and the Parties shall respond to any objections no later than 10 days prior to the Fairness Hearing.

## LEGAL ARGUMENT

## I.   THE COURT SHOULD GRANT PRELIMINARY APPROVAL.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at *2 (M.D. Fla. 2006). For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992). "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007). Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* In the second step, after notice to the class and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. 2010).

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citation omitted). New amendments to Rule 23 took effect on December 1, 2018. These amendments alter the standards that guide a court's preliminary approval analysis. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). Prior to the amendments, Rule 23 did not specify standards for courts to follow when deciding whether to grant preliminary approval. Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii); *id.*

The amended Rule 23(e)(2) requires courts to consider whether:

(a)    the class representatives and class counsel have adequately represented the class;
(b)    the proposal was negotiated at arm's length;
(c)    the relief provided for the class is adequate, taking into account:
  i.    the costs, risks, and delay of trial and appeal;
  ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
  iii.    the terms of any proposed award of attorney's fees, including timing of payment; and
  iv.    any agreement required to be identified under Rule 23(e)(3)[12]; and
(d)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange,* 330 F.R.D. at 29.

### A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in mediation sessions with Rodney Max, a well-respected mediator with significant experience resolving complex suits. Mr. Max and the parties participated

---

[12] There are no agreements required to be identified under Rule 23(e)(3).

in mediation sessions in May through August 2020. *See* Max. Decl. at 18-21. The very fact of Mr. Max's involvement weighs in favor of preliminary approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006); *Poertner v. The Gillette Co.,* 618 Fed. Appx. 624, 630 (11th Cir. 2015) (settlement achieved only after engaging in extensive arms-length negotiations moderated by an experienced mediator belies any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable investigation and informal discovery Class Counsel conducted in this and other similar cases. *McWhorter*, 2019 WL 9171207, at *9 (finding that class counsel and plaintiffs adequately represented the settlement class based on the substantial informal discovery they obtained); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316–17 (S.D. Fla. 2005) (approving settlement over objection and concluding that class counsel had sufficient information to evaluate fairness of the settlement based on informal discovery); *Francisco v. Numismatic Guaranty Corp. of Am.*, 2008 WL 649124, at *11 (S.D. Fla. 2008) (same). Thousands of pages of documents were produced in mediation and have been carefully reviewed by Class Counsel, who also carefully reviewed the prior proceedings and court-approved settlement in *McWhorter*.

**B. The Settlement Falls Squarely within the Range of Reasonableness.**

As a result of the lengthy mediation process, the Settlement provides considerable monetary and injunctive relief to the Settlement Class, and falls well within the range of possible approval. Under Rule 23(e)(2)(C), the relevant inquiry is whether the proposed settlement affords relief that "'falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation.'" *McWhorter*, 2019 WL 9171207, at *10; *Lazy Oil Co. v. Witco Corp*., 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F.3d 581 (3d Cir. 1999); *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) (Because "[t]he determination of whether a settlement is reasonable is not susceptible to mathematical equation yielding a particularized sum … [,] [t]he mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement."). As described above, this Settlement is superior to the finally approved *McWhorter* settlement as it is much greater in total amount, compensates a greater amount of class members

over a longer class period, provides enhanced injunctive relief, and seeks a lower percentage attorneys' fees and smaller class representative awards from the fund.

### 1. Monetary Relief

The Settlement provides significant monetary benefits. All Settlement Class Members who paid Convenience Fees are eligible to receive a refund of either 28% or 18% of each Convenience Fee they paid, less a pro rata share of attorneys' fees and expenses and service awards.[13] Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement recovery of 0.2% of sales).

Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' defenses.[14] Each class member would face a risk of

---

[13] Here, the relief offered by the Settlement is roughly 20%, not counting the value of any of the injunctive relief, of the Settlement Class's potential recovery, and sufficient to warrant preliminary approval of the Settlement given that since 1995, class action settlements typically "have recovered between 5.5% and 6.2% of the class member's estimated losses." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001); *see also Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, at *3 (N.D. Ala. 2015) (a class settlement recovery of between 13% to 20% is "frequently found … to be fair and adequate"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) (9% class recovery "is still within the range of reasonableness").
[14] *See McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207 *9 (noting the "substantial challenges to prevailing on the merits."); *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, ECF No. 21 (M.D. Fla. July 17, 2020); *Turner v. PHH Mortg. Corp.*, No. 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596 (N.D. Cal. April 17, 2020) (dismissing nationwide breach of contract and FDCPA claim); *Caldwell v. Freedom Mortgage Corporation*, Case No. 2020 WL 4747497 (N.D. Tex. August 17, 2020) (dismissing breach of contract claims, even on mortgages with deeds of trust insured by the Federal Housing Administration); *Mariscal v. Flagstar Bank FSB*, 2020 WL 4804983 (C.D. Cal. August 4, 2020) (dismissing breach of

outright dismissal in litigation—a fate that has already befallen the Bailey Firm and its clients in *Bardak v. Ocwen*, supra. But due to this settlement, class members stand to recover a significant percentage of the amounts they paid, a large majority of which will have to do nothing to receive payment. The settlement's monetary recovery falls well within the range of reasonableness.

### 2. Injunctive Relief

Once approved, the Settlement will also lower and restrict the Convenience Fee charges for online payments for three years, and freeze the charges for online and telephone payments for at current levels for three years. The Note Amendment "preserves Settlement Class Members' ability to make payments via more rapid, expeditious methods" and ends any uncertainty as to whether the fees are legal authorized. *McWhorter*, 2019 WL 9171207 at 10. There can be no question that this result is reasonable. Without peace and certainty as to the ability to charge the for the extra services, Defendants would have had no incentive to settle and even worse for the Settlement Class, likely would cease accepting payments by web or telephone altogether, at least absent note amendments individually agreed to by borrowers at the time of the transaction, which would greatly delay borrowers' ability to use these optional expedited payment methods in time of need.

### C. Class Counsel Believes the Settlement Is Reasonable.

Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class. *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight). Undersigned has filed and is currently litigating four other convenience fee cases, already beating a motion to dismiss.[15] Based on this experience, and decades more with class action lawsuits (including settling over thirty lender placed nationwide class action insurance cases), it is Class Counsel's informed opinion that, given the uncertainty and expense of pursuing these claims through trial, the settlement is fair, reasonable,

---

contract and violations of California's Rosenthal Fair Debt Collection Practices Act and Unfair Competition Law)**;** *Amye Elbert v. Roundpoint Mortgage Servicing Corporation*, 2020 WL 4818605 (N.D. Cal. August 20, 2020) (dismissing California Rosenthal Act and UCL, as well as striking the class allegations).

[15] *See Garay v. Select Portfolio Servicing,* Case No. 19-cv-23323 (S.D. Fla) (ECF No. 52) (Magistrate Becerra recommended Denying Motion to Dismiss in part); *Alvarez v. Loancare,* 20-cv-21837 (S.D. Fla.) (motion to dismiss pending); *Cooper v. Pennymac Loan Services, LLC*, Case No.: 20-cv-21546-KMM (S.D. Fla.) (same); and *Attix v. Carrington Mortgage Services, LLC*, No: 20-22183-CV-UNGARO (S.D. Fla) (motion to compel arbitration pending).

adequate, and in the best interests of the Settlement Class. That conclusion is overwhelmingly reinforced by the final approval granted in *McWhorter*.

## II.     THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654,659 (S.D. Fla. 2011) (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A.  The Settlement Class Meets the Four Requirements of Rule 23(a).

The policies underlying the class action rule dictate that Rule 23(a) should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996). Plaintiffs satisfy all four requirements of Rule 23 (a) as set forth below.

