# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**FT. LAUDERDALE DIVISION**

**Case No. 0:20-CV-60633-RS**

VINCENT J. MORRIS, STEVEN SIMMONS,
YOLANDA UPTON, and MICHAEL LUZZI,
on behalf of themselves and all others similarly
situated,

      Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability Company,

      Defendants.

_____/

**STIPULATION OF SETTLEMENT AND RELEASE**

## **TABLE OF EXHIBITS**

Exhibit A:      Class Notice

Exhibit B:      Operative Complaint

Exhibit C:      [proposed] Preliminary Approval Order

Exhibit D:      Proof of Claim

**IT IS HEREBY STIPULATED AND AGREED**, by and between Plaintiffs Vincent J. Morris, Steven Simmons, Yolanda Upton, and Michael Luzzi (collectively, "Plaintiffs") and Defendant PHH Mortgage Corporation ("PHH"), individually and as successor by merger to named defendant Ocwen Loan Servicing, LLC ("Ocwen"), with all terms as defined below, each through their duly authorized counsel, that the above-captioned action, *Vincent J. Morris, et al. v. PHH Mortgage Corporation d/b/a PHH Mortgage Services*, No. 0:20-CV-60633-RS (S.D. Fla.), is hereby settled on all of the terms and conditions set forth in this Stipulation of Settlement and Release, and that upon approval by the Court, final judgment shall be entered on the terms and conditions set forth herein.

## I.  INTRODUCTION

### 1.  The Litigation

This action concerns PHH's and Ocwen's assessment of Convenience Fees for borrowers' use of optional, expedited online and telephonic payment methods.[1] Plaintiff Morris filed this Action against PHH on March 25, 2020 (Doc. 1).  In the initial complaint, Morris asserted claims for violation of Florida's Consumer Collection Practices Act ("FCCPA"), breach of his mortgage agreement, and unjust enrichment, all based on the PHH Defendants' assessment of Convenience Fees when Morris sought to pay his mortgage using online or telephonic payment methods.  Morris sought to represent a class of similarly situated Florida borrowers on all of his claims.

Before PHH responded to the initial complaint, Morris filed an amended complaint (Doc. 11), which is the Operative Complaint. The Operative Complaint added three additional Plaintiffs—Steven Simmons, Yolanda Upton, and Michael Luzzi—and alleged that by assessing

---

[1] For most of the period at issue in this action, Ocwen and PHH used Speedpay, Inc.'s "Speedpay™" service to facilitate these kinds of online and telephonic payment methods, so the Convenience Fees charged by Ocwen and PHH were often referred to as "Speedpay" fees.

Convenience Fees for borrowers' use of optional, expedited online and telephonic payment methods, the PHH Defendants violated Section 1692f(1) of the Fair Debt Collection Practices Act ("FDCPA") and, by extension, breached uniform covenants in borrower mortgage agreements, deeds of trust, or similar security instruments.  Plaintiffs asserted their FDCPA and breach of claims on behalf of two separate nationwide classes, one of Ocwen borrowers and the other of PHH borrowers. PHH moved to dismiss the amended complaint in its entirety on August 7, 2020 (Doc. 26), arguing, among other things, that Convenience Fees could not have violated § 1692f(1) of the FDCPA (or, by extension, borrower mortgage agreements) because Convenience Fees were voluntarily paid by fully-informed borrowers in return for an entirely optional and separate service: expedited payment processing.

From the outset of the action, however, the Parties recognized that both regulators and courts have reached different conclusions on the merits of the claims presented. On the one hand, many courts, including this Court and the Middle District of Florida in several recent decisions dismissing with prejudice substantially similar actions against PHH as successor to Ocwen, have held that Convenience Fees do not violate the FDCPA or state analogs. Likewise, the Federal Trade Commission ("FTC") issued guidance stating that Convenience Fees do not violate the FDCPA because any required authorization and consent could be expressed in general terms in the loan documents or granted orally in a side agreement entered into at the time of the payment transaction. On the other hand, many courts, also including this Court in denying motions to dismiss substantially similar actions against PHH as successor to Ocwen, have held that Convenience Fees do violate the FDCPA or state analogs. And in 2017, the Consumer Financial Protection Bureau ("CFPB") issued guidance stating its position that that the assessment of Convenience Fees could violate the FDCPA in certain circumstances. No federal appellate court

2

has yet weighed in to resolve the dispute.

Recognizing that different courts had reached different conclusions on Plaintiffs' claims and given the existence of contradictory regulatory guidance on the issue, the Parties decided to mediate the dispute soon after Plaintiff Morris filed the initial complaint. Beginning in or around April 2020, the Parties agreed to participate in an early mediation with independent mediator Rodney Max of Upchurch Watson White & Max. Mr. Max had already mediated claims brought against the PHH Defendants in two other class actions, *Bardak v. Ocwen Loan Servicing, LLC*, Case No. 8:19-cv-01111-SCB-TGW (M.D. Fla.), and *Torliatt v. Ocwen Loan Servicing, LLC*, Case No. 3:19-cv-04303-WHO (N.D. Cal.). Plaintiffs here invited to the mediation the plaintiffs from *Bardak* and *Torliatt*, as well as the counsel from another class action, *Bell v. PHH Mortgage Corp.*, Case No. 1:20-CV-03187 (D.N.J.), all of whom were represented by, among others, the same lead counsel. The Parties also obtained a 30-day stay of all case management deadlines in this case pending mediation, entered on May 4, 2020 (Doc. 8). Prior to the mediation, the PHH Defendants provided extensive informal discovery and class-related data to Plaintiffs here, which information and data had also been provided to the plaintiffs in *Bardak* and *Torliatt* in connection with the earlier mediation with those parties.

On May 12, 2020, counsel for the Parties and counsel for the *Bardak*, *Torliatt*, and *Bell* plaintiffs participated in a mediation with Mr. Max by videoconference. That mediation continued on May 20, 2020, also by videoconference, but resulted in an impasse between and among the PHH Defendants, the Plaintiffs, and the *Bardak, Torliatt*, and *Bell* plaintiffs.

 Immediately thereafter, Plaintiffs here and the PHH Defendants began a separate mediation of this case only, as suggested by Mr. Max, with only the parties to this case participating.  The Parties obtained a further extension of the stay of case management deadlines

(Doc. 10). Over the next two and a half months, the Parties participated in numerous telephonic or videoconference mediation sessions, including video or telephonic conferences with Mr. Max on June 9, 2020, June 26, 2020, August 5, 2020, and August 7, 2020, with ongoing telephonic mediation discussions between those dates. The mediation process included continuing exchanges by the Parties of informal discovery and confirmatory due diligence information and data concerning the PHH Defendants' procedures for accepting loan payments by telephone with a live operator, by telephone via an interactive voice response system ("IVR"), or by internet; the PHH Defendants' policies and procedures for authorization and collection of Convenience Fees associated with loan payments made by such means; various data regarding each of the Plaintiffs; and the total volume and dollar amount of Convenience Fees collected during the relevant time period from borrowers potentially within Plaintiffs' class definitions.

Through their arms'-length negotiations and mediation efforts, the Parties were able to reach an agreement on the principle terms of a potential settlement, subject to further negotiation of the remaining details through the still ongoing mediation. The Parties only then discussed and agreed that their only agreements regarding incentive payments to the class representatives and attorneys' fees for Class Counsel would be (1) that Plaintiffs would seek Service Awards of up to $5,000 per Plaintiff, for a total of $20,000, and Class Counsel would seek an award of Attorneys' Fees and Expenses from the District Court of up to thirty percent (30%) of the Settlement Fund, both to be paid solely out of the Settlement Fund, while (2) the PHH Defendants would remain free to object to any request for Service Awards and Attorneys' Fees and Expenses if and as the PHH Defendants deemed fit.

As a result of the ongoing mediation and those subsequent fee-related negotiations, and based upon their own respective independent investigations and evaluations of the facts and law

relating to all of the matters alleged in the pleadings, the Parties entered into a "Proposed Settlement Term Sheet" on August 9, 2020, subject to board approval for the PHH Defendants. Thereafter, the Parties moved the Court to stay the action pending their expected submission of the Settlement for preliminary approval. (Doc. 29.) After obtaining board approval, the Parties engaged in further negotiation of all details of this Settlement, along with further information and due diligence exchanges. On August 25, 2020 the Parties executed this Agreement.

This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission or concession of liability or wrongdoing on the part of the PHH Defendants, or any of the Released Persons (as defined in this Agreement), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

2.     **Claims of Plaintiffs and Benefits of Settlement**

Plaintiffs believe that they have meritorious claims which, if brought to trial, would be certified and successful.  Plaintiffs, and the homeowners they seek to represent, contend they were charged illegal Convenience Fees when they made their mortgage payments by phone or online to ensure that the payment was processed on time. Plaintiffs maintain these processing fees are not authorized by Plaintiffs' and the Settlement Class' mortgages, and PHH knows it.  Such abusive collection practices surrounding Convenience Fees have run rampant across the country in recent years and some courts have found them to be illegal. So much so, the Consumer Financial Protection Bureau recently issued its Compliance Bulletin 2017-01, cautioning lenders and servicers to "review applicable laws to determine whether they may charge" processing fees, and to "[r]eview underlying debt agreements to determine whether such fees are authorized by the contract."

Despite knowing full well that Convenience Fees are not expressly authorized by standard-form mortgages or permitted by law, this action alleges that PHH charges their customers Convenience Fees for making mortgage payments over the phone or online.  The question at the heart of this lawsuit is whether PHH, by charging its customers extra fees to make their mortgage payments by phone or online, violates the FDCPA or the mortgage contract itself. This question has the exact same answer for each and every Settlement Class Member who paid these fees.

Although Plaintiffs believe that they have strong arguments to succeed certifying a class, as well as obtaining a trial verdict, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' defenses and in certifying a nationwide class.  Indeed, many claims regarding these same practices have been recently dismissed, some *with prejudice*. *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, ECF No. 21 (M.D. Fla. July 17, 2020); *Turner v. PHH Mortg. Corp.*, No. 8:20-CV-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020); *Torliatt v. Ocwen Loan Servicing, LLC*, No. 2020 WL 1904596 (N.D. Cal. April 17, 2020) (dismissing nationwide breach of contract and FDCPA claim); *Caldwell v. Freedom Mortgage Corporation*, Case No. 2020 WL 4747497 (N.D Tex. August 17, 2020) (dismissing breach of contract claims, even on mortgages with deeds of trust insured by the Federal Housing Administration); *Mariscal v. Flagstar Bank FSB*, 2020 WL 4804983 (C.D. Cal. August 4, 2020) (dismissing breach of contract and violations of California's Rosenthal Fair Debt Collection Practices Act and Unfair Competition Law); *Amye Elbert v. Roundpoint Mortgage Servicing Corporation*, 2020 WL 4818605 (N.D. Cal. August 20, 2020) (dismissing California

Rosenthal Act and UCL, as well as striking the class allegations).

Accordingly, Class Counsel believes that this Settlement, reached only after months of hard fought mediation under the direct supervision of Rodney Max, and with the assistance of various experts, is certainly reasonable in light of all the attendant risks of litigation and obtaining no relief for the class.

### 3.      The PHH Defendants' Denial of Wrongdoing and Liability

At all times, the PHH Defendants have denied and continue to deny liability for the claims asserted in the Action and deny that they committed, threatened, attempted or intended to commit any wrongful act or violation of law or duty.  They maintain that Ocwen's and PHH's practices and procedures associated with charging Convenience Fees for loan payments made by telephone, IVR or the internet were at all times lawful, consented to in advance by the borrowers after full disclosure of the avoidable nature and amount of the Convenience Fees, and were advantageous to borrowers, particularly where payment was tendered near a loan's payment grace period deadline, given that the Convenience Fees were in almost all cases less than the contractual late fees that would have been imposed had Ocwen or PHH demanded that borrowers tender payment by the means authorized by their loan documents (through the U.S. mail), and borrowers could not have submitted payment by such means before the grace deadline.

Among other things, the PHH Defendants contend that their assessment of Convenience Fees could not have violated § 1692f(1) of the FDCPA (or, by extension, state FDCPA analogs or borrower mortgage agreements) because Convenience Fees were voluntarily paid by fully-informed borrowers in return for an entirely optional and separate service: expedited payment processing. Section 1692f(1) prohibits fees "incidental to the principal obligation" unless those fees are "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). But, the PHH Defendants contend, separate fees for a separate, optional, and entirely

7

avoidable service cannot be "incidental to" borrowers' mortgage debts because they are entirely avoidable. No borrower is required to pay telephonically or online; borrowers can pay without incurring any fee whatsoever by mailing a check or money order, as their loan documents contemplate, or by signing up for automatic scheduled monthly debits to their checking account. For these exact reasons, a substantial number of federal district courts have dismissed actions arising from the assessment of convenience fees for use of optional telephonic or internet payment methods, including this Court and the Middle District of Florida in substantially similar actions against PHH as successor to Ocwen.

The PHH Defendants also contend that their Convenience Fees were permitted by settled state common law contractual principles, because Convenience Fees are paid pursuant to a separate agreement for separate consideration. Plus, the PHH Defendants have identified various state and federal statutes and regulations that it contends permit the assessment of Convenience Fees in these circumstances, including the FTC's regulatory guidance that Convenience Fees do not violate the FDCPA because any required authorization and consent could be expressed in general terms in the loan documents or granted orally in a side agreement entered into at the time of the payment transaction. Finally, nothing in borrowers' loan documents prohibits the PHH Defendants from assessing Convenience Fees for the use of optional payment methods not expressly provided for in the borrowers' promissory notes. To the contrary, the PHH Defendants contend the loan documents state that they are governed by or subject to federal laws and regulations, which permit the assessment of Convenience Fees in return for offering expedited or more convenient payment services.

Nevertheless, taking into account the uncertainty and risks inherent in any litigation, and the fact that any uncertainty over the validity of the Convenience Fees at issue can be cured by

amending the underlying loan documents to affirmatively and explicitly authorize such fees, the PHH Defendants have concluded that further defense of the Action would be counterproductive, would not be cost-efficient, and would be unduly protracted, costly, burdensome and disruptive to its business operations, as compared to the terms of Settlement.  Therefore, the PHH Defendants believe that it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement. As set forth in Paragraphs 2.3, 6.4, 12.6.3, and 13.3  below, this Agreement shall in no event be construed as or deemed to be evidence of an admission or concession by the PHH Defendants or any of the Released Persons with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

*        *        *

Given all of the foregoing, and considering the risks and uncertainties inherent in continued litigation and all factors bearing on the merits of settlement, the Parties are satisfied that the terms and conditions of this Agreement and Settlement are more than fair, reasonable, adequate and in their respective best interests.

## II.    TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### 1    Definitions

1.1    As used in this Agreement and the attached exhibits (which are integral parts of this Stipulation and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.1.1   "Action" means the lawsuit captioned *Vincent J. Morris, et al. v. PHH Mortgage Corporation d/b/a PHH Mortgage Services*, Case No. 0:20-CV-60633-RS, pending in the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

1.1.2   "Agreement" means this Stipulation of Settlement and Release and the exhibits attached hereto or incorporated herein, including any amendments subsequently agreed to by the Parties pursuant to the provisions of Section 12 of this Agreement and any exhibits to such amendments.

1.1.3   "Attorneys' Fees and Expenses" means such aggregate funds as may be awarded by the Court from the Settlement Fund to compensate Class Counsel (and any other past, present, or future attorneys for Plaintiffs or the Settlement Class in this Action) for all of the past, present, and future attorneys' fees, costs (including court costs), expenses, and disbursements earned or incurred collectively and individually by any and all of them, their investigators, experts, staff, and consultants combined in connection with the Action.

1.1.4   "Authorized Claimant" means any Claimant who has filed a valid and timely Proof of Claim that is approved by the Settlement Administrator pursuant to the Claims Administration Process set forth in Section 4 of this Agreement.

1.1.5   "Claimant" means any Potential Settlement Class Member whose Class Loan is no longer being serviced by the PHH Defendants at the time of the Court enters the Preliminary Approval Order and who therefore is required to submit a Proof of Claim to be entitled to an Individual Allocation from the Settlement Fund.

1.1.6   "Claims Administration Process" means the claims administration process set forth in Section 4 of this Agreement for the submission and approval of claims by Claimants.

1.1.7   "Class Counsel" means Adam M. Moskowitz, Howard M. Bushman, Joseph M. Kaye, and Barbara C. Lewis of the law firm The Moskowitz Law Firm, PLLC,

and Joshua Adam Migdal and Yaniv Adar of the law firm Mark, Migdal & Hayden.

      1.1.8   "Class Loans" means home mortgage loans in the United States (a) that were serviced by either or both of the PHH Defendants; (b) that were not included as class loans in the class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (c) whose borrowers were not named plaintiffs in any civil action, other than this Action, initiated against either PHH Defendant on or before August 7, 2020 asserting any claim arising from the payment of Convenience Fees to Ocwen or PHH in connection with making telephonic, IVR, or online monthly payments; (d) for which the promissory note has not been amended to add language affirmatively stating that the lender and any servicing agent may collect "Convenience Fees" for payments made by telephone, IVR, or online; and (e) whose borrowers, according to the PHH Defendants' records, were charged and paid an unrefunded Convenience Fee for making a loan payment by telephone, IVR, or the internet between March 25, 2016 and August 21, 2020 , inclusive. Class Loans include FDCPA Class Loans.

      1.1.9   "Class Notice" means the legal notice summarizing the terms of this Agreement, in a form substantially similar to that attached as **Exhibit A**, to be provided to the Settlement Class pursuant to the provisions of Section 7 of this Agreement.

      1.1.10  "Class Roster Date" means 11:59 p.m. EDT on August 21, 2020, the date as of which the Class Loans (and FDCPA Class Loans) encompassed within the Settlement Class was determined and verified through reference to the PHH Defendants' records.

      1.1.11  "Convenience Fee" means fees paid by borrowers to the PHH Defendants for making unscheduled loan payments by telephone, IVR, or the internet.

      1.1.12  "Costs of Administration" means the reasonable and necessary costs

incurred by the PHH Defendants and by the Settlement Administrator to: (a) provide notice of the Settlement and this Agreement to the Settlement Class, as set forth in Section 7 of this Agreement, with such costs being limited to those associated with distributing notice to appropriate state and federal officials as required by 28 U.S.C. § 1715, establishing and maintaining the Settlement Website and the automated interactive voice response telephone system, responding to Settlement Class Member inquiries, and printing, mailing, and otherwise distributing the Class Notice to the Settlement Class as provided in Section 7, and advertising the Settlement online; and (b) to calculate and distribute the Individual Allocations as set forth in Section 4 of this Agreement. The Costs of Administration include the reasonable fees and expenses incurred by the Settlement Administrator in performing all of the tasks for which the Settlement Administrator is retained and will be paid by the PHH Defendants separately and apart from the Settlement Fund. The Costs of Administration do not include any Attorneys' Fees and Expenses or Service Awards, which—if awarded by the Court—will be paid from the Settlement Fund.

1.1.13 "Court" means the United States District Court for the Southern District of Florida, Fort Lauderdale Division, the Honorable Rodney Smith presiding, or any other judge of this court who shall succeed him as the Judge assigned to this Action.

1.1.14 "Eligible Settlement Class Members" means Settlement Class Members who either (a) have Class Loans that were still being serviced by the PHH Defendants as of the date a Preliminary Approval Order is entered by the Court, or (b) who are Authorized Claimants.

1.1.15 "Fairness Hearing" means the hearing held by the Court to consider evidence and argument for the purposes of determining, among other things, whether this

Agreement and the Settlement are fair, reasonable and adequate; whether this Agreement should be given final approval through entry by the Court of the Final Order and Judgment; and whether certification of the Settlement Class should be made final.  The Fairness Hearing shall be held no earlier than one hundred and fifty (150) days after the date of entry of the Preliminary Approval Order.

1.1.16  "FDCPA" means the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*

1.1.17  "FDCPA Class Loans" means Class Loans (a) that were serviced but not owned by the PHH Defendant(s) to which the Convenience Fees were paid and (b) as to which the PHH Defendant(s) to which the Convenience Fees were paid acquired servicing rights when the borrowers on the Class Loan were thirty (30) days or more delinquent on the Class Loan's payment obligations.

1.1.18  "Final Order and Judgment" means the order entered by the Court finally approving the Settlement and this Agreement; certifying the Settlement Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure; and granting judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure, which unless the Parties otherwise agree shall be in substantially the same form as is agreed to by the Parties and submitted to the Court at or before the Fairness Hearing.

1.1.19  "Final Settlement Date" means ten (10) days after the date on which the Final Order and Judgment approving this Agreement becomes final.  For purposes of this Agreement, the Final Order and Judgment shall become final: (a) if no appeal is taken from the Final Order and Judgment, on the date on which the time to appeal therefrom has expired pursuant to Federal Rule of Appellate Procedure 4; or (b) if any appeal is taken

from the Final Order and Judgment, on the date on which all appeals therefrom, including petitions for rehearing or re-argument pursuant to Federal Rule of Appellate Procedure 40, petitions for rehearing en banc pursuant to Federal Rule of Appellate Procedure 35 and petitions for certiorari pursuant to Rule 13 of the Supreme Court or any other form of appellate review, have been fully and finally disposed of in a manner that affirms all of the material provisions of the Final Order and Judgment.

1.1.20 "Individual Allocations" means the share of the Settlement Fund that all borrowers on a given Class Loan (including FDCPA Class Loans) are jointly entitled to receive following payment from the Settlement Fund of any Attorneys' Fees and Expenses and Service Awards that may be awarded by the Court, to be calculated and determined in accordance with Section 4 of this Agreement.

1.1.21 "Objection/Exclusion Deadline" means the date by which any written objection to this Agreement must be filed with the Court and any request for exclusion by a Potential Settlement Class Member must be received by the Settlement Administrator, which shall be designated as a date thirty-five (35) days before the originally scheduled date of the Fairness Hearing (if the Fairness Hearing is continued, the deadline runs from the first scheduled Fairness Hearing), or on such other date as may be ordered by the Court.

1.1.22 "Ocwen" means Ocwen Loan Servicing, LLC.

1.1.23 "Operative Complaint" means the Amended Class Action Complaint, filed in the Action on July 24, 2020 (Doc. 11), and annexed hereto as **Exhibit B**.

1.1.24 "Parties" or "Party" means Plaintiffs and the PHH Defendants, separately and collectively, as each of those terms is defined in this Agreement.

1.1.25 "Person" means an individual, corporation, partnership, limited partnership,

association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their respective spouses, heirs, predecessors, successors, representatives or assignees.

1.1.26 "PHH" means PHH Mortgage Corporation.

1.1.27 "PHH Defendants" means PHH and Ocwen, separately and collectively, as each of those terms is defined in this Agreement.

1.1.28 "PHH Defendants' Counsel" means Timothy A. Andreu, Michael R. Pennington, and Zachary A. Madonia of the law firm of Bradley Arant Boult Cummings LLP.

1.1.29 "Plaintiff Luzzi" means Michael Luzzi, one of the four named plaintiffs in this Action.

1.1.30 "Plaintiff Morris" means Vincent J. Morris, one of the four named plaintiffs in this Action.

1.1.31 "Plaintiff Simmons" means Steven Simmons, one of the four named plaintiffs in this Action.

1.1.32 "Plaintiff Upton" means Yolanda Upton, one of the four named plaintiffs in this Action.

1.1.33 "Plaintiffs" collectively means Plaintiff Luzzi, Plaintiff Morris, Plaintiff Simmons, and Plaintiff Upton.

1.1.34 "Potential Settlement Class Members" mean Persons who fall within this Agreement's definition of the Settlement Class.

1.1.35 "Preliminary Approval Order" means the order to be entered by the Court

preliminarily approving the Settlement as outlined in this Agreement, certifying the Settlement Class for settlement purposes only, designating Class Counsel as counsel for the Settlement Class and Plaintiffs as the representatives of the Settlement Class, and approving the form and content of the Class Notice and Proof of Claim to be disseminated to the Settlement Class.  A proposed version of the Preliminary Approval Order is attached hereto as **Exhibit C**.

1.1.36 "Proof of Claim" means the proof of claim form to be completed and executed by each Settlement Class Member whose Class Loan is no longer being serviced by the PHH Defendants at the time that the Court enters the Preliminary Approval Order, and which must be approved through the Claims Administration Process before that Settlement Class Member will be deemed an Authorized Claimant entitled to any distribution from the Settlement Fund.  The Proof of Claim shall be identical in all material respects to the form attached hereto as **Exhibit D**.

1.1.37 "Release" means the release and waiver set forth in Section 3 of this Agreement.

1.1.38  "Released Claims" means each and all of the claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages (whether punitive, statutory, or compensatory and whether liquidated or unliquidated), losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any regulatory bulletin, guidelines, handbook, opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual

16

or contingent, that relate to or arise out of Convenience Fees charged by the PHH Defendants to Settlement Class Members, during the period from March 25, 2016 through and including August 21, 2020.

1.1.39  "Released Persons" means (a) PHH, Ocwen, and any and all of their current or former predecessors, successors, assigns, parent corporations, subsidiaries, divisions, related and affiliated companies and entities, associates, vendors, service providers, software licensors and licensees, clients and customers, principals, stockholders, directors, officers, partners, principals, members, employees, attorneys, consultants, independent contractors, representatives, and agents, transferee servicers, and all individuals or entities acting by, through, under, or in concert with any of them; and (b) any trustee of a mortgage securitization trust which includes loans on which Settlement Class Members are borrowers, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

1.1.40  "Releasing Persons" means individually and collectively (a) Plaintiffs and (b) the Settlement Class and each Settlement Class Member thereof, and in each case in clauses (a)–(b), on behalf of themselves and any of their respective past, present, or future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, co-obligors, and/or successors.

