# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# FORT LAUDERDALE DIVISION

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS, STEVEN SIMMONS, YOLANDA UPTON, and MICHAEL LUZZI, on behalf of themselves and all others similarly situated,

    Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a PHH MORTGAGE SERVICES, on its own behalf and as successor by merger to OCWEN LOAN SERVICING, LLC, a New Jersey Corporation, and OCWEN LOAN SERVICING, LLC, a Florida Limited Liability Company,

    Defendants.    /

## BRIEF OF AMICI CURIAE NATIONAL ASSOCIATION OF CONSUMER ADVOCATES, NATIONAL CONSUMER LAW CENTER, AND PUBLIC CITIZEN IN RESPONSE TO THE PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS

Nandan M. Joshi*  
Michael Kirkpatrick  
Public Citizen Litigation Group  
1600 20th Street NW  
Washington, DC 20009  
(202) 588-1000  
* Pro hac vice admission pending

Paul D. Turner (113743)  
pturner@pbyalaw.com  
Oliver M. Birman (123750)  
obirman@pbyalaw.com  
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT  
200 South Andrews Avenue, Suite 600  
Fort Lauderdale, Florida 33301  
T: (954) 566-7117 / F: (954) 566-7115

Counsel for amici curiae

October 2, 2020

## INTEREST OF AMICI CURIAE[1]

Amici curiae National Association of Consumer Advocates, National Consumer Law Center, and Public Citizen submit this brief to address aspects of the proposed nationwide class-action settlement that Amici believe are not fully addressed in the papers submitted by the parties in this case. The proposed settlement is unusual in that it purports to amend the promissory notes and mortgages for the residential property of all class members to authorize defendants PHH Mortgage Corporation, et al. (collectively, PHH) to charge so-called "convenience fees." Plaintiffs contend that these fees are unlawful because they are currently not authorized by those documents. The proposed settlement further requires class members to execute documents that may be needed to effectuate the amendment in the event that the parties' attempt at a class-wide amendment is deemed ineffective. In effect, if the proposed settlement is approved, PHH will have used a class-action settlement to legalize going forward and bind the class to the practices that plaintiffs alleged were unlawful in the first place. Indeed, by legalizing such practices, the proposed class action settlement will provide PHH a benefit that it could not have obtained had it not been sued, in exchange for a very small percentage of the disputed fees.

Amici submit this brief because they are concerned about the proposed use of the class-action device to effectuate an amendment to notes and mortgages on residential property, as well as other features of the proposed settlement that raise red flags about whether it is fair, reasonable, and adequate, as required by Rule 23. As further described in the motion for leave to file this brief, amici are nonprofit consumer-advocacy organizations with expertise in the areas of consumer finance, consumer rights, and class action procedures. Amici believe that this amicus brief will be

---

[1] This brief was not authored in whole or in part by any party or its counsel, and that no person other than amici curiae, its members, or its counsel contributed any money that was intended to fund the preparation and submission of this brief.

useful to the Court as it considers whether the motion for preliminary approval of the proposed settlement satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

## BACKGROUND

PHH is the mortgage servicer for each putative class member. The plaintiffs allege that, when class members made their mortgage payments online or by phone, PHH charged fees in violation of the Fair Debt Collection Practices Act (FDCPA), which prohibits debt collectors from "collect[ing] … any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). The plaintiffs also allege that PHH's practice of charging fees for certain methods of payment breached the mortgage loan agreements.

As relevant here, the proposed settlement would authorize PHH to collect these allegedly unlawful fees from class members for future mortgage payments made by phone or Internet. Specifically, under Paragraph 5.3 of the parties' Stipulation and Settlement of Release, ECF 46-1, "each Class Member" shall be deemed to have agreed that, effective as of August 21, 2020, the promissory note and mortgage of each Class Loan serviced by PHH is deemed amended to expressly authorize PHH to charge fees to the class member when he or she uses phone or Internet to make a mortgage payment. *Id.* at 32–33. The proposed settlement then sets out five paragraphs of new provisions that will be deemed added to the note and mortgage. *Id*. at 33. The proposed settlement further imposes a duty on every class member to execute any documents that may be needed to authorize PHH to charge fees "[i]f for any reason the foregoing [amendment to the mortgage and note] is deemed ineffective to expressly authorize such Convenience Fees for purposes of any state or federal statute, law or regulation." *Id.* at 34.

In exchange for this amendment to mortgage loan documents, the settlement provides class members a refund of 28 percent of certain convenience fees previously charged between March 25, 2019, and August 25, 2020, and a refund of 18 percent for all other convenience fees, from which attorneys' fees, expenses, and incentives awards will be deducted on a pro rata basis. ECF 46, at 7–8. Class members not entitled to an automatic credit on their mortgage accounts must submit a claim for refund, and any amounts not claimed revert to PHH. *Id*. at 8.

## ARGUMENT

Federal Rule of Civil Procedure 23(e) requires this Court to consider two issues when determining whether to give preliminary approval to a proposed class action settlement and authorize the parties to send notice of the proposed settlement to class members.

First, the Court must consider whether the parties have provided the Court "with information sufficient to enable it to determine whether to give notice of the proposal to the class." Fed. R. Civ. Pro. 23(e)(1)(A). "The decision to give notice of a proposed settlement to the class is an important event," and "[t]he parties must provide the court with information sufficient to determine whether notice should be sent." *Id*., advisory committee's note to 2018 amendment; *see also Chi v. Univ. of S. Cal.*, No. 2:18-CV-04258, 2019 WL 3064457, at *1 (C.D. Cal. Apr. 18, 2019) ("burden is on the parties seeking approval" to provide the information required under Rule 23(e)(1)).

Second, the Court must consider whether notice to class members "is justified by the parties' showing that the court will likely be able to … approve the proposal under Rule 23(e)(2)" and to certify the class. Fed. R. Civ. P. 23(e)(1)(B). Under Rule 23(e)(2), the Court cannot ultimately approve the proposed settlement unless it concludes that the settlement is "fair, reasonable, and adequate." *Id.* 23(e)(2). Thus, at this stage, "the Court is required to 'make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms.'"

*Fresco v. Auto Data Direct, Inc.*, No. 03-61063-CIV, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) (quoting David F. Herr, *Annotated Manual for Complex Litigation* § 21.632 (4th ed. 2004)).

The proposed settlement would authorize amendments to the notes and mortgages of class members throughout the nation. The stated purpose of the amendment is to add five new paragraphs to class members' mortgage documents, which would authorize PHH to collect so-called convenience fees when class members use certain telephonic or electronic methods to make mortgage payments. The use of a class-action settlement to effectuate substantive amendments to notes and mortgages on residential properties raises significant concerns, particularly in light of the circumstances of this settlement.

**First**, there is no basis for the plaintiffs' assumption that PHH may amend class members' notes and mortgages through a nationwide class-action settlement, and there is inadequate disclosure of the additional documents that the disclosure would obligate class members to sign if an en masse amendment is not possible. Each original mortgage transaction was an individually negotiated transaction, which, if conducted properly, would have resulted in the relevant mortgage documents being filed in the appropriate state or county recorder's office. Recording the mortgage terms and conditions in this manner has the effect of giving notice to third parties of the mortgage terms and the nature of the security that is attached to the property. *See* Christopher L. Peterson, *Predatory Structured Finance*, 28 Cardozo L. Rev. 2185, 2209 (2007) (describing how "the originator [of the loan] establishes its right to payment by giving public notice of the mortgage through recording it with a county recorder's office"); Shawn M. Yesner, Esq., *Loan modifications can help borrowers keep their homes*, Andrews' Bank & Lender Liab. Litig. Rep., at *1 (July 20, 2009) ("Loan modifications typically are recorded in the county public records to provide notice to third parties that the terms of the original recorded mortgage were modified."). An individually

5

negotiated change to the original mortgage—for example, if the mortgage is refinanced—would require a similar public recording. But, here, the proposed settlement purports to alter the mortgages of thousands of class members across multiple states, without any concomitant obligation on PHH's part to record the changed terms.

The settlement agreement itself reflects the parties' uncertainty over the propriety of a class-wide amendment to thousands of individual notes and mortgages, and thus imposes a perpetual obligation on class members to "execute any and all documents" on PHH's request "as may be necessary to authorize" convenience fees, with "such documents to be effective as of August 21, 2020." ECF 46-1, at 34 ¶ 5.3. These additional documents, which the settlement would potentially obligate class members to sign, have apparently not been drafted, much less offered for reviewed by the Court.

Given the settling parties' own uncertainties about the need to execute individualized agreements, and the fact that the potential additional documents that class members would be obligated to sign have not been submitted for review by the Court, the Court lacks sufficient information to authorize a notice to class members, apprising them of a potential en masse amendment to mortgage notes and mortgages that may be infeasible—even putting aside whether it is fair, reasonable, or adequate. *See id.* Ex. A at 2 (providing notice to class members of what they are "giving up" without addressing potential need to execute future documents at PHH's request), 7 (proposed class notice language about proposed note and mortgage amendments).

**Second**, the plaintiffs portray the provision regarding amendment of each class member's mortgage documents as simply a modification to a contract by the parties to the contract. ECF 46, at 9. But using a class action settlement to make a mass amendment to notes and mortgages could have unforeseen and unintended consequences for consumers and the mortgage lending

marketplace as a whole. The mortgage lending industry relies on a robust and sophisticated secondary market for mortgage debt, which serves as a source of liquidity for mortgage lenders and, thus, increases the availability of credit for potential borrowers looking to finance the purchase of a home. *See* Peterson, *Predatory Structured Finance*, *supra*, at 2191–213 (describing secondary market for mortgage loans and securitization of mortgage loans); National Consumer Law Center, Mortgage Lending §§ 1.4.12, 1.5 (3d ed. 2019), updated at www.nclc.org/library (same). Investors in the secondary mortgage market, in turn, depend on servicers such as PHH to collect payments and handle the other servicing responsibilities that may arise during the life of a mortgage loan. *See* National Consumer Law Center, Mortgage Servicing and Loan Modifications § 1.2.3.5 (2019), updated at www.nclc.org/library (describing role of mortgage servicers). Consistent with their assigned role, servicers have circumscribed authority to alter the material terms of the mortgage loan documents. *See*, *e.g.*, Peterson, *Predatory Structured Finance*, *supra*, at 2210–11; Final Rule, Consumer Financial Protection Bureau, *Mortgage Servicing Rules Under the Real Estate Settlement Procedures Act (Regulation X)*, 78 Fed. Reg. 10,696, 10,827 (Feb. 14, 2013) (recognizing that loan *owners*, not servicers, have to establish loss mitigation eligibility requirements for mortgage loans).

If servicers could alter the terms of notes and mortgages without the participation and consent of the *owners* of the mortgage debt, investors would face significant uncertainty about the value of their investments and would, in turn, price such investments to reflect that risk. *See* Securitization Fin. Assets § 16.04 (3d ed., 2020 Supp.) ("If the proper actions are not taken, the pool entity (and thus, its investors) may lose some or all of its rights to the mortgage loans as a result of unpermitted activities by the seller/servicer or claims by its creditors."). The result would be to artificially decrease liquidity and consumers' access to credit. The parties

have not addressed this potential impact on the secondary mortgage market that could arise if class action settlements could provide a vehicle for servicers to engage in a mass amendment of existing notes and mortgages.

The plaintiffs urge this Court to follow the decision of the Northern District of Alabama in *McWhorter v. Ocwen Loan Servicing, LLC*, No. 2:15-CV-01831, 2019 WL 9171207 (N.D. Ala. Aug. 1, 2019). But *McWhorter* addressed a class action settlement in which loan documents were deemed amended "to expressly authorize Ocwen to accept payments made through means not specifically provided for in the borrower's loan documents, and to charge Convenience Fees in return for accepting those payments." *Id.* at *4; *see also id.* at n.5 (requiring class members to execute documents if the class-wide amendment was ineffective). The decision, however, did not address impacts on the mortgage lending marketplace or the other legal and policy issues addressed in this brief surrounding a mortgage servicer's use of the class action device to make substantive changes to existing notes and mortgages.[2]

**Third**, compounding these deficiencies in the record is the fact that the proposed amendment to class members' notes and mortgages provides a significant benefit to PHH that extends beyond the release of claims for past collections of allegedly unlawful fees. Without the proposed amendment, PHH would face substantial legal risk were it to continue its practice of charging fees for electronic and telephonic mortgage payments, including from federal regulators charged with enforcing the FDCPA and states' attorney general offices enforcing state laws. *See*, *e.g.*, 15 U.S.C. § 1692*l* (providing for governmental enforcement of the FDCPA). The proposed amendment (if it accomplishes what it purports to do) would permit PHH to continue its current

---

[2] The plaintiffs also note that federal and state regulators did not object to the *McWhorter* settlement. ECF 46, at 9. But regulators have no obligation to oppose every class action settlement that raises public policy concerns, and they do so rarely.

practices (at least with respect to class members), despite the absence of authorization in borrowers' existing notes and mortgages. Importantly, although the plaintiffs portray "optional" methods of payment as a benefit to borrowers (ECF 46, at 10), the record does not indicate whether PHH also benefits, from either potentially reduced costs of accepting payments through such methods over non-fee methods of accepting mortgage payments and/or the value of the fees to PHH of charging these fees going forward. Such information is necessary to evaluate accurately the plaintiffs' claim that the proposed amendment to notes and mortgages is fair, reasonable, and adequate to resolve the class-action claims.

**Fourth**, the Court should give particularly searching scrutiny to the proposed settlement in light of the circumstances surrounding the process by which the settlement agreement was reached. As initially filed, the proposed class in this case was limited to Florida borrowers, and the complaint raised only state law claims. ECF 1. Only after multi-party mediation failed—and a mere two weeks before the settlement agreement was finalized—did the plaintiffs amend the complaint to include a nationwide class and a federal law claim under the FDCPA. ECF 11, ECF 46, at 5–6. "[G]iven the dramatic effect that expansion of the proposed class has on [PHH's] liability exposure nationwide, the Court needs more information on the parties' course of conduct in reaching the proposed settlement." *Ross v. Convergent Outsourcing, Inc.*, 323 F.R.D. 656, 661 (D. Colo. 2018) (rejecting preliminary approval of settlement). The circumstances "raise[] a red flag as to whether it is the product of a so-called reverse auction," *id*. at 660, that enables PHH to "propose[] a cheap settlement and shop[] around among plaintiffs' counsel until the defendant finds a lawyer willing to settle on its terms." NACA, *Standards and Guidelines for Litigating and Settling Consumer Class Actions*, 299 F.R.D. 160 (3d ed. 2014). A reverse auction can occur even in the absence of collusion, and where, as here, there is a potentially "weak settlement that will

9

preclude other claims against the defendant," an extra level of judicial scrutiny is needed. *Reynolds v. Beneficial Nat. Bank*, 288 F.3d 277, 282 (7th Cir. 2002); *see also id.* at 283 ("Although there is no proof that the settlement was actually collusive in the reverse-auction sense, the circumstances demanded closer scrutiny than the district judge gave it.").

The presence of a reverter (or "kicker") clause under which unclaimed settlement money will revert to PHH is another red flag. *See* ECF 46-1, at 31 ¶¶ 4.10–4.11. As the Eleventh Circuit has observed, courts regard such clauses as "potentially problematic because they deprive the class of benefits that the defendant is willing to pay." *Poertner v. Gillette Co.*, 618 F. App'x 624, 630 n.6 (11th Cir. 2015). Although not prohibited outright, courts have recognized that "they create perverse incentives." *Roes, 1-2 v. SFBSC Mgmt.,* LLC, 944 F.3d 1035, 1058 (9th Cir. 2019). Accordingly, reverter clauses are "suspect and need to be viewed cautiously since they undercut the deterrent effect of class actions and can suggest a lack of full diligence in representing the class." *Sylvester v. CIGNA Corp.*, 369 F. Supp. 2d 34, 45 (D. Me. 2005) (internal quotation marks, brackets, and footnote reference omitted). Particularly in light of the substantive concerns raised above about the proposed amendment to class members' notes and mortgages, the presence of the reverter warrants a heightened level of judicial scrutiny of the proposed settlement to ensure that it satisfies the requirements of Rule 23(e)(1).

## CONCLUSION

For the foregoing reasons, the motion for preliminary approval of the proposed settlement agreement should be denied.

Dated: October 2, 2020.	Respectfully submitted,

*/s/ Paul Turner*
Paul D. Turner (113743) pturner@pbyalaw.com
Oliver M. Birman (123750) obirman@pbyalaw.com
PERLMAN, BAJANDAS, YEVOLI & ALBRIGHT
200 South Andrews Avenue, Suite 600
Fort Lauderdale, Florida 33301
T: (954) 566-7117 / F: (954) 566-7115

Nandan M. Joshi*
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000
**Pro hac vice admission pending*
*Attorneys for National Association of Consumer Advocates, National Consumer Law Center, and Public Citizen*