**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS and MICHAEL LUZZI,
on behalf of themselves and all others similarly
situated,

                     Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability
Company,

                     Defendants.

_____/

**PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT AND CERTIFICATION OF THE SETTLEMENT CLASS**

Plaintiffs are very proud to present to this Court the amended class action settlement they reached with Defendants -- after many weeks of extensive Zoom and telephone mediation sessions before a new, highly experience mediator, The Honorable John W. Thornton. This new class settlement will fully resolve this nationwide class action while avoiding features of the previously proposed settlement that gave the Court pause. For example, unlike previous proposed settlements, this proposed amended Settlement does not involve a classwide note amendment, and unclaimed funds will not revert to Defendants. This amended Settlement has been reached at the same time that many courts in this Circuit are ruling these claims not actionable at all, and therefore dismissing other plaintiffs' materially identical claims with prejudice—including claims against these Defendants. Accordingly, Plaintiffs request entry of an Order granting preliminary approval of the class action settlement as set forth in the parties' Stipulation of Settlement and Release (finding that the proposed settlement "falls within the range of reasonableness"), preliminarily certifying the "FDCPA Class" and the "Florida Class" described in the Stipulation for settlement purposes only, and approving notice to all Settlement Class Members. Defendants have agreed to the proposed Settlement and do not oppose the relief sought herein.

## INTRODUCTION

Under the amended Settlement, Defendants establish settlement funds totaling $2,771,068 which will be used to provide direct payments to members of the Settlement Class as well as injunctive relief that would greatly benefit Settlement Class Members. The Settlement offers significant direct cash payments or cash credits to all members of the Settlement Class who paid "convenience" fees or "Speedpay" fees when they made payments on the mortgage over the telephone or online to Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services ("PHH") and its predecessor Ocwen Loan Servicing, LLC ("Ocwen") (collectively, "PHH Defendants" or "Defendants").[1] The Defendants provide these alternate payment avenues as an option, and in many instances, they allow borrowers to avoid paying much greater late charges on their mortgages. Mailing a check or money order as specified in the borrowers' loan documents does not require payment of any Convenience Fee.[2] Rather, the legal dispute in this action is

---

[1] Ocwen no longer exists as a standalone entity. PHH is Ocwen's successor by merger for the purposes of the claims asserted against Ocwen in this action.
[2] Unless otherwise indicated, capitalized terms shall have the same meanings here as given to them in the Agreement.

whether charging Convenience Fees for other, more expedited payment methods that Defendants are not required to offer at all is permissible under FDCPA and other applicable law. The Parties have executed a Stipulation of Settlement and Release (the "Agreement"), the terms of which, including all exhibits attached thereto, constitute the Parties' settlement ("Settlement"), and agreed upon the form of the proposed Class Notice to the Settlement Class. **Exhibit 1**.

Under the proposed Settlement, Defendants will create two separate Settlement Funds, with an aggregate combined value of $2,771,068, which will be distributed to Settlement Class Members (after first deducting any fees, expenses or service awards that the Court awards Plaintiffs and Class Counsel). FDCPA Class Members will be entitled to an allocation from the FDCPA Settlement Fund. The FDCPA Settlement Fund has an aggregate value of $1,233,381, which is equal to the sum of 32% of the Convenience Fees paid to and retained by Ocwen for telephonic or web-based mortgage payments from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (A) of the definition of the FDCPA Class and 32% of the Convenience Fees paid to and retained by PHH for telephonic or web-based mortgage payments from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (B) of the definition of the FDCPA Class. Florida Class Members will be entitled to an allocation from the Florida Settlement Fund. The Florida Settlement Fund has an aggregate value of $1,537,687, which is equal to 18% of the Convenience Fees that were paid to and retained by Ocwen or PHH from Florida Class Members for telephonic or web-based mortgage payments during the period from March 25, 2016 through and including August 17, 2022, but excluding Convenience Fees already subject to allocations from the FDCPA Settlement Fund.[3] These different percentage refunds used to create the FDCPA and Florida Settlement Funds are based upon the existence of more precedent supporting FDCPA claims arising from the payment of convenience fees for the use of optional payment services, as compared to claims brought under Florida law arising from the same conduct. Further, the Settlement requires PHH to provide additional disclosures on its website for any future Convenience Fees charged to Class Members, including disclosure of alternative payment methods that involve lower or no fees. The Settlement also requires PHH to lower any fee for internet payments for a period of two years, to freeze all other fees for a period of two years, and to provide additional training and scripting to PHH customer

---

[3] A prior version of the settlement in this matter contained a term, a class-wide Note Amendment which was questioned by the Court and certain government regulators. The instant settlement does not contain any Note Amendment.

service employees to provide additional information about the Convenience Fees and the existence of alternative payment options for lower or no fees.

The Settlement's benefits were the result of rigorous, arm's-length negotiations by the Parties and their counsel under the direction of a distinguished mediator, the Honorable John W. Thornton. *See* Mediator's Report from Judge John W. Thornton dated August 10, 2022 (attached as **Exhibit 2**). Notice of this Settlement will be disseminated to Class Members via (i) direct mail, (ii) internet notice, and (iii) establishment of a settlement website.

Undersigned counsel were very well-positioned to evaluate and negotiate this settlement because they have been investigating and litigating this matter (and other similar matters for over three years) and have spent the last thirteen years litigating and resolving over 32 nationwide class actions for mortgage holders against all of the major mortgage providers in the country. Further, the informal discovery during mediation of this action included the production *of thousands of pages of documents* regarding transaction data and Defendants' business practices. Despite that work, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution. As the Parties have previously explained, there are seven decisions from Florida federal courts holding that Defendants' precise fees at issue in this action are perfectly legal.[4] Given the immediate and substantial benefits the settlement will provide, there is no question that the settlement is "within the range of reasonableness" and warrants preliminary approval.

---

[4] *See Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) *Garbutt v. Ocwen Loan Serv., LLC*, 2020 WL 5641999, at *4 (M.D. Fla. Sept. 22, 2020); *Reid v. Ocwen Loan Serv., LLC*, 2020 WL 5104539, at *1 (S.D. Fla. May 4, 2020); *Estate of Campbell v. Ocwen Loan Serv., LLC*, -- F. Supp. 3d ---, 2020 WL 5104538, at *2 (S.D. Fla. Apr. 30, 2020); *Turner v. PHH Mortg. Corp.*, -- F. Supp. 3d ---, 2020 WL 2517927, at *3 (M.D. Fla. Feb. 24, 2020); *Lang v. Ocwen Loan Serv., LLC*, 2020 WL 5104522, at *3 (M.D. Fla. July 17, 2020); *Kelly v. Ocwen Loan Serv., LLC*, 2020 WL 4428470, at *2–3 (M.D. Fla. July 31, 2020).

Plus, many other recent district court cases have also recently dismissed with prejudice similar convenience fee class action claims against other servicers. *See Cooper v. Pennymac Loan Servs., LLC*, 2020 WL 8073604, at *7 (S.D. Fla. Dec. 23, 2020); *Brown v. Loancare, LLC*, 2020 WL 7389407, at *7 (W.D.N.C. Dec. 16, 2020); *Alexander v. Carrington Mortg. Servs., LLC*, 2020 WL 7319252, at *8 (D. Md. Dec. 11, 2020); *Austin v. Lakeview Loan Servicing, LLC*, 2020 WL 7256564, at *7 (D. Md. Dec. 10, 2020); *Lish v. Amerihome Mortg. Co., LLC*, 2020 WL 6688597, at *8 (C.D. Cal. Nov. 10, 2020); *Mariscal v. Flagstar Bank, FSB*, 2020 WL 4804983, at *4 (C.D. Cal. Aug. 4, 2020); *Meitzinger v. Sortis Holdings, Inc.*, 2019 WL 1471338, at *2–3, *5 (E.D.N.Y. Apr. 3, 2019); *Waddell v. U.S. Bank Nat'l Ass'n*, 395 F. Supp. 3d 676, 686 (E.D.N.C. 2019).

## FACTUAL BACKGROUND

This action alleges that charging Convenience Fees for phone and web payments violates the Federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA") and class members' mortgage contracts. Plaintiffs allege that because the "Convenience Fees" are neither expressly authorized by the applicable mortgage agreements nor expressly permitted by applicable law, the FDCPA and Florida law do not allow them to be charged. And because they are not allowable fees under the FDCPA or Florida law, Plaintiffs allege that charging them also violates the standard form mortgage contracts of Settlement Class Members. Plaintiffs' counsel have filed multiple class action lawsuits regarding these practices against numerous servicers including, but not limited to, Select Portfolio Systems, Carrington, PennyMac, and LoanCare, after having spearheaded class action litigation in over 32 nationwide class actions brought against the largest banks, mortgage servicers and force-placed insurers across the country, reaching 30 settlements to date totaling over $4.2 billion dollars for the proposed nationwide classes of over 5.3 million homeowners.[5] Ocwen and PHH were defendants in those successful nationwide force-placed insurance class action settlements.

Defendants moved to dismiss this action on August 7, 2020. [D.E. 20]. Recognizing that many different courts had reached diametrically opposed conclusions on claims just like this, and

---

[5] *See e.g.*, *Williams v. Wells Fargo Bank, N.A.,* No. 11-cv-21233 (S.D. Fla.) (final approval granted); *Saccoccio v. JPMorgan Chase Bank N.A.,* No. 13-cv-21107 (S.D. Fla.) (final approval granted); *Diaz v. HSBC Bank (USA), N.A.,* No. 13-cv-21104 (S.D. Fla.) (final approval granted); *Fladell v. Wells Fargo Bank, N.A.,* No. 13-cv-60721 (S.D. Fla.) (final approval granted); *Hamilton v. SunTrust Mortg., Inc.,* No. 13-cv-60749 (S.D. Fla.) (final approval granted); *Hall v. Bank of Am., N.A.,* No. 12-cv-22700 (S.D. Fla.) (final approval granted); *Lee v. Ocwen Loan Servicing, LLC,* No. 14-cv-60649 (S.D. Fla.) (final approval granted); *Braynen v. Nationstar Mortg.,* LLC, No. 14-cv-20726 (S.D. Fla.) (final approval granted); *Wilson v. Everbank,* N.A., No. 14-cv-22264 (S.D. Fla.) (final approval granted); *Montoya v. PNC Bank, N.A.,* No. 14-cv-20474 (S.D. Fla.) (final approval granted); *Almanzar v. Select Portfolio Servicing,* No. 14-cv-22586 (S.D. Fla.) (final approval granted); *Jackson v. U.S. Bank, N.A.,* No. 14-cv-21252 (S.D. Fla.) (final approval granted); *Circeo-Loudon v. Green Tree Servicing, LLC,* No. 14-cv-21384 (S.D. Fla.); *Beber v. Branch Banking & Trust Co.,* No. 15-cv-23294 (S.D. Fla.) (final approval granted); *Ziwczyn v. Regions Bank, No.* 15-cv-24558 (S.D. Fla.) (final approval granted); *McNeil v. Selene Finance, LP,* No. 16-cv-22930 (S.D. Fla.); *McNeil v. Loancare, LLC,* No. 16-cv-20830 (S.D. Fla.) (final approval granted); *Edwards v. Seterus, Inc.,* No. 15-cv-23107 (S.D. Fla.) (final approval granted); *Cooper v. PennyMac Loan Servicing,* LLC, No. 16-cv-20413 (S.D. Fla.) (final approval granted). *Strickland, et al. v. Carrington Mortgage Services, LLC, et al.,* 16-cv- 25237 (S.D. Fla.) (final approval granted for three separate settlements); *Quarashi et al v. Caliber Home Loans Inc. et al.;* 16-9245 (D.N.J.) (final approval granted).

given the existence of contradictory regulatory guidance on the issue, the Parties decided to mediate this dispute.  The Parties entered into a settlement agreement and moved for preliminary approval in August 2020.  [D.E. 46].  The Court held a hearing on preliminary approval of the settlement on March 23, 2021. [D.E. 128]. At that hearing, the Court raised questions regarding some aspects of the settlement.  In response to the Court's questions, and to address corresponding concerns raised by the Attorneys General and the DOJ, the Parties ultimately agreed to the Amended Settlement, which provided an even more beneficial resolution for the class members. *See* [D.E. 136-1 at 5].  The Court then denied as moot the motion for preliminary approval of the Original Settlement and set a briefing schedule on the new motion for preliminary approval of the Amended Settlement. *See* [D.E. 138].

While the new motion for preliminary approval was pending, on November 8, 2021, a California class of borrowers was certified in *Torliatt* v. Ocwen Loan Servicing, LLC, Case No. 19-cv-04303-WHO at [D.E. 152].  On November 11, 2021, the Parties filed a joint motion to stay this case in light of the *Torliatt* certification order.  [D.E. 160].  On November 17, 2021, the Court held a status conference as to the impact of the *Torliatt* certification order and requested further briefing.  On November 23, 2021, this Court granted the motion to stay, closed this case for administrative purposes, and terminated all pending motions.  [D.E. 167].

After the Ninth Circuit Court of Appeals denied PHH permission to appeal the *Torliatt* class certification decision on February 28, 2022, without opinion. *Torliatt v. Ocwen Loan Servicing, LLC, et al.*, No. 21-80117 (9th Cir. Feb. 28, 2022), the parties retained the services of the Honorable John Thornton (Ret.) of JAMS in order to begin mediating a revised settlement agreement that takes into account the effect of that decision and the previous class certification order entered in *Torliatt* on the parties' previously proposed settlement.

After weeks of additional negotiations, the parties have come to a resolution to fully resolve this matter.  The parties subsequently executed the Agreement.  A copy of the Agreement is attached as **Exhibit 1**.[6]   On September 15, 2022, the Settling Parties announced their settlement and filed a joint motion to reopen this action and lift the stay.  [D.E. 173].  The Court granted that motion on September 22, 2022. [D.E. 174].  Per the Court's order granting the motion to reopen the motion, on September 23, 2022, Plaintiffs filed a Second Amended Complaint.  [D.E. 175].

---

[6] Attached to the Settlement Agreement as exhibits are: Class Notice (Exhibit A); Operative Complaint (Exhibit B); and [proposed] Preliminary Approval Order (Exhibit C).

3.      **The Settlement Terms and Agreement**

A.  ***The Proposed Settlement Class***

The Agreement provides relief to the following Settlement Class:

**The FDCPA Class**:

(A) All borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH and to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers whose loans make them potential members of the proposed settlement classes in *Torliatt v. Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case no. 5:21-cv-00174-JPB (Bailey) (N.D. W. Va.), whether or not those borrowers timely and validly exclude themselves from those settlement classes; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

– and –

**The Florida Class:**

All borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH

Defendant on or before the date the Agreement was fully executed; (c) borrowers in the "FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them. For the avoidance of doubt, a borrower in the FDCPA Class who also paid a fee to either PHH Defendant between March 25, 2016 and March 24, 2019, inclusive, and who otherwise meets the definition of the Florida Class would be in both the FDCPA Class and the Florida Class.

### B. *Monetary Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary relief.  (*Id.* ¶ 1.1.47.)  The PHH Defendants shall make available to the Settlement Class two Settlement Funds for a total amount of $2,771,068. The first (the "FDCPA Settlement Fund") shall be equal to the sum of 32% of the Convenience Fees paid to and retained by Ocwen from March 25, 2019 through August 17, 2022, for borrowers meeting subpart (A) of the definition of the FDCPA Class and 32% of the Convenience Fees paid to and retained by PHH from March 25, 2019 through August 17, 2022, for borrowers meeting subpart (B) of the definition of the FDCPA Class.  (*Id.* ¶ 1.1.16.)

The second (the "Florida Settlement Fund") shall be equal to 18% of the amounts paid as Convenience Fees to the PHH Defendants by Florida Settlement Class Members and retained by the PHH Defendants from March 25, 2016 through August 17, 2022, but excluding Convenience Fees already captured in the FDCPA Settlement Fund. Both Settlement Funds shall exclude all amounts paid to or otherwise retained by any third-party vendor to facilitate the Settlement Class Members' payments by telephone, IVR, or the internet and any Convenience Fees previously refunded or waived by the PHH Defendants on any given Settlement Class Loan.  (*Id.* ¶ 1.1.22.)

The Settlement Funds will be allocated as follows: first, they will be used to pay on a pro rata basis based on the size of each fund as a percentage of the combined total of both funds any attorneys' fee and expense award to Class Counsel and any service award to Lead Plaintiffs.  (*Id.* ¶ 4.6.)   The remaining balance of each fund will be divided and distributed as individual allocations as follows:

> i. Each FDCPA Class Loan shall receive an Individual Allocation from the FDCPA Settlement Fund, calculated as follows: the proportion of Convenience Fees paid to and retained by either Ocwen or PHH on that FDCPA Class Loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Retained Convenience Fees

paid to either Ocwen or PHH on all FDCPA Class Loans during that period. Only Convenience Fees paid to a servicer that serviced but did not own the FDCPA Class Loan and that acquired servicing rights to the FDCPA Class Loan when it was 30 days or more delinquent will be included in these calculations. For the avoidance of doubt, a borrower who qualifies as an FDCPA Class Member because Ocwen acquired servicing rights when the loan was 30 days or more delinquent and did not own the loan would be entitled to and Individual Allocation for the Retained Convenience Fees paid to Ocwen. But if that same FDCPA Class Loan later service transferred to PHH when it was not 30 days or more delinquent, then that borrower would not receive any Individual Allocation from the FDCPA Settlement Fund for the Retained Convenience Fees paid to PHH after the service transfer. To the extent an FDCPA Class Loan meets both subpart (A) and subpart (B) of the definition of the FDCPA Class, then the Individual Allocation for that loan will be calculated as the proportion of Convenience Fees paid to and retained by both Ocwen and PHH on that loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Convenience Fees captured in the FDCPA Settlement Fund as described above.

ii.  Each Florida Class Loan shall receive an Individual Allocation from the Florida Settlement Fund, calculated based on the proportion of Convenience Fees paid to and retained by Ocwen and/or PHH on that loan between March 25, 2016 and August 17, 2022 (but excluding Convenience Fee payments captured in the FDCPA Settlement Fund) as compared to the total aggregate amount of all Convenience Fees paid to and retained by Ocwen and/or PHH with respect to all Florida class loans during that period (but excluding Convenience Fees captured in the FDCPA settlement fund).

(*Id.* ¶¶ 4.7-4.8.)

All Settlement Class Members shall receive their individual allocations by check mailed to the last known borrower address as set forth in the PHH Defendants' records or as updated by the Settlement Administrator.  No portion of the Settlement Fund will revert to the PHH Defendants. Individual Allocation relief that remains undeliverable three hundred (300) days after the Final Settlement Date despite the Settlement Administrator's efforts to locate the Settlement Class Members shall be paid to Homes for Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured post – 9/11 Veterans, to enable them to rebuild their lives." https://www.hfotusa.org/mission/.

**C.  *Injunctive Relief***

In addition to the monetary relief and release described above, the parties have agreed in the Settlement to a number of very important injunctive relief components *(that have not been included in the above-stated value of the proposed Settlement).*  The PHH Defendants, to the extent they continue to charge Settlement Class Members for payments by telephone or internet in the future, have agreed to include language disclosing the following additional information at the time that borrowers pay online, to appear next to the first page of the website for the applicable form of payment:

> Paying by telephone, IVR, or internet is entirely optional and, unless otherwise specified, involves a fee retained in whole or in part by PHH. There are alternative methods of payment involving no fee, such as mailing a check or money order, or scheduled monthly bank account debts, while some methods of payment involve a lower fee than others. Click here to visit the FAQ section for more details.

(*Id.* § 5.)

Further, in each payment transaction involving a Convenience Fee following the Final Settlement Date, the PHH Defendants have agreed to use their best efforts to cause its customer service representatives, telephone systems, scripts or websites involved to disclose, in substance, the following information to each Settlement Class Member, except as otherwise hereafter prescribed or proscribed by law:

a. the exact fee to be charged for the payment method chosen by the borrower;
b. the fact that the fee may include an amount retained by the PHH Defendants in excess of its third party costs;
c. the fact that the borrower is not required to use the payment method for which a fee is being charged;
d. the payment methods for which the PHH Defendants do not charge a fee;
e. any other optional payment methods accepted by the PHH Defendants that may involve a lower fee; and
f. when a material consideration in the payment transaction at issue, the applicable deadline by which payment must be received in order to avoid a late fee.

(*Id.*)  The PHH Defendants further agreed to the following non-monetary relief as additional consideration for the Settlement:

> The PHH Defendants currently charge a Convenience Fee of $7.50 per online payment transaction. The PHH Defendants agree to reduce the per transaction Convenience Fee for online payments for borrowers with mortgaged property in Florida or who meet the definition of the FDCPA Class to $6.50 for a period of two years.

(*Id.*)   The PHH Defendants currently charge Convenience Fees of $7.50 per IVR payment transaction and $17.50 for payments made by telephone with the assistance of a live agent. (*Id.*) The PHH Defendants agree not to increase either of those fees for borrowers with mortgaged property in Florida or who meet the definition of the FDCPA class for a period of two years.

### D.  *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, Settlement Class Members will release the PHH Defendants, as well as all other entities included in the definition of "Released Persons" set forth in the Settlement Agreement from:

> each and all of the claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages (whether punitive, statutory, or compensatory and whether liquidated or unliquidated), losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any regulatory bulletin, guidelines, handbook, opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, that relate to or arise out of Convenience Fees charged (a) by Ocwen on FDCPA Class Loans to FDCPA Class Members meeting Subpart (A) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; (b) by PHH on FDCPA Class Loans to FDCPA Class Members meeting Subpart (B) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; or (c) by Ocwen or PHH to Florida Class Members on Florida Class Loans, during the period from March 25, 2016 through and including August 17, 2022.

(*Id.* ¶¶ 1.1.38, 1.1.39 & 3.3.)

### E.  *Class Notice*

Settlement Class members will receive notice of the settlement by first-class mail at their last-known mailing address in the form attached to the Agreement as Exhibit A, assuming it is approved by the Court. The Class Notice also will contain a provision directing Spanish-speaking class members to the Settlement Website, which will include the relevant settlement information in Spanish and a Spanish version of the Notice.  (*Id.* ¶ 7.2.8)  The notice will be mailed within 28 days of the entry of the Preliminary Approval Order.  (*Id.*)  The Settlement Administrator shall perform a search of the National Change of Address database for each mailing address prior to the mailing of the Notice.  (*Id.*)  The Settlement Administrator will also establish a website on which Settlement Class members may review the Settlement Agreement and its exhibits.  The Settlement Administrator will also advertise the Settlement on the internet.  The notice will provide a toll-free

number to call for settlement information.  Settlement Class Members may opt out or object by following the prescribed process.

**F.  *Class Counsel Fees and Expenses and Named Plaintiffs' Case Contribution Award***

The Parties stipulate in the Agreement that The Moskowitz Law Firm PLLC, will serve as Class Counsel.   Class Counsel's application for attorneys' fees and expenses for all of the law firms involved shall not exceed 33% of the Settlement Fund, inclusive of expenses.  For their endeavor on behalf of the Settlement Class, and in addition to the relief otherwise due them as members of the Settlement Class, Lead Plaintiffs Morris and Luzzi shall *conditionally* apply for *contingent* service awards to be paid from the Settlement Funds in the amount of $5,000 each for a total sum of $10,000. The application for service awards shall be contingent upon the following: either (i) the Eleventh Circuit's decision in *Johnson v. NPAS Solutions, LLC*, No. 18-12344, 2020 WL 5553312 (11th Cir. Sept. 17, 2020) is vacated or reversed prior to any award; or (ii) *all* settlement class members unanimously approve of the service awards, as reflected by *no* settlement class member filing a timely objection to the service award; but if even one settlement class member objects to the service award, then the conditional request for service awards shall be deemed automatically withdrawn.  *See In Re: Checking Account Overdraft Litigation*, 2022 WL 472057, at *5 (11th Cir. Feb. 16, 2022) (allowing a $10,000 incentive award to be paid since there was no opposition made to it by any class member and there was no evidence or argument that such an award was invalid).[7]

The Settlement is not made contingent upon any particular amount of Service Award or Attorneys' Fees and Expenses being awarded by the Court. PHH Defendants maintain their right and full discretion to object to any petition for Attorneys' Fees and Costs or Service Awards for any reason.  (*Id.* ¶ 10.1.)

**G.   *Final Approval and Objections***

Class members may object to the settlement no later than 35 days prior to the Fairness Hearing.  The Motion for Attorneys' Fees shall be filed 49 days prior to the Fairness Hearing and the Parties shall respond to any objections no later than 10 days prior to the Fairness Hearing.

**LEGAL ARGUMENT**

---

[7] Judge Newsom who authored *NPAS* was on the Panel in this action and no dissent was written. *See id.*

## I.     THE COURT SHOULD GRANT PRELIMINARY APPROVAL.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length.  Settlements of complex cases contribute greatly to the efficient use of judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, 2006 WL 2620275, at \*2 (M.D. Fla. 2006).  For these reasons, "[p]ublic policy strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.,* 967 F.2d 489, 493 (11th Cir.1992).  "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 2007 WL 2330895, at \*4 (S.D. Fla. May 14, 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.*  In the second step, after notice to the class and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval.  *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at \*2 (S.D. Fla. 2010).

The standard for preliminary approval of a class action settlement is not high—a proposed settlement should be preliminarily approved if it falls "within the range of possible approval" or if there is "probable cause" to notify the class of the proposed settlement and "to hold a full-scale hearing on its fairness[.]" *In re Mid-Atl. Toyota Antitrust Litig.*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citation omitted).  New amendments to Rule 23 took effect on December 1, 2018. These amendments alter the standards that guide a court's preliminary approval analysis.  *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019).  Prior to the amendments, Rule 23 did not specify standards for courts to follow when deciding whether to grant preliminary approval. Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must determine whether "giving notice is justified by the parties' showing that the court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B)(i–ii); *id.*

The amended Rule 23(e)(2) requires courts to consider whether:

(a)     the class representatives and class counsel have adequately represented the class;
(b)     the proposal was negotiated at arm's length;
(c)     the relief provided for the class is adequate, taking into account:
    i.     the costs, risks, and delay of trial and appeal;
    ii.     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;
    iii.     the terms of any proposed award of attorney's fees, including timing of payment; and

iv.    any agreement required to be identified under Rule 23(e)(3)[8]; and

(d)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange,* 330 F.R.D. at 29.

### A. The Settlement Is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.

At the preliminary approval stage, district courts consider whether the proposed settlement appears to be "'the result of informed, good-faith, arms'-length negotiation between the parties and their capable and experienced counsel' and not 'the result of collusion[.]'" *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1341 (S.D. Fla. 2011). The settlement terms in this case are the product of significant give and take by the settling parties, and were negotiated at arm's length. The parties participated in mediation sessions with the Honorable John W. Thornton, a well-respected mediator with significant experience resolving complex suits. Judge Thornton and the parties participated in mediation sessions in May through July 2022. The very fact of Judge Thornton's involvement weighs in favor of preliminary approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006); *Poertner v. The Gillette Co.,* 618 Fed. Appx. 624, 630 (11th Cir. 2015) (settlement achieved only after engaging in extensive arms-length negotiations moderated by an experienced mediator belies any suggestion of collusion).

The parties' extensive negotiations were also informed by considerable investigation and informal discovery Class Counsel conducted in this and other similar cases. *McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207, at *9 (N.D. Ala. Aug. 1, 2019) (finding that class counsel and plaintiffs adequately represented the settlement class based on the substantial informal discovery they obtained); *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1316–17 (S.D. Fla. 2005) (approving settlement over objection and concluding that class counsel had sufficient information to evaluate fairness of the settlement based on informal discovery); *Francisco v. Numismatic Guaranty Corp. of Am.*, 2008 WL 649124, at *11 (S.D. Fla. 2008) (same). Thousands of pages of documents were produced in mediation (and throughout the last two years) and have been carefully reviewed by Class Counsel.

---

[8] There are no agreements required to be identified under Rule 23(e)(3).

**B. The Settlement Falls Squarely within the Range of Reasonableness.**

As a result of the lengthy mediation process, the Settlement provides considerable monetary relief to the Settlement Class, and falls well within the range of possible approval. Under Rule 23(e)(2)(C), the relevant inquiry is whether the proposed settlement affords relief that "'falls within th[e] range of reasonableness, [and] not whether it is the most favorable possible result of litigation.'" *McWhorter*, 2019 WL 9171207, at *10; *Great Neck Capital Appreciation Inv. P'ship, L.P. v. PricewaterhouseCoopers, L.L.P.*, 212 F.R.D. 400, 409–10 (E.D. Wis. 2002) (Because "[t]he determination of whether a settlement is reasonable is not susceptible to mathematical equation yielding a particularized sum … [,] [t]he mere possibility that the class might receive more if the case were fully litigated is not a good reason for disapproving the settlement."). This Settlement delivers excellent direct cash relief for a significant percentage return of the Convenience Fees charged and provides injunctive relief which directly benefits the Class.

**1. Monetary Relief**

The Settlement provides significant monetary benefits. All Settlement Class Members who paid Convenience Fees are eligible to receive a refund of either 32% or 18% of each Convenience Fee they paid, less a pro rata share of attorneys' fees and expenses and service awards.[9] The FDCPA percentage is greater than the percentage approved for identical FDCPA claims in *McWhorter*, and the Florida Class percentage compares favorably when accounting for the dismissal of similar Florida state law claims challenging convenience fees.

Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *Behrens v. Wometco Enters., Inc.*, 118 F.R.D.

---

[9] Here, the relief offered by the Settlement is 32% for the FDCPA Class and 18% for the Florida Class of the Convenience Fees charged and retained by the PHH Defendants, not counting the value of any of the injunctive relief, of the Settlement Class's potential recovery, and sufficient to warrant preliminary approval of the Settlement given that class action settlements typically "have recovered between 5.5% and 6.2% of the class member's estimated losses." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001); *see also Parsons v. Brighthouse Networks, LLC*, 2015 WL 13629647, at *3 (N.D. Ala. 2015) (a class settlement recovery of between 13% to 20% is "frequently found … to be fair and adequate"); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330 (S.D. Fla. 2011) (9% recovery "is still within the range of reasonableness").

534, 542-43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Fisher Bros., Inc. v. Mueller Brass Co.*, 630 F. Supp. 493, 499 (E.D. Pa. 1985) (approving settlement recovery of 0.2% of sales).

Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming Defendants' defenses.[10]  Each class member would face a risk of outright dismissal in litigation. But due to this settlement, class members stand to recover a significant percentage of the amounts they paid, and do nothing to receive payment.  The settlement's monetary recovery falls well within the range of reasonableness.

### 2.  Injunctive Relief

Once approved, the Settlement will also instill greater transparency on the Convenience fees charged and the availability of free payment options.  The Settlement will also lower internet Convenience Fees and freeze the Convenience Fee charges for IVR and telephone payments with a live agent for two years.  There can be no question that this result is reasonable.

### C.  Class Counsel Believes the Settlement Is Reasonable.

Significant weight should be attributed to the belief of experienced counsel that the negotiated settlement is in the best interest of the class.  *See In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions*, 410 F. Supp. 659, 666 (D. Minn. 1974) (recommendation of experienced counsel is entitled to great weight).  Undersigned has litigated other convenience fee cases, already beating a motion to dismiss.[11]  Based on this experience, and

---

[10] *See McWhorter v. Ocwen Loan Servicing, LLC*, 2019 WL 9171207 *9 (noting the "substantial challenges to prevailing on the merits."); *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, ECF No. 21 (M.D. Fla. July 17, 2020); *Turner v. PHH Mortg. Corp.*, No. 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596 (N.D. Cal. April 17, 2020) (dismissing nationwide breach of contract and FDCPA claim); *Caldwell v. Freedom Mortgage Corporation*, Case No. 2020 WL 4747497 (N.D. Tex. August 17, 2020) (dismissing breach of contract claims, even on mortgages with deeds of trust insured by the FHA); *Mariscal v. Flagstar Bank FSB*, 2020 WL 4804983 (C.D. Cal. 2020) (dismissing breach of contract, Rosenthal Act and UCL)**;** *Amye Elbert v. Roundpoint Mortgage Servicing Corporation*, 2020 WL 4818605 (N.D. Cal. 2020) (dismissing California Rosenthal Act and UCL, and striking the class allegations).

[11] *See Garay v. Select Portfolio Servicing,* Case No. 19-cv-23323 (S.D. Fla) (ECF No. 52) (Magistrate Becerra recommended Denying Motion to Dismiss in part).

decades more with class action lawsuits (including settling over thirty lender placed nationwide class action insurance cases), it is Class Counsel's informed opinion that, the settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class.

## II.    THE COURT SHOULD CERTIFY THE PROPOSED SETTLEMENT CLASS.

"It is well established that a class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654,659 (S.D. Fla. 2011) (brackets in original). "In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class," save manageability, "since the settlement, if approved, would obviate the need for a trial." *Id.*

### A.    The Settlement Class Meets the Four Requirements of Rule 23(a).

Plaintiffs satisfy all four requirements of Rule 23 (a) which should be liberally construed. *See Walco Invs., Inc. v. Thenen*, 168 F.R.D. 315, 323 (S.D. Fla. 1996).

#### 1.    The Settlement Class Is Sufficiently Numerous.

Rule 23(a)(1) requires a showing that the proposed class is so numerous that joinder of all members would be impracticable.  *See* Fed. R. Civ. P. 23(a)(1).  "While there is no fixed rule, generally a class size [of] less than twenty-one is inadequate, while a class size of more than forty is adequate." *Williams*, 280 F.R.D. 665, 671-72 (S.D. Fla. 2012).

The Settlement is comprised of 141,563 primary, joint and/or co-borrowers on the 105,314 home mortgage loans who paid a Convenience Fee to Defendants between March 26, 2016 and August 17, 2022, inclusive, for making a loan payment by telephone, interactive voice response telephone system ("IVR") or the internet.  *See* Declaration of Kevin Campbell (ECF No. 177) ("Campbell Decl.") at ¶ 6.  Of those 105,314 Class Loans, 33,449 qualify for membership in the FDCPA Class, while 75,861 qualify for membership in the Florida Class. *Id.*  There is overlap between the FDCPA Class and Florida Class, with 3,996 loans qualifying for membership in both classes. *Id.*  Numerosity is satisfied here.

#### 2.    Questions of Law and Fact Are Common to All Settlement Class Members.

Plaintiffs must identify questions of law or fact common to the class.  *See* Fed. R. Civ. P. 23(a)(2).  "The threshold for commonality is not high."  *Cheney*, 213 F.R.D. at 490.  Commonality requires a showing that the class members' claims "depend on a common contention" and that class members have "suffered the same injury."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541

(2011).  "[F]or purposes of Rule 23(a)(2), even a single [common] question will do[,]" *id.* at 2556 (brackets in original), and "where a common scheme of conduct has been alleged, the commonality requirement should be satisfied." *Checking Overdraft,* 275 F.R.D. at 673-74.

Plaintiffs' claims here depend on the common contention that Defendants' charging a "Convenience Fee" was not expressly authorized by contract or any provision of existing law and therefore violates the FDCPA and the class members' mortgage loan contracts.  All members of the putative class were injured if at all in the same manner:  they were charged for processing fees that are alleged to be improper.  *See Williams,* 280 F.R.D. at 672 (finding commonality where "all members of the propose class were injured in the same manner, namely by being charged inflated premiums for the FPI").  Whether the Convenience Fees for use of the optional payment methods were in fact "incidental to" the borrowers' underlying mortgage debts and whether they were in fact permitted by law are common legal questions.  Whether they were authorized by or in contravention of the standard mortgages are also common legal and factual questions.

### 3.  Plaintiffs' Claims Are Typical of Those of the Settlement Class.

Rule 23(a)(3) requires Plaintiffs to demonstrate that their claims are typical of those held by the proposed class.  *See* Fed. R. Civ. P. 23(a)(3).  Typicality and commonality are related, with commonality referring to "the group characteristics of the class as a whole" and typicality focusing on the named plaintiff's claims in relation to the class.  *In re Terazosin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672 (S.D. Fla. 2004).  Plaintiffs' claims in this case arise from the same alleged course of conduct and are based on the same legal theories as those brought on behalf of the proposed class.  Plaintiffs and every class member had mortgage loans owned or serviced by Defendants that were governed by allegedly common and materially uniform agreements.

### 4.  Plaintiffs and Their Counsel Are Adequate Representatives.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4).  This requirement is satisfied when the class representatives have (1) no interests antagonistic to the rest of the class and (2) counsel who are "qualified, experienced, and generally able to conduct the proposed litigation." *Cheney*, 213 F.R.D. at 495.  "Adequate representation is presumed in the absence of contrary evidence." *Association for Disabled Ams., Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 464 (S.D. Fla. 2002).

### a.  Plaintiffs Do Not Have Interests Antagonistic to Settlement Class Members.

Adequacy exists where a class representative shares common interests with the class and

seeks the same type of relief for himself and the settlement class members.  *See Tefel v. Reno*, 972 F. Supp. 608 (S.D. Fla. 1997).  Here, Plaintiffs Morris and Luzzi have no interests antagonistic to those held by the Settlement Class.[12]  The class definition includes only those who were subject to Defendants' processing fees.  All class members were charged these fees.  Thus, the critical issues in this case—the existence, implementation, and lawfulness of Defendants' processing fees—are common issues.  Plaintiffs and absent class members share a common goal:  to recover the amounts charged for processing fees.  Rule 23(a)(4) is satisfied.  *See Williams*, 280 F. R. D. at 673-74.[13]

  **b.  Settlement Class Counsel Are Qualified and Experienced.**

  The attorneys who seek to represent the Settlement Class in this case are highly qualified to serve as class counsel, have been investigating these claims for more than a year, and have served as lead and co-lead counsel in some of the largest class actions in the country, as well as insurance-related complex cases.  The law firm that Plaintiffs seek to name as Class Counsel in this action is The Moskowitz Law Firm, PLLC.  Class Counsel has successfully prosecuted number insurance and consumer class actions and is well respected in the community that it serves.  Recently, on July 16, 2021, Adam Moskowitz had the honor of being appointed to serve as Co-Lead Class Counsel for the Economic Loss Victims to act on behalf of the Plaintiffs and the proposed class members in the matter of *In Re: Champlain Towers South Collapse Litigation*, Case No.: 2021-015089-CA-01 (11th Jud. Cir. 2021), which resulted in settlements of over $1.1 billion for the victims.  Class Counsel's Firm Resume is attached hereto as **Exhibit 3.**

  **B.  The Settlement Class Meets the Requirements of Rule 23(b)(3).**

  In addition to meeting the four requirements of Rule 23(a), a plaintiff seeking class certification must satisfy one subsection of Rule 23(b).  *Cheney*, 213 F.R.D. at 489.  Plaintiffs here seeks certification under Rule 23(b)(3), under which certification is appropriate if (1) common

---

[12] The parties have agreed to dismiss without prejudice the claims of Plaintiffs Simmons and Upton, who are not members of either Settlement Class.

[13] Further, Class Representatives Morris and Luzzi are members of the Settlement Class. Specifically, Plaintiff Morris is borrower on a residential mortgage loan secured by mortgaged property in the State of Florida and was charged and paid at least twelve Convenience Fees during the class period.  Morris is a member of the Florida Class. Plaintiff Luzzi's loan was greater than 30 days delinquent when PHH acquired servicing rights, PHH serviced but did not own Luzzi's loan, and Luzzi was charged a convenience fee within the class period.  *See* Declaration of Derrick Raleigh at 2 [D.E. 91-1]. Luzzi is a member of the FDCPA Class.

questions of law or fact predominate over those affecting only individual class members and (2) class treatment is superior to other adjudication methods. *See* Fed. R. Civ. P. 23(b)(3). The latter question implicates manageability concerns, which do not bear on certification of a settlement class. *See Checking Account Overdraft Litig.*, 275 F.R.D. at 659. Further, the Settlement Class is ascertainable and based on objective criteria. *See* Campbell Decl. at ¶¶ 5-6.

Moreover, giving all class members the option to accept a comprehensive resolution of the their claims in this action ***or opt out*** of it would be far superior to litigating each of their claims separately, especially since the actual damage amounts for each individual class member are low *Williams*, 280 F.R.D. at 675. Each and every class members has the right to simply opt out of this proposed settlement, if they do not agree with the terms and/or simply want to proceed with their own individual litigation. Accordingly, the Court should certify the proposed class.

## III.   THE COURT SHOULD APPROVE THE PROPOSED CLASS NOTICE.

Federal Rule of Civil Procedure 23(e)(1) provides that the "court must direct notice in a reasonable manner to all class members who would be bound by the proposal." Class notice should be "reasonably calculated, under the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). The parties' proposed notice plan readily meets this standard. The Settlement Agreement provides that the Settlement Administrator shall distribute class notice in the form attached as Exhibit A to the Agreement to all identifiable class members no more than 28 days after the Court enters the Preliminary Approval Order. (Ex. 1, Ex. C). The Settlement also provides for an internet website, internet advertising, and a toll-free number through which Settlement Class Members can acquire information.

## IV.   UNDERSIGNED SHOULD BE APPOINTED AS CLASS COUNSEL.

The parties have defined Class Counsel to include the undersigned law firm. (Ex. A ¶ 2.14). Undersigned respectfully requests to be appointed as Settlement Class Counsel. Undersigned counsel have significant experience litigating these cases, having represented plaintiffs in actions regarding similar processing fees, and in many other insurance related class actions.

## V.   PARALLEL PROCEEDINGS SHOULD BE ENJOINED.

Finally, the Court should preliminarily enjoin all Settlement Class Members who do not execute and timely file a Request for Exclusion from the Settlement Class from filing, prosecuting, maintaining, participating in or continuing litigation in federal or state court based on or related to

the claims or facts alleged in this Action. This type of injunctive relief is commonly granted in preliminary approvals of class action settlements pursuant to the All Writs Act.

The All Writs Act authorizes the Court to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). The Act empowers the Court to enjoin "conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to its natural conclusion." *In re Am. Online Spin-Off Accounts Litig.*, 2005 WL 5747463, at *4 (C.D. Cal. May 9, 2005). Settlement Class Members who do not opt out should be enjoined from asserting claims on behalf of other Settlement Class Members pending the Court's determination whether to finally approve the Settlement, and from asserting individual claims unless they opt out. Accordingly, pursuant to its authority under the All-Writs Act, the Court should enjoin parallel proceedings by or on behalf of Settlement Class Members pending the settlement approval process. *See, e.g., Shelby v. Two Jinns, Inc.*, 2017 WL 6347370, at *5 (C.D. Cal. Feb. 8, 2017) (entering an injunction against asserting released claims pending settlement approval and concluding that it is "necessary to protect and effectuate the settlement, this Order, and the Court's flexibility and authority to effectuate this settlement and to enter judgment when appropriate, and is ordered in aid of the Court's jurisdiction and to protect its judgments pursuant to 28 U.S.C. §1651(a)").

## VI.   THE COURT SHOULD SCHEDULE A FINAL APPROVAL HEARING.

Should the Court grant this Motion, Plaintiffs will file their motion for final approval of the settlement on a date set by the Court. Plaintiffs request that the Court schedule the Fairness Hearing no less than 150 days after entry of the order preliminarily approving the settlement, so as to satisfy all of the Notice requirements under CAFA. Class Counsel will file their fee application at least fourteen days prior to any objection or opt-out deadline.

## CONCLUSION

Plaintiffs respectfully request the Court should enter an order granting preliminary approval of the settlement.[14]  A proposed preliminary approval order is attached hereto as **Exhibit 4.**

---

[14] While the Court must conduct a hearing before granting Final Approval, the Court is not required to conduct a hearing to grant Preliminary Approval, it is within the Court's discretion.

Respectfully submitted this 18th day of October, 2022.

By: */s/ Adam M. Moskowitz*
Adam Moskowitz, Esq.
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman, Esq.
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye, Esq.
Florida Bar No. 117520
joseph@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza
Suite 601
Coral Gables, FL 33134
Telephone: 305 740-1423

-and-

By: */s/ Josh Migdal*
**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440
Josh Migdal, Esq.
Florida Bar No. 19136
josh@markmigdal.com
Yaniv Adar, Esq.
Florida Bar No. 63804
yaniv@markmigdal.com
eservice@markmigdal.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing was filed electronically via CM/ECF on

the 18th day of October, 2022 and served by the same means on all counsel of record.

By:   /s/ Adam Moskowitz