#### 1.  The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires a showing that the proposed class is so numerous that joinder of all members would be impracticable. *See* Fed. R. Civ. P. 23(a)(1). "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012); *see, e.g., Anderson v. Bank of S., N.A.*, 118 F.R.D. 136, 145 (M.D. Fla. 1987) ("[T]he size of the class and geographic location of the would-be class members are relevant to any consideration of practicality."). The Settlement Class is comprised of the 943,706 primary, joint and/or co-borrowers on the 659,304 home mortgage loans who paid a Convenience Fee to Defendants between March 26, 2016 and August 21, 2020, inclusive, for making a loan payment by telephone, interactive voice response telephone system ("IVR") or the internet.  *See* Declaration of Krysta Sebastian (ECF No. 45-1) ("Sebastian Decl.") at ¶¶ 4–6. Numerosity is satisfied here.

#### 2.  Questions of Law and Fact Are Common to All Settlement Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "The threshold for commonality is not high." *Cheney,* 213 F.R.D. at 490. Commonality requires a showing that the class members' claims "depend on a common contention" and that the class members have "suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2551 (2011). "[F]or purposes of Rule 23(a)(2),

even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 275 F.R.D. at 673-74.

Plaintiffs' claims here depend on the common contention that Defendants' charging a "Convenience Fee" was not expressly authorized by contract or any provision of existing law and therefore violates the FDCPA and the class members' mortgage loan contracts. All members of the putative class were injured if at all in the same manner: they were charged for processing fees that are alleged to be improper. *See Williams,* 280 F.R.D. at 672 (finding commonality where "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the FPI"). Whether the Convenience Fees for use of the optional payment methods were in fact "incidental to" the borrowers' underlying mortgage debts and whether they were in fact permitted by law are common legal questions. Whether they were authorized by or in contravention of the standard mortgages are also common legal and factual questions.

### 3. Plaintiffs' Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class. *See* Fed. R. Civ. P. 23(a)(3). Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class. *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004). Plaintiffs' claims in this case arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed class. Plaintiffs and every class member had mortgage loans owned or serviced by Defendants that were governed by allegedly common and materially uniform agreements.

### 4. Plaintiffs and Their Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495. "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### a. Plaintiffs Do Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and seeks the same type of relief for himself and the settlement class members. *See Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997). Here, Plaintiffs have no interests antagonistic to those held by the Settlement Class. The class definition includes only those who were subject to Defendants' processing fees. All class members were charged these fees. Thus, the critical issues in this case— the existence, implementation, and lawfulness of Defendants' processing fees—are common issues. Plaintiffs and absent class members share a common goal: to recover the amounts charged for processing fees. Plaintiffs have satisfied Rule 23(a)(4). *See Williams*, 280 F.R. D. at 673-74.[16]

### b. Settlement Class Counsel Are Qualified and Experienced.

The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel, have been investigating these claims for more than a year, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as insurance-related complex cases. The law firm that Plaintiffs seek to name as Class Counsel in this action is The Moskowitz Law Firm, PLLC. Class Counsel has successfully prosecuted number insurance and consumer class actions and is well respected in the community that is serves. A copy of Class Counsel's Firm Resume is attached hereto as **Exhibit 3**.

### B. The Settlement Class Meets the Requirements of Rule 23(b)(3).

In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b). *Cheney*, 213 F.R.D. at 489. Plaintiffs here seek certification under Rule 23(b)(3), under which certification is appropriate if (1) common questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See Fed. R. Civ. P.* 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement

---

[16] Further, each of the Class Representatives are members of the Settlement Class in that they are all borrowers on home mortgage loans in the United States that were serviced by either or both of the PHH Defendants, were charged, and paid for the Convenience Fees from March 25, 2016 to August 21, 2020. Specifically, Plaintiff Morris was charged and paid at least twelve Convenience Fees during the class period. Plaintiffs Luzzi and Upton were charged and paid for at least one Convenience Fee during the Class Period. Plaintiff Simmons is a Class Member because he, as the Authorized Representative, through a Power of Attorney, of his mother Dorothy Simmons, personally paid a Convenience Fee pursuant to a mortgage statement sent to him at his home in California during the Class Period.

class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659. Further, the Settlement Class is ascertainable and based on objective criteria, all can be determined from PHH's business records. *See* Sebastian Decl. at ¶¶ 4–6.

Moreover, giving all class members the option to accept a comprehensive resolution of the their claims in this action *or opt out* of it would be far superior to litigating each of their claims separately, especially since the actual damage amounts for each individual class member are low *Williams*, 280 F.R.D. at 675. Each and every class member has the right to simply opt out of this proposed settlement, if they do not agree with the terms and/or simply want to proceed with their own individual litigation. Accordingly, the Court should certify the proposed class.

## III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The parties' proposed notice plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute class notice and claim forms in the form attached as Exhibits A and D to the Settlement Agreement to all identifiable class members no more than 28 days after the Court enters the Preliminary Approval Order. (Ex. 1 ¶ C). The Settlement also provides for an internet website, internet advertising, and a toll-free number through which Settlement Class Members can acquire information, and allows those class members that have to file claims to submit claims online.

## IV.   UNDERSIGNED SHOULD BE APPOINTED AS CLASS COUNSEL.

The parties have defined Class Counsel to include the undersigned law firm. (Ex. A ¶ 2.14). Undersigned respectfully requests to be appointed as Settlement Class Counsel. Undersigned counsel have significant experience litigating these cases, having represented plaintiffs in actions regarding similar processing fees, and in many other insurance related class actions.

## V.   PARALLEL PROCEEDINGS SHOULD BE ENJOINED.

Finally, the Court should preliminarily enjoin all Settlement Class Members who do not execute and timely file a Request for Exclusion from the Settlement Class from filing, prosecuting, maintaining, participating in or continuing litigation in federal or state court based on or related to

the claims or facts alleged in the this Action. This type of injunctive relief is commonly granted in preliminary approvals of class action settlements pursuant to the All Writs Act.

The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act empowers the Court to enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *In re Am. Online Spin-Off Accounts Litig.*, 2005 WL 5747463, at *4 (C.D. Cal. May 9, 2005). Settlement Class Members who do not opt out should be enjoined from asserting claims on behalf of other Settlement Class Members pending the Court's determination whether to finally approve the Settlement, and from asserting individual claims unless they opt out. Accordingly, pursuant to its authority under the All-Writs Act, the Court should enjoin parallel proceedings by or on behalf of Settlement Class Members pending the settlement approval process. *See, e.g., Shelby v. Two Jinns, Inc.*, 2017 WL 6347370, at *5 (C.D. Cal. Feb. 8, 2017) (entering an injunction against asserting released claims pending settlement approval and concluding that it is "necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. §1651(a)").

## VI.  THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

Should the Court grant this Motion, Plaintiffs will file their motion for final approval of the settlement on a date set by the Court. Plaintiffs request that the Court schedule the Fairness Hearing no less than 150 days after entry of the order preliminarily approving the settlement, so as to satisfy all of the Notice requirements under CAFA. Class Counsel will file their fee application at least fourteen days prior to any objection or opt-out deadline.

## CONCLUSION

Plaintiffs respectfully request the Court should enter an order granting preliminary approval of the settlement.[17]

---

[17] While the Court must conduct a hearing before granting Final Approval, the Court is not required to conduct a hearing to grant Preliminary Approval, it is within the Court's discretion.

Respectfully submitted this 25th day of August, 2020.

By: **/s/ Adam M. Moskowitz**
Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: 305 740-1423

-and-

By: */s/ Josh Migdal*
**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440
Josh Migdal, Esq.
Florida Bar No. 19136
josh@markmigdal.com
Yaniv Adar, Esq.
Florida Bar No. 63804
yaniv@markmigdal.com
eservice@markmigdal.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on

the 25th day of August, 2020 and served by the same means on all counsel of record.

By: /s/ Adam Moskowitz