1.1.41  "Service Award" means such funds as may be awarded by the Court from the Settlement Fund to each of the four Plaintiffs to compensate each of them for their respective efforts in bringing the Action and achieving the benefits of this Agreement on behalf of the Settlement Class.

1.1.42  "Settlement" means the settlement and related terms between the Parties as set forth in this Agreement.

1.1.43  "Settlement Administrator" means Class-Settlement.com, selected by the Parties to help implement the distribution of the Class Notice, host the Settlement Website and automated interactive voice recognition telephone system, calculate Individual Allocations and distribute Individual Allocations to Eligible Settlement Class Members paid by check, and aid in fulfilling the related requirements set forth in this Agreement. Class Counsel will seek the Court's approval of Class-Settlement.com as the Settlement Administrator in connection with the preliminary approval of this Agreement and Settlement.

1.1.44  "Settlement Class" means, for purposes of the Settlement and this Agreement only, all borrowers on home mortgage loans in the United States that were serviced by either or both of the PHH Defendants who, according to the PHH Defendants' records, were charged and paid a Convenience Fee for making a loan payment by telephone, IVR, or the internet between March 25, 2016 and August 21, 2020.  Excluded from the Settlement Class are (a) borrowers whose loans were included as class loans in the class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action, other than this Action, initiated against either PHH Defendant on or before August 7, 2020 asserting any claim arising from the payment of Convenience Fees to Ocwen or PHH; (c) borrowers whose promissory note and/or mortgage agreement, deed of trust, or other like security instrument has already been amended to add language affirmatively and explicitly stating that the lender and any servicing agent may collect

"Convenience Fees" for payments made by telephone, IVR, or online; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

1.1.45 "Settlement Class Members" mean Persons who fall within the definition of the Settlement Class, who do not timely and properly exclude themselves from the Settlement Class as provided in this Agreement, and who otherwise are not excluded by specific order of the Court from the Settlement Class.

1.1.46 "Settlement Fund" means the monetary relief with an aggregate value of $12,587,048.58 that the PHH Defendants have agreed to make available to the Settlement Class as a whole, to be distributed pursuant to the terms of Sections 4 and 10 of this Agreement.

1.1.47 "Settlement Website" means the internet website that the Settlement Administrator will establish and host pursuant to the provisions of Section 7 of this Agreement, following entry of the Preliminary Approval Order.

1.2     Other capitalized terms used in this Agreement but not defined in this Section 1 shall have the meanings ascribed to them elsewhere in this Agreement and the exhibits attached hereto.

1.3     The terms "he or she" and "his or her" include "it" or "its" where applicable.

**2     Representations, Acknowledgements, and Warranties**

2.1     Class Counsel have concluded, after due investigation and after carefully considering the relevant circumstances, that: (1) it is in the best interest of Plaintiffs and the Settlement Class to enter into this Agreement to avoid the uncertainties of litigation and assure

that the benefits reflected herein, including the value of the Settlement Fund under this Agreement, are obtained for Plaintiffs and the Settlement Class, and (2) the Settlement set forth in this Agreement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and in the best interests of Plaintiffs and the Settlement Class.

2.2     Based on, among other things, their extensive investigation in the Action, including their extensive legal research and the informal discovery conducted and the information sharing that occurred before, during, and after the Parties' protracted mediation, Class Counsel recommend and agree to this Settlement as set forth herein.

2.3     Plaintiffs, each for himself or herself individually and on behalf of each Settlement Class Member, and the PHH Defendants acknowledge and agree that neither this Agreement nor the releases given herein, nor any consideration therefore, nor any actions taken to carry out or obtain Court approval of this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. The PHH Defendants expressly deny the allegations of Plaintiffs' complaints including, without limitation, the allegations of the Operative Complaint. Neither this Agreement, nor the fact of the Settlement, nor the settlement proceedings, nor settlement negotiations, nor statements made in court proceedings, nor any related document, shall be used as an admission of any fault or omission by the PHH Defendants or the Released Persons, or be construed as, offered as, received as, or used as evidence of an admission, concession, presumption, or inference of any fact or of any liability or wrongdoing by the PHH Defendants or the Released Persons in any proceeding, or as a waiver by the PHH Defendants or the Released Persons of any applicable defense, or for any other purposes other than such proceedings as may be necessary to defend,

consummate, interpret, or enforce the Settlement contemplated by this Agreement.

2.4     Each counsel or other Person executing this Agreement on behalf of any Party hereto expressly warrants and represents that (a) such Person has the full authority to execute this Agreement on behalf of the Party for whom such Person is executing the Agreement (including on behalf of such Person's client, to the extent the Person signing this Agreement is an attorney); (b) it is acting upon its respective independent judgments and upon the advice of its respective counsel, and not in reliance upon any representation, warranty, or covenant, express or implied, of any nature or kind by any other Person other than the representations, warranties and covenants contained and memorialized in this Agreement; and (c) any representation, warranty or covenant, express or implied, of any nature or kind that is not contained in this Agreement is immaterial to the decision to enter into this Agreement.  The undersigned Class Counsel represent and warrant that they are authorized to execute this Agreement on behalf of both Plaintiffs and the Settlement Class.

2.5     Plaintiffs each represent and warrant that they: (a) have entered into and executed this Agreement voluntarily and without duress or undue influence, and with and upon the advice of counsel, selected by them; (b) have agreed to serve as representatives of the Settlement Class; (c) are willing, able, and ready to perform all of the duties and obligations of a representative of the Settlement Class; (d) have read the complaints filed in the Action, or have had the contents of such pleadings described to them by Class Counsel; (e) are familiar with the results of the fact-finding undertaken by Class Counsel; (f) have been kept apprised of the progress of the Action and the settlement negotiations between the Parties, and have either read this Agreement (including the exhibits annexed hereto) or have received a detailed description of it from Class Counsel and they have agreed to its terms; (g) have consulted with Class Counsel about the Action, this

Agreement and the duties and obligations imposed on a representative of the Settlement Class; (h) have authorized Class Counsel to execute this Agreement on their behalves; and (i) will remain and serve as the representatives of the Settlement Class until the terms of the Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that they can no longer serve in a representative capacity on behalf of the Settlement Class.

2.6     Plaintiffs each represent and warrant that they are the sole and exclusive owners of all claims that they are personally asserting in this Action and releasing under this Agreement, including all Released Claims.  Plaintiffs each further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action or to the Released Claims, and that they are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action, the Released Claims, or in any benefits, proceeds or values under the Action or the Released Claims on their behalf.  Plaintiffs each further represent and warrant that they will indemnify, defend and hold all other Parties harmless as a result of any assignment of such right, and enter into this Settlement without coercion of any kind.

**3      Dismissal, Release, and Covenant not to Sue**

3.1     Subject to Court approval, Plaintiffs agree, on behalf of themselves and the Settlement Class Members, that this Agreement shall be the full and final disposition of: (i) the Action against the PHH Defendants; and (ii) any and all Released Claims as against all Released Persons.

3.2     Upon final approval of the Settlement reflected in this Agreement, and as part of the entry of the Final Order and Judgment, Class Counsel shall take all steps necessary to effectuate

dismissal of the Action with prejudice as to the PHH Defendants.

3.3     In consideration for the Settlement benefits described in this Agreement, each of the Plaintiffs, on behalf of themselves and each other Releasing Person, hereby release, and each of the Settlement Class Members and other Releasing Persons shall be deemed to have released, and by operation of the Final Order and Judgment upon the Effective Date shall have released, all Released Claims against all of the Released Persons, separately and severally.   In connection therewith, upon the Effective Date, each of the Releasing Persons: (i) shall be deemed to have, and by operation of the Final Order and Judgment, shall have, fully, finally, and forever waived, released, relinquished, remised, acquitted, and discharged to the fullest extent permitted by law all Released Claims against each and all of the Released Persons; (ii) shall forever be barred and enjoined from commencing, instituting, prosecuting, or participating in any fashion in any and all claims, causes of action, suits, or any other proceeding in any court of law or equity, arbitration tribunal, or other forum of any kind, directly, representatively, derivatively, or in any other capacity and wherever filed, any Released Claims against any of the Released Persons; and (iii) shall be deemed to have agreed and covenanted not to sue any of the Released Persons with respect to any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Person related in any way to any Released Claims.

3.4     Without in any way limiting its scope, and, except to the extent otherwise specified in this Agreement, the Released Claims include, by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, or by Plaintiffs or by the Settlement Class Members regarding Released Claims for which any of the Released Persons might otherwise be claimed liable.

3.5     The Releasing Persons may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims.   Nevertheless, Plaintiffs and the other Releasing Persons do hereby expressly, fully, finally, and forever settle and release, and each Releasing Person, upon the Effective Date, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

3.6     With respect to any and all Released Claims against any and all Released Persons, the Parties stipulate and agree that, by operation of the Final Order and Judgment upon the Effective Date, each Releasing Person shall have expressly waived, and shall be deemed to have waived, and by operation of the Final Order and Judgment shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542 or any federal, state or foreign law, rule, regulation or common-law doctrine that is similar, comparable, equivalent or identical to, or that has the effect in whole or part of, Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

3.7     All Settlement Class Members and other Releasing Persons shall be bound by the releases set forth in this Section 3 whether or not they are required but fail to submit a valid and timely Proof of Claim or otherwise fail to become Authorized Claimants, and whether or not they ultimately claim their Individual Allocations.

3.8     Subject to the provisions of this Section 3 and the injunctions contemplated herein and in Section 5, nothing in this Release shall preclude any filing in this Action seeking to have the Court enforce the terms of this Agreement, including participation in any of the processes

detailed therein.

**4**      **The Settlement Fund, Claims Administration Process, Plan of Allocation, and Distribution of Individual Allocations**

4.1      Pursuant to and subject to all other terms of this Agreement, and in consideration for (a) the dismissal of the Action with prejudice, (b) the Release set forth in Section 3 and the approval, entry, and enforcement thereof by the Court, (c) the loan amendments set forth Paragraph 5.2, and (d) the other promises and covenants in this Agreement, the PHH Defendants have agreed to make available to Plaintiffs and the Settlement Class the following monetary relief (and only the following monetary relief), subject to each and all of the terms and conditions specified herein.

4.2      This Action is brought in part under the FDCPA, which provides the following relief to persons who prevail at trial:

(a) Amount of damages

Except as provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –

(1)      any actual damage sustained by such person as a result of such failure;

(2)

        (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

        (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . .

15 U.S.C. § 1692k.

4.3      Plaintiffs have also asserted claims for breach of certain uniform covenants in the mortgage agreements, deeds of trust, or similar security instruments of the Settlement Class, for which they could be entitled to damages were they to prevail.

4.4     For purposes of this Settlement only, the Parties stipulate that the PHH Defendants could potentially be deemed a debt collector under the FDCPA with respect to the FDCPA Class Loans, because the PHH Defendants did not own the loans but acquired servicing rights to the loans after borrowers were already 30 days or more delinquent in their payment obligations.

4.5     The PHH Defendants shall make available to the Settlement Class a Settlement Fund of $12,587,048.58, which amount is equal to the sum of (a) 28% of the amounts paid as Convenience Fees to the PHH Defendants by Settlement Class Members on FDCPA Class Loans from March 25, 2019 to August 21, 2020 and (b) 18% of all other amounts paid as Convenience Fees to the PHH Defendants by Settlement Class Members from March 25, 2016 to August 21, 2020, but (c) excluding all amounts paid to or otherwise retained by any third party vendor to facilitate the Settlement Class Members' payments by telephone, IVR, or the internet from March 25, 2016 to August 21, 2020, and excluding any Convenience Fees previously refunded or waived by the PHH Defendants on any given Settlement Class Loan. The Settlement Fund is a lump sum and is not designated as any specific category of monetary relief potentially available under the FDCPA, Plaintiffs' breach of contract claims, and/or any other federal or state claim Plaintiffs could have brought in this litigation.

4.6     The Settlement Fund shall first be applied to pay any Attorneys' Fees and Expenses and any Service Awards that may be approved by the Court, pursuant to the provisions of Section 10 of this Agreement.  Following the payment of any such Attorneys' Fees and Expenses and Service Awards, the remaining balance of the Settlement Fund will be distributed as Individual Allocations to Eligible Settlement Class Members.   Individual Allocations to the Eligible Settlement Class Members shall be calculated as follows:

4.6.1   Each FDCPA Class Loan shall receive an Individual Allocation equal to

28% of the Convenience Fees paid to and retained by the PHH Defendants on that FDCPA Class Loan from March 25, 2019 to August 21, 2020, inclusive, and 18% of all remaining Convenience Fees paid to and retained by the PHH Defendants on that FDCPA Class Loan from March 25, 2016 to March 24, 2019, but reduced by the same percentage as the combined percentage of the Settlement Fund awarded as Attorneys' Fees and Expenses and Service Awards.

4.6.2   Each remaining Class Loan shall receive an Individual Allocation equal to 18% of the Convenience Fees paid to and retained by the PHH Defendants on that Class Loan from March 25, 2016 to August 21, 2020, inclusive, but such allocations will be reduced by the same percentage as the combined percentage of the Settlement Fund awarded as Attorneys' Fees and Expenses and Service Awards.

4.6.3   The purpose of this method of allocation is to ensure that the Settlement Fund is allocated equitably based on the relative amount of Convenience Fees charged to and paid with respect to each Class Loan and the presence or absence of an FDCPA claim based on the status of the loan when the loan boarded with the PHH Defendants, and that class members are treated equitably in allocating Attorneys' Fees and Expenses and Service Awards.  To further ensure that Settlement Class Members are treated equitably relative to each other, payments made on Class Loans (including FDCPA Class Loans) with multiple borrowers shall be treated as joint payments for purposes of this calculation, such that each Class Loan will be entitled to only one Individual Allocation.  Co-debtors, joint-borrowers and multiple obligators on a single Class Loan are not entitled to a separate Individual Allocation on the same Class Loan.

4.7     The Parties shall cause the Settlement Administrator to distribute the Individual

Allocations to Eligible Settlement Class Members no later than seventy-five (75) days following the Final Settlement Date or seventy-five (75) days following June 30, 2021, whichever comes later.  Individual Allocations shall be distributed as follows:

4.7.1   For Eligible Settlement Class Members whose Class Loans are still being serviced by the PHH Defendants at the time of distribution, the Parties and the Settlement Administrator shall ensure that Individual Allocations are distributed to Eligible Settlement Class Members' active Class Loan accounts, and specifically as credits (*i.e.*, reductions) first to any outstanding late fee balance and then to the outstanding principal balances of their Class Loans, with the following exceptions:

4.7.1.1 For Class Loans (a) still being serviced by the PHH Defendants at the time of distribution that are in foreclosure or (b) to which the PHH Defendants in their judgment determine that they otherwise are not reasonably able to apply a credit to reduce the outstanding late fee or outstanding principal balances, the Parties shall cause the Settlement Administrator to distribute those Settlement Class Members' respective Individual Allocations by check.

4.7.2   For Eligible Settlement Class Members whose Class Loans are being serviced by the PHH Defendants on the date the Court enters the Preliminary Approval Order, but whose Class Loans are no longer being serviced by the PHH Defendants at the time of distribution, the Parties shall cause the Settlement Administrator to distribute those Settlement Class Members' respective Individual Allocations by check.

4.7.3   For Eligible Settlement Class Members who are Claimants (*i.e.*, whose Class Loans are no longer being serviced by the PHH Defendants on the date the Court

enters the Preliminary Approval Order):

      4.7.3.1 Each Claimant shall be required to submit to the Settlement Administrator no later than June 30, 2021 a completed Proof of Claim as attached to the Class Notices, and substantially in the form of Exhibit 4 hereto, signed by an authorized Person.  The Proof of Claim shall include, *inter alia*, a valid current address of the Claimant, together with the loan number or property address associated with that Claimant's Class Loan.

      4.7.3.2 Except as otherwise ordered by the Court, all Claimants who fail to timely submit a valid Proof of Claim within such period, or such other period as may be ordered by the Court, as well as all Claimants who are excluded by the Court on its own motion or who otherwise are not approved by the Court as Authorized Claimants, shall be forever barred from receiving any Individual Allocations pursuant to this Agreement and the Settlement set forth herein but in all other respects will be subject to and bound by the provisions of this Agreement, the Settlement and the Release contained herein, and the Final Judgment and Order of Dismissal, and will be barred from bringing any claim, suit, or action in any forum against any of the Released Persons concerning any Released Claim.

      4.7.3.3 All Claimants whose claims are not approved by the Court shall be barred from any Individual Allocations, but otherwise shall be bound by the provisions of this Agreement, the Settlement and

releases contained herein, and the Final Judgment and Order of Dismissal, and will be barred from bringing any claim, suit, or action in any forum against any of the Released Persons concerning any Released Claim.

4.7.3.4 For Authorized Claimants, the Parties shall cause the Settlement Administrator to distribute those Settlement Class Members' respective Individual Allocations by check.

4.7.4   Individual Allocations, whether distributed through checks or credits to the Class Loan's late fee or outstanding principal balance, shall reduce and be paid out of the Settlement Fund.

4.8   For Individual Allocations paid by check, each such check shall be made payable—unless otherwise mutually agreed to by the Parties for good cause shown—jointly to all borrowers on each such Class Loan, in an amount equal to that Class Loan's respective Individual Allocation, payable in U.S. funds.  For Authorized Claimants, each such check shall be mailed to the mailing address identified on the Proof of Claim.  For other Eligible Settlement Class Members, each such check shall be mailed to the mailing address of record for that Class Loan as determined from the PHH Defendants' records.

4.9   All checks for Individual Allocation relief shall state on the face of the check that the check will expire and become null and void unless cashed within one hundred and eighty (180) days after the date of issuance of the check, and Eligible Settlement Class Members' failure to deposit, negotiate or otherwise cash such checks within that one hundred and eighty (180) day period shall constitute a release by those Eligible Settlement Class Members (and all other borrowers on their Class Loans) of any and all rights to relief under the Settlement.

4.10   Individual Allocation relief for Eligible Settlement Class Members that remains unclaimed or undeliverable two hundred and forty (240) days after the Final Settlement Date, despite reasonable efforts to locate the Eligible Settlement Class Members, shall revert back to the PHH Defendants.

4.11   Only Eligible Settlement Class Members are entitled to any distribution of Individual Allocations.  Potential Settlement Class Members who timely and properly exclude themselves from the Settlement Class as provided in this Agreement or who otherwise are specifically excluded by order of the Court and Settlement Class Members who do not become Eligible Settlement Class Members as provided in this Agreement are not entitled to any distribution of Individual Allocations.  Undistributed Individual Allocations shall revert back to the PHH Defendants.

**5**      **Additional Consideration for the Settlement**

5.1   As additional consideration for (a) the dismissal of the Action with prejudice on the merits, (b) the Release set forth in Section 3 and the approval, entry, and enforcement thereof by the Court, (c) the loan amendments set forth in this Section 5, and (d) the other promises and covenants in this Agreement, the PHH Defendants have agreed to provide the following non-monetary relief:

5.1.1   The PHH Defendants currently charge Convenience Fees of $7.50 per online payment transaction (other than scheduled monthly automatic debits to checking accounts).  The PHH Defendants agree to reduce the per transaction Convenience Fee for unscheduled online payments to $6.50 and not to increase that fee before August 25, 2023 at the earliest.

5.1.2   The PHH Defendants currently charge Convenience Fees of $7.50 per IVR

payment transaction and up to $17.50 for payments by telephone with the assistance of a live agent.  The PHH Defendants agree not to increase either of those fees before August 25, 2023 at the earliest.

      5.1.3   While maintaining that their website clearly and adequately discloses that borrowers could be assessed Convenience Fees for paying by telephone, IVR, or the internet, including the possible amounts of such Convenience Fees, and also clearly and adequately identifies alternative methods of payment for which a Convenience Fee may not be incurred, the PHH Defendants agree to include language disclosing the following additional information at the time that borrowers pay online, to appear next to the first page of the website for the applicable form of payment: **Paying by telephone, IVR, or internet is entirely optional and, unless otherwise specified, involves a fee retained in whole or in part by PHH. There are alternative methods of payment involving no fee, such as mailing a check or money order, or scheduled monthly bank account debts, while some methods of payment involve a lower fee than others. Click here to visit the FAQ section for more details.**

      5.2   The Parties agree that the PHH Defendants will implement the non-monetary relief set forth in Paragraph 5.1 within one hundred twenty (120) days of the Final Settlement Date.

      5.3   As additional consideration for (a) the Settlement Fund, (b) the PHH Defendants' promises and covenants in Paragraph 5.1, including all subparagraphs, and (c) the other promises and covenants in this Agreement, Plaintiffs and each Settlement Class Member (whether or not the Settlement Class Member is also an Eligible Settlement Class Member) shall further be deemed to have agreed that, by virtue of the Settlement and effective as of August 21, 2020, the promissory note and mortgage of each Class Loan serviced by the PHH Defendants on which he or she is a

borrower is and shall be deemed amended to include the following language to expressly authorize the assessment of Convenience Fees for future payments made by optional methods that the loan's servicer or noteholder is not otherwise required to offer or accept under the promissory note and mortgage:

1. Borrower(s) acknowledge(s) the Lender, or a servicing agent collecting payments under the Note, may in its discretion, choose to accept payments made through means not specifically provided for in the Note.

2. Borrower(s) acknowledge(s) and agree(s) the Lender, or a servicing agent collecting payments under the Note, may charge Borrower(s) fees of up to (and not exceeding) **$17.50** per payment for the use of telephonic, IVR, and internet payment methods and any other payment method not specifically provided for by the Note until **August 25, 2023** and up to but not exceeding **$19.50** per payment for those same payment methods thereafter, and such fees are not limited to and are not represented to be limited to the costs of processing such payments or making such payment methods available.

3. Borrower(s) hereby agree(s) such fees may include, but are not limited to, fees, charges, and expenses related to payments made over the telephone with the assistance of a representative, payments made through an automated telephone system, payments made online, and other payment methods not expressly provided for by the Note.

4. Borrower(s) acknowledge(s) and agree(s) that if and to the extent the personal liability of a Borrower under the Note has been discharged in bankruptcy prior to the effective date of this Amendment, then such Borrower has no personal obligation to repay the debt associated with the Note, this Amendment to the Note does not reimpose or revive any discharged personal liability with respect to the Note, and this Amendment will not to be construed as a waiver of Borrower(s)' discharge or an attempt to collect against the Borrower(s) personally. With respect to any such discharged personal liability, Lender's sole recourse is the enforcement—subject to applicable law—of Lender's security interest in the property described in the mortgage, and any payments made by Borrower(s), including any fees for the use of any payment methods not specifically provided for by the Note, are voluntary and not the result of any demand for payment of discharged debt.

5. Borrower(s) acknowledge(s) and agree(s) that if and to the extent Borrower(s) is (are) in an active bankruptcy case, this Amendment and any payments made by Borrower(s), including any fees for the use of any payment methods not specifically provided for by the Note, are subject to applicable bankruptcy law and applicable bankruptcy court orders, and Lender is not making a demand herein for any payment from any such Borrower(s).

If for any reason the foregoing is deemed ineffective to expressly authorize such Convenience Fees for purposes of any state or federal statute, law or regulation, then upon request by the PHH Defendants, each such Settlement Class Member hereby agrees to execute any and all documents as may be sufficient or necessary to authorize such Convenience Fees under such statute, law or regulation, such documents to be effective as of August 21, 2020.

5.4    In each payment transaction involving a Convenience Fee following the Final Settlement Date, the PHH Defendants shall use their best efforts to cause its customer service representatives, telephone systems, scripts or websites involved to disclose, in substance, the following information to each Settlement Class Member, except as otherwise hereafter prescribed or proscribed by law:

a.    the exact fee to be charged for the payment method chosen by the borrower;

b.    the fact that the fee may include an amount retained by the PHH Defendants in excess of its third party costs;

c.    the fact that the borrower is not required to use the payment method for which a fee is being charged;

d.    the payment methods for which the PHH Defendants do not charge a fee;

e.    any other optional payment methods accepted by the PHH Defendants that may involve a lower fee; and

f.    when a material consideration in the payment transaction at issue, the applicable deadline by which payment must be received in order to avoid a late fee.

5.5    Except as expressly set forth in this Section 5, neither the Settlement, nor the Release, nor any of the relief to be offered pursuant to the Settlement shall: (a) alter or extinguish (or be construed as altering or extinguishing) the terms of the debts, promissory notes, mortgages, security interests and other pre-existing contracts of the Settlement Class Members which are still in effect as of the Final Settlement Date; (b) constitute a novation or release of those debts, promissory notes, mortgages, security interests and other pre-existing contracts; or (c) in any way

alter the rights of any party under those debts, promissory notes, mortgages, security interests and other pre-existing contracts which are still in effect as of the Final Settlement Date. Nothing in this Agreement, the Settlement or the Release shall prevent the Released Persons from continuing to service or collect such debts, promissory notes, mortgages, security interests and other pre-existing contracts consistent with the terms of those agreements.

5.6     The Parties hereby agree and acknowledge that the provisions of this Section 5 together constitute essential and material terms of this Agreement and shall be included, approved and made effective in any Final Order and Judgment entered by the Court.

**6     Preliminary Approval Order**

6.1     Promptly after the execution of this Agreement, but in no event later than seven (7) court days after this Agreement is fully executed (unless such time is extended by the written agreement of Class Counsel and the PHH Defendants' Counsel), Class Counsel shall submit this Agreement together with its exhibits to the Court and shall move the Court for entry of the Preliminary Approval Order, substantially in the form of **Exhibit C** hereto.

6.2     The requested Preliminary Approval Order shall include, among other things included in Exhibit C, provision for the following:

6.2.1     Preliminary approval of the Settlement set forth in this Agreement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23;

6.2.2     Conditional approval of the Settlement Class as for settlement purposes only;

6.2.3     Appointment of Class Counsel and Plaintiffs as the representatives of the Settlement Class;

6.2.4     Approval of the mailing of the Class Notices, substantially in the form

attached as Exhibit A, which shall include, among other things, the information identified in Paragraph 7.2.3 and all its subparagraphs;

6.2.5    Approval of the procedures set forth in the Class Notices for Potential Settlement Class Members to seek exclusion from the Settlement Class or to object to the Settlement and/or the Fee and Expense Application;

6.2.6    Approval of the Claims Administration Process set forth in Section 4 of this Agreement and in the Class Notice;

6.2.7    Approval of the appointment of a Settlement Administrator;

6.2.8    Preliminarily enjoining (i) Potential Settlement Class Members from directly or indirectly filing, commencing, participating in, or prosecuting (as class members or otherwise) any lawsuit in any jurisdiction asserting on their own behalf claims that would be Released Claims if this Settlement is finally approved, unless and until they timely exclude themselves from the Settlement Class as specified in the this Order and in the Agreement and its exhibits; and (ii) regardless of whether they opt out, Potential Settlement Class Members from directly or indirectly filing, prosecuting, commencing,  or receiving proceeds  from (as class members or otherwise) any separate purported class action asserting, on behalf of any Settlement Class Members who have not opted out from this Settlement Class, any claims that would be Released Claims if this Settlement receives final approval and becomes effective; and

6.2.9    The scheduling of the Fairness Hearing.

6.3    The PHH Defendants, without admitting that the Action meets the requisites for certification of a contested litigation class under Federal Rule of Civil Procedure 23 or for class certification for any purpose other than settlement, hereby agrees, on each and all of the terms and

conditions set forth herein, and solely for purposes and in consideration of the Settlement set forth herein, not to oppose the certification of the Settlement Class for settlement purposes only, the appointment of Class Counsel as legal counsel for the Settlement Class, or the approval of Plaintiffs as the representatives of the Settlement Class.

6.4     The Court's certification of the Settlement Class for settlement purposes only (whether in the Preliminary Approval Order or Final Order and Judgment) shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Settlement and this Agreement, and shall not be considered as law of the case, res judicata, judicial estoppel, promissory estoppel, or collateral estoppel in the Action or in any other proceeding unless and until the Final Settlement Date is reached.  Whether or not the Settlement reaches the Final Settlement Date, the Parties' stipulations and agreements as to class certification for settlement purposes only (and any and all statements or submission made by the Parties in connection with seeking the Court's approval of the Settlement and this Agreement) shall not be deemed to be any stipulation or grounds for estoppel or preclusion as to the propriety of class certification, nor any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.  In the event the Settlement and this Agreement are not approved, or the Final Settlement Date is not reached, or this Agreement is terminated, canceled, or fails to become effective for any reason whatsoever, the Parties' stipulations and agreements as to certification of the Settlement Class shall be null and void and the Court's certification order shall be vacated, and thereafter no class or classes will remain certified, and nothing in this Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any party concerning whether the Action may properly be maintained as a class action under applicable law; provided, however,

that Plaintiffs and Class Counsel may thereafter seek certification of a litigation class or classes before the Court without reference to this Settlement or anything filed in support of it, and the PHH Defendants may oppose such certification on any available grounds.   In the event the Settlement and this Agreement are not approved, or the Final Settlement Date is not reached, or this Agreement is terminated, canceled, or fails to become effective for any reason whatsoever, nothing in this Settlement or this Agreement shall be admissible in any effort to certify the proposed Settlement Class as a litigation class or any other class in this or any other court under any circumstances.

**7**      **Notice to, and Communications with, the Settlement Class and Federal and State Officials**

7.1      **Notice to Appropriate Federal and State Officials.**   Pursuant to the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, within ten (10) days after this Agreement is deemed filed with the Court, the PHH Defendants will provide notice of this Action and this Agreement to the Attorney General of the United States; the Consumer Finance Protection Bureau; the Federal Trade Commission; and the Attorneys General of the States, Districts, Commonwealths and Territories in which Settlement Class Members are determined to reside based on the borrower mailing addresses for the Class Loans as reflected in the PHH Defendants' business records.

7.2      **Individual Notice to the Settlement Class**

7.2.1    The Class Notice shall be the legal notice to be provided to the Settlement Class Members, and shall otherwise comply with Federal Rule of Civil Procedure 23 and any other applicable statutes, laws, and rules, including, but not limited to, the Due Process Clause of the United States Constitution.

7.2.2    Subject to the requirements of the Preliminary Approval Order, the Parties

shall cause the Settlement Administrator to send, no later than twenty-eight (28) days after entry of the Preliminary Approval Order, the Class Notice by First-Class U.S. Mail, proper postage prepaid, to the Potential Settlement Class Members identified in the PHH Defendants' records on each Class Loan, addressed to the mailing address of record for that Class Loan as reflected in the PHH Defendants' records.  As a result, one (1) Class Notice will be sent with respect to each Class Loan, addressed jointly to all Potential Settlement Class Members identified as borrowers with respect to that Class Loan in the PHH Defendants' records.  Prior to mailing, the Settlement Administrator shall attempt to update the last known borrower mailing addresses for each Class Loan as reflected in the PHH Defendants' records through the National Change of Address system or similar databases.

      7.2.3   The Class Notice shall advise the Potential Settlement Class Members of the following:

            7.2.3.1 <u>General Terms.</u>   The Class Notice shall contain a plain, neutral, objective, and concise summary description of the nature of the Action and the terms of the proposed Settlement, including all relief that will be provided by the PHH Defendants and the Settlement Class in the Settlement, as set forth in this Agreement.  This description shall also disclose, among other things, that (a) any relief to Settlement Class Members offered by the Settlement is contingent upon the Court's approval of the Settlement, which will not become effective until the Final Settlement Date; (b) Class Counsel and Plaintiffs have reserved the right to petition the Court for an award

of Attorneys' Fees and Expenses from the Settlement Fund, and Service Awards to be paid from the Settlement Fund, each in an amount to be determined by the Court, and (c) the Settlement is not made contingent upon any particular amount of Service Award or Attorneys' Fees and Expenses being awarded by the Court.

7.2.3.2 <u>The Settlement Class.</u> The Class Notice shall define the Settlement Class and shall disclose that the Settlement Class has been provisionally certified for purposes of settlement only.

7.2.3.3 <u>Opt-Out Rights.</u> The Class Notice shall inform the Settlement Class Members of their right to seek exclusion from the Settlement Class and the Settlement and provide the deadlines and procedures for exercising this right.

7.2.3.4 <u>Objection to Settlement.</u> The Class Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and to appear at the Fairness Hearing and provide the deadlines and procedures for exercising these rights.

7.2.3.5 <u>Fairness Hearing.</u> The Class Notice shall disclose the date and time of the Fairness Hearing and explain that the Fairness Hearing may be rescheduled without further notice to the Settlement Class.

7.2.3.6 <u>Release.</u> The Class Notice shall summarize or recite the proposed terms of the Release contemplated by this Agreement.

7.2.3.7 <u>Notice to Claimants.</u> The Class Notices that are disseminated to the last mailing addresses associated with the Class Loans of Claimants

shall (i) identify the Potential Settlement Class Member as a Claimant; (ii) explain that Claimants must submit Proof of Claim forms in order to receive their Individual Allocations; (iii) enclose a form Proof of Claim substantially in the form of Exhibit D, explain the Claims Administration Process set forth in Section 4 of this Agreement, and provide the deadlines and procedures for submitting a Proof of Claim; and (iv) explain that unless Claimants exercise their right to seek exclusion from the Settlement Class and the Settlement, they will be considered Settlement Class Members and will be bound by the terms of the Agreement and Settlement, including the Release, even if they do not submit a Proof of Claim and do not receive an Individual Allocation. Class Notices provided to Potential Settlement Class Members who are not Claimants do not need to comply with the requirements of this subparagraph. Because it is recognized that borrowers on Class Loans no longer serviced by the PHH Defendants may now have a different mailing address than the last address known to the PHH Defendants, the Parties and the Settlement Administrator shall also purchase $15,000 worth of electronic banner ad summary notice at market rates as set forth in Paragraph 7.2.10 below.

    7.2.4 **Further information.** The Class Notice shall disclose where Settlement Class Members may direct written or oral inquiries regarding the Settlement, and also where they may obtain additional information about the Action, including instructions on

how Settlement Class Members can access the case docket using PACER or in person at any of the court's locations.

      7.2.5   **Class Loan Number.**  The Class Notice to be addressed to all borrowers of record on each Class Loan shall also include that Class Loan's loan number, as described in the PHH Defendants' records.

      7.2.6   Following issuance of the Preliminary Approval Order, Class Counsel and the PHH Defendants' Counsel may by mutual agreement make any changes in the font, format, or content of the Class Notice or the exhibits thereto any time before the Class Notice is first mailed to Potential Settlement Class Members, so long as such changes do not materially alter the substance of the Class Notice.  Any material substantive changes proposed by Class Counsel and the PHH Defendants' Counsel following issuance of the Preliminary Approval Order must be approved by the Court.

      7.2.7   The Parties shall cause the Settlement Administrator to re-mail any Class Notices returned by the United States Postal Service with a forwarding address and shall continue to do so with respect to any such Class Notice that is received seven (7) days or more prior to the Objection/Exclusion Deadline.  With respect to Class Notices that are returned by the United States Postal Service without a new or forwarding address, the Parties shall cause the Settlement Administrator to as soon as practicable determine whether a valid address can be located through use of the United States Postal Service's National Change of Address database and/or other reasonable means and without undue cost and delay, and then promptly re-mail Class Notices for whom the Settlement Administrator is reasonably able to locate a valid address in accordance herewith, so long as the valid address is obtained by the Settlement Administrator at least seven (7) days or

more prior to the Objection/Exclusion Deadline.

      7.2.8  **Settlement Website.** The Parties shall cause the Settlement Administrator to establish the Settlement Website, whose address shall be included and disclosed in the Class Notice, and which will inform Potential Settlement Class Members of the terms of this Agreement, their rights, dates, and deadlines and related information. The Settlement Website shall include, in .pdf format, a copy of the Operative Complaint, this Agreement and its exhibits, any Preliminary Approval Order entered by the Court, and a copy of the Class Notice, along with such other information as the Court may designate or the Parties may agree to post there. The Settlement Website will be operational and live by the date of the first mailing of the Class Notice. A Spanish-language translation of the Class Notice and Proof of Claim form shall be placed on the Settlement Website by the Settlement Administrator at the time the Settlement Website becomes operational and live.

      7.2.9  The Parties shall cause the Settlement Administrator to establish an automated interactive voice recognition telephone system for the purposes of providing information concerning the nature of the Action, the material terms of the Settlement, and the deadlines and procedures for Potential Settlement Class Members to exercise their opt-out and objection rights and for Claimants to submit Proof of Claim forms. The Class Notice and Settlement Website shall include and disclose the telephone number of this automated interactive voice recognition telephone system.

      7.2.10 The Parties shall cause the Settlement Administrator to make advertisements on the internet directed to Settlement Class Members in form and content recommended by the Settlement Administrator and mutually acceptable to the Parties, with an aggregate cost to the Defendants not to exceed $15,000.

7.3    As further consideration for the dismissal of the Action with prejudice on the merits, the entry of the Release, and the other promises and covenants in this Agreement, the PHH Defendants have also agreed to pay or cause to be paid the Costs of Administration associated with the Settlement, which amount shall be paid separate and apart from the Settlement Fund, subject to the terms of this Agreement.

7.4    Not later than ten (10) days before the date of the Fairness Hearing, the Settlement Administrator, and to the extent necessary the Parties, shall file with the Court a declaration or declarations, based on the personal knowledge of the declarant(s), verifying compliance with these class-wide notice procedures.

7.5    The Parties agree that the PHH Defendants shall have the right to communicate with, and respond to inquiries from, Potential Settlement Class Members in the ordinary course of the PHH Defendants' business, a right which the PHH Defendants expressly reserve.  However, any inquiries about this Agreement or about the Action shall be referred to Class Counsel or to the Settlement Administrator.

7.6    **Media Communications.**

7.6.1    The Parties and their counsel agree to ensure that any comments about or descriptions of this Settlement and Agreement or its value or cost in the media or in any other public forum apart from the Action are accurate.  In addition, the Parties and their counsel agree that until such time as the Final Order and Judgment is entered:

7.6.1.1 Any press releases or public communications regarding the Agreement shall be reviewed and mutually approved and agreed to by Class Counsel and the PHH Defendants' Counsel before dissemination or publication.

7.6.1.2 Class Counsel and the PHH Defendants' Counsel may, after mutual consultation, make only mutually agreeable press communications announcing the Settlement, but shall not otherwise issue any press release or printed or broadcast public communication about this Agreement or the Settlement.

7.6.2   Notwithstanding the foregoing, the PHH Defendants may disclose this Agreement to, and discuss this Agreement with, its parent companies, affiliated companies, customers, and clients, and each of their respective accountants, shareholders, auditors, consultants and investors, as well as with government entities as necessary to comply with applicable law, at any time before or after the Final Order and Judgment.

**8**      **Requests for Exclusion**

8.1      Any Potential Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written "request for exclusion" to the Settlement Administrator at the address provided in the Class Notice, mailed sufficiently in advance to be received by the Settlement Administrator no later than the Objection/Exclusion Deadline.  A written request for exclusion must: (a) contain a caption or title that identifies it as "Request for Exclusion in *Morris v. PHH* (case number 0:20-cv-60633-RS)"; (b) include the Potential Settlement Class Member's name, mailing and email addresses, and contact telephone number; (c) specify that he or she wants to be "excluded from the Settlement Class" and identify the Class Loan number(s) for which he or she seeks exclusion from the Settlement; and (d) be personally signed by the Settlement Class Member.  The requirements for submitting a timely and valid request for exclusion shall be set forth in the Class Notice.

8.2      Each Potential Settlement Class Member who wishes to be excluded from the

Settlement Class must submit his or her own personally signed written request for exclusion.  A single written request for exclusion submitted on behalf of more than one Potential Settlement Class Member will be deemed invalid; provided, however, that an exclusion received from one Potential Settlement Class Member will be deemed and construed as a request for exclusion by all co-debtors, joint-debtors and multiple borrowers on the same Class Loan.

8.3     Unless excluded by separate Order entered by the Court for good cause shown prior to the final approval of this Settlement, any Potential Settlement Class Member who fails to strictly comply with the procedures set forth in this Section 8 for the submission of written requests for exclusion will be deemed to have consented to the jurisdiction of the Court, will be deemed to be part of the Settlement Class, and will be bound by all subsequent proceedings, orders, and judgments in the Action, including, but not limited to, the Release, even if he or she has litigation pending or subsequently initiates litigation against the PHH Defendants relating to the Released Claims.

8.4     The Settlement Administrator shall file with the Court, no later than ten (10) days before the Fairness Hearing, a list reflecting all requests for exclusion it has received.  The list shall also identify which of those requests for exclusion were received late, and which requests for exclusion failed to comply with the requirements of this Section 8.

8.5     Potential Settlement Class Members who exclude themselves from the Settlement Class as set forth in this Section 8 expressly waive any right to the continued pursuit of any objection to the Settlement as set forth in Section 9, or to otherwise pursue any objection, challenge, appeal, dispute, or collateral attack to this Agreement or the Settlement, including to the Settlement's fairness, reasonableness, and adequacy; to the appointment of Class Counsel and Plaintiffs as the representatives of the Settlement Class; to any Service Awards or Attorneys' Fee

and Expense awards; and to the approval of the Claims Administration Process, the Class Notice, and the procedures for disseminating the Class Notice to the Settlement Class.

### 9        Objections to Settlement

9.1      Any Settlement Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or the Service Awards, or to any other aspect or effect of the proposed Settlement, must file with the Court a written statement of his or her objection no later than the Objection/Exclusion Deadline.  To file a written statement of objection, a Settlement Class Member must (a) mail it sufficiently in advance to be received by the Clerk of the Court on or before the Objection/Exclusion Deadline, or (b) file it in person on or before the Objection/Exclusion Deadline at any location of the United States District Court for the Southern District of Florida, except that any objection made by a Settlement Class Member represented by counsel must be filed through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

9.2      A written statement of objection must: (a) contain a caption or title that identifies it as "Objection to Class Settlement in *Morris v. PHH* (case number 0:20-cv-60633-RS)"; (b) include the Settlement Class Members' name, mailing and email addresses, contact telephone number, and Class Loan number(s) for which an objection is being made; (c) set forth the specific reason(s), if any, for each objection, including all legal support the Settlement Class Member wishes to bring to the Court's attention and all factual evidence the Settlement Class Member wishes to introduce in support of the objection; (d) disclose the name and contact information of any and all attorneys representing, advising, or in any way assisting the Settlement Class Member in connection with the preparation or submission of the objection; and (e) be personally signed by the Settlement

47

Class Member.

9.3     A Settlement Class Member may file and serve a written statement of objection either on his own or through an attorney retained at his own expense; provided, however, that a written statement of objection must be personally signed by the Settlement Class Member, regardless of whether he has hired an attorney to represent him.

9.4     Any Settlement Class Member who properly files and serves a timely written objection, as described in this Section 9, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or Service Awards, or to any other aspect or effect of the proposed Settlement.  However, any Settlement Class Member who intends to make an appearance at the Fairness Hearing must include a statement to that effect in his or her objection.  If a Settlement Class Member hires his or her own personal attorney to represent him or her in connection with an objection, and if that attorney wishes to appear at the Fairness Hearing, the attorney must: (a) file a notice of appearance with the Clerk of Court in the Action no later than the Objection/Exclusion Deadline and (b) serve and deliver a copy of that notice of appearance to Class Counsel and the PHH Defendants' Counsel no later than the Objection/Exclusion Deadline.

9.5     Any Settlement Class Member who fails to strictly comply with the provisions and deadlines of this Section 9 shall waive any and all objections to the Settlement, its terms, or the procedures for its approval, shall forfeit any and all rights he or she may have to appear separately and/or to object, and will be deemed to have consented to the jurisdiction of the Court, to be part of the Settlement Class, and to be bound by all subsequent proceedings, orders, and judgments in the Action, including, but not limited to, the Release.

9.6    Any Settlement Class Member who objects to the Settlement but does not file an exclusion request shall, unless he or she is subsequently excluded by Order of the Court, remain a Settlement Class Member and therefore be entitled to all of the benefits, obligations and terms of the Settlement if this Agreement and the terms contained therein are approved and the Final Settlement Date is reached.

9.7    Only Settlement Class Members may object to the Settlement as set forth in this Section 9. Potential Settlement Class Members who are excluded from the Settlement Class, whether by submitting a timely and valid request for exclusion as set forth in Section 8 or by order of the Court, have no standing to object to the Settlement.

**10    Attorneys' Fees and Expenses and Service Awards**

10.1    Class Counsel may petition the Court for an award of Attorneys' Fees and Expenses in an aggregate amount not to exceed thirty percent (30%) of the Settlement Fund.  Class Counsel shall file its motion for an Attorneys' Fees and Expenses award no later than fourteen (14) days before the Objection/Exclusion Deadline. As soon as is practicable after filing, Class Counsel shall cause the Settlement Administrator to post on the Settlement Website all papers filed and served in support of Class Counsel's motion for an award of Attorneys' Fees and Expenses. The PHH Defendants reserve the right to oppose any petition by Class Counsel for Attorneys' Fees and Expenses that the PHH Defendants deem to be unreasonable in nature or amount or otherwise objectionable.

10.2    All attorneys' fees for, and any reimbursement of litigation expenses incurred by, Class Counsel shall be paid out of the Settlement Fund.  Other than making available the Settlement Fund pursuant to the requirements of Section 4, the PHH Defendants and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment

49

of attorneys' fees or expenses to Class Counsel, which Class Counsel and Plaintiff shall seek to have paid only from the Settlement Fund.

10.3    Class Counsel is solely responsible for distributing any Attorneys' Fees and Expenses award to and among all attorneys that may claim entitlement to attorneys' fees or costs in the Action.  It is a condition of this Settlement that the PHH Defendants and the Released Persons shall not be liable to anyone else for any attorneys' fees or costs, or any claim by any other counsel or Settlement Class Member for additional attorneys' fees, incentive or service awards, costs or expenses, relating in any way to the Action, the Settlement, its administration and implementation, any appeals of orders or judgments relating to the Settlement, any objections or challenges to the Settlement, and/or any proceedings on behalf of Settlement Class Members who do not exclude themselves from the Settlement Class based on any of the claims or allegations forming the basis of the Action or any other claims that are defined as Released Claims in this Settlement.  If any other or additional attorneys' fees, costs, incentive or service awards, or expenses to be paid by the PHH Defendants separate from the Settlement Fund are awarded to anyone, including but not limited to any parties other than Plaintiffs and Class Counsel, the PHH Defendants at their sole option may declare this Agreement void as set forth in Section 12.

10.4    Plaintiffs and Class Counsel may also petition the Court for Service Awards to each of the Plaintiffs to be paid from the Settlement Fund, in an amount not exceed $5,000 per Plaintiff, for an aggregate amount not to exceed $20,000.  The purpose of the Service Awards is to compensate Plaintiffs for their respective efforts and risks in bringing and prosecuting the Action on behalf of the Settlement Class Members and achieving the benefits of this Agreement on behalf of the Settlement Class.  The PHH Defendants reserve the right to oppose any petition by Plaintiffs and Class Counsel for Service Awards that the PHH Defendants deem to be unreasonable in nature

or amount or otherwise objectionable.

10.5    Within fourteen (14) days after the later of (a) the Final Settlement Date or (b) receipt of wire instructions from Class Counsel, whichever is later, the Settlement Administrator shall pay Class Counsel from the Settlement Fund any Attorneys' Fees and Expenses and Service Awards that may be awarded by the Court.  Class Counsel shall be solely responsible for supplying the Settlement Administrator with all information required by the Settlement Administrator in order to pay such awards from the Settlement Fund, and to comply with the Settlement Administrator's state and local reporting obligations.  Class Counsel will also be solely responsible for distributing such Service Awards to the four Plaintiffs, in accordance with the terms and provisions of any Order entered by the Court approving such awards.

10.6    In the event the Final Order and Judgment is not entered, or this Agreement and the Settlement do not reach the Final Settlement Date, the PHH Defendants will not be liable for, and shall be under no obligation to pay, any of the Attorneys' Fees and Expenses and Service Awards set forth herein and described in this Agreement.

10.7    The effectiveness of this Agreement and Settlement will not be conditioned upon or delayed by the Court's failure to approve in whole or in part any petition by Plaintiffs and Class Counsel for Attorneys' Fees and Expenses and Service Awards.   The denial, downward modification, or failure to grant any petition by Plaintiffs and Class Counsel for Attorneys' Fees and Expenses and Service Awards shall not constitute grounds for modification or termination of this Agreement or the Settlement proposed herein.

**11      Final Order and Judgment**

11.1    If the Preliminary Approval Order is entered by the Court, after the dissemination of the Class Notice and not later than ten (10) days before the Fairness Hearing, Class Counsel

shall move the Court to enter a Final Order and Judgment.  The Final Order and Judgment shall, among other things:

11.1.1  Find that the Court has personal jurisdiction over the Parties and all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all attached exhibits;

11.1.2  Approve the Agreement and the proposed Settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding upon, and have res judicata and collateral estoppel effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and the Settlement Class Members;

11.1.3  Find that the Class Notice implemented pursuant to the Agreement (a) constituted the best practicable notice under the circumstances; (b) constituted notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement; and to appear at the Fairness Hearing; (c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

11.1.4  Find that Plaintiffs and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

11.1.5  Incorporate the Release set forth in Section 3 of this Agreement, make the Release effective as of the Final Settlement Date, and forever discharge the Released

Persons as set forth in this Agreement;

11.1.6 Permanently bar and enjoin all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

11.1.7 Authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and its implementing documents (including all exhibits to this Agreement) if such changes are not materially inconsistent with the Court's Final Order and Judgment or do not materially limit, or materially and adversely affect, the rights or obligations of the Settlement Class Members under this Agreement;

11.1.8 Order that the Court retains continuing and exclusive jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validation of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; and all other matters pertaining to the Settlement or its implementation and enforcement;

11.1.9 Direct that judgment of dismissal on the merits and with prejudice of the Action (including all individual claims and class action claims presented thereby) shall be final and entered forthwith, without fees or costs to any Person or Party except as provided in this Agreement; and

11.1.10 Without affecting the finality of the Final Order and Judgment for purposes of appeal, retain jurisdiction as to the administration, consummation, enforcement and interpretation of this Agreement and the Final Order and Judgment, and for any other necessary purpose.

## 12      **Modification, Disapproval, Cancellation, or Termination of this Agreement**

12.1     Before entry of the Final Order and Judgment, the terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Order and Judgment, the Parties may by mutual written agreement effect such amendments, modifications or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval of the Court if such changes are not materially inconsistent with the Court's Final Order and Judgment and do not materially limit, or materially and adversely affect, the rights or obligations of Settlement Class Members under this Agreement.

12.2     This Agreement shall terminate at the sole option and discretion of either Party if: (a) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement that the terminating Party in her or its sole judgment and discretion determine(s) is material, including, without limitation, the terms of relief, the findings or conclusions of the Court, the provisions relating to notice (including the proposed plan for the dissemination of notice to the Settlement Class as set forth in Section 7 of this Agreement), the definition of the Settlement Class and the terms and conditions for its certification, and/or the terms of the Release; or (b) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating Party in her or its sole judgment and discretion determine(s) is material.  However, under no circumstances shall the Court's failure to approve, in whole or in part, any petition by Plaintiffs and Class Counsel for a Service Award and Attorneys' Fees and Expenses as set forth in Section 10 of this Agreement provide Plaintiffs or Class Counsel with a basis for terminating this Agreement.

12.3     The PHH Defendants may also in their sole and absolute judgment and discretion elect to terminate this Agreement if: (a) any attorneys' fees and costs, expert fees, costs, expenses, service awards or incentive awards are awarded other than from the Settlement Fund; or (b) requests for exclusion are submitted by Potential Settlement Class Members on 7,500 or more Class Loans.

12.4     Any terminating Party must exercise its option to withdraw from and terminate this Agreement, as provided in this Section 12, by a signed writing served on the other Party no later than thirty-five (35) days after receiving notice of the event prompting the termination unless there is a motion or petition seeking reconsideration, alteration or appeal review of the event, in which case no later than thirty-five (35) days after the final conclusion of any such motion or petition seeking reconsideration, alteration, or appellate review thereof, whichever is later.

12.5     If any of the foregoing termination events occurs, no Party is required for any reason or under any circumstance to exercise that option.

12.6     If the Final Settlement Date does not occur or this Agreement is terminated pursuant to the provisions of this Section 12, then:

12.6.1  This Agreement shall be null and void and shall have no force or effect, through principles of estoppel, res judicata, or otherwise, and no Party to this Agreement shall be bound by any of its terms, except for the terms of this Paragraph 12.6 and its sub-parts;

12.6.2  This Agreement, all of its provisions, and all negotiations, statements, documents orders and proceedings relating to it shall be inadmissible in evidence for any purpose, and shall be without prejudice to the rights of the PHH Defendants, Plaintiffs and the Settlement Class, all of whom shall be restored to their respective positions in the

Action as of the date existing immediately before the signing of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that neither Party's substantive or procedural rights is prejudiced by the attempted Settlement;

12.6.3 Neither this Agreement, nor the Settlement contained in this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement:

12.6.3.1    Is, may be deemed, or shall be used, offered or received against the Released Persons, or each or any of them, as an admission, concession, or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the Settlement amount or of Class Counsel's reasonable attorneys fees' and expenses, or of any alleged wrongdoing, liability, negligence or fault of the Released Persons, or any of them;

12.6.3.2    Is, may be deemed, or shall be used, offered, or received against Plaintiffs, the Settlement Class or each of any of them as an admission, concession, or evidence of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Released Persons, or any of them; and

12.6.3.3    Is, may be deemed, or shall be used, offered, or received against the Released Persons, or each or any of them, as an

56

admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Persons, or of the certifiability of any class, in any bankruptcy, civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal. However, the Settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate or enforce the provisions of this Agreement. If this Agreement is approved by the Court and the Final Settlement Date is reached, any of the Parties or any of the Released Persons may file this Agreement and/or the Final Order and Judgment in any action that may be brought against such Person or Persons in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith estimate, judgment bar or preclusion, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.6.4 Any Settlement-related order(s) or judgments entered in this Action after the date of execution of this Agreement shall be deemed vacated, nunc pro tunc, and shall be without force or effect, and the Parties and the Settlement Class Members shall be returned to the status quo ante with respect to the Action as if they had never entered into this Agreement, and any of the Parties may move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Agreement;

12.6.5 No litigation class will be certified pursuant to or in whole or in part because of or by reference to this Agreement and the Parties stipulate that certification of the Settlement Class will be deemed to have been conditional and made only for purposes of this particular Agreement and for purposes of settlement only, and will therefore be immediately vacated and voided for all other purposes, without prejudice to or effect on subsequent motions for certification of a litigation class on grounds wholly independent of this Agreement. In such event, the PHH Defendants and the PHH Defendants' Counsel will not be deemed to have consented to (and will not be estopped to oppose) the certification of any class for purposes of litigation, and will retain all rights to object to or oppose any motion for certification of a class for purposes of litigation, including certification of the Settlement Class provided for in this Agreement as a litigation class or any other class(es);

12.6.6 The Released Persons expressly do not waive any, but instead affirmatively reserve all, of their defenses, arguments and motions as to all claims that have been or might later be asserted in the Action including, without limitation, the argument that the Action may not be litigated as a class action; and

12.6.7 Plaintiffs and all other Settlement Class Members expressly reserve and do not waive any motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action including, without limitation, any argument concerning class certification, liability and/or available remedies.

**13**      **General Matters and Reservations**

13.1     The obligation of the Parties to implement and conclude the proposed Settlement is and shall be contingent upon each of the following:

13.1.1  Entry by the Court of the Preliminary Approval Order, followed thereafter by the Fairness Hearing and subsequent entry by the Court of the Final Order and Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after the exhaustion and final disposition of any appeal(s) or petition(s) for appellate review; and

13.1.2  Any other conditions stated in this Agreement.

13.2    The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement.  The Parties, Class Counsel, and the PHH Defendants' Counsel agree to cooperate with one another in (a) seeking Court approval of the Preliminary Approval Order, the Agreement, and the Final Order and Judgment and in the event of any appeal(s), to use their reasonable best efforts to effect prompt consummation of this Agreement and the proposed Settlement; (b) promptly agreeing upon and executing all such other documents as may be reasonably required to obtain final approval of the Agreement; and (c) resolving any disputes that may arise in the implementation of the terms of this Agreement.

13.3    The PHH Defendants' execution of this Agreement shall not be construed to release—and the PHH Defendants expressly do not intend to release—any claim they may have or make against any insurer, reinsurer, indemnitor, client, loan investor, prior loan servicers, consultant, or vendor (including, but not limited to, Speedpay Inc., ACI Worldwide, Inc., or Western Union) for any judgment, payment, liability, cost or expense incurred in connection with this Agreement, including, without limitation, for attorneys' fees and costs.

13.4     This Agreement, complete with its exhibits, sets forth the sole and entire agreement and understanding of the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument made in accordance with the provisions of this Agreement and executed by or on behalf of all Parties or their respective successors in interest. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them regarding the subject matter of this Agreement and that in deciding to enter into this Agreement, they each have relied solely upon their own judgment and knowledge.   This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject matter of this Agreement.

13.5     Any inconsistency between this Agreement and the attached exhibits will be resolved in favor of this Agreement.

13.6     To the extent not governed by federal law, this Agreement, any amendments thereto, and any claim, cause of action or dispute arising out of or relating to this Agreement shall be governed by, interpreted under, and enforced in accordance with the laws of the State of Florida without regard to any conflict-of-law principles that may otherwise provide for the application of the law of another jurisdiction.

13.7     Any disagreement and/or action seeking directly or indirectly to challenge, modify, construe, obtain relief from, extend, limit, or enforce this Agreement shall be commenced and maintained only in the Court and in this Action.  Without in any way compromising the finality of the Final Order and Judgment, the Court shall retain exclusive and continuing jurisdiction over all matters related in any way to the Settlement and the Agreement, including but not limited to the implementation of the Settlement and the interpretation, administration, supervision, enforcement

and modification of this Agreement and the relief it provides to Plaintiffs and the Settlement Class Members.

13.8     Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Legal Holidays) express delivery service as follows:

13.8.1  If to the PHH Defendants, then to Michael R. Pennington, Bradley Arant Boult Cummings LLP, 1819 Fifth Avenue North, Birmingham, Alabama 35203 (Telephone: (205) 521-8000; Email: mpennington@bradley.com).

13.8.2  If to Plaintiffs, or the Settlement Class, or Class Counsel, then to Adam M. Moskowitz, The Moskowitz Law Firm, 2 Alhambra Plaza, Suite 601, Coral Gables, FL 33134 (Telephone: (305) 740-1423; Email: adam@moskowitz-law.com)

13.9     Subject to the terms of the Final Order and Judgment, no certifications by the Parties regarding their compliance with the terms of the Settlement and this Agreement will be required.  Any dispute as to the Parties' compliance with their obligations under the Settlement and this Agreement shall be brought and resolved only in the Action and only by the Court, and applicable appellate courts, and in no other action or proceeding.

13.10   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Legal Holiday (as defined in Rule 6(a)(6) of the Federal Rules of Civil Procedure), or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court

inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

13.11   The time periods and dates described in this Agreement are subject to the Court's approval.   These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Settlement Class.   The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

13.12   Neither the Settlement Class, Plaintiffs, Class Counsel, the PHH Defendants nor the PHH Defendants' Counsel shall be deemed to be the drafter of this Agreement or of any particular provision, nor shall any of them argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction.   All Parties agree that this Agreement was drafted by counsel for the Parties during and through extensive arm's length negotiations with the aid of a neutral mediator.   No parol or other evidence may be offered to explain, construe, contradict, or clarify this Agreement's terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

13.13   The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.   In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions, or any documents created for the purposes of mediation, negotiation, or confirmatory due diligence or informal discovery, whether or not exchanged with opposing counsel, in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other

action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to effectuate or enforce this Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any proposition of fact or law or of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Persons, Plaintiffs or the Settlement Class or as a waiver by the Released Persons, Plaintiffs or the Settlement Class of any applicable privileges or immunities (including, without limitation, the attorney-client privilege or work product immunity), claims or defenses.

13.14   Plaintiffs each expressly affirm that the allegations contained in the complaints, including the Operative Complaint, were made in good faith and have a basis in fact, but that he considers it desirable for the Action to be settled and dismissed because of the risks associated with continued litigation and the substantial benefits that the Settlement will provide to the Settlement Class Members.

13.15   The waiver by one of the Parties of any breach of this Agreement by another of the Parties shall not be deemed a waiver of any other prior or subsequent breaches of this Agreement.

13.16   If one Party to this Agreement considers the other Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

13.17   No opinion concerning the tax consequences, if any, of this Agreement and Settlement as to individual Settlement Class Members or anyone else is being given or will be given by the PHH Defendants, the PHH Defendants' Counsel, Plaintiffs or Class Counsel; nor is

any representation or warranty in this regard made by virtue of this Agreement or Settlement.  The Class Notice will direct Settlement Class Members to consult their own tax advisor(s) regarding the tax consequences of the Settlement and this Agreement, and any tax reporting obligations they may have with respect thereto.  Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.  Nothing in this Agreement or in the Class Notice is to be construed as tax advice of any kind.

13.18   Headings contained in this Agreement are used for the purpose of convenience only and are not intended to alter or vary the construction and meaning of this Agreement.

13.19   The recitals of this Agreement are incorporated by this reference and are part of this Agreement.

13.20   This Agreement shall be equally binding upon and inure to the benefit of the Plaintiffs and the Settlement Class Members, their representatives, heirs, successors and assigns, as upon and to the benefit of the PHH Defendants.

13.21   Nothing herein shall be deemed a waiver of any prior release individually executed between the PHH Defendants and any Settlement Class Member.

13.22   This Agreement may be signed with a facsimile or PDF format signature and in counterparts, each of which shall constitute a duplicate original.

**[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGES FOLLOW.]**

Agreed to on the date(s) indicated below.

Dated: _____, 2020      By:    _____

                                    VINCENT J. MORRIS, individually and on behalf of the Settlement Class

Dated: _____, 2020      By:    _____

                                    STEVEN SIMMONS, individually and on behalf of the Settlement Class

Dated: _____, 2020      By:    _____

                                    YOLANDA UPTON, individually and on behalf of the Settlement Class

Dated: _____, 2020      By:    _____

                                    MICHAEL LUZZI, individually and on behalf of the Settlement Class

Dated: _____, 2020      PHH MORTGAGE CORPORATION

                                 By:    _____

                                 Its:    _____

APPROVED AS TO FORM BY COUNSEL:

Dated: _August 24_, 2020      THE MOSKOWITZ LAW FIRM
                                 Attorneys for Plaintiff Morris, Plaintiff Simmons, Plaintiff Upton, Plaintiff Luzzi, and the Settlement Class

                                 By:    _____
                                      Adam M. Moskowitz

Dated: _____, 2020      BRADLEY ARANT BOULT CUMMINGS LLP
                                 Attorneys for Defendant PHH Mortgage Corporation

                                 By:    _____
                                    Michael R. Pennington

Agreed to on the date(s) indicated below.

Dated: _____, 2020          By:    _____
                                       VINCENT J. MORRIS, individually and on behalf
                                       of the Settlement Class

Dated: _____, 2020          By:    _____
                                       STEVEN SIMMONS, individually and on behalf of
                                       the Settlement Class

Dated: _____, 2020          By:    _____
                                       YOLANDA UPTON, individually and on behalf of
                                       the Settlement Class

Dated: _____, 2020          By:    _____
                                       MICHAEL LUZZI, individually and on behalf of
                                       the Settlement Class

Dated: August 25, 2020          PHH MORTGAGE CORPORATION

                                By:    /s/ Jason A. Risk_____

                                       Vice President, Assistant General Counsel,
                                Its:   Ocwen Financial Corp._____

APPROVED AS TO FORM BY COUNSEL:

Dated: _____, 2020          THE MOSKOWITZ LAW FIRM
                                Attorneys for Plaintiff Morris, Plaintiff Simmons, Plaintiff
                                Upton, Plaintiff Luzzi, and the Settlement Class

                                By:    _____
                                       Adam M. Moskowitz

Dated: Aug- 25, 2020            BRADLEY ARANT BOULT CUMMINGS LLP
                                Attorneys for Defendant PHH Mortgage Corporation

                                By:    _____
                                       Michael R. Pennington

Agreed to on the date(s) indicated below.

Dated: _____, 2020          By:   _____
                                      VINCENT J. MORRIS, individually and on behalf
                                      of the Settlement Class

Dated: _____, 2020          By:   _____
                                      STEVEN SIMMONS, individually and on behalf of
                                      the Settlement Class

Dated: _____, 2020          By:   _____
                                      YOLANDA UPTON, individually and on behalf of
                                      the Settlement Class

Dated: _____, 2020          By:   _____
                                      MICHAEL LUZZI, individually and on behalf of
                                      the Settlement Class

Dated: _____, 2020          PHH MORTGAGE CORPORATION

                                By:   _____

                                Its:  _____

APPROVED AS TO FORM BY COUNSEL:

Dated: _____, 2020          THE MOSKOWITZ LAW FIRM
                                Attorneys for Plaintiff Morris, Plaintiff Simmons, Plaintiff
                                Upton, Plaintiff Luzzi, and the Settlement Class

                                By:   _____
                                      Adam M. Moskowitz

Dated: _____, 2020          BRADLEY ARANT BOULT CUMMINGS LLP
                                Attorneys for Defendant PHH Mortgage Corporation

                                By:   _____
                                      Michael R. Pennington

65

Agreed to on the date(s) indicated below.

Dated: _____, 2020     By: _____

VINCENT J. MORRIS, individually and on behalf of the Settlement Class

Dated: _____, 2020     By: _____

STEVEN SIMMONS, individually and on behalf of the Settlement Class

Dated: _____, 2020     By: _____

YOLANDA UPTON, individually and on behalf of the Settlement Class

Dated: _____, 2020     By: _____

MICHAEL LUZZI, individually and on behalf of the Settlement Class

Dated: _____, 2020     PHH MORTGAGE CORPORATION

By: _____

Its: _____

APPROVED AS TO FORM BY COUNSEL:

Dated: _____, 2020     THE MOSKOWITZ LAW FIRM
Attorneys for Plaintiff Morris, Plaintiff Simmons, Plaintiff Upton, Plaintiff Luzzi, and the Settlement Class

By: _____
Adam M. Moskowitz

Dated: _____, 2020     BRADLEY ARANT BOULT CUMMINGS LLP
Attorneys for Defendant PHH Mortgage Corporation

By: _____
Michael R. Pennington

Agreed to on the date(s) indicated below.


Dated: _____, 2020          By: _____
                                    VINCENT J. MORRIS, individually and on behalf
                                    of the Settlement Class

Dated: _____, 2020          By: _____
                                    STEVEN SIMMONS, individually and on behalf of
                                    the Settlement Class

Dated: _____, 2020          By: *Yolanda G. Upton*
                                    YOLANDA UPTON, individually and on behalf of
                                    the Settlement Class

Dated: _____, 2020          By: _____
                                    MICHAEL LUZZI, individually and on behalf of
                                    the Settlement Class


Dated: _____, 2020          PHH MORTGAGE CORPORATION

                               By: _____

                               Its: _____


APPROVED AS TO FORM BY COUNSEL:

Dated: _____, 2020          THE MOSKOWITZ LAW FIRM
                               Attorneys for Plaintiff Morris, Plaintiff Simmons, Plaintiff
                               Upton, Plaintiff Luzzi, and the Settlement Class

                               By: _____
                                    Adam M. Moskowitz


Dated: _____, 2020          BRADLEY ARANT BOULT CUMMINGS LLP
                               Attorneys for Defendant PHH Mortgage Corporation

                               By: _____
                                    Michael R. Pennington


66

Agreed to on the date(s) indicated below.


Dated: _____, 2020          By:     _____
                                         VINCENT J. MORRIS, individually and on behalf
                                         of the Settlement Class

Dated: _____, 2020          By:     _____
                                         STEVEN SIMMONS, individually and on behalf of
                                         the Settlement Class

Dated: _____, 2020          By:     _____
                                         YOLANDA UPTON, individually and on behalf of
                                         the Settlement Class

Dated: 8/24, 2020               By:     _____
                                         MICHAEL LUZZI, individually and on behalf of
                                         the Settlement Class


Dated: _____, 2020          PHH MORTGAGE CORPORATION

                                By:     _____


                                Its:    _____


APPROVED AS TO FORM BY COUNSEL:

Dated: _____, 2020          THE MOSKOWITZ LAW FIRM
                                Attorneys for Plaintiff Morris, Plaintiff Simmons, Plaintiff
                                Upton, Plaintiff Luzzi, and the Settlement Class

                                By:     _____
                                         Adam M. Moskowitz

Dated: _____, 2020          BRADLEY ARANT BOULT CUMMINGS LLP
                                Attorneys for Defendant PHH Mortgage Corporation

                                By:     _____
                                         Michael R. Pennington


65

# Exhibit A

UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

# A class action settlement may affect your rights if you paid Ocwen or PHH a fee to make a mortgage loan payment by telephone, through an interactive voice response telephone system, or through the internet on or after March 25, 2016

*A federal court authorized this notice. This is <u>not</u> a solicitation from a lawyer.*

**PARA VER ESTE AVISO EN ESPAÑOL, VISITE www.class-settlement.com/[[____]].com**

A settlement of $12,587,048.58 has been reached in a class action lawsuit alleging that Ocwen Loan Servicing, LLC ("Ocwen") and PHH Mortgage Corporation ("PHH," and with Ocwen, "Defendants" or the "PHH Defendants") violated the Fair Debt Collection Practices Act ("FDCPA") and breached borrower mortgage agreements or deeds of trust by charging fees to borrowers for making loan payments by methods not specified for in their loan documents, such as by telephone, through interactive voice response telephone system ("IVR"), or through the internet ("Convenience Fees").   For much of the period at issue in this lawsuit, Ocwen and PHH used the "Speedpay™" service to facilitate these kinds of payments, so the Convenience Fees charged by Ocwen and PHH were often referred to as "Speedpay" fees. Ocwen and PHH deny that they did anything wrong and the Court has not decided who is right. Ocwen, PHH, and the Plaintiffs, Vincent Morris, Steven Simmons, Yolanda Upton, and Michael Luzzi (together with PHH and Ocwen, the "Parties"), agreed to enter into this settlement to avoid the uncertainties, delays, and expenses of ongoing litigation, while providing class members with definite benefits now. **The purpose of this notice is to inform you of the class action and the proposed settlement so that you may decide what to do.**

## QUICK SUMMARY OF SETTLEMENT

**WHO'S INCLUDED?  Ocwen's and PHH's records indicate that you may be a "Settlement Class Member."** The "Settlement Class" consists of all borrowers on home mortgage loans serviced by Ocwen or PHH who paid a Convenience Fee to Ocwen or PHH from March 25, 2016 through August 21, 2020 for making a loan payment by telephone, IVR, or the internet.

**WHAT ARE THE SETTLEMENT TERMS?**

> **What the Settlement Class is getting:**

> Monetary Relief. Defendants have agreed to create a $12,587,048.58 settlement fund (the "Settlement Fund"), which will be distributed to Settlement Class Members (after first deducting any fees, expenses or service awards that the Court awards Plaintiffs and the attorneys representing the Settlement Class ("Class Counsel")).  The Settlement Fund will be distributed on a loan-by-loan basis. If your Class Loan was serviced but not owned by Defendants and was 30 days or more delinquent when Ocwen or PHH acquired servicing rights (hereinafter, an "FDCPA Class Loan"), then you will be entitled to a 28% refund of the Convenience Fees paid to Defendants since March 25, 2019, and 18% of the Convenience Fees paid to Defendants between March 25, 2016 and March 24, 2019. All other Settlement Class Members will receive refunds of 18% of the Convenience Fees paid to Ocwen or PHH during the relevant time period. Every Settlement Class Member's refund, however, will be reduced by the same percentage as the combined percentage of the Settlement Fund awarded to Class Counsel and Plaintiffs as fees, expenses, or service awards. **The last page of this notice states if your Class Loan is an FDCPA Class Loan.**

> Other Relief. PHH has also agreed to reduce its Convenience Fee for internet payments from $7.50 to $6.50 and to keep all of its Convenience Fee amounts at or below their current levels until at least August 25, 2023.  PHH will also add additional disclosures to its website concerning alternative payment methods that could have lower fees or no fees.

**What the Settlement Class is giving up:**  In return for the relief that Defendants are providing, Settlement Class Members are deemed to have agreed to the following:

- **A release of any claims that they may have against Ocwen or PHH relating in any way to their payment of Convenience Fees during the relevant time period;** and

- **An amendment to their promissory notes for any loans that PHH still services to expressly authorize PHH to accept payments in the future by telephone, internet, and other optional methods in exchange for the assessment of a Convenience Fee.**  The settlement requires PHH to disclose to Settlement Class Members that they will be assessed a Convenience Fee (along with certain other information) before any payment is made in the future by telephone, internet, or other optional method.  See Part 10 below for more information concerning what the Settlement Class is giving up in the settlement.

**HOW CAN I GET PAYMENT?**  If your loan is currently being serviced by PHH, you do not need to take any action to share in the relief offered by the settlement. If your loan is not currently being serviced by PHH, then you may need to submit a Proof of Claim form, as set forth below in Part 7.

**WHAT ARE MY OTHER OPTIONS?**

**You can exclude yourself:** If you do not want to be bound by the settlement, you must exclude yourself by **MONTH DAY, 2021**.  Part 11 below explains what you need to do to exclude yourself.  If you do not exclude yourself, and the settlement is given final approval by the Court, you will remain a member of the Settlement Class, you will receive your individual allocation of the $12,587,048.58 settlement fund if you are a current PHH borrower and will have the opportunity to claim your individual allocation if you are not, you will be bound by the settlement, including the release of claims against Ocwen and PHH, and you will be deemed to have amended the promissory note of any loan of yours that PHH still services to allow PHH (or any subsequent servicer) to collect Convenience Fees for telephone, internet, and other payment methods not originally specified in your loan documents.

**You can object:** You alternatively may object to the settlement by **MONTH DAY, 2021**.   Part 16 below explains what you need to do to object to the settlement.  The Court will hold a hearing on **MONTH DAY, 2021** beginning at **0:00 a.m.** to consider whether to finally approve the settlement, as well as any request for attorneys' fees by class counsel (the "Fairness Hearing").  If you object, Part 20 explains how you may ask the Court to speak at the Fairness Hearing.  Persons who exclude themselves from the Settlement Class will not be bound cannot file an objection and cannot speak at the Fairness Hearing.

The rest of this Notice provides you with a more detailed summary of the settlement, and also more fully describes your legal rights and options.  For even more information, please visit www.class-settlement.com/[[    ]] (the "Settlement Website"), at which you may download a complete copy of the "Stipulation of Settlement and Release" (together with all attached exhibits, the "Settlement").  *Please read all of this Notice carefully and in its entirety because your legal rights may be affected whether you act or don't act.*

## BASIC INFORMATION

### 1. Why did I get this Notice?

If this Notice was addressed to you, then according to Defendants' records you paid a fee to make one or more mortgage loan payments to Ocwen or PHH by telephone, through an IVR, or through the internet on or after March 25, 2016.

You have received this Notice because you have a right to know about a proposed Settlement of *Morris v. PHH Mortgage Corporation*, case number 0:20-cv-60633-RS, pending in the United States District Court for the Southern District of Florida (the "Action").  This Notice describes the lawsuit, the Settlement, your legal rights, what relief is being offered to you, how that relief will be distributed and other important information.  This Notice only summarizes

the Settlement, the full terms of which are available for review at www.class-settlement.com/[[  ]].  If there is any conflict between this Notice and the Settlement, the Settlement governs.  You should review the Settlement before deciding what to do.  Please share this Notice with any co-borrower(s) on your loan(s).

## 2. What is this lawsuit about?

Plaintiffs allege that Ocwen and PHH violated Section 1692f(1) of the FDCPA and breached borrower mortgage agreements and deeds of trust by charging Convenience Fees to borrowers for making loan payments by telephone, through IVR, or through the internet.  Plaintiffs contend that such fees were unlawful because they were not expressly authorized by the Settlement Class Members' underlying loan documents.  Defendants deny that they did anything wrong because all customers who were charged a Convenience Fee (a) were informed in advance that such fees were optional and avoidable, and would result in a disclosed charge amount, and (b) were required to expressly consent to the Convenience Fee before it was charged.  Defendants contend that under both the plain language of the FDCPA and regulatory guidance issued by the Federal Trade Commission, separate fees for a separate, optional, entirely avoidable, and agreed-upon service do not violate the FDCPA and, by extension, do not violate borrower mortgage agreements and deeds of trust. Defendants also contend that Convenience Fees are permitted by state and federal law.

Section 1692k of the FDCPA provides that prevailing plaintiffs may recover any actual damages sustained as a result of a defendant's violation of the FDCPA, if any, along with the costs of the action and a reasonable attorney's fee as determined by the court.  In the case of class actions, members of a prevailing class may also *share in* a classwide statutory damage award of *up to* the lesser of $500,000 or 1 per centum of the net worth of the debt collector.  Damages are also potentially available for Plaintiffs' breach of contract claims.

This Settlement is a compromise of these and other claims described in the Settlement, as explained in Part 10 below.  Meanwhile, Part 22 explains how you may obtain more information about the claims in this Action and Defendants' response to those claims.  You can also visit www.class-settlement.com/[[  ]] to review Plaintiffs' operative complaint, the Parties' proposed Settlement, and other documents related to this Action.

## 3. Why is this lawsuit a class action?

In a class action, one or more people, called class representatives (here Plaintiffs Vincent Morris, Steven Simmons, Yolanda Upton, and Michael Luzzi), sue on behalf of all other people who have similar claims.  Together, all of these people are called a class, and the persons in it are called class members.  In a class action, one court resolves the claims of all class members, except for those who ask in writing to be excluded from the class.  The Honorable Rodney Smith of the United States District Court for the Southern District of Florida is in charge of all aspects of this case, and has already given preliminarily approval to the Settlement.  Nevertheless, because the Settlement will determine the rights of the Settlement Class, the Parties must make the best effort practicable to send all of the Settlement Class Members Notice before the Court can consider entering final approval of the Settlement and making it effective.

The Court has conditionally certified the Settlement Class for settlement purposes only.  If the Settlement is not given final approval, or otherwise fails to become final, or is terminated by the Parties for any of the reasons set forth in Section 12 of the Settlement, the Settlement will become void, the Settlement Class will no longer remain certified, and the Action will proceed as if there had been no Settlement and no certification of the Settlement Class.

## 4. Why is there a Settlement?

The Court has not decided whether Plaintiffs or Defendants would win this case.  Instead, both sides agreed to the Settlement before any judgment was entered in the case.  That way, the Parties avoid the uncertainties and expenses of ongoing litigation, and the delays of a trial and possible appeals, while providing Settlement Class Members with definite benefits now rather than the uncertain benefits potentially available from fully contested litigation years from now (if at all).  Plaintiffs and Class Counsel believe the Settlement is in the best interests of the Settlement Class because it offers relief now, while at the same time allowing anyone who wishes to pursue their own individual claims against Defendants to exclude themselves from the Settlement Class.

## WHO IS IN THE SETTLEMENT

| 5. How do I know if I am part of the Settlement? |
| --- |

The Court decided that everyone who fits the following description is a member of the Settlement Class:

> all borrowers on home mortgage loans in the United States that were serviced by either or both of the PHH Defendants who, according to the PHH Defendants' records, were charged and paid a Convenience Fee for making a loan payment by telephone, IVR, or the internet between March 25, 2016 and August 21, 2020.

Excluded from the Settlement Class are: (a) borrowers whose loans were included as class loans in the class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action, other than this Action, initiated against either Ocwen or PHH on or before August 7, 2020 asserting any claim arising from the payment of Convenience Fees to Ocwen or PHH; (c) borrowers whose promissory note and/or mortgage agreement, deed of trust, or other like security instrument has already been amended to add language affirmatively and explicitly stating that the lender and any servicing agent may collect "Convenience Fees" for payments made by telephone, IVR, or online; (d) the Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

As noted in Part 1, if this Notice was addressed to you, then according to Defendants' records, you are a member of the Settlement Class unless you timely and properly exclude yourself from the Settlement Class as described in Part 11 of this Notice.

## WHAT YOU CAN GET UNDER THE SETTLEMENT

| 6. What relief does the Settlement provide? |
| --- |

Defendants have agreed to create the $12,587,048.58 Settlement Fund which, if the Settlement obtains final approval, will be used first to pay any Court-awarded fees and expenses to Class Counsel and service awards to the Plaintiffs. Following the payment of any such fees, expenses, and service awards, the remaining balance of the Settlement Fund will be divided and distributed among Plaintiffs and the rest of the Settlement Class Members. The distributions of the Settlement Fund to Settlement Class Members are called "Individual Allocations."

Individual Allocations will be calculated on a loan-by-loan basis, not on a borrower-by-borrower basis. Every loan for which a Settlement Class Member paid a Convenience Fee to Ocwen or PHH during the relevant time period (each, a "Class Loan") will receive an Individual Allocation from the Settlement Fund, calculated as follows. Class Loans that were serviced but not owned by Defendants and which were 30 or more days delinquent when Defendants acquired servicing rights shall be treated as FDCPA Class Loans. FDCPA Class Loans shall be entitled to a 28% refund of the Convenience Fees paid to Defendants since March 25, 2019, and 18% of the Convenience Fees paid to Defendants between March 25, 2016 and March 24, 2019. All other Settlement Class Members will receive refunds of 18% of the Convenience Fees paid to Defendants from March 25, 2016 through August 21, 2020. **The last page of this notice states if your Class Loan is an FDCPA Class Loan.**

Every Settlement Class Member's refund, however, will be reduced by the same percentage as the combined percentage of the Settlement Fund awarded to Class Counsel and Plaintiffs as fees, expenses, or service awards. In other words, if the Court's award of fees, expenses, and service awards, in the aggregate, amounts to 30% of the Settlement Fund, then each Class Loan's refund shall be reduced by 30%. Each Class Loan will be entitled to only one Individual Allocation. Co-borrowers, joint-borrowers and multiple borrowers on a single Class Loan are not each entitled to receive separate Individual Allocations on the same Class Loan.

The actual amount that each Settlement Class Member will receive as an Individual Allocation will ultimately depend on a variety of factors, including the delinquency of the Class Loan at the time that Defendants began servicing the loan, the number and total amount of Convenience Fees paid on each Class Loan, and whether and in what amounts the Court will approve any attorneys' fees and expenses to Class Counsel and service awards to Plaintiffs.

## 7.  How can I get such relief?

If your loan is currently being serviced by PHH, then as long as you do not exclude yourself from the Settlement Class, you will automatically receive an Individual Allocation, and you do not need to take further action.

If your loan is not currently being serviced by PHH and was not being serviced by PHH as of [MONTH DAY, YEAR], then you must submit a Proof of Claim to the Settlement Administrator by June 30, 2021. The Proof of Claim form that must be filled out, signed, and submitted is included with this Class Notice. To submit the Proof of Claim form, you may mail it to the Settlement Administrator at Class-Settlement.com, P.O. Box [[__]], Hicksville, NY 11802-[__], or you may submit it online at the Settlement Website, www.class-settlement.com/[[   ]].   If you have any doubts about whether you must submit a Proof of Claim form to obtain your Individual Allocation, please contact the Settlement Administrator at 1-877-_____ or Class-Settlement.com, P.O. Box [[__]], Hicksville, NY 11802-[__].

## 8.  When would I get such relief and how will it be distributed to me?

As described in Part 18, the Court will hold a Fairness Hearing on MONTH DAY, YEAR to decide whether to grant final approval to the Settlement.  The Court must finally approve the Settlement before any relief will be distributed, and it will only do so after finding that the Settlement is fair, reasonable and adequate.  In addition, any final approval order the Court may enter may be subject to appeal.  If there are any such appeals, resolving them takes time— sometimes more than a year.  Finally, it is possible that this Settlement may be terminated for other reasons, such as those set forth in Section 12 of the Settlement (available for review at www.class-settlement.com/[[   ]]).  Please be patient.

The "Final Settlement Date," as defined in the Settlement, is ten days after the order finally approving the settlement becomes non-appealable and any appeals are then resolved in favor of the Settlement.  Individual Allocations are expected to be distributed within 75 days of the Final Settlement Date (or 75 days following your timely submission of a valid Proof of Claim, if you are required to do so).  The Settlement Website will be updated from time to time to reflect the progress of the Settlement.

How Individual Allocations will be paid out to you depends in large part on whether PHH is still servicing your loan at the time Individual Allocations are distributed.  If PHH is still servicing your Class Loan at the time of distribution, your Individual Allocation will be distributed to you in the form of a credit (*i.e.*, a reduction) first to any unpaid late fee balance and then to the unpaid principal balance of your Class Loan, with the following exceptions: if your Class Loan is either in foreclosure or PHH otherwise determines that it cannot reasonably apply your Individual Allocation in the form of a credit, then a check for your Individual Allocation will be mailed to you, made payable jointly to all borrowers of record on your Class Loan, and addressed to the mailing address of record on your Class Loan. If your Class Loan is no longer being serviced by PHH at the time of distribution, then your Individual Allocation also will be distributed by check.

NOTE:  All checks will expire and become void 180 days after they are issued and will be considered unclaimed funds.  Unclaimed funds will be considered a waiver by you and any co-borrowers on your Class Loan of the right to receive Individual Allocation relief.  Individual Allocation relief that remains unclaimed or undeliverable 240 days after the Final Settlement Date despite reasonable efforts to locate you will revert back to Defendants.

## 9.  Will the Settlement have any tax consequences on me?

Neither the Court nor the Parties (including their counsel) can advise you about what, if any, tax consequences might arise for you from the Settlement.  You are encouraged to consult with your own tax advisor to determine whether any potential tax consequences could arise from your receipt of an Individual Allocation.

## 10.  Am I giving anything up by remaining in the Settlement Class?

Unless you exclude yourself, you will remain in the Settlement Class, and that means that if the Settlement is given final approval and reaches the Final Settlement Date then you:

> shall be deemed to have released, and by operation of the Final Order and Judgment upon the Effective Date shall have released, all Released Claims against all of the Released Persons, separately and severally.  In connection therewith, upon the Effective Date, each of the Releasing Persons: (i) shall be deemed to have, and by operation of the Final Order and Judgment, shall have, fully, finally, and forever waived, released, relinquished, remised, acquitted, and discharged to the fullest extent permitted by law all Released Claims against each and all of the Released Persons; (ii) shall forever be barred and enjoined from commencing, instituting, prosecuting, or participating in any fashion in any and all claims, causes of action, suits, or any other proceeding in any court of law or equity, arbitration tribunal, or other forum of any kind, directly, representatively, derivatively, or in any other capacity and wherever filed, any Released Claims against any of the Released Persons; and (iii) shall be deemed to have agreed and covenanted not to sue any of the Released Persons with respect to any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Person related in any way to any Released Claims.

This release will include claims that Settlement Class Members do not know or suspect to exist in their favor at the time final approval may be granted to the Settlement, if those claims arise from, are based on, or relate to the Released Claims.  If the Settlement is given final approval and reaches the Final Settlement Date, all Settlement Class Members will be deemed to have knowingly and voluntarily waived, relinquished and released the protections of any laws that would limit this release, including, without limitation, Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The phrase "Released Claims" means and refers to:

> each and all of the claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages (whether punitive, statutory, or compensatory and whether liquidated or unliquidated) losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any regulatory bulletin, guidelines, handbook, opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, that relate to or arise out of Convenience Fees charged by the PHH Defendants to Settlement Class Members, during the period from March 25, 2016 through and including August 21, 2020

The phrase "Released Persons" means and refers to:

> (a) PHH, Ocwen, and any and all of their current or former predecessors, successors, assigns, parent corporations, subsidiaries, divisions, related and affiliated companies and entities, associates, vendors, service providers, software licensors and licensees, clients and customers, principals, stockholders, directors, officers, partners, principals, members, employees, attorneys, consultants, independent contractors, representatives, and agents, transferee servicers, and all individuals or entities acting by, through, under, or in concert with any of them; and (b) any trustee of a mortgage securitization trust which includes loans on which Settlement Class Members are borrowers, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities

As additional consideration for the Settlement, each Settlement Class Member shall further be deemed to have agreed that, by virtue of the Settlement and effective as of August 21, 2020, the promissory note and mortgage of each Class Loan serviced by the PHH on which he or she is a borrower shall be deemed amended to include the following language to expressly authorize the assessment of Convenience Fees for these voluntary payment methods:

1.  Borrower(s) acknowledge(s) the Lender, or a servicing agent collecting payments under the Note, may in its discretion, choose to accept payments made through means not specifically provided for in the Note.

2.  Borrower(s) acknowledge(s) and agree(s) the Lender, or a servicing agent collecting payments under the Note, may charge Borrower(s) fees of up to (and not exceeding) **$17.50** per payment for the use of telephonic, IVR, and internet payment methods and any other payment method not specifically provided for by the Note until **August 25, 2023** and up to but not exceeding **$19.50** per payment for those same payment methods thereafter, and such fees are not limited to and are not represented to be limited to the costs of processing such payments or making such payment methods available.

3.  Borrower(s) hereby agree(s) such fees may include, but are not limited to, fees, charges, and expenses related to payments made over the telephone with the assistance of a representative, payments made through an automated telephone system, payments made online, and other payment methods not expressly provided for by the Note.

4.  Borrower(s) acknowledge(s) and agree(s) that if and to the extent the personal liability of a Borrower under the Note has been discharged in bankruptcy prior to the effective date of this Amendment, then such Borrower has no personal obligation to repay the debt associated with the Note, this Amendment to the Note does not reimpose or revive any discharged personal liability with respect to the Note, and this Amendment will not to be construed as a waiver of Borrower(s)' discharge or an attempt to collect against the Borrower(s) personally. With respect to any such discharged personal liability, Lender's sole recourse is the enforcement—subject to applicable law—of Lender's security interest in the property described in the mortgage, and any payments made by Borrower(s), including any fees for the use of any payment methods not specifically provided for by the Note, are voluntary and not the result of any demand for payment of discharged debt.

5.  Borrower(s) acknowledge(s) and agree(s) that if and to the extent Borrower(s) is (are) in an active bankruptcy case, this Amendment and any payments made by Borrower(s), including any fees for the use of any payment methods not specifically provided for by the Note, are subject to applicable bankruptcy law and applicable bankruptcy court orders, and Lender is not making a demand herein for any payment from any such Borrower(s).

If for any reason the foregoing is deemed ineffective to expressly authorize such Convenience Fees for purposes of any state or federal statute, law or regulation, then upon request by Defendants, each such Settlement Class Member hereby agrees to execute any and all documents as may be sufficient or necessary to authorize such Convenience Fees under such statute, law or regulation, and such documents shall be effective as of August 21, 2020.

In each payment transaction involving a Convenience Fee following the Final Settlement Date, PHH shall use its best efforts to cause its customer service representatives, telephone systems, scripts or websites involved to disclose, in substance, the following information to each Settlement Class Member, except as otherwise hereafter prescribed or proscribed by law:

a.   the exact fee to be charged for the payment method chosen by the borrower;

b.     the fact that the fee may include an amount retained by the PHH Defendants in excess of its costs;

c.     the fact that the borrower is not required to use the payment method for which a fee is being charged;

d.     the payment methods for which the PHH Defendants do not charge a fee;

e.     any other optional payment methods accepted by the PHH Defendants that involve a lower fee; and

f.     when a material consideration in the payment transaction at issue, the applicable deadline by which payment must be received in order to avoid a late fee.

The full terms of the Settlement's release are set forth in Section 3 of the Settlement, and the full terms of the loan amendment are set forth in Section 5 of the Settlement, which is available for review at www.class-settlement.com/[[ ]].

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 11.  How do I exclude myself from the Settlement Class?

If you don't want to be part of the Settlement, or if you want to keep the right to sue or continue suing Ocwen or PHH on your own about the Released Claims, then you must take steps to exclude yourself from the Settlement Class. This is called excluding yourself, or "opting out." If you exclude yourself from the Settlement Class, you will not be bound by the Settlement and will not receive any relief offered by the Settlement, but you will be free to file and then pursue your own individual lawsuit regarding the Released Claims if you wish to do so. However, the Court has ruled that neither the Settlement, nor this Notice, nor the Court's preliminary approval order may be used as evidence in such individual lawsuits. You should be aware that if you do exclude yourself and you plan to file your own action against Defendants, the statute of limitations applicable to your claim may prevent you from separately suing Defendants unless you act promptly.

To exclude yourself, you must mail a letter sufficiently in advance to be received by the "Settlement Administrator," Class-Settlement.com, no later than MONTH DAY, YEAR, saying that you want to be excluded from the Settlement Class. Your letter must be addressed to Morris v. PHH, c/o Class-Settlement.com, P.O. Box [[__]], Hicksville, NY 11802-[__], and must: (a) contain a caption or title that identifies it as "Request for Exclusion in *Morris v. PHH* (case number 0:20-cv-60633-RS);" (b) include your name, mailing and e-mail addresses, and contact telephone number; (c) specify that you want to be excluded from the Settlement Class and identify the Class Loan number(s) for which you seek exclusion from the Settlement; and (d) be *personally* signed by you. For your convenience, your Class Loan number or numbers are included on the back of this Notice.

NOTE: If your request for exclusion is late or incomplete, it will not be valid and you will remain part of the Settlement Class, you will still be bound by the Settlement and all other orders and judgments in the Action, and you will not be able to participate in any other lawsuits against Defendants and the Released Persons based on the Released Claims. If you submit a request for exclusion, it will be deemed as a request for exclusion by you and any other co-borrowers, joint-borrowers and multiple borrowers on the Class Loan(s) identified in the exclusion request.

### 12.  If I don't exclude myself, can I sue Ocwen or PHH later for the same thing?

No. If you do not exclude yourself from the Settlement Class and the Settlement is given final approval and reaches the Final Settlement Date, you will give up the right to sue Defendants and the Released Persons for the Released Claims.

### 13.  If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you will not be eligible to receive any of the individual benefits that the Settlement offers.

## THE LAWYERS REPRESENTING YOU

### 14. Do I have a lawyer in this case?

Yes. The Court has appointed Adam M. Moskowitz, Howard M. Bushman, Joseph M. Kaye, and Barbara C. Lewis of the law firm The Moskowitz Law Firm, PLLC, and Joshua Adam Migdal and Yaniv Adar of the law firm Mark, Migdal & Hayden to represent you and the other Settlement Class Members in this Action and for purposes of this Settlement, and for no other purpose. These attorneys are called "Class Counsel," and they can be reached by writing them at The Moskowitz Law Firm, 2 Alhambra Plaza, Suite 601, Coral Gables, FL 33134. You will not be separately charged for the services of Class Counsel for issues related to this Action.

You have the right to retain your own separate lawyer to represent you in this case, but you are not obligated to do so. If you do hire your own lawyer, you will be solely responsible for all of his or her fees and expenses. You also have the right to represent yourself before the Court without a lawyer, but if you want to appear at the Fairness Hearing you must comply with the procedures set forth in Part 20 below.

### 15. How will Class Counsel Be Paid?

Class Counsel have prosecuted this case on a contingent-fee basis and, so far, have not yet been paid anything for their services. If the Settlement is approved, Class Counsel will ask the Court for an award of attorneys' fees and expenses, to be paid from the Settlement Fund in an amount not to exceed 30% of the Settlement Fund. They will also ask the Court for service awards to Plaintiffs for their services as the class representatives and their efforts in bringing the Action in amounts not to exceed $5,000 per Plaintiff, which will also be paid from the Settlement Fund. Class Counsel will file with the Court their request for attorneys' fees and expenses and service awards on or before MONTH DAY, YEAR, which will then be posted on www.class-settlement.com/[[   ]].

Defendants reserve the right to oppose any request for attorneys' fees and expenses and service awards that Defendants deem to be unreasonable in nature or amount or otherwise objectionable. The Settlement is not conditioned on the Court approving any specific amount of attorneys' fees and expenses or service awards. The Court will ultimately decide whether any attorneys' fees and expenses should be awarded to Class Counsel or any service awards awarded to Plaintiffs, and in what amounts.

## OBJECTING TO THE SETTLEMENT

### 16. How do I tell the Court that I don't like the Settlement?

If you do not exclude yourself from the Settlement Class, you can object to the Settlement if you don't agree with any part of it. You can provide reasons why you think the Court should deny approval of the Settlement by filing an objection. However, you can't ask the Court to order a larger or different type of settlement as the Court can only approve or deny the Settlement presented by the Parties. If the Court denies approval, no settlement relief will be available to the Settlement Class Members and the lawsuit will continue. If you file a written objection, the Court will consider your views.

To object, you must file a written statement of objection with the Court. Your written objection must: (a) include a caption or title that identifies it as "Objection to Class Settlement in *Morris v. PHH* (case number 0:20-cv-60633-RS);" (b) include your name, mailing and email addresses, contact telephone number, and your Class Loan number(s); (c) set forth the specific reason(s), if any, for each of your objections, including all legal support you wish to bring to the Court's attention and all factual evidence you wish to introduce in support of your objection; (d) disclose the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of your objection, and (e) be *personally* signed by you. For your convenience, your Class Loan number or numbers are included on the back of this Notice.

You may file your written statement of objection in person at, or you may mail it to, the Clerk of the Court, United States District Court for the Southern District of Florida, U.S. Federal Building and Courthouse, 299 East Broward Boulevard #108, Fort Lauderdale, Florida 33301. However, if you are represented by your own attorney, your attorney

must file your objection through the Court's Case Management/Electronic Case Filing (CM/ECF) system. To be considered timely and valid, all statements of objection must be filed with the Court by, or mailed sufficiently in advance to be received by the Court by, MONTH DAY, 2021. Any Settlement Class Member who does not comply with the above deadline and requirements shall be deemed to have waived all objections to and shall be forever barred from challenging the Settlement.

## 17. What's the difference between objecting and excluding myself?

Objecting simply means telling the Court that you don't agree with something about the Settlement, but that you are still willing to be bound by it if the Settlement is finally approved despite your objection. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class at all. If you exclude yourself, you will not be subject to the Settlement and therefore cannot object to the Settlement or appear at the Fairness Hearing because the case will no longer affect you.

## THE COURT'S FAIRNESS HEARING

## 18. When and where will the Court decide whether to approve the Settlement?

A Fairness Hearing has been set for MONTH DAY, 2021, beginning at XX:XX a.m., before the Honorable Rodney Smith at the United States District Court for the Southern District of Florida, U.S. Federal Building and Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301 in Courtroom 310B. At the hearing, the Court will consider whether to: (1) grant final certification to the Settlement Class for settlement purposes; (2) approve the Settlement as fair, reasonable, and adequate; and (3) award any attorneys' fees and expenses to Class Counsel and service awards to Plaintiffs. The Court will also consider any and all objections to the Settlement and any other issues relating to the Settlement. After the hearing, the Court will decide whether to approve the Settlement. It is not possible to predict how long the Court's decision will take.

NOTE: The Court has reserved the right to change the date and/or time of the Fairness Hearing, or to continue it, without further notice. If you plan to attend the Fairness Hearing, you should confirm the date and time shortly before travelling to attend the hearing by checking www.class-settlement.com/[[   ]] or the Court's Public Access to Court Electronic Records (PACER) system at https://www.alnd.uscourts.gov/CMECF/default.htm.

## 19. Do I have to come to the Fairness Hearing?

No. Class Counsel will represent the Settlement Class at the Fairness Hearing. But you are welcome to come at your own expense. Even if you send an objection, you are not required to come to the Fairness Hearing to talk about it. As long as your objection was timely filed and meets the other requirements described in Part 16, the Court will consider it. You may also hire and pay your own lawyer to attend the Fairness Hearing at your expense, but you are not required to do so.

## 20. May I speak at the Fairness Hearing?

You may ask the Court for permission to speak at the Fairness Hearing, but only *if* you timely file an objection in full compliance with the instructions set forth in Part 16, and *if* you also state in that objection that you would like to speak at the Fairness Hearing. However, any separate attorney you hire may appear only if he or she files through the Court's Case Management/Electronic Case Filing (CM/ECF) system a separate "Notice of Intention to Appear in *Morris v. PHH* (case number 0:20-cv-60633-RS)." That notice must be filed with the Court no later than MONTH DAY, 2021. You cannot speak at the Fairness Hearing if you have excluded yourself from the Settlement Class.

## IF YOU DO NOTHING

## 21. What if I do nothing?

If you do nothing, and the Settlement is approved and reaches the Final Settlement Date, you will be a Settlement Class Member and you will be entitled to receive or claim an Individual Allocation, depending on if your Class Loan

is still being serviced by PHH.  You will also be bound by the Settlement's release, and therefore you will not be able to file your own lawsuit, continue with your own lawsuit, or be part of any other lawsuit against Ocwen, PHH, and the Released Persons concerning any of the Released Claims.

## GETTING MORE INFORMATION

| 22.  Where can I get additional information? |
| --- |

This notice summarizes the Settlement.  For the precise terms and conditions of the Settlement, please see the full Stipulation of Settlement and Release available at www.class-settlement.com/[[   ]], by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://www.flsd.uscourts.gov/CMECF, or by visiting the office of the Clerk of the Court for the United States District Court for the Southern District of Florida, U.S. Federal Building and Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

**PLEASE DO <u>NOT</u> TELEPHONE THE COURT, THE COURT CLERK'S OFFICE,
OR OCWEN TO INQUIRE ABOUT THIS SETTLEMENT.**

# Exhibit B

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### FORT LAUDERDALE DIVISION

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS, STEVEN
SIMMONS, YOLANDA UPTON, and
MICHAEL LUZZI, on behalf of themselves
and all others similarly situated,

        Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability
Company,

        Defendants.

_____/

**CLASS ACTION COMPLAINT
JURY DEMAND**

## AMENDED CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs Vincent J. Morris, Steven Simmons, Yolanda Upton, and Michael Luzzi (collectively "Plaintiffs") bring this action, on behalf of themselves and all others similarly situated, against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services, on its own behalf and as successor by merger to Ocwen Loan Servicing, LLC ("PHH"), and Defendant Ocwen Loan Servicing, LLC ("Ocwen") (collectively "Defendants") and state:

### NATURE OF ACTION

1.     Plaintiffs own homes subject to mortgages serviced by Defendants. Defendants have a uniform practice of knowingly charging illegal and improper "processing fees" when payments on the mortgage are made over the phone or online, although neither the mortgages nor applicable statutory law expressly authorize those fees. Defendants have charged these "processing fees" to Plaintiffs, who have paid them. Accordingly, Plaintiffs seek relief for themselves and all others similarly situated for violations of the Federal Fair Debt Collection Practices Act and breach of their uniform mortgage contracts.

1

## PARTIES

2.       Plaintiff Morris is a citizen and resident of Broward County, Florida, is over the age of eighteen and is otherwise *sui juris*.

3.       Plaintiff Simmons is a citizen and resident of Los Angeles County, California, is over the age of eighteen and is otherwise *sui juris*.

4.       Plaintiff Upton is a citizen and resident of Dallas County, Texas, is over the age of eighteen and is otherwise *sui juris*.

5.       Plaintiff Michael Luzzi is a citizen and resident of New Haven County, Connecticut, is over the age of eighteen and is otherwise *sui juris*.

6.       Defendant PHH is a wholly-owned subsidiary of Ocwen Financial Corporation. PHH is an entity existing and incorporated pursuant to the laws of New Jersey with its principal place of business at 1 Mortgage Way, Mount Laurel, New Jersey 08054. Defendant is therefore a corporate citizen of New Jersey. Defendant is amenable to service of process c/o Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. PHH is a debt collector as defined by the FDCPA.

7.       Defendant Ocwen Loan Servicing, LLC is a limited liability company with a principal place of business in West Palm Beach, Florida, and is one of the nation's leading specialty loan servicing companies. Ocwen is a debt collector as defined under the FDCPA.

## JURISDICTION AND VENUE

8.       Plaintiffs have standing to bring a claim under the FDCPA because they were directly affected by Defendants' violations of the FDCPA, were subjected to Defendants' illegal and improper debt collection activities, and suffered injury in fact as a direct consequence of Defendants' illegal and improper debt collection activities, in the form of unlawful "processing fees" paid.

9.       This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than Defendants.

10.      This Court has personal jurisdiction over PHH because PHH is authorized to do business and is conducting business throughout the United States, including in Florida. PHH services mortgages and collects debts in the United States, including Florida, and has sufficient

minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

11.     This Court has personal jurisdiction over Ocwen because Ocwen is a Florida corporation and is authorized to do business and is conducting business throughout the United States, including in Florida. Ocwen services mortgages and collects debts in the United States, including Florida, and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

12.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns a mortgage on real property in the Southern District of Florida and a substantial part of the events giving rise to Plaintiffs' claims took place in the Southern District of Florida.

## FACTUAL ALLEGATIONS

### A. PLAINTIFF MORRIS

13.     Plaintiff Morris resides at 1868 NW 74 Avenue, Hollywood, Florida 33024. Plaintiff Morris financed this purchase with a mortgage that was entered into on March 2, 2006. A copy of the mortgage is attached as Exhibit A (the "Morris Mortgage").

14.     At all relevant times, the Morris Mortgage was serviced by Defendants. The Morris Mortgage does not expressly provide for or authorize charging processing fees for making payments online or over the phone. Furthermore, such processing fees are not expressly authorized by Florida state law.

15.     Plaintiff Morris was charged a $17.50 "processing fee" in April 2019, May 2019, and October 2019 for making a mortgage payment to Defendants over the phone or online. Plaintiff Morris was charged a $7.50 "processing fee" in June 2019, July 2019, August 2019, September 2019, November 2019, December 2019, January 2020, and February 2020 for making a mortgage payment to Defendants over the phone or online. The "processing fee" is reflected as "SpeedPay" on Plaintiff Morris's Mortgage statements.

### B. PLAINTIFF SIMMONS

16.     Plaintiff Simmons resides at 3681 Kensley Drive, Inglewood, CA 90305. Plaintiff Simmons made mortgage payments online and/or over the phone on property subject to a mortgage serviced by Defendants (the "Simmons Mortgage").

17. At all relevant times, the Simmons Mortgage was serviced by Defendants. The Simmons Mortgage does not expressly provide for or authorize charging processing fees for making payments online or over the phone. Furthermore, such processing fees are not expressly authorized by California state law.

18. During the applicable limitations period, Defendants charged Plaintiff Simmons "processing fees" for making the mortgage payments online and/or over the phone, sent mortgage statements to Plaintiff Simmons' home in Inglewood, and Plaintiff Simmons paid these fees while in the State of California.

### C. PLAINTIFF UPTON

19. Plaintiff Upton resides at 4320 Rainier Street, Apartment 1014, Irving, Texas 75062. Plaintiff Upton made mortgage payments online and/or over the phone on property subject to a mortgage serviced by Defendants (the "Upton Mortgage").

20. At all relevant times, the Upton Mortgage was serviced by Defendants. Plaintiff Upton's loan was in default when Defendants obtained the servicing rights to the Upton Mortgage. The Upton Mortgage does not expressly provide for or authorize charging processing fees for making payments online or over the phone. Furthermore, such processing fees are not expressly authorized by Texas state law.

21. During the applicable limitations period, Defendants charged Plaintiff Upton "processing fees" for making the mortgage payments online and/or over the phone, sent mortgage statements to Plaintiff Upton's home in Irving, Texas and Plaintiff Upton paid these fees while in the State of Texas.

### D. PLAINTIFF LUZZI

22. Plaintiff Luzzi resides at 35 Coachman Drive, Branford, Connecticut 06405. Plaintiff Luzzi made mortgage payments online and/or over the phone on property subject to a mortgage serviced by Defendants (the "Luzzi Mortgage").

23. At all relevant times, the Luzzi Mortgage was serviced by Defendants. Plaintiff Luzzis' loan was in default when Defendants obtained the servicing rights to the Luzzi Mortgage. The Luzzi Mortgage does not expressly provide for or authorize charging processing fees for making payments online or over the phone. Furthermore, such processing fees are not expressly authorized by Connecticut state law.

24.     During the applicable limitations period, Defendants charged Plaintiff Luzzi "processing fees" for making the mortgage payments online and/or over the phone, sent mortgage statements to Plaintiff Luzzi's home in Branford, and Plaintiff Luzzi paid these fees while in the State of Connecticut.

25.     Where, like here, neither the contract creating the debt nor applicable law expressly authorizes the charging of processing fees, such as those charged by Defendants, such fees have been held unlawful because they violate the FDCPA when the debt collector retains any portion of the fee instead of passing the entire fee through to the payment processor.

26.     Defendants do not pass the entire fee to a payment processor and instead retain a considerable portion thereof. Defendants fail to mention any third-party payment processor in any documentation available to Plaintiffs, including their payment histories. It is well known in the payment processing industry (but not by the general public) that third-party processors charge a small fraction of the amounts Defendants charge as "processing fees." Defendants' records will demonstrate the exact amount Defendants retains for each processing fee charged.

## CLASS ACTION ALLEGATIONS

27.     As detailed below in the individual counts, Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

## CLASS DEFINITIONS

28.     Plaintiffs seek to represent the following two nationwide "Classes":

### OCWEN CLASS

All individuals in the United States who, since March 25, 2016, paid a processing fee to Ocwen for making a payment over the phone or online in connection with a residential mortgage owned or serviced by Ocwen. Excluded from the Class are all employees of Defendants, all members of the Settlement Class in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH, ECF No. 71 at 7 (N.D. Ala. Aug. 1, 2019), and the Court.

### PHH CLASS

All individuals in the United States who, since March 25, 2016, paid a processing fee to PHH for making a payment over the phone or online in connection with a residential mortgage owned or serviced by PHH. Excluded from the Class are all employees of Defendants, all members of the Settlement Class in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH, ECF No. 71 at 7 (N.D. Ala. Aug. 1, 2019), and the Court.

29.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before or after the Court determines whether such certification is appropriate as discovery progresses.

**b.     Numerosity**

30.     The Classes are comprised of thousands, if not millions, of customers throughout the United States, many of whom pay their mortgages online or over the phone. The Classes are so numerous that joinder of all members of the Classes are impracticable. The precise number of class members is unknown to Plaintiffs, but the precise number and identity of class members are easily identifiable through Defendants' records.

**c.     Commonality/Predominance**

31.     This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendants' practice of charging a "processing fee," which is not authorized by contract or any provision of existing law, violates the FDCPA;

(b) whether Defendants' practice of charging a "processing fee," breaches Plaintiffs' and Class Members' mortgages;

(c) whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and

(d) whether Plaintiffs and Class members are entitled to other appropriate remedies, including injunctive relief.

**d.     Typicality**

32.     Plaintiffs' claims are typical of the claims of the members of the Classes because, inter alia, all Class members were injured through the uniform misconduct described above, all members of the Classes have mortgages serviced by Defendants just like Plaintiffs, and Plaintiffs are advancing the same claims and legal theories on behalf of himself and all Class Members. It is well known in the mortgage industry that mortgages generally do not expressly authorize processing fees to be charged in order to make a payment online or over the phone.

**e.     Adequacy of Representation**

33.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic

interests to those of the Classes. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiffs have chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

### f.     Requirements of Fed. R. Civ. P. 23(b)(3)

34.     The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Classes. All claims by Plaintiffs and the unnamed Class members are based on the common course of conduct by Defendants to charge illegal "processing fees" to Plaintiffs and the unnamed Class members.

35.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

36.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Classes as is in the case at bar, common questions will be held to predominate over individual questions.

### g.     Superiority

37.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

a.     Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the country;

b.     Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

c.     There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

d.     The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

e.     Individual suits would not be cost effective or economically maintainable as individual actions; and

f.     The action is manageable as a class action.

### h.     Requirements of Fed. R. Civ. P. 23(b)(2)

38.     Defendants have acted and refused to act on grounds generally applicable to the Classes by engaging in a common course of conduct by Defendants to charge illegal "processing fees" to Plaintiffs and the unnamed Class members, thereby making appropriate final injunctive relief with respect to the classes as a whole.

## FRAUDULENT CONCEALMENT TOLLING

39.     All applicable statutes of limitation have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action. Plaintiffs and members of the class did not and could not have known about the facts giving rise to the causes of action at any point during Defendants' charging of the illegal processing fees. Plaintiffs and class members could not have discovered the facts that would disclose Defendants' fraud despite exercising reasonable care and diligence in seeking to learn them. Defendants fraudulently concealed the truth from its customers and, accordingly, the relevant statutes of limitation should be equitably tolled until Plaintiffs filed this action at the earliest.

40.     Instead of disclosing that Defendants collects a massive profit from charging the "processing fees," Defendants represents the fees are mandatory and authorized by either the mortgage or existing statutory law, and that borrowers are "agreeing" to pay the fees in order to be provided an additional "service," despite the fact that collecting mortgage payments from borrowers is Defendants' regular business practice. Defendants also never reveals that it does not pass the entire fee to a payment processor and instead retains a considerable portion thereof as additional profit. Defendants further fails to mention any third-party payment processor in any documentation available to Plaintiffs or class members. By making many affirmative representations that concealed the "processing fees" were merely a hidden profit center as described in this complaint, Defendants actively and successfully concealed Plaintiffs' and class members' causes of action.

41.     Furthermore, by making repeated false statements to consumers concerning the processing fees, Defendants actively and successfully concealed Plaintiffs' and class members' causes of action by fraudulent means.

**COUNT I**
**For Violations of the Fair Debt Collection Practices Act,**
**15 U.S.C. § 1692, et seq.**
**(On behalf of Plaintiffs and Members of the Two Classes)**

42.    Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–41 as if fully set forth herein.

43.    This cause of action is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a)(2)(b).

44.    It is a violation of the FDCPA for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

45.    At all times material, Defendants were and are each a "debt collector" under the FDCPA because they regularly collect debts owed others and acquired Plaintiffs Luzzi and Upton's loans and the loans of the Class members when those loans were in default. 15 U.S.C. § 1692a(6). Moreover, Defendants were and are each a "debt collector" under the FDCPA because each uses an instrumentality of interstate commerce or the mails in business the principal purpose of which is the collection of any debts. *Id*. Indeed, the Defendants meet the general definition of a "debt collector" under the FDCPA.

46.    As debt collectors, Defendants used instrumentalities of interstate commerce and the mail for the principal purpose of collecting debts from the Plaintiffs and the Classes.

47.    At all times material, Plaintiffs and Class Members were "consumers" because each was a natural person obligated to pay the mortgage debts at issue. 15 U.S.C. § 1692a(3).

48.    At all times material, Plaintiffs' and the Class Members' mortgage debts were "debts" because they were each an obligation of a consumer to pay money arising out of a transaction in which the property that was the subject of the transaction was primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

49.    The "processing fees" charged to Plaintiffs and members of the Class were incidental to the consumer debts.

50.    Defendants had no legal right to seek collection of (or to actually collect) any "processing fees" from Plaintiffs and members of the Classes. Defendants had and still has the underlying contracts in its possession, custody or control, which do not expressly authorize these

"processing fees," and Defendants therefore had actual knowledge that it had no legal right to collect these fees.

51. The "processing fee" is not authorized by the mortgage contracts of Plaintiffs and the members of the Classes or by Federal law, but Defendants collected these fees anyway. In doing so, Defendants violated the FDCPA.

52. As a direct and primary result of Defendants' violations, Plaintiffs and members of the Classes have been harmed. Plaintiffs and the Class members are entitled to actual damages, statutory damages, and attorney's fees and costs. 15 U.S.C. § 1692k(a)(1); 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. § 1692k(a)(3).

## COUNT II
### Breach of Contract
#### (On behalf of Plaintiffs and Members of the Two Classes)

53. Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–41 as if fully set forth herein.

54. Plaintiffs and Class Members purchased homes subject to Mortgages. *See* Ex. A.

55. Defendants became parties to the Mortgages when they became Plaintiffs' and Class Members' servicers. Defendants collect monies from the Plaintiffs and Class members pursuant to those Mortgages, and avail themselves of the benefits of the Mortgages.

56. The Mortgages contain a uniform covenant providing only that "amounts disbursed by the lender" will become debt of the borrower. *See, e.g.,* Ex. A, ¶ 7.

57. Thus, Defendants may only charge amounts actually disbursed to pay for the cost of processing mortgage payments online or over the phone. Despite this express limitation, Defendants charge processing fees not agreed to in Plaintiffs' and Class Members' Mortgages and in excess of the amounts actually disbursed by Defendants to cover the cost of processing the mortgage payments over the phone or online.

58. Defendants therefore breached its contracts with Plaintiffs and Class Members when they charged Plaintiffs and Class Members "processing fees" not agreed to in their Mortgages and in excess of the amounts Defendants actually disbursed to pay the costs of processing the mortgage payments over the phone or online.

59. Defendants' charging of processing fees also directly breaches the uniform "Governing Law" provision of the Mortgages. *See, e.g.,* Ex. A ¶15 (providing the Morris Mortgage "shall be governed by Federal law and the law of the jurisdiction in which the property is located").

60.     Charging "processing fees" violates the FDCPA because Plaintiffs' and Class Members' Mortgages do not expressly authorize Defendants to charge "processing fees," nor are the "processing fees" permitted by applicable state statutory law.

61.     By violating the FDCPA, Defendants violated the Governing Law provision and breached Plaintiffs' and Class Members' Mortgages.

62.     Defendants' charging of processing fees also directly breaches the uniform "Loan Charges" provision of the Mortgages. *See, e.g.,* Ex. A ¶ 13 (providing that where "loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower").

63.     Because Defendants are not permitted to charge processing fees, the uniform Loan Charges provision of the Mortgages requires Defendants to reduce the processing fees to zero and refund the entire amounts collected.

64.     Alternatively, to the extent Defendants are permitted to charge processing fees, the processing fees Defendants charged Plaintiffs and Class Members exceed the maximum charges allowable under the law, and therefore must be reduced by the amount necessary to reduce the charge to the permitted limit, and Defendants must refund any excess sums they collected.

65.     As a direct and proximate result of Defendants' breach, Plaintiffs and members of the Class suffered actual damages, in the form of payment of non-contractual "processing fees."

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for a judgment:

    a.  Certifying the Classes as requested herein;

    b.  Awarding Plaintiffs and members of the Classes actual and statutory damages;

    c.  Awarding declaratory and injunctive relief as permitted by law or equity, including declaring Defendants' practices as set forth herein to be unlawful and enjoining Defendants from continuing those unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

    d.  Awarding attorneys' fees and costs; and

    e.  Providing such further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial as to all claims so triable.

Dated: July 24, 2020                                    Respectfully submitted,

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis
Florida Bar 118114
barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

By: */s/ Josh Migdal*
**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440
Josh Migdal, Esq.
Florida Bar No. 19136
josh@markmigdal.com
Yaniv Adar, Esq.
Florida Bar No. 63804
yaniv@markmigdal.com
eservice@markmigdal.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed July 24, 2020, with

the Court via CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
**Adam M. Moskowitz**
Florida Bar No. 984280

# Exhibit A

CFN # 105938078, OR BK 41745 Page 1077, Page 1 of 13, Recorded 04/04/2006 at
08:19 AM, Broward County Commission, Doc M: $1442.00 Int. Tax $824.00 Deputy
Case 0:20-cv-60633-RS   Document 46-1   Entered on FLSD Docket 03/24/2020   Page 100 of
135

WHEN RECORDED MAIL TO:

**RECORD AND RETURN TO:**
SUNFIRST TITLE, INC.
1999 University Drive - Suite 402
Coral Springs, Florida 33071
954-752-6575  *  954-345-8793 (Fax)

Loan Number: 621015052
Servicing Number: 002097690-8

_____[Space Above This Line For Recording Data]_____

# MORTGAGE

THIS MORTGAGE ("Security Instrument") is given on March 02, 2006 .The mortgagor is
ANNE MARIE MORRIS AND VINCENT J MORRIS, HER HUSBAND

whose address is 1868 NW 74TH AVE , PEMBROKE PINES, FL 33024-1053
("Borrower").
This Security Instrument is given to
PRIME LENDERS, INC, A FLORIDA CORPORATION
which is organized and existing under the laws of FLORIDA , and whose address is
3511 WEST COMMERCIAL BLVD #401, FT. LAUDERDALE, FL 33309 ("Lender").
Borrower owes Lender the principal sum of FOUR HUNDRED TWELVE THOUSAND
. . .AND NO/100THS    Dollars (U.S. $412,000.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides
for monthly payments, with the full debt, if not paid earlier, due and payable on April 01, 2036 .
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and
all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced
under paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby
mortgage, grant and convey to Lender the following described property located in Broward
County, Florida:
514110180640
LOT 64 OF WALNUT CREEK  REPLAT NO. 1 ACCORDING TO THE PLAT THEREOF, AS RECORDED
IN PLAT BOOK 168, AT PAGE 18 OF THE PUBLIC RECORDS OF BROWARD COUNTY, FLORIDA

which has the address of 1868 NW 74TH AVE, PEMBROKE PINES

Florida      33024-1053      ("Property Address");      [Street, City],
[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements,
appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be
covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."
BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the
right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances
of record. Borrower warrants and will defend generally the title to the Property against all claims and demands,
subject to any encumbrances of record.

**FLORIDA**-Single Family
Page 1 of 8
FLD10011 (05/10/00)



Loan Number: 621015052      Servicing Number: 002097690-8      Date: 03/02/06

COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2. Funds for Taxes and Insurance.** Subject to applicable law or to a written waiver by Lender, Borrower shall pay to Lender on the day monthly payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; (e) yearly mortgage insurance premiums, if any; and (f) any sums payable by Borrower to Lender, in accordance with the provisions of paragraph 8, in lieu of the payment of mortgage insurance premiums. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for Borrower's escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 *et seq.* ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not Charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. However, Lender may require Borrower to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender may agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to Borrower for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify Borrower in writing, and, in such case Borrower shall pay to Lender the amount necessary to make up the deficiency. Borrower shall make up the deficiency in no more than twelve monthly payments, at Lender's sole discretion.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender. If, under paragraph 21, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

**3. Application of Payments.** Unless applicable law provides otherwise, all payments received by Lender under paragraphs 1 and 2 shall be applied: first, to any prepayment charges due under the Note; second, to amounts payable under paragraph 2; third, to interest due; fourth, to principal due; and last, to any late charges due under the Note.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which may attain priority over this Security Instrument, and leasehold payments or ground rents, if any. Borrower shall pay these obligations in the manner provided in paragraph 2, or if not paid in that manner, Borrower shall pay them on time directly to the person owed payment. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. If Borrower makes these payments directly, Borrower shall promptly furnish to Lender receipts evidencing the payments.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

         FLD10012 (05/10/00)

Loan Number: 621015052          Servicing Number: 002097690-8          Date: 03/02/06

**5. Hazard or Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage" and any other hazards, including floods or flooding, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's approval which shall not be unreasonably withheld. If Borrower fails to maintain coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property in accordance with paragraph 7.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard mortgage clause. Lender shall have the right to hold the policies and renewals. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

Unless Lender and Borrower otherwise agree in writing, or applicable Law otherwise requires, insurance proceeds shall be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining any such insurance proceeds, and then, at Lender's option, in such order and proportion as Lender may determine in its sole and absolute discretion, and regardless of any impairment of security or lack thereof: (i) to the sums secured by this Security Instrument, whether or not then due, and to such components thereof as Lender may determine in its sole and absolute discretion; and/or (ii) to Borrower to pay the costs and expenses of necessary repairs or restoration of the Property to a condition satisfactory to Lender. If Borrower abandons the Property, or does not answer within 30 days a notice from Lender that the insurance carrier has offered to settle a claim, Lender may collect the insurance proceeds. Lender may, in its sole and absolute discretion, and regardless of any impairment of security or lack thereof, use the proceeds to repair or restore the Property or to pay the sums secured by this Security Instrument, whether or not then due. The 30-day period will begin when the notice is given.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of the payments. If under paragraph 21 the Property is acquired by Lender, Borrower's right to any insurance policies and proceeds resulting from damage to the Property prior to the acquisition shall pass to Lender to the extent of the sums secured by this Security Instrument immediately prior to the acquisition.

If Borrower obtains earthquake insurance, any other hazard insurance, or any other insurance on the Property and such insurance is not specifically required by Lender, then such insurance shall (i) name Lender as loss payee thereunder, and (ii) be subject to the provisions of this paragraph 5.

**6. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower acknowledges that the Lender does not desire to make a loan to Borrower secured by this property on the terms contained in the Note unless the property is to be occupied by Borrower as Borrower's primary/secondary residence. Lender makes non-owner residence loans of different terms. Borrower promises and assures Lender that Borrower intends to occupy this property as Borrower's primary/secondary residence and that Borrower will so occupy this property as its sole primary/secondary residence within sixty (60) days after the date of the Security Instrument. If Borrower breaches this promise to occupy the property as Borrower's primary/secondary residence, then Lender may invoke any of the following remedies, in addition to the remedies provided in the Security Instrument; (1) Declare all sums secured by the Security Instrument due and payable and foreclose the Security Instrument, (2) Decrease the term of the loan and adjust the monthly payments under the Note accordingly, increase the interest rate and adjust the monthly payments under the Note accordingly, or (3) require that the principal balance be reduced to a percentage of either the original purchase price or the appraised value then being offered on non-owner occupied loans.

Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate, or commit waste on the Property. Borrower shall be in default if any forfeiture action or proceeding, whether civil or criminal, is begun that in Lender's good faith judgment could result in forfeiture of the Property or otherwise materially impair the lien created by this Security Instrument or Lender's security interest. Borrower may cure such a default and reinstate, as provided in paragraph 18, by causing the action or proceeding to be dismissed with a ruling that, in Lender's good faith determination, precludes forfeiture of the Borrower' s interest in the Property or other material impairment of the lien created by this Security Instrument or Lender's security interest. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

Loan Number: 621015052          Servicing Number: 002097690-8          Date: 03/02/06

Borrower shall, at Borrower's own expense, appear in and defend any action or proceeding purporting to affect the Property or any portion thereof or Borrower's title thereto, the validity or priority of the lien created by this Security Instrument, or the rights or powers of Lender with respect to this Security Instrument or the Property. All causes of action of Borrower, whether accrued before or after the date of this Security Instrument, for damage or injury to the Property or any part thereof, or in connection with any transaction financed in whole or in part by the proceeds of the Note or any other note secured by this Security Instrument, by Lender, or in connection with or affecting the Property or any part thereof, including causes of action arising in tort or contract and causes of action for fraud or concealment of a material fact, are, at Lender's option, assigned to Lender, and the proceeds thereof shall be paid directly to Lender who, after deducting therefrom all its expenses, including reasonable attorneys' fees, may apply such proceeds to the sums secured by this Security Instrument or to any deficiency under this Security Instrument or may release any monies so received by it or any part thereof, as Lender may elect. Lender may, at its option, appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement thereof. Borrower agrees to execute such further assignments and any other instruments as from time to time may be necessary to effectuate the foregoing provisions and as Lender shall request.

**7. Protection of Lender's Rights in the Property.** If Borrower fails to perform the covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture or to enforce laws or regulations), then Lender may do and pay for whatever is necessary to protect the value of the Property and Lender's rights in the Property. Lender's actions may include paying any sums secured by a lien which has priority over this Security Instrument, appearing in court, paying reasonable attorneys' fees and entering on the Property to make repairs. Although Lender may take action under this paragraph 7, Lender does not have to do so.

Any amounts disbursed by Lender under this paragraph 7 shall become additional debt of Borrower secured by this Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate in effect from time to time and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

**8. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Security Instrument, Borrower shall pay the premiums required to maintain the mortgage insurance in effect. If, for any reason, the mortgage insurance coverage required by Lender lapses or ceases to be in effect, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the mortgage insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the mortgage insurance previously in effect, from an alternate mortgage insurer approved by Lender. If substantially equivalent mortgage insurance coverage is not available, Borrower shall pay to Lender each month a sum equal to one-twelfth of the yearly mortgage insurance premium being paid by Borrower when the insurance coverage lapsed or ceased to be in effect. Lender willaccept, use and retain these payments as a loss reserve in lieu of mortgage insurance. Loss reserve payments may no longer be required, at the option of Lender, if mortgage insurance coverage (in the amount and for the period that Lender requires) provided

by an insurer approved by Lender again becomes available and is obtained. Borrower shall pay the premiums required to maintain mortgage insurance in effect, or to provide a loss reserve, until the requirement for mortgage insurance ends in accordance with any written agreement between Borrower and Lender or applicable law.

**9. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**10. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender. Lender may apply, use or release the condemnation proceeds in the same manner as provided in paragraph 5 hereof with respect to insurance proceeds.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the monthly payments referred to in paragraphs 1 and 2 or change the amount of such payments.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to

Loan Number: 621015052          Servicing Number: 002097690-8          Date: 03/02/06

extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 17. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Loan Charges.** If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**14. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**15. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**16. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**17. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**18. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Security Instrument; or (b) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien of this Security Instrument, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Security Instrument shall continue unchanged. Upon reinstatement by Borrower, this Security Instrument and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 17.

Loan Number: 621015052          Servicing Number: 002097690-8          Date: 03/02/06

**19. Sale of Note; Change of Loan Servicer.** The Note or a partial interest in the Note (together with this Security Instrument) may be sold one or more times without prior notice to Borrower. A sale may result in a change in the entity (known as the "Loan Servicer") that collects monthly payments due under the Note and this Security Instrument. There also may be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change in accordance with paragraph 14 above and applicable law. The notice will state the name and address of the new Loan Servicer and the address to which payments should be made. The notice will also contain any other information required by applicable law. The holder of the Note and this Security Instrument shall be deemed to be the Lender hereunder.

**20. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

Borrower shall be solely responsible for, shall indemnify, defend and hold harmless Lender, its directors, officers, employees, attorneys, agents, and their respective successors and assigns, from and against any and all claims, demands, causes of action, loss, damage, cost (including actual attorneys' fees and court costs and costs of any required or necessary repair, cleanup or detoxification of the Property and the preparation and implementation of any closure, abatement, containment, remedial or other required plan), expenses and liability directly or indirectly arising out of or attributable to (a) the use, generation, storage, release, threatened release, discharge, disposal, abatement or presence of Hazardous Substances on, under or about the Property, (b) the transport to or from the Property of any Hazardous Substances, (c) the violation of any Hazardous Substances law, and (d) any Hazardous Substances claims.

As used in this paragraph 20, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 20, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

ADDITIONAL COVENANTS. Borrower and Lender further covenant and agree as follows:

**21. Acceleration; Remedies. If any installment under the Note or notes secured hereby is not paid when due, or if Borrower should be in default under any provision of this Security Instrument, or if Borrower is in default under any other mortgage or other instrument secured by the Property, all sums secured by this Security Instrument and accrued interest thereon shall at once become due and payable at the option of Lender without prior notice, except as otherwise required by applicable law, and regardless of any prior forbearance. In such event, Lender, at its option, and subject to applicable law, may then or thereafter invoke the power of sale and/or any other remedies or take any other actions permitted by applicable law. Lender will collect all expenses incurred in pursuing the remedies described in this Paragraph 21, including, but not limited to, reasonable attorneys' fees and costs of title evidence.**

**22. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs. Lender may charge such person or persons a fee for releasing the Property for services rendered if the charging of the fee is permitted under applicable law.

**23. Attorneys' Fees.** As used in this Security Instrument and the Note, "attorneys' fees" shall include any attorneys' fees awarded by an appellate court.

**24. Misrepresentation and Nondisclosure.** Borrower has made certain written representations and disclosures in order to induce Lender to make the loan evidenced by the Note or notes which this Security Instrument secures, and in the event that Borrower has made any material misrepresentation or failed to disclose any material fact, Lender, at its option and without prior notice or demand, shall have the right to declare the indebtedness secured by this Security Instrument, irrespective of the maturity date specified in the Note or notes secured by this Security Instrument, immediately due and payable.

**25. Time is of the Essence.** Time is of the essence in the performance of each provision of this Security Instrument.

Loan Number: 621015052          Servicing Number: 002097690-8          Date: 03/02/06

**26. Waiver of Statute of Limitations.** The pleading of the statute of limitations as a defense to enforcement of this Security Instrument, or any and all obligations referred to herein or secured hereby, is hereby waived to the fullest extent permitted by applicable law.

**27. Modification.** This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**28. Reimbursement.** To the extent permitted by applicable law, Borrower shall reimburse Trustee and Lender for any and all costs, fees and expenses which either may incur, expend or sustain in the execution of the trust created hereunder or in the performance of any act required or permitted hereunder or by law in equity or otherwise arising out of or in connection with

this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Trustee and Lender their fees in connection with Trustee and Lender including, but not limited to assumption application fees; fees for payoff demands and, statements of loan balance; fees for making, transmitting and transporting copies of loan documents, verifications, full or partial lien releases and other documents requested by borrower or necessary for performance of Lender's rights or duties under this Security Instrument; fees arising from a returned or dishonored check; fees to determine whether the Property is occupied, protected, maintained or insured or related purposes; appraisal fees, inspection fees, legal fees, broker fees, insurance mid-term substitutions, repair expenses, foreclosure fees and costs arising from foreclosure of the Property and protection of the security for this Security Instrument; and all other fees and costs of a similar nature not otherwise prohibited by law.
Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument. To the extent permitted by applicable law, Borrower shall pay to Lender their fees in connection with Lender providing documents or services arising out of or in connection with this Security Instrument, the Note, any other note secured by this Security Instrument or any other instrument executed by Borrower in connection with the Note or Security Instrument.

**29. Clerical Error.** In the event Lender at any time discovers that the Note, any other note secured by this Security Instrument, the Security Instrument, or any other document or instrument executed in connection with the Security Instrument, Note or notes contains an error that was caused by a clerical mistake, calculation error, computer malfunction, printing error or similar error, Borrower agrees, upon notice from Lender, to reexecute any documents that are necessary to correct any such error(s). Borrower further agrees that Lender will not be liable to Borrower for any damages incurred by Borrower that are directly or indirectly caused by any such error.

**30. Lost Stolen, Destroyed or Mutilated Security Instrument and Other Documents.** In the event of the loss, theft or destruction of the Note, any other note secured by this Security Instrument, the Security Instrument or any other documents or instruments executed in connection with the Security Instrument, Note or notes (collectively, the "Loan Documents"), upon Borrower's receipt of an indemnification executed in favor of Borrower by Lender, or, in the event of the mutilation of any of the Loan Documents, upon Lender's surrender to Borrower of the mutilated Loan Document, Borrower shall execute and deliver to Lender a Loan Document in form and content identical to, and to serve as a replacement of, the lost, stolen, destroyed, or mutilated Loan Document, and such replacement shall have the same force and effect as the lost, stolen, destroyed, or mutilated Loan Documents, and may be treated for all purposes as the original copy of such Loan Document.

**31. Assignment of Rents.** As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property. Borrower shall have the right to collect and retain the rents of the Property as they become due and payable provided Lender has not exercised its rights to require immediate payment in full of the sums secured by this Security instrument and Borrower has not abandoned the Property.

**32. Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument.
[Check applicable box(es)]

[X] Adjustable Rate Rider      [ ] Condominium Rider            [ ] 1-4 Family Rider
[ ] Manufactured Home Rider    [X] Planned Unit Development Rider   [ ] Occupancy Rider
[ ] Other(s) (specify)

FLD10017 (05/10/00)

Loan Number: 621015052          Servicing Number: 002097690-8          Date: 03/02/06

    BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Signed, sealed and delivered in the presence of:

_LIZA M. GONZALEZ_     Witness                                  (Seal)
                                                                      -Borrower

_Susana Franco_     Witness                                  (Seal)
                                                                      -Borrower

_____ (Seal)
VINCENT J MORRIS     -Borrower                                (Seal)
                                                                        -Borrower

_____ (Seal)
ANNE MARIE MORRIS     -Borrower                              (Seal)
                                                                          -Borrower

**STATE OF FLORIDA,** County ss:

The foregoing instrument was acknowledged before me this 3/2/06 by

Vincent S. Morris, Jr. & Anne M. Morris

who is personally known to me or who has produced their driver's license as identification.

_Notary signature_
Notary Public

LIZA MARIE GONZALEZ
Notary Public - State of Florida
My Commission Expires Dec 15, 2009
Commission # DD494999
Bonded By National Notary Assn.

Loan Number: 621015052      Servicing Number:    002097690-8    Date:    03/02/06

## PLANNED UNIT DEVELOPMENT RIDER

THIS PLANNED UNIT DEVELOPMENT RIDER is made      March 02, 2006        , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date, given by the undersigned (the "Borrower") to secure Borrower's Note to

PRIME LENDERS, INC, A FLORIDA CORPORATION

(the "Lender") of the same date and covering the Property described in the Security Instrument and located at:

1868 NW 74TH AVE,  PEMBROKE PINES, FL 33024-1053

[Property Address]

The Property includes, but is not limited to, a parcel of land improved with a dwelling, together with other such parcels and certain common areas and facilities, as described in

COVENANTS, CONDITIONS AND RESTRICTIONS

(the "Declaration").  The Property is a part of a planned unit development known as

WALNUT CREEK

[Name of Planned Unit Development]

(the "PUD").  The Property also includes Borrower's interest in the homeowners association or equivalent entity owning or managing the common areas and facilities of the PUD (the "Owners Association") and the uses, benefits and proceeds of Borrower's interest.

**PUD COVENANTS.**  In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A. PUD Obligations.**  Borrower shall perform all of Borrower's obligations under the PUD's Constituent Documents.  The "Constituent Documents" are the:  (i) Declaration; (ii) articles of incorporation, trust instrument or any equivalent document which creates the Owners Association; and (iii) any by-laws or other rules or regulations of the Owners Association.  Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

**B. Hazard Insurance.**  So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring the Property which is satisfactory to Lender and which provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," then:

(i)  Lender waives the provision in Covenant 2 for the monthly payment to Lender of the yearly premium installments for hazard insurance on the Property; and

(ii) Borrower's obligation under Covenant 5 to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage provided by the master or blanket policy.

In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, or to common areas and facilities of the PUD, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender. Lender shall apply the proceeds to the sums secured by the Security Instrument, with any excess paid to Borrower.

**C. Public Liability Insurance.**  Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

MULTISTATE PUD RIDER--Single Family--FNMA/FHLMC UNIFORM INSTRUMENT--Form 3150 09/90

Page 1 of 2

USRI0111.wp (11-19-04)

Loan Number: 621015052      Servicing Number: 002097690-8      Date: 03/02/06

**D. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, payable to Borrower in connection with any condemnation or other taking of all or any part of the property or the common areas and facilities of the PUD, or for any conveyance in lieu of condemnation, shall be paid to Lender. Such proceeds shall be applied by Lender to the sums secured by the Security Instrument as provided in Section 10.

**E. Lender's Prior Consent.** Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to:

(i) the abandonment or termination of the PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of a taking by condemnation or eminent domain;

(ii) any amendment to any provision of the "Constituent Documents" if the provision is for the express benefit of Lender;

(iii) termination of professional management and assumption of self-management of the Owners Association; or

(iv) any action which would have the effect of rendering the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

**F. Remedies.** If Borrower does not pay PUD dues and assessments when due, then Lender, if allowed by applicable law, may pay them. Any amounts disbursed by Lender under this paragraph F shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this PUD Rider.

_____ (Seal)          _____ (Seal)
VINCENT J MORRIS            -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
ANNE MARIE MORRIS            -Borrower                                          -Borrower

_____ (Seal)          _____ (Seal)
                            -Borrower                                          -Borrower

**MULTISTATE PUD RIDER - Single Family-Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**
Page 2 of 2                                                                USRI0112.wp (11-19-04)

Loan Number: 621015052    Servicing Number: 002097690-8    Date: 03/02/06

## ADJUSTABLE RATE RIDER
### (LIBOR Index - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made  March 02, 2006 ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or
Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to
secure Borrower's Adjustable Rate Note (the "Note") to
PRIME LENDERS, INC, A FLORIDA CORPORATION
(the "Lender") of the same date and covering the property described in the Security Instrument and located
at:

1868 NW 74TH AVE,   PEMBROKE PINES, FL 33024-1053
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST
RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE
BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE
MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**The Note** provides for an initial interest rate of        9.400%                . The
Note provides for changes in the interest rate and the monthly payments, as follows:

**4.    INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A) Change Dates
The interest rate I will pay may change on the first day of   April 01       2008       ,
and on that day every sixth month thereafter. Each date on which my interest rate could change is called a
"Change Date."
(B) The Index
Beginning with the first Change Date, my interest rate will be based on an Index. The "Index" is the
average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market
("LIBOR"), as published in *The Wall Street Journal*. The most recent Index figure available as of the first
business day of the month immediately preceding the month in which the Change Date occurs is called the
"Current Index."
If the Index is no longer available, the Note Holder will choose a new index that is based upon
comparable information. The Note Holder will give me notice of this choice.
(C) Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding
SIX AND 30/100                                       percentage point(s) ( 6.300%    )
to the Current Index. The Note Holder will then round the result of this addition to the next higher one-eighth
of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will

MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX - Single Family
Page 1 of 3
USRI0021 (02-23-99)

Loan Number: 621015052     Servicing Number: 002097690-8     Date: 03/02/06

be my new interest rate until the next Change Date.
        The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.
        **(D) Limits on Interest Rate Changes**
        The interest rate I am required to pay at the first Change Date will not be greater than    12.400%  or less than   9.400%    . Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than one percentage point (1.0%) from the rate of interest I have been paying for the preceding six months. In no event will my interest rate be greater than       15.400%                  or less than   9.400%          .
        **(E) Effective Date of Changes**
        My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.
        **(F) Notice of Changes**
        The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

        **TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**
Covenant 17 of the Security Instrument is amended to read as follows:

        **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Security Instrument. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.
        To the extent permitted by applicable law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.
        If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 2 of 3

USRI0022 (02-23-99)

Loan Number: 621015052    Servicing Number: 002097690-8    Date: 03/02/06

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)
VINCENT J MORRIS

_____ (Seal)
ANNE MARIE MORRIS

_____ (Seal)

_____ (Seal)

_____ (Seal)

_____ (Seal)

**MULTISTATE ADJUSTABLE RATE RIDER-LIBOR INDEX-Single Family**
Page 3 of 3

USRI0023 (02-23-99)

AO 440 (Rev. 06/12)  Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of Florida

| | |
|---|---|
| VINCENT J. MORRIS, STEVEN SIMMONS, YOLANDA UPTON, and MICHAEL LUZZI, on behalf of themselves and all others similarly situated _____ *Plaintiff(s)* v. PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES, on its own behalf and as successor by merger to OCWEN LOAN SERVICING, LLC, a New Jersey Corporation, and OCWEN LOAN SERVICING, LLC, a Florida Limited Liability Company, _____ *Defendant(s)* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Civil Action No.  20-60633-CIV-SMITH |

**SUMMONS IN A CIVIL ACTION**

To: *(Defendant's name and address)*  OCWEN LOAN SERVICING, LLC
Registered Agent:
c/o Corporation Service Company
1201 Hays Street, Tallahassee, Florida 32301

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

Adam M. Moskowitz
The Moskowitz Law Firm, PLLC
2 Alhambra Plaza, Suite 601
Coral Gables Florida, 33134

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

*CLERK OF COURT*

Date: _____           _____
*Signature of Clerk or Deputy Clerk*

AO 440 (Rev. 06/12)  Summons in a Civil Action (Page 2)

Civil Action No.  20-60633-CIV-SMITH

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 4 (l))*

This summons for *(name of individual and title, if any)* _____

was received by me on *(date)* _____ .

❏ I personally served the summons on the individual at *(place)* _____
_____ on *(date)* _____ ; or

❏ I left the summons at the individual's residence or usual place of abode with *(name)* _____
_____ , a person of suitable age and discretion who resides there,

on *(date)* _____ , and mailed a copy to the individual's last known address; or

❏ I served the summons on *(name of individual)* _____ , who is

designated by law to accept service of process on behalf of *(name of organization)* _____
_____ on *(date)* _____ ; or

❏ I returned the summons unexecuted because _____ ; or

❏ Other *(specify):*


My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.


Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc:

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS, STEVEN
SIMMONS, YOLANDA UPTON, and
MICHAEL LUZZI, on behalf of themselves
and all others similarly situated,

                Plaintiffs,

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability
Company,

                Defendants.

_____/

**[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING A CLASS FOR
SETTLEMENT PURPOSES, DIRECTING THE ISSUANCE OF CLASS NOTICE, AND
SCHEDULING A FINAL APPROVAL HEARING**

The Parties and their respective counsel have entered into a Stipulation of Settlement and

Release (the "Agreement"), which, with its incorporated exhibits, sets forth the terms of the Parties

agreement ("Settlement") to settle and dismiss this litigation on a class-action basis, subject to the

Court's approval. On August 25, 2020, Plaintiffs Vincent J. Morris, Steven Simmons, Yolanda

Upton, and Michael Luzzi jointly filed a motion for preliminary approval of their Settlement (ECF

No. __) with Defendant PHH Mortgage Corporation ("PHH"), individually and as successor by

merger to named Defendant Ocwen Loan Servicing, LLC ("Ocwen").[1] The Court has reviewed

---

[1] Although named as a Defendant in this action, Ocwen no longer exists as a standalone entity.
PHH is Ocwen's successor by merger for the purposes of the claims asserted in this action. As
used herein, "Defendants" refers to both PHH and Ocwen.

1

Plaintiffs' motion for preliminary approval, the Settlement,[2] and the pleadings filed to date in this matter to determine whether the proposed Settlement Class should be preliminarily approved. Having fully considered the Parties' motions, and the arguments offered by counsel, **IT IS HEREBY ORDERED, DECREED, AND ADJUDGED AS FOLLOWS:**

1.       Plaintiffs' motion for preliminary approval of the Settlement is **GRANTED**.

2.       **Partial Stay of this Action**. All non-settlement-related proceedings in the Action are hereby stayed and suspended until further order of the Court.

3.       **Jurisdiction**. The Court finds that it has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d)(2)(A), including jurisdiction to approve and enforce the Settlement and all orders and decrees that have been entered or which may be entered pursuant thereto. The Court also finds that it has personal jurisdiction over the Parties and, for purposes of consideration of the proposed Settlement, over each of the members of the Settlement Class defined below (*see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985), and that venue is proper in this District pursuant to 28 U.S.C. § 1391.

4.       **Conditional Class Certification for Settlement Purposes Only**. The Court is presented with a proposed settlement prior to a decision on class certification, and must therefore determine whether the proposed Settlement Class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23, albeit for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). The Court must also be satisfied that the proposed class "is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). The Court conditionally finds and concludes, for settlement purposes only, that:

a.       The Settlement Class is an ascertainable one. A class is ascertainable if "the class definition contains objective criteria that allow for class members to be identified in an

---

[2] The definitions in Section II.1 of the Agreement are hereby incorporated as though fully set forth in this Order, and capitalized terms shall have the meanings attributed to them in the Agreement.

administratively feasible way," such that identifying class members will be "a manageable process that does not require much, if any, individual inquiry." *Karhu v. Vital Pharm., Inc.*, 621 F. App'x 945, 946 (11th Cir. 2015). Here, the proposed definition of the Settlement Class is based on objective criteria, all of which are determinable from PHH's business records. *See* Declaration of Krysta Sebastian (ECF No. 45-1) ("Sebastian Decl.") at ¶¶ 4-6. Individual, subjective inquiries to identify who may be a member of the Settlement Class are unnecessary. *See Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 530 (M.D. Ala. 2016) (proposed class was ascertainable where membership in the class was based on objective criteria and the defendant's data could be used to easily identify the putative class members).

        b.     The Settlement Class also satisfies the numerosity requirement of Rule 23(a)(1). The Settlement Class is comprised of the 943,706 primary, joint and/or co-borrowers on the 659,304 home mortgage loans who paid a Convenience Fee to Defendants between March 26, 2016 and August 21, 2020, inclusive, for making a loan payment by telephone, interactive voice response telephone system ("IVR") or the internet. Sebastian Decl.") at ¶¶ 4-6.; *see also Cox v. Am. Cast Iron Pip Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors.").

        c.     The commonality requirement of Rule 23(a)(2) is also satisfied for purposes of settlement. To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (commonality of claims "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members" (internal citations omitted)). Every key issue in the Action stems from the same alleged course of conduct: Defendants charging Settlement Class Members Convenience Fees to make their mortgage payments by telephone, IVR, or the internet. There are issues raised in this Action that are common to each Settlement Class Member, including, among other things: (a) whether Defendants imposed and collected from Settlement Class Members Convenience Fees not expressly permitted by the terms of their respective standard form loan documents; (b) whether such fees are permitted by law when charged for use of a payment method not referenced in the

loan documents; and (c) whether Settlement Class Members are entitled to damages under Section 1692k of the FDCPA or for breach of contract as a result of Defendants' alleged conduct. As a result, for purposes of settlement only, Rule 23(a)'s commonality requirement is satisfied. *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 515 (S.D. Fla. 2013) (concluding FDCPA class satisfied Rule 23's commonality requirement because class was uniformly charged a disputed fee); *accord Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 291 (M.D. Ga. 2016) (commonality satisfied in FDCPA class action where class members were subjected to a common course of conduct by the defendant); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 615-16 (S.D. Fla. 2009) (same).

        d.      The Settlement Class also satisfies the typicality requirement of Rule 23(a)(3). The test of typicality is "whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct." *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 641 (S.D. Fla. 2015) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). The typicality requirement "may be satisfied even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class," *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 698 (N.D. Ga. 1991), so long as the claims or defenses of the class and class representatives "arise from the same events, practice, or conduct and are based on the same legal theories," *Navelski v. Int'l Paper Co.*, 244 F. Supp. 3d 1275, 1306 (N.D. Fla. 2017) (citing *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984)). Here, Plaintiffs allege that they are situated identically with respect to every other Settlement Class Member. Plaintiffs have alleged that they suffered the same injuries as every other Settlement Class Member by being charged Convenience Fees when paying their mortgage payments by telephone, IVR, or the internet, even though such fees were allegedly not authorized by their loan documents and allegedly not otherwise permitted by law. For purposes of class settlement, this is sufficient to satisfy Rule 23(a)'s typicality requirement. *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 539 (N.D. Ala. 2001) ("Typicality is satisfied where the claims of the class representatives arise from the same broad course of conduct [as] the other class members and are based on the same legal theory."); *accord Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 501-11 (N.D. Cal. 2007) (concluding FDCPA class satisfied Rule 23's typicality

requirement because common claim was that defendant had had attempted to collect improper fees and charges from class members); *O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687, 698-99 (E.D. Pa. 2018) (certifying FDCPA class after finding that the claims of the named plaintiff and putative class members were typical, in that the common allegation was that defendant had improperly re-aged the accounts of the class).

e.     Plaintiffs are adequate representatives of the Settlement Class under Rule 23(a)(4). All have standing (*see* Motion for Preliminary Approval ECF No. ___ at 18), are members of the Settlement Class they seek to represent, and the Court is aware of no antagonistic interests that exist between Plaintiffs and the Settlement Class Members. The Court is also satisfied that Class Counsel have the qualifications and experience necessary to undertake this litigation and serve as counsel for the Settlement Class. *See, e.g.*, *Feller, et al. v. Transamerica Life Ins. Co.*, No. 16-cv-01378-CAS (C.D. Cal.) ("*Feller*") (appointed Plaintiffs' counsel in a finally approved $195 million life insurance settlement); *Belanger v. RoundPoint Mortgage Servicing Corporation, et al.*, Case No. 1:17-cv-23307 (S.D. Fla.) (appointed Plaintiffs' counsel as class counsel and finally approved class action settlement regarding force placed property insurance); *Checa Chong v. New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing*, No. 9:18-cv-80948-ROSENBERG/REINHART, ECF No. 50 (S.D. Fla. Sept. 13, 2019) (same); *Quarashi v. M&T Bank Corp*, No. 3:17-cv-6675, ECF No. 83 (D.N.J. June 24, 2019); *Smith v. Specialized Loan Servicing, LLC, et al.*, No. 3:17-cv-06668, ECF No. 68 (D.N.J. Apr. 1, 2019) (same); *Rickert v. Caliber Home Loans, Inc., et al.*, No. 3:17-cv-06677 (D.N.J. Apr. 1, 2019) (same).

f.     In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed class of claims seeking monetary relief also must satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority. As detailed below, both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

i.     While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether those common issues predominate over "issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997). Rule 23(b)(3)'s predominance requirement tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citing *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)). Whether common issues predominate depends on "the elements of the underlying cause

of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011). Here, as detailed above, the elements of the Settlement Class Members' claims present common factual and legal questions, including but not limited to (a) whether Defendants imposed and collected from Settlement Class Members Convenience Fees in contravention of, or not expressly permitted by, the terms of their respective standardized loan documents; and (b) whether the Settlement Class Members are entitled to damages under Section 1692k of the FDCPA or for breach of contract as a result of Defendants' alleged conduct. For the purposes of settlement, the Court finds that these common issues of law and fact predominate over any individualized issues. *See, e.g.*, *Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410, 418-19 (W.D.N.Y. 2013) (common issues surrounding claim that defendant violated FDCPA by attempting to collect an improper charge predominated over any individual issues in case); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 75-76 (N.D. Ill. 2016) (predominance satisfied in FDCPA class action alleging that defendant attempted to collect from class members an improper percentage-based collection fee).

       ii.    Rule 23(b)(3) also asks whether the class action device is "superior to other available methods for fairly and efficiently adjudicating the controversy." For purposes of an opt-out class settlement, the Court concludes that the class action device is superior to other methods of resolving the issues in this Action given there is no negative value to each Plaintiff's claims, given the ability of Settlement Class Members to opt out, "given the large number of claims, the relatively small amount of damages available to each individual, and given the desirability of consistently adjudicating the claims…." *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015). And because Plaintiffs seek class certification for settlement purposes, the Court need not inquire into whether this Action, if tried, would present intractable management problems. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Carriuolo*, 823 F.3d at 988; *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("[M]anageability concerns do not stand in the way of certifying a settlement class.").

     5.    Accordingly, for purposes of considering, approving, and effectuating the Settlement and to fairly and adequately protect the interests of all concerned with regard to all claims set forth in the Operative Complaint, the following class (the "Settlement Class") is conditionally certified for settlement purposes only:

The Agreement provides relief to "all borrowers on home mortgage loans in the United States that were serviced by either or both of the PHH Defendants who, according to the PHH Defendants' records, were charged and paid a Convenience Fee for making a loan payment by telephone, IVR, or the internet between March 25, 2016 and August 21, 2020. Excluded from the Class are:

a. borrowers whose loans were included as class loans in the class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.);

b. borrowers who were or are named plaintiffs in any civil action, other than this Action, initiated against either PHH Defendant on or before August 7, 2020 asserting any claim arising from the payment of Convenience Fees;

c. borrowers whose promissory note and/or mortgage agreement, deed of trust, or other like security instrument has already been amended to add language affirmatively and explicitly stating that the lender and any servicing agent may collect "Convenience Fees" for payments made by telephone, IVR, or online;

d. the PHH Defendants' board members and executive level officers; and

e. the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

6. **Appointment of Class Representatives and Class Counsel**. The Court hereby appoints Plaintiffs—*i.e.*, Vincent J. Morris, Steven Simmons, Yolanda Upton, and Michael Luzzi—as the representatives of the conditionally certified Settlement Class. The Court further designates and appoints Adam Moskowitz of the Moskowitz Law Firm, PLLC, who the Court finds is experienced and adequate counsel, as the legal counsel for the Settlement Class ("Class Counsel"). Class Counsel are authorized to represent Plaintiffs and the Settlement Class Members, to enter into and seek approval of the Settlement on behalf of the Settlement Class, and to bind Plaintiffs, all other Settlement Class Members, and themselves to the duties and obligations contained in the Settlement, subject to the final approval of the Settlement by the Court.

7. **Preliminary Settlement Approval**. The Court finds, subject to the Fairness Hearing, that the Settlement is sufficiently fair, reasonable, and adequate that it falls within the range of possible approval, and it is in the best interests of the Settlement Class that they be given the opportunity to be heard regarding the Settlement and the opportunity to exclude themselves from the proposed Settlement Class. *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004).

Further, the settlement meets the standards for preliminary approval in the new amendments to Rule 23. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,

330 F.R.D. 11, 28 (E.D.N.Y. 2019). The amended Rule 23(e)(2) requires courts to consider whether:

    (a)    the class representatives and class counsel have adequately represented the class;

    (b)    the proposal was negotiated at arm's length;

    (c)    the relief provided for the class is adequate, taking into account:

        i.    the costs, risks, and delay of trial and appeal;

        ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

        iii.    the terms of any proposed award of attorney's fees, including timing of payment; and

        iv.    any agreement required to be identified under Rule 23(e)(3); and

    (d)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig*., 330 F.R.D. at 29. Further, providing notice to the Settlement Class Members is justified by the showing that the Court likely will be able to approve the proposed Settlement under Rule 23(e)(2).

    The Court further finds that the Settlement substantially fulfills the purposes and objectives of the Action, and offers beneficial relief to the Settlement Class that falls within the range of potential recovery in successful litigation of the FDCPA claim asserted in this Action. Although PHH does not admit any fault or liability in the Settlement, PHH agreed to provide $12,587,048.58 in relief to be distributed according to the Settlement Agreement. The Parties propose that such relief be used first to satisfy any Attorney's Fees and Expenses and Service Awards that the Court may ultimately award, with the remainder then distributed as Individual Allocations to Plaintiffs and those Settlement Class Members who do not timely exclude themselves from the Settlement Class.

    Under the Settlement, PHH has agreed, among other things, to offer direct cash payments into the mortgage accounts of a vast majority of Settlement Class Members, and a simplified claims process for a small percentage of borrowers whose loans are no longer serviced by the Defendants. Under the settlement, PHH will pay cash refunds of 28% or 18%, of the amounts charged by the Defendants for each Convenience Fee transaction during the more than four year class period. The partial refunds to Settlement Class Members are in varying amounts that are based upon when the

Convenience Fees were paid and whether the Class Loan was 30 days or more delinquent when Defendants acquired servicing rights, a key criterion for applicability of the FDCPA to a mortgage servicer. The Court find that this is an effective method of distributing relief to the class, and treats class member equitably relatively to each other.

The Plaintiffs and their counsel estimate that the value of the Settlement Fund is approximately twenty percent (20%) of the Convenience Fees charged, collected and retained by Defendants from members of the Settlement Class during the relevant period. At this stage, the Court finds such relief to be within the range of reasonableness,[3] especially given the risks of success on the merits of Plaintiffs claims. Indeed, similar claims have been dismissed here in

---

[3] To warrant preliminary approval, a proposed class settlement should offer a recovery that "falls within th[e] range of reasonableness," which need not be "the most favorable possible result of litigation." *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F3d 581 (3d Cir. 1999). Here, the relief offered by the Settlement is roughly 20% of the Settlement Class's potential recovery, and sufficient to warrant preliminary approval of the Settlement given that since 1995, class action settlements typically "have recovered between 5.5% and 6.2% of the class member's estimated losses." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001); *see also Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267, 2015 WL 13629647, at *3 (N.D. Ala. Feb. 5, 2015) (noting that a class settlement recovery of between 13% to 20% is "frequently found … to be fair and adequate"); *In re Newbridge Networks Sec. Litig.*, No. 94-cv-1678, 1998 WL 765724, at *2 (D.D.C. 1998) ("[A]n agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (9% class recovery "is still within the range of reasonableness").

Florida and elsewhere.[4] Because it is far from certain that the Settlement Class could prevail at trial or secure class certification in a contested litigation setting, both sides have ample reason to compromise on these terms. At the same time, the Settlement offers meaningful relief now, and the Release contemplated by the Settlement is a limited one, releasing only those claims that relate to or arise in whole or in part from the Convenience Fees charged by Defendants to Settlement Class Members between March 25, 2016 and August 21, 2020, inclusive, for making loan payments by telephone, IVR, the internet or other payment methods not authorized by their loan documents. The United States District Court for the Northern District of Alabama granted final approval of a very similar settlement in 2018, further supporting preliminary approval here. *See McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019).

Furthermore, in addition to the monetary relief the Settlement provides, it also secures valuable prospective relief for the Settlement Class. First, these agreements include a reduction on the amount that can be charged for online/web payments by 13.3% and a three-year freeze on those charges. Second, PHH has agreed to a three-year freeze on the amounts that can be charged for telephone/IVR payments, currently $17.50 for telephonic payments through a live operator and $7.50 for IVR payments. Fourth, improved disclosures will be implemented on PHH's website of the amounts to be charged for convenience fees.

Finally, as approved in *McWhorter v. Ocwen,* 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019), the parties have agreed upon a class-wide note amendment ensuring that the borrowers recognize and legally authorize the acceptance by PHH (or any subsequent servicer) of payments via optional

---

[4] *See Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, ECF No. 21 (M.D. Fla. July 17, 2020); *Turner v. PHH Mortg. Corp.*, No. 8:20-CV-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596 (N.D. Cal. April 17, 2020) (dismissing nationwide breach of contract and FDCPA claim); *Caldwell v. Freedom Mortgage Corporation*, Case No. 2020 WL 4747497 (N.D Tex. August 17, 2020) (dismissing breach of contract claims, even on mortgages with deeds of trust insured by the Federal Housing Administration); *Mariscal v. Flagstar Bank FSB*, 2020 WL 4804983 (C.D. Cal. August 4, 2020) (dismissing breach of contract and violations of California's Rosenthal Fair Debt Collection Practices Act and Unfair Competition Law); *Amye Elbert v. Roundpoint Mortgage Servicing Corporation*, 2020 WL 4818605 (N.D. Cal. August 20, 2020) (dismissing California Rosenthal Act and UCL, as well as striking the class allegations).

means not specifically authorized by their mortgages. (Settlement ¶ 5.3); *see McWhorter*, 2019 WL 9171207 *11. Because these payment methods and the fees charged for them are not mandatory, and the fees to be charged for them are less than the late fees that borrowers contractually can be charged if their payments are made beyond the grace period, this amendment preserves the ability of Settlement Class Members to use otherwise potentially unavailable optional methods of rapid payment when necessary to avoid adverse credit reporting, foreclosure or higher late charges, or when otherwise preferable for them, and to do so in a manner that previously has been approved by the Federal Trade Commission. *See McWhorter*, 2019 WL 9171207 (approving settlement where "Settlement Class Members have agreed that for Class Loans still serviced by Ocwen … the loan documents shall be deemed amended … to expressly authorize Ocwen to accept payments made through means not specifically provided for in the borrower's loan documents, and to charge Convenience Fees in return for accepting those payments.") *Id*. at 4. This is eminently fair to all concerned.

These factors all strongly favor the Settlement's preliminary approval. The Court also finds that the Settlement (a) is the result of serious, informed, non-collusive, arm's length negotiations involving experienced counsel informed and familiar with the legal and factual issues of the Action and reached through protracted mediation sessions with the assistance of independent mediator Rodney Max of Upchurch Watson White & Max; (b) is sufficient to warrant notice of the Settlement and the Fairness Hearing to the Settlement Class Members; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; (d) offers a full and fair remediation to the Settlement Class Members; (e) the Class Representatives and Class Counsel have adequately represented the class and (e) is not a finding or admission of liability of Defendants. Accordingly, the Court grants preliminary approval of the Settlement under Federal Rule of Civil Procedure 23(e), subject to further consideration at the Fairness Hearing after notice to the Settlement Class Members.

8.     **No Additional Agreements Required to Be Identified**: The Court has confirmed that there are no agreements required to be identified under Rule 23(e)(3).

9.     **<u>Fairness Hearing</u>**. A Fairness Hearing shall be held before this Court on _____, 2021, beginning at __:__ a.m./p.m., in Courtroom __ of the _____ _____, to determine whether (a) the Settlement is fair, reasonable, and adequate such that the Settlement should be

granted final approval by the Court; (b) the certification of the Settlement Class should be made final for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (c) whether Attorneys' Fees and Expenses should be awarded by the Court to Class Counsel, and in what amount, pursuant to Federal Rule of Civil Procedure 23(h); (d) whether Service Awards should be approved by the Court to Plaintiffs, and in what amounts; and (e) whether a Final Order and Judgment should be entered, and this Action thereby dismissed with prejudice, pursuant to the terms of the Agreement. The Court may adjourn or reschedule the Fairness Hearing without further notice to the Settlement Class Members.

10.     **Further Submissions by the Parties**. Any application by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Plaintiffs shall be filed with the Court no later than fourteen (14) days before the Objection/Exclusion Deadline. The Settlement Administrator shall promptly post any such application to the Settlement Website after its filing with the Court. All other submissions of the Parties in support of the proposed Settlement, or in response to any objections submitted by Settlement Class Members, shall be filed no later than ten (10) days before the Fairness Hearing. The Settlement Administrator is directed to file a list reflecting all requests for exclusion it has received from Settlement Class Members with the Court no later than ten (10) days before the Fairness Hearing.

11.     **Administration**. The Court authorizes and directs the Parties to establish the means necessary to administer the proposed Settlement, and implement the class notification process in accordance with the terms of the Settlement. The Parties are hereby authorized to retain Class-Settlement.com to serve as the Settlement Administrator, at Defendants' expense, to aid in implementing the terms of the Settlement.

12.     **Notice to the Settlement Class**. The Court approves, as to both form and content, the Class Notice attached to the Settlement, as well as the proposed methodology for distributing that notice to the Settlement Class Members as set forth in Section 7 of the Settlement. Accordingly,

a.     The Court orders the Settlement Administrator, within twenty-eight (28) days following entry of this Preliminary Approval Order and subject to the requirements of this Preliminary Approval Order and the Settlement, to cause the Class Notice to be mailed, by First-Class U.S. Mail, proper postage prepaid, to the Settlement Class Members identified as borrowers in Defendants' records on each Class Loan, addressed to the mailing address of record for that

Class Loan as reflected in Defendants' records. The Court further orders the Settlement Administrator to: (i) prior to mailing, attempt to update the last known mailing addresses for each Class Loan as reflected in Defendants' records through the National Change of Address system or similar databases; (ii) promptly re-mail any Class Notices that are returned by the United States Postal Service with a forwarding address and continue to do so with respect to any such returned mail that is received seven (7) days or more prior to the Objection/Exclusion Deadline; and (iii) determine, as soon as practicable, whether a valid address can be located through use of the United States Postal Service's National Change of Address database and/or other reasonable means and without undue cost or delay, for those Class Notices that are returned without a new or forwarding address, and promptly re-mail copies of the Class Notice to any Settlement Class Members for whom the Settlement Administrator is reasonably able to locate valid addresses in accordance herewith, so long as the valid addresses are obtained seven (7) days or more prior to the Objection/Exclusion Deadline.

b.     Following the entry of this Preliminary Approval Order and prior to the mailing of notice to the Settlement Class Members, the Parties are permitted by mutual agreement to make changes in the font, format, and content of the Class Notice provided that the changes do not materially alter the substance of that notice. Any material substantive changes to those notices must be approved by the Court.

c.     The Parties shall cause the Settlement Administrator to establish an internet website to inform Settlement Class Members of the terms of the Agreement, their rights, dates and deadlines, and related information. The Settlement Website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, and should be operational and live by the date of the mailing of the Class Notice. At this time, the Court orders that the Settlement Website include the following: (i) the Operative Complaint; (ii) the Settlement, and its exhibits; (iii) a copy of this Preliminary Approval Order; (iv) the Class Notice; and (v) a disclosure, on the Settlement Website's "home page," of the deadlines for Settlement Class Members to seek exclusion from the Settlement Class, to seek exclusion from or to object to the Settlement, as well as the date, time and location of the Fairness Hearing.

d.     No later than ten (10) days before the date of the Fairness Hearing, the Settlement Administrator, and to the extent applicable, the Parties, shall file with the Court a

declaration or declarations, verifying compliance with the aforementioned class-wide notice procedures.

13. **Findings Concerning the Notice Program**. The Court finds and concludes that the form, content, and method of giving notice to the Settlement Class as described in this Preliminary Approval Order: (a) will constitute the best practicable notice under the circumstances; (b) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action, the terms of the proposed Settlement, and of their rights under and with respect to the proposed Settlement (including, without limitation, their right to object to or seek exclusion from, the proposed Settlement); (c) is reasonable and constitutes due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) satisfies all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Federal Rule of Civil Procedure 23(c), and the United States Constitution (including the Due Process Clause). The Court further finds that the Class Notice is written in simple terminology, and is readily understandable.

14. **Cost Obligations for the Notice Program**. All Costs of Administration, including those associated with providing notice to the Settlement Class as well as in administering the terms of the Settlement, shall be paid by Defendants as set forth in the Settlement. In the event the Settlement is not approved by the Court, or otherwise fails to become effective, neither Plaintiffs, nor Class Counsel, nor the Settlement Class Members shall have any obligation to Defendants for such costs and expenses.

15. **Communications with Settlement Class Members**. The Court authorizes Defendants to communicate with Settlement Class Members, potential Settlement Class Members, and to otherwise engage in any other communications within the normal course of Defendants' business. However, Defendants are ordered to refer any inquiries by Settlement Class Members or potential Settlement Class Members about the Settlement to the Settlement Administrator or Class Counsel.

16. **Preliminary Injunction.** To protect the Court's jurisdiction and ability to determine whether the Settlement should be finally approved, pending such decision all Potential Settlement Class Members are hereby preliminarily enjoined (i) from directly or indirectly filing, commencing, participating in, or prosecuting (as class members or otherwise) any lawsuit in any jurisdiction asserting on their own behalf claims that would be Released Claims

if this Settlement is finally approved, unless and until they timely exclude themselves from the Settlement Class as specified in the this Order and in the Agreement and its exhibits; and (ii) regardless of whether they opt out, Potential Settlement Class Members are further preliminarily enjoined from directly or indirectly filing, prosecuting, commencing, or receiving proceeds from (as class members or otherwise) any separate purported class action asserting, on behalf of any Settlement Class Members who have not opted out from this Settlement Class, any claims that would be Released Claims if this Settlement receives final approval and becomes effective.

17.     **Exclusion ("Opting Out") from the Settlement Class**. Any Settlement Class Member who wishes to be excluded from the Settlement Class must submit a written request for exclusion to the Settlement Administrator, mailed sufficiently in advance to be received by the Settlement Administrator by the Objection/Exclusion Deadline. A request for exclusion must comply with the requirements set forth in Section 8 of the Agreement and include the Settlement Class Member's name, mailing and email addresses, contact phone number, the loan number(s) for which he or she seeks exclusion from the Settlement, a statement that he or she wishes to be "excluded from the Settlement Class," contain a caption or title that identifies it as "Request for Exclusion in *Morris v. PHH* (case number 20-60633-RS)," and include the Settlement Class Member's personal signature. A request for exclusion may not request the exclusion of more than one member of the Settlement Class; provided, however, that an exclusion request received from one Settlement Class Member will be deemed and construed as an exclusion request by all co-debtors, joint-debtors, and multiple borrowers on the same Class Loan. The loan number for each Class Loan shall be included in the Class Notice sent to the Settlement Class Members identified as borrowers with respect to that Class Loan.

18.     Any Settlement Class Member who timely requests exclusion consistent with these procedures shall not: (a) be bound by a final judgment approving the Settlement; (b) be entitled to any relief under the Settlement; (c) gain any rights by virtue of the Settlement; or (d) be entitled to object to any aspect of the Settlement.

19.     Settlement Class Members who do not exclude themselves from the Settlement Class in full compliance with the requirements and deadlines of this Preliminary Approval Order shall be deemed to have forever consented to the exercise of personal jurisdiction by this Court and shall have waived their right to be excluded from the Settlement Class and from the Settlement,

and shall thereafter be bound by all subsequent proceedings, orders, and judgments in this Action, including but not limited to the Release contained in the Settlement, regardless of whether they have requested exclusion from the Settlement Class (but failed to strictly comply with the procedures set forth herein) and even if they have litigation pending or subsequently initiate litigation against Defendants relating to the claims and transactions released in the Action.

20.    **Objections and Appearances**. Any Settlement Class Member (or counsel hired at any Settlement Class Member's own expense) who does not properly and timely exclude himself or herself from the Settlement Class, and who complies with the requirements of this paragraph and the procedures specified in the Class Notice, may object to any aspect or effect of the proposed Settlement.

a.    Any Settlement Class Member who has not filed a timely and proper written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or to the certification of the Settlement Class, or to the award of Attorneys' Fees and Expenses, or to the Service Award, or to any other aspect or effect of the Settlement, or to the Court's jurisdiction, must file a written statement of objection with the Court no later than the Objection/Exclusion Deadline.

b.    An objection must be in writing, and must include: (1) the Settlement Class Member's name, mailing and email addresses, contact phone number, and loan number(s); (2) a caption or title that identifies it as "Objection to Class Settlement in *Morris v. PHH* (case number 20-60633-RS);" (3) the specific reason(s), if any, for each objection, including all legal support the Settlement Class Member wishes to bring to the Court's attention and all factual evidence the Settlement Class Member wishes to introduce in support of the objection; (5) the name and contact information of any and all attorneys representing, advising, or in any way assisting the objector in connection with the preparation or submission of the objection; (6) if the objecting Settlement Class Member intends to appear and argue at the Fairness Hearing, a statement indicating as much; and (7) the personal signature of the objecting Settlement Class Member.

c.    To file a written statement of objection, an objector must mail it to the Clerk of the Court sufficiently in advance that it is received by the Clerk of the Court on or before the Objection/Exclusion Deadline, or the objector may file it in person on or before the Objection/Exclusion Deadline at any location of the United States District Court for the Northern District of Alabama, except that any objection made by a Settlement Class Member represented

16

by his or her own counsel must be filed through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

        d.     Any Settlement Class Member who fails to comply strictly with the provisions in this Preliminary Approval Order for the submission of written statements of objection shall waive any and all objections to the Settlement, its terms, or the procedurals for its approval and shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and will be deemed to have consented to the exercise of personal jurisdiction by the Court, consented to the Settlement, consented to be part of the Settlement Class, and consented to be bound by all the terms of the Settlement, this Preliminary Approval Order, and by all proceedings, orders, and judgments that have been entered or may be entered in the Action, including, but not limited to, the Release described in the Settlement. However, any Settlement Class Member who submits a timely and valid written statement of objection shall, unless he or she is subsequently excluded from the Settlement Class by order of the Court, remain a Settlement Class Member and be entitled to all of the benefits, obligations, and terms of the Settlement in the event the Settlement is given final approval and the Final Settlement Date is reached.

     21.     **Termination of Settlement**. This Preliminary Approval Order, including the conditional class certification contained in this Preliminary Approval Order, shall become null and void and shall be without prejudice to the rights of the Parties or Settlement Class Members, all of whom shall be restored to their respective positions existing immediately before this Court entered this Preliminary Approval Order, if the Settlement: (a) is not finally approved by the Court, (b) does not become final pursuant to the terms of the Settlement; (c) is terminated in accordance with the Settlement; or (d) does not become effective for any other reason.

     22.     **Use of this Preliminary Approval Order**. In the event the Settlement does not reach the Final Settlement Date or is terminated in accordance with the terms of the Settlement, then: (a) the Settlement and the Agreement, and the Court's Orders, including this Preliminary Approval Order, relating to the Settlement shall be vacated and shall be null and void, shall have no further force or effect with respect to with respect to any Party in this Action, and shall not be used or referred to in any other proceeding by any person for any purpose whatsoever; (b) the conditional certification of the Settlement Class pursuant to this Preliminary Approval Order shall be vacated automatically, without prejudice to any Party or Settlement Class Member to any legal argument that any of them might have asserted but for the Settlement, and this Action will revert

to the status that existed before the Settlement's execution date; (c) this Action shall proceed pursuant to further orders of this Court; and (d) nothing contained in the Settlement, or in the Parties' settlement discussions, negotiations, or submissions (including any declaration or brief filed in support of the preliminary or final approval of the Settlement), or in this Preliminary Approval Order or in any other rulings regarding class certification for settlement purposes, shall be construed or used as an admission, concession, or declaration by or against any Party of any fault, wrongdoing, breach or liability in this Action or in any other lawsuit or proceeding, or be admissible into evidence for any purpose in the Action or any other proceeding by any person for any purpose whatsoever. This paragraph shall survive termination of the Settlement and shall remain applicable to the Parties and the Settlement Class Members whether or not they submit a written request for exclusion.

23.    **Continuing Jurisdiction**. This Court shall maintain continuing exclusive jurisdiction over these settlement proceedings to consider all further applications arising out of or connected with the Settlement or this Preliminary Approval Order, and to assure the effectuation of the Settlement for the benefit of the Settlement Class.

**IT IS SO ORDERED** this _____ day of _____, 2020.

_____
**RODNEY SMITH**
**United States District Judge**

**EXHIBIT D**

**COMPLETE AND SUBMIT THIS CLAIM FORM ONLY IF YOUR MORTGAGE LOAN IS NO LONGER SERVICED BY PHH MORTGAGE. COMPLETED AND SIGNED CLAIM FORMS MAY BE SUBMITTED ONLINE AT WWW._____ OR MAILED TO _____**

**CLASS ACTION CLAIM FORM**

PLEASE FULLY COMPLETE THIS CLAIM FORM AND SIGN IT BELOW. INCOMPLETE CLAIM FORMS WILL BE INVALID AND THE CLAIM MAY BE DENIED. Unless you complete this Claim Form online, please carefully print using dark ink.

If more than one person is named as a borrower and their name appears above, then ALL named borrowers must complete and sign this Claim Form.

Please read the statements below and, if accurate, sign this form, follow the instructions, and return the Claim Form by the deadline.

**I hereby certify the following:**

1. During the period of March 25, 2016 through August 21, 2020, I was listed as a borrower for a mortgage serviced by PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") or Ocwen Loan Servicing, LLC ("Ocwen").

2. The property address OR PHH or Ocwen loan number associated with that loan was _____

3. I was charged and paid a Convenience Fee for making a payment on that mortgage loan by telephone, IVR, or the internet.

4. My current mailing address for receiving any proceeds of this settlement is: _____.

I hereby declare (or certify, verify, or state), that the foregoing statements and the information provided by me on this Claim Form are true and correct.

_____        _____
(Signature of Borrower)                                            (Date signed)

_____        _____
(Signature of Co-Borrower)                                       (Date signed)

| Street Address | Apt. # | City, State | Zip Code |
|---|---|---|---|
| | | | |

Please MAIL THIS CLAIM FORM to [_____], P.O. Box \_\_\_\_\_, _____, \_\_\_\_\_ _____-\_\_\_\_, with a postmark of no later than _____, or, if a private mail carrier is used,

with a label reflecting that it is sent no later than ▆▆▆▆▆▆▆▆▆. Or, you may upload or submit a completed Claim Form online on the Settlement Website www._____.com, no later than midnight Eastern Standard Time on _____, 2021.

2