# Exhibit 1

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
FT. LAUDERDALE DIVISION**

**Case No. 0:20-CV-60633-RS**

VINCENT J. MORRIS and MICHAEL LUZZI,
on behalf of themselves and all others similarly
situated,

       Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability Company,

       Defendants.

_____/

**SECOND AMENDED STIPULATION OF SETTLEMENT AND RELEASE**

## **TABLE OF EXHIBITS**

Exhibit A:    Class Notice

Exhibit B:    Operative Complaint

Exhibit C:    [proposed] Preliminary Approval Order

**IT IS HEREBY STIPULATED AND AGREED**, by and between Plaintiffs Vincent J. Morris and Michael Luzzi (collectively, "Plaintiffs") and Defendant PHH Mortgage Corporation ("PHH"), individually and as successor by merger to named defendant Ocwen Loan Servicing, LLC ("Ocwen"), with all terms as defined below, each through their duly authorized counsel, that the above-captioned action, *Vincent J. Morris, et al. v. PHH Mortgage Corporation d/b/a PHH Mortgage Services*, No. 0:20-CV-60633-RS (S.D. Fla.), is hereby settled on all of the terms and conditions set forth in this Second Amended Stipulation of Settlement and Release, and that upon approval by the Court, final judgment shall be entered on the terms and conditions set forth herein.

## I.    INTRODUCTION

### 1.    The Litigation

This action concerns PHH's and Ocwen's assessment of Convenience Fees for borrowers' use of optional, expedited online and telephonic payment methods.[1] Plaintiff Morris filed this Action against PHH on March 25, 2020 (Doc. 1).  In the initial complaint, Morris asserted claims for violation of Florida's Consumer Collection Practices Act ("FCCPA"), breach of his mortgage agreement, and unjust enrichment, all based on the PHH Defendants' assessment of Convenience Fees when Morris sought to pay his mortgage using online or telephonic payment methods.  Morris sought to represent a class of similarly situated Florida borrowers on all of his claims.

Before PHH responded to the initial complaint, Morris filed an amended complaint (Doc. 11). The amended complaint added three additional Plaintiffs—Steven Simmons, Yolanda Upton, and Michael Luzzi—and alleged violations of Section 1692f(1) of the Fair Debt Collection Practices Act ("FDCPA") and, by extension, the uniform covenants in borrower mortgage

---

[1] For most of the period at issue in this action, Ocwen and PHH used Speedpay, Inc.'s "Speedpay™" service to facilitate these kinds of online and telephonic payment methods, so the Convenience Fees charged by Ocwen and PHH were often referred to as "Speedpay" fees.

agreements, deeds of trust, or similar security instruments.  Plaintiffs asserted their FDCPA and breach of claims on behalf of two separate nationwide classes, one of Ocwen borrowers and the other of PHH borrowers. PHH moved to dismiss the amended complaint in its entirety on August 7, 2020 (Doc. 26), arguing, among other things, that Convenience Fees could not have violated § 1692f(1) of the FDCPA (or, by extension, borrower mortgage agreements) because Convenience Fees were voluntarily paid by fully-informed borrowers in return for an entirely optional and separate service: expedited payment processing.

From the outset of the action, however, the Parties recognized that both regulators and courts have reached different conclusions on the merits of the claims presented. On the one hand, many courts, including this Court and the Middle District of Florida in several recent decisions dismissing with prejudice substantially similar actions against PHH as successor to Ocwen, have held that Convenience Fees do not violate the FDCPA, the FCCPA, or other state laws. Likewise, the Federal Trade Commission ("FTC") issued guidance stating that Convenience Fees do not violate the FDCPA because any required authorization and consent could be expressed in general terms in the loan documents or granted orally in a side agreement entered into at the time of the payment transaction. On the other hand, many courts, including this Court in other cases against PHH as successor to Ocwen, have denied motions to dismiss, holding that Convenience Fees could violate the FDCPA or state analogs. And the Consumer Financial Protection Bureau ("CFPB") has issued guidance stating its position that that the assessment of Convenience Fees could violate the FDCPA absent express authorization of such fees by statute or in the underlying loan documents.

Recognizing that many different courts had reached diametrically opposed conclusions on claims just like this, and given the existence of contradictory regulatory guidance on the issue, the Parties decided to mediate this dispute.  The Parties entered into a settlement agreement and moved

for preliminary approval in August 2020.  [D.E. 46].  The Court held a hearing on preliminary approval of the settlement on March 23, 2021. [D.E. 128]. At that hearing, the Court raised questions regarding some aspects of the settlement.  In response to the Court's questions, and to address corresponding concerns raised by the Attorneys General and the DOJ, the Parties ultimately agreed to the Amended Settlement, which provided an even more beneficial resolution for the class members. *See* [D.E. 136-1 at 5].  The Court then denied as moot the motion for preliminary approval of the Original Settlement and set a briefing schedule on the new motion for preliminary approval of the Amended Settlement. *See* [D.E. 138].

While the new motion for preliminary approval was pending, on November 8, 2021, a California class of borrowers was certified in *Torliatt v. Ocwen Loan Servicing, LLC*, Case No. 19-cv-04303-WHO at [D.E. 152].  On November 11, 2021, the Parties filed a joint motion to stay this case in light of the *Torliatt* certification order.  [D.E. 160].  On November 17, 2021, the Court held a status conference as to the impact of the *Torliatt* certification order and requested further briefing.  On November 23, 2021, this Court granted the motion to stay, closed this case for administrative purposes, and terminated all pending motions.  [D.E. 167].

After the Ninth Circuit Court of Appeals denied without opinion PHH's petition for permission to appeal the *Torliatt* class certification decision on February 28, 2022, *Torliatt v. Ocwen Loan Servicing, LLC, et al.*, No. 21-80117 (9th Cir. Feb. 28, 2022), a separate proposed class action settlement was reached in the *Torliatt* case, affecting borrowers with California mortgages only. In response to these developments, the parties to this action retained the services of the Honorable John Thornton (Ret.) of JAMS in order to begin mediating a revised settlement agreement that takes into account all of the foregoing developments. During the course of the Parties' mediation and settlement negotiations, the Parties agreed to resolve any Florida state law

claims of a statewide class of borrowers on Florida mortgages, including but not limited to claims for breach of contract and under either the FCCPA or Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), and to resolve FDCPA claims on behalf of a nationwide class. As part of this Settlement, the Parties have also agreed to dismiss without prejudice the claims of Plaintiffs Simmons and Upton, who are not members of the Settlement Class as defined herein. PHH Defendants and Plaintiffs Simmons and Upton have further agreed that the time between the dismissal without prejudice of Simmons's and Upton's individual claims and their commencement of any new individual action regarding Convenience Fee payments to Ocwen or PHH shall not be counted in determining the timeliness of their respective individual claims, so long as that new individual action is commenced within 180 days of the date that final approval of the Settlement is no longer subject to appellate review.

Consistent with the foregoing Agreements, on September 15, 2022, Plaintiffs moved to reopen this action for the purposes of filing a second amended complaint and presenting this Settlement for preliminary and final approval. The Second Amended Complaint is now the Operative Complaint in this action. In it, Plaintiffs Morris and Luzzi assert claims for violating the FDCPA, FCCPA, and FDUTPA, as well as for breach of contract, all based on the PHH Defendants' assessment of Convenience Fees. The breach of contract, FCCPA, and FDUTPA claims are asserted on behalf of a putative class of borrowers on Florida mortgages. The FDCPA claim is asserted on behalf of a putative nationwide class of borrowers whose loans were serviced, but not owned, by Ocwen or PHH and for whom Ocwen or PHH acquired servicing rights when the loan was 30 days or more delinquent on its monthly payment obligations.

This Agreement is a compromise, and the Agreement, any related documents, and any negotiations resulting in it shall not be construed as or deemed to be evidence of or an admission

or concession of liability or wrongdoing on the part of the PHH Defendants, or any of the Released Persons (as defined in this Agreement), with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

2.     **Claims of Plaintiffs and Plaintiffs' Views on Benefits of Settlement**

Plaintiffs believe that they have meritorious claims which, if brought to trial, would be certified and successful.  Plaintiffs, and the homeowners they seek to represent, contend they were charged illegal Convenience Fees when they made their mortgage payments by phone or online to ensure that the payment was received and processed on time. Plaintiffs maintain these  fees are not authorized by Plaintiffs' and the Settlement Class' mortgages, and that the Consumer Financial Protection Bureau recently issued two separate compliance bulletins opining that express authorization in the underlying loan agreements is necessary in order for these fees to be charged on loans subject to the FDCPA.

This action alleges that even though Convenience Fees are not expressly authorized by standard-form mortgages nor expressly permitted by statute, PHH and Ocwen each charged their customers Convenience Fees for making mortgage payments over the phone or online.  The question at the heart of this lawsuit is whether PHH and Ocwen, by charging their customers extra fees to make their mortgage payments by phone or online, violated the FDCPA or state law. Plaintiffs contend that this question has the exact same answer for each and every Settlement Class Member who paid these fees.

Although Plaintiffs believe that they have strong arguments to succeed certifying a class, as well as obtaining a trial verdict, Plaintiffs and the Settlement Class faced significant hurdles in litigating their claims to resolution, including overcoming the PHH Defendants' defenses and in certifying a nationwide class.  Indeed, the state law claims asserted are relatively untested theories that have not been definitively addressed by Florida's state appellate courts.  Moreover, while the

FDCPA and its various state analogs have been litigated more often in federal courts, many state and federal claims regarding these same convenience fee practices have been recently dismissed by federal courts in Florida and elsewhere, some *with prejudice*. *Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, ECF No. 21 (M.D. Fla. July 17, 2020); *Turner v. PHH Mortg. Corp.*, No. 8:20-CV-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020); *Torliatt v. Ocwen Loan Servicing, LLC*, No. 2020 WL 1904596 (N.D. Cal. April 17, 2020) (dismissing nationwide breach of contract and FDCPA claim); *Caldwell v. Freedom Mortgage Corporation*, Case No. 2020 WL 4747497 (N.D Tex. August 17, 2020) (dismissing breach of contract claims, even on mortgages with deeds of trust insured by the Federal Housing Administration); *Mariscal v. Flagstar Bank FSB*, 2020 WL 4804983 (C.D. Cal. August 4, 2020) (dismissing breach of contract and violations of California's Rosenthal Fair Debt Collection Practices Act and Unfair Competition Law)**;** *Amye Elbert v. Roundpoint Mortgage Servicing Corporation*, 2020 WL 4818605 (N.D. Cal. August 20, 2020) (dismissing California Rosenthal Act and UCL, as well as striking the class allegations).

Accordingly, Class Counsel believes that this Settlement, reached only after several rounds of mediation over many months, most recently under the direct supervision of the Honorable John W. Thornton, and with the assistance of various experts, is certainly reasonable in light of all the attendant risks of litigation, including the risk of obtaining no relief for the class.

### 3.    The PHH Defendants' Denial of Wrongdoing and Liability and Reasons for Settlement

At all times, the PHH Defendants have denied and continue to deny liability for the claims asserted in the Action and deny that they committed, threatened, attempted or intended to commit

any wrongful act or violation of law or duty.  They maintain that Ocwen's and PHH's practices and procedures associated with charging Convenience Fees for loan payments made by telephone via a live operator, by an interactive voice response telephone system ("IVR"), or by the internet were at all times lawful, consented to in advance by the borrowers after full disclosure of the avoidable nature and amount of the Convenience Fees, and were advantageous to borrowers. The advantages were particularly substantial where payment was tendered near a loan's payment grace period deadline, given that the Convenience Fees were in almost all cases less than the contractual late fees that would have been imposed had Ocwen or PHH demanded that borrowers tender payment by the means authorized by their loan documents (through the U.S. mail), and many borrowers could not have submitted payment by such means before the grace deadline.

Among other things, the PHH Defendants contend that their assessment of Convenience Fees could not have violated § 1692f(1) of the FDCPA (or the  FCCPA, FDUTPA, or borrower loan documents) because Convenience Fees were voluntarily paid by fully-informed borrowers in return for an entirely optional and separate service the PHH Defendants were not required to offer: expedited payment by phone or internet. Section 1692f(1) prohibits fees "incidental to the principal obligation" unless those fees are "expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1). But, the PHH Defendants contend, separate fees for a separate, optional, and entirely avoidable service cannot be "incidental to" borrowers' mortgage debts because they are entirely avoidable. No borrower is required to pay telephonically or online; borrowers can pay without incurring any fee whatsoever by mailing a check or money order, as their loan documents contemplate, or by signing up for automatic scheduled monthly debits to their checking account. For these exact reasons, a substantial number of federal district courts have dismissed actions arising from the assessment of convenience fees for use of optional telephonic

or internet payment methods, including this Court and the Middle District of Florida in substantially similar actions against PHH as successor to Ocwen.

The PHH Defendants also maintain that their Convenience Fees were permitted by settled state common law contractual principles, because Convenience Fees are paid pursuant to a separate agreement for separate consideration. Plus, the PHH Defendants have identified various state and federal statutes and regulations that they contend permit the assessment of Convenience Fees in these circumstances, including the FTC's regulatory guidance that Convenience Fees do not violate the FDCPA because any required authorization and consent could be expressed in general terms in the loan documents or granted orally in a side agreement entered into at the time of the payment transaction. Finally, nothing in borrowers' loan documents prohibits the PHH Defendants from assessing Convenience Fees for the use of optional payment methods not expressly provided for in the borrowers' promissory notes. To the contrary, the PHH Defendants contend the loan documents state that they are governed by or subject to federal laws and regulations, which permit the assessment of Convenience Fees in return for offering expedited or more convenient payment services. For these reasons, the PHH Defendants' convenience fees are "permitted by law" under the FDCPA and the PHH Defendants had a "legal right" to collect them, which defeats Plaintiffs' FCCPA, FDUTPA, and breach of contract claims.

Nevertheless, taking into account the uncertainty and risks inherent in any litigation, the PHH Defendants have concluded that further defense of the Action would be counterproductive, would not be cost-efficient, and would be unduly protracted, costly, burdensome and disruptive to its business operations, as compared to the terms of Settlement. Rather, the PHH Defendants believe that it is desirable and beneficial that the Action be fully and finally settled and terminated in the manner and upon the terms and conditions set forth in this Agreement. As set forth in

Paragraphs 2.3, 6.4, 12.6.3, and 13.3 below, this Agreement shall in no event be construed as or deemed to be evidence of an admission or concession by the PHH Defendants or any of the Released Persons with respect to any claim of any fault or liability or wrongdoing or damage whatsoever.

*     *     *

Given all of the foregoing, and considering the risks and uncertainties inherent in continued litigation and all factors bearing on the merits of settlement, the Parties are satisfied that the terms and conditions of this Agreement and Settlement are more than fair, reasonable, adequate and in their respective best interests.

## II.     TERMS OF STIPULATION AND AGREEMENT OF SETTLEMENT

### 1     Definitions

1.1     As used in this Agreement and the attached exhibits (which are integral parts of this Agreement and are incorporated in their entirety by reference), the following terms have the following meanings, unless this Agreement specifically provides otherwise:

1.1.1     "Action" means the lawsuit captioned *Vincent J. Morris, et al. v. PHH Mortgage Corporation d/b/a PHH Mortgage Services*, Case No. 0:20-CV-60633-RS, pending in the United States District Court for the Southern District of Florida, Fort Lauderdale Division.

1.1.2     "Agreement" means this Second Amended Stipulation of Settlement and Release and the exhibits attached hereto or incorporated herein, including any amendments subsequently agreed to by the Parties pursuant to the provisions of Section 12 of this Agreement and any exhibits to such amendments.

1.1.3     "Attorneys' Fees and Expenses" means such aggregate funds as may be awarded by the Court from the Settlement Funds to compensate Class Counsel (and any

other past, present, or future attorneys for Plaintiffs or the Settlement Class in this Action) for all of the past, present, and future attorneys' fees, costs (including court costs), expenses, and disbursements earned or incurred collectively and individually by any and all of them, their investigators, experts, staff, and consultants combined in connection with the Action.

1.1.4    "Class Counsel" means Adam M. Moskowitz, Howard M. Bushman, Joseph M. Kaye, and Barbara C. Lewis of the law firm The Moskowitz Law Firm, PLLC, and Joshua Adam Migdal and Yaniv Adar of the law firm Mark, Migdal & Hayden.

1.1.5    "Class Loans" means loans that meet the definition of "FDCPA Class Loans" or the definition of "Florida Class Loans," or both.

1.1.6    "Class Notice" means the legal notice summarizing the terms of this Agreement, in a form substantially similar to that attached as **Exhibit A**, to be provided to the Settlement Class pursuant to the provisions of Section 7 of this Agreement.

1.1.7    "Class Roster Date" means 11:59 p.m. EDT on August 18, 2022, the date as of which the Class Loans encompassed within the Settlement Class was determined and verified through reference to the PHH Defendants' records.

1.1.8    "Convenience Fee" means fees paid by borrowers to the PHH Defendants for making loan payments by telephone via a live operator, by IVR, or via the internet.

1.1.9    "Costs of Administration" means the reasonable and necessary costs incurred by the PHH Defendants and by the Settlement Administrator  to: (a) provide notice of the Settlement and this Agreement to the Settlement Class, as set forth in Section 7 of this Agreement, with such costs being limited to those associated with distributing notice to appropriate state and federal officials as required by 28 U.S.C. § 1715, establishing and maintaining the Settlement Website and the automated interactive voice response telephone

system, responding to Settlement Class Member inquiries, and printing, mailing, and otherwise distributing the Class Notice to the Settlement Class as provided in Section 7, and advertising the Settlement online; and (b) to calculate and distribute the Individual Allocations as set forth in Section 4 of this Agreement.  The Costs of Administration include the reasonable fees and expenses incurred by the Settlement Administrator in performing all of the tasks for which the Settlement Administrator is retained and will be paid by the PHH Defendants separately and apart from the Settlement Funds.   The Costs of Administration do not include any Attorneys' Fees and Expenses or Service Awards, which—if awarded by the Court—will be paid from the Settlement Funds.

1.1.10   "Court" means the United States District Court for the Southern District of Florida, Fort Lauderdale Division, the Honorable Rodney Smith presiding, or any other judge of this court who shall succeed him as the Judge assigned to this Action.

1.1.11   "Fairness Hearing" means the hearing held by the Court to consider evidence and argument for the purposes of determining, among other things, whether this Agreement and the Settlement are fair, reasonable and adequate; whether this Agreement should be given final approval through entry by the Court of the Final Order and Judgment; and whether certification of the Settlement Class should be made final.   The Fairness Hearing shall be held no earlier than one hundred and fifty (150) days after the date of entry of the Preliminary Approval Order.

1.1.12   "FDCPA" means the Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.*

1.1.13   "FDCPA Class" means (A) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced

but not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH and to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers whose loans make them potential members of the proposed settlement classes in *Torliatt v. Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case No. 5:21-cv-00174-JPB (Bailey) (N.D. W. Va.), whether or not those borrowers timely and validly exclude themselves from those settlement classes; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date this Agreement is fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them

1.1.14   "FDCPA Class Loans" means the residential mortgage loans of FDCPA

Class Members which qualify them for membership in the FDCPA Class as described in Paragraph 1.1.13 above.

1.1.15 "FDCPA Class Members" means Persons who fall within the definition of the FDCPA Class, who do not timely and properly exclude themselves from the Settlement Class as provided in this Agreement, and who otherwise are not excluded by specific order of the Court from the Settlement Class.

1.1.16 "FDCPA Settlement Fund" means the monetary relief with an aggregate value of $1,233,381 that the PHH Defendants have agreed to make available to be used to reimburse FDCPA Class Members for a portion of the Convenience Fees paid by FDCPA Class Members to the PHH Defendants during the Class Period, which is equal to the sum of 32% of the Retained Convenience Fees paid to Ocwen on FDCPA Class Loans from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (A) of the definition of the FDCPA Class and 32% of the Retained Convenience Fees paid to PHH on FDCPA Class Loans from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (B) of the definition of the FDCPA Class.

1.1.17 "Final Order and Judgment" means the order entered by the Court finally approving the Settlement and this Agreement; certifying the Settlement Class pursuant to Rule 23(b)(3) of the Federal Rules of Civil Procedure; and granting judgment pursuant to Rule 58 of the Federal Rules of Civil Procedure, which unless the Parties otherwise agree shall be in substantially the same form as is agreed to by the Parties and submitted to the Court at or before the Fairness Hearing.

1.1.18 "Final Settlement Date" means ten (10) days after the date on which the Final Order and Judgment approving this Agreement becomes final and non-appealable.

For purposes of this Agreement, the Final Order and Judgment shall become final: (a) if no appeal is taken from the Final Order and Judgment, on the date on which the time to appeal therefrom has expired pursuant to Federal Rule of Appellate Procedure 4; or (b) if any appeal is taken from the Final Order and Judgment, on the date on which all appeals therefrom, including petitions for rehearing or re-argument pursuant to Federal Rule of Appellate Procedure 40, petitions for rehearing en banc pursuant to Federal Rule of Appellate Procedure 35 and petitions for certiorari pursuant to Rule 13 of the Supreme Court of the United States or any other form of appellate review, have been fully and finally disposed of in a manner that affirms all of the material provisions of the Final Order and Judgment.

1.1.19   "Florida Class" means all borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, at any time during the period from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date this Agreement is fully executed; (c) borrowers in the "FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and

14

magistrate judges assigned to this Action, along with persons within the third degree of relationship to them. For the avoidance of doubt, a borrower in the FDCPA Class who also paid a fee to either PHH Defendant between March 25, 2016 and March 24, 2019, inclusive, and who otherwise meets the definition of the Florida Class would be in both the FDCPA Class and the Florida Class. As explained further below (*see infra* Paragraph 4.8, including all subparagraphs), that borrower would receive an Individual Allocation from the Florida Settlement Fund, for Convenience Fees paid between March 25, 2016 and March 24, 2019, and from the FDCPA Settlement Fund, for Convenience Fees paid between March 25, 2019 and August 17, 2022.

1.1.20   "Florida Class Loans" means the residential mortgage loans secured by mortgaged property in the State of Florida that qualify a Florida Class Member for membership in the Florida Class as described in Paragraph 1.1.19 above.

1.1.21   "Florida Class Members" mean Persons who fall within the definition of the Florida Class, who do not timely and properly exclude themselves from the Settlement Class as provided in this Agreement, and who otherwise are not excluded by specific order of the Court from the Settlement Class.

1.1.22   "Florida Settlement Fund" means the monetary relief with an aggregate value of $1,537,687 that the PHH Defendants have agreed to make available to be used to reimburse FDCPA Class Members for a portion of the Convenience Fees paid to the PHH Defendants by the Florida Class Members during the Class Period, which is equal to 18% of the Retained Convenience Fees that were paid to the PHH Defendants by Florida Class Members during the period from March 25, 2016 through and including August 17, 2022, but excluding Convenience Fees already subject to allocations from the FDCPA Settlement

Fund.

1.1.23   "Individual Allocations" means the share of the Settlement Funds that all borrowers on a given Class Loan are jointly entitled to receive following payment from the Settlement Funds of any Attorneys' Fees and Expenses and Service Awards that may be awarded by the Court, to be calculated and determined in accordance with Section 4 of this Agreement.

1.1.24   "Objection/Exclusion Deadline" means the date by which any written objection to this Agreement must be filed with the Court and any request for exclusion by a Potential Settlement Class Member must be received by the Settlement Administrator, which shall be designated as a date thirty-five (35) days before the originally scheduled date of the Fairness Hearing (if the Fairness Hearing is continued, the deadline runs from the first scheduled Fairness Hearing), or on such other date as may be ordered by the Court.

1.1.25   "Ocwen" means Ocwen Loan Servicing, LLC.

1.1.26   "Operative Complaint" means the Second Amended Class Action Complaint, deemed filed in the Action on September 23, 2022, and attached hereto as **Exhibit B**.

1.1.27   "Parties" or "Party" means Plaintiffs and the PHH Defendants, separately and collectively, as each of those terms is defined in this Agreement.

1.1.28   "Person" means an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and their respective spouses, heirs, predecessors, successors, representatives or assignees.

1.1.29 "PHH" means PHH Mortgage Corporation.

1.1.30 "PHH Defendants" means PHH and Ocwen, separately and collectively, as each of those terms is defined in this Agreement.

1.1.31 "PHH Defendants' Counsel" means Timothy A. Andreu, Michael R. Pennington, and Zachary A. Madonia of the law firm of Bradley Arant Boult Cummings LLP.

1.1.32 "Plaintiff Luzzi" means Michael Luzzi, one of the four named plaintiffs in this Action.

1.1.33 "Plaintiff Morris" means Vincent J. Morris, one of the four named plaintiffs in this Action.

1.1.34 "Plaintiffs" collectively means Plaintiff Luzzi and Plaintiff Morris.

1.1.35 "Potential Settlement Class Members" mean Persons who fall within this Agreement's definition of the Settlement Class.

1.1.36 "Preliminary Approval Order" means the order to be entered by the Court preliminarily approving the Settlement as outlined in this Agreement, certifying the Settlement Class for settlement purposes only, designating Class Counsel as counsel for the Settlement Class and Plaintiffs as the representatives of the Settlement Class, and approving the form and content of the Class Notice to be disseminated to the Settlement Class. A proposed version of the Preliminary Approval Order is attached hereto as **Exhibit C**.

1.1.37 "Release" means the release and waiver set forth in Section 3 of this Agreement.

1.1.38 "Released Claims" means each and all of the claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages (whether punitive,

17

statutory, or compensatory and whether liquidated or unliquidated), losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any regulatory bulletin, guidelines, handbook, opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, that relate to or arise out of Convenience Fees charged (a) by Ocwen on FDCPA Class Loans to FDCPA Class Members meeting Subpart (A) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; (b) by PHH on FDCPA Class Loans to FDCPA Class Members meeting Subpart (B) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; or (c) by Ocwen or PHH to Florida Class Members on Florida Class Loans, during the period from March 25, 2016 through and including August 17, 2022.

1.1.39   "Released Persons" means (a) PHH, Ocwen, and any and all of their current or former predecessors, successors, assigns, parent corporations, subsidiaries, divisions, related and affiliated companies and entities, associates, vendors, service providers, software licensors and licensees, clients and customers, principals, stockholders, directors, officers, partners, principals, members, employees, attorneys, consultants, independent contractors, representatives, and agents, transferee servicers, and all individuals or entities acting by, through, under, or in concert with any of them; and (b) any trustee of a mortgage securitization trust which includes loans on which Settlement Class Members are borrowers, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the

officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

1.1.40   "Releasing Persons" means individually and collectively (a) Plaintiffs and (b) the Settlement Class and each Settlement Class Member thereof, and in each case in clauses (a) and (b), on behalf of themselves and any of their respective past, present, or future heirs, guardians, assigns, executors, administrators, representatives, agents, attorneys, partners, legatees, predecessors, co-obligors, and/or successors.

1.1.41   "Retained Convenience Fees" means Convenience Fees that were retained by either Ocwen or PHH and neither refunded to the borrower nor paid by Ocwen or PHH to a third-party vendor to facilitate the Convenience Fee payment.

1.1.42   "Service Award" means such funds as may be awarded by the Court from the Settlement Funds to each of the two Plaintiffs to compensate each of them for their respective efforts in bringing the Action and achieving the benefits of this Agreement on behalf of the Settlement Class.

1.1.43   "Settlement" means the settlement and related terms between the Parties as set forth in this Agreement.

1.1.44   "Settlement Administrator" means RG/2 Claims Administration LLC, selected by the Parties to help implement the distribution of the Class Notice, host the Settlement Website and automated interactive voice recognition telephone system, calculate Individual Allocations and distribute Individual Allocations to Settlement Class Members paid by check, and aid in fulfilling the related requirements set forth in this Agreement. Class Counsel will seek the Court's approval of RG/2 Claims Administration LLC as the Settlement Administrator in connection with the preliminary approval of this Agreement

and Settlement.

1.1.45   "Settlement Class" means borrowers who are members of the "FDCPA Class" and/or the "Florida Class," defined above.

1.1.46   "Settlement Class Members" mean Persons who fall within the definition of the Settlement Class, who do not timely and properly exclude themselves from the Settlement Class as provided in this Agreement, and who otherwise are not excluded by specific order of the Court from the Settlement Class.

1.1.47   "Settlement Funds" means the monetary relief with an aggregate value of $2,771,068 that the PHH Defendants have agreed to make available to be used to reimburse Settlement Class Members for a portion of the Convenience Fees paid to the PHH Defendants during the Class Period, comprised of the "FDCPA Settlement Fund" and the "Florida Settlement Fund," to be distributed pursuant to the terms of Sections 4 and 10 of this Agreement

1.1.48   "Settlement Website" means the internet website that the Settlement Administrator will establish and host pursuant to the provisions of Section 7 of this Agreement, following entry of the Preliminary Approval Order.

1.2   Other capitalized terms used in this Agreement but not defined in this Section 1 shall have the meanings ascribed to them elsewhere in this Agreement and the exhibits attached hereto.

1.3   The terms "he or she" and "his or her" include "it" or "its" and vice versa, where applicable.

2   **Representations, Acknowledgements, and Warranties**

2.1   Class Counsel have concluded, after due investigation and after carefully

20

considering the relevant circumstances, that: (1) it is in the best interest of Plaintiffs and the Settlement Class to enter into this Agreement to avoid the uncertainties of litigation and assure that the benefits reflected herein, including the value of the Settlement Funds under this Agreement, are obtained for Plaintiffs and the Settlement Class, and (2) the Settlement set forth in this Agreement is fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23 and in the best interests of Plaintiffs and the Settlement Class.

2.2     Based on, among other things, their extensive investigation in the Action, including their extensive legal research and the informal discovery conducted and the information sharing that occurred before, during, and after the Parties' protracted mediation, Class Counsel recommend and agree to this Settlement as set forth herein.

2.3     Plaintiffs, each for himself individually and on behalf of each Settlement Class Member, and the PHH Defendants acknowledge and agree that neither this Agreement nor the releases given herein, nor any consideration therefore, nor any actions taken to carry out or obtain Court approval of this Agreement are intended to be, nor may they be deemed or construed to be, an admission or concession of liability, or the validity of any claim, or defense, or of any point of fact or law (including but not limited to matters respecting class certification) on the part of any Party. The PHH Defendants expressly deny the allegations of Plaintiffs' complaints including, without limitation, the allegations of the Operative Complaint. Neither this Agreement, nor the fact of the Settlement, nor the settlement proceedings, nor settlement negotiations, nor statements made in court proceedings, nor any related document, shall be used as an admission of any fault or omission by the PHH Defendants or the Released Persons, or be construed as, offered as, received as, or used as evidence of an admission, concession, presumption, or inference of any fact or of any liability or wrongdoing by the PHH Defendants or the Released Persons in any

proceeding, or as a waiver by the PHH Defendants or the Released Persons of any applicable defense, or for any other purposes other than such proceedings as may be necessary to defend, consummate, interpret, or enforce the Settlement contemplated by this Agreement.

2.4     Each counsel or other Person executing this Agreement on behalf of any Party hereto expressly warrants and represents that (a) such Person has the full authority to execute this Agreement on behalf of the Party for whom such Person is executing the Agreement (including on behalf of such Person's client, to the extent the Person signing this Agreement is an attorney); (b) it is acting upon its respective independent judgments and upon the advice of its respective counsel, and not in reliance upon any representation, warranty, or covenant, express or implied, of any nature or kind by any other Person other than the representations, warranties and covenants contained and memorialized in this Agreement; and (c) any representation, warranty or covenant, express or implied, of any nature or kind that is not contained in this Agreement is immaterial to the decision to enter into this Agreement.  The undersigned Class Counsel represent and warrant that they are authorized to execute this Agreement on behalf of both Plaintiffs and the Settlement Class.

2.5     Plaintiffs each represent and warrant that they: (a) have entered into and executed this Agreement voluntarily and without duress or undue influence, and with and upon the advice of counsel, selected by them; (b) have agreed to serve as representatives of the Settlement Class; (c) are willing, able, and ready to perform all of the duties and obligations of a representative of the Settlement Class; (d) have read the complaints filed in the Action, or have had the contents of such pleadings described to them by Class Counsel; (e) are familiar with the results of the fact-finding undertaken by Class Counsel; (f) have been kept apprised of the progress of the Action and the settlement negotiations between the Parties, and have either read this Agreement (including

the exhibits annexed hereto) or have received a detailed description of it from Class Counsel and they have agreed to its terms; (g) have consulted with Class Counsel about the Action, this Agreement and the duties and obligations imposed on a representative of the Settlement Class; (h) have authorized Class Counsel to execute this Agreement on their behalf; and (i) will remain and serve as the representatives of the Settlement Class until the terms of the Agreement are effectuated, this Agreement is terminated in accordance with its terms, or the Court at any time determines that they can no longer serve in a representative capacity on behalf of the Settlement Class.

2.6     Plaintiffs each represent and warrant that they are the sole and exclusive owners of all claims that they are personally asserting in this Action and releasing under this Agreement, including all Released Claims.  Plaintiffs each further acknowledge that they have not assigned, pledged, or in any manner whatsoever, sold, transferred, assigned or encumbered any right, title, interest or claim arising out of or in any way whatsoever pertaining to the Action or to the Released Claims, and that they are not aware of anyone other than themselves claiming any interest, in whole or in part, in the Action, the Released Claims, or in any benefits, proceeds or values under the Action or the Released Claims on their behalf.  Plaintiffs each further represent and warrant that they will indemnify, defend and hold all other Parties harmless as a result of any assignment of such right, and enter into this Settlement without coercion of any kind.

**3        Dismissal, Release, and Covenant not to Sue**

3.1     Subject to Court approval, Plaintiffs agree, on behalf of themselves and the Settlement Class Members, that this Agreement shall be the full and final disposition of: (i) the Action against the PHH Defendants; and (ii) any and all Released Claims as against all Released Persons.

3.2     Upon final approval of the Settlement reflected in this Agreement, and as part of the entry of the Final Order and Judgment, Class Counsel shall take all steps necessary to effectuate dismissal of the Action with prejudice as to the PHH Defendants.

3.3     In consideration for the Settlement benefits described in this Agreement, each of the Plaintiffs, on behalf of themselves and each other Releasing Person, hereby releases, and each of the Settlement Class Members and other Releasing Persons shall be deemed to have released, and by operation of the Final Order and Judgment upon the Final Settlement Date shall have released, all Released Claims against all of the Released Persons, separately and severally.  In connection therewith, upon the Final Settlement Date, each of the Releasing Persons: (i) shall be deemed to have, and by operation of the Final Order and Judgment, shall have, fully, finally, and forever waived, released, relinquished, remised, acquitted, and discharged to the fullest extent permitted by law all Released Claims against each and all of the Released Persons; (ii) shall forever be barred and enjoined from commencing, instituting, prosecuting, or participating in any fashion in any and all claims, causes of action, suits, or any other proceeding in any court of law or equity, arbitration tribunal, or other forum of any kind, directly, representatively, derivatively, or in any other capacity and wherever filed, with respect to any Released Claims against any of the Released Persons; and (iii) shall be deemed to have agreed and covenanted not to sue any of the Released Persons with respect to any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Person related in any way to any Released Claims.

3.4     Without in any way limiting its scope, and, except to the extent otherwise specified in this Agreement, the Released Claims include, by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs or any other fees, costs, and/or disbursements incurred by Class Counsel, or by Plaintiffs or by the

Settlement Class Members regarding Released Claims for which any of the Released Persons might otherwise be claimed liable.

3.5     The Releasing Persons may hereafter discover facts other than or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims.   Nevertheless, Plaintiffs and the other Releasing Persons do hereby expressly, fully, finally, and forever settle and release, and each Releasing Person, upon the Final Settlement Date, shall be deemed to have, and by operation of the Final Order and Judgment shall have, fully, finally, and forever settled and released, any and all Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such different or additional facts.

3.6     With respect to any and all Released Claims against any and all Released Persons, the Parties stipulate and agree that, by operation of the Final Order and Judgment upon the Final Settlement Date, each Releasing Person shall have expressly waived, and shall be deemed to have waived, and by operation of the Final Order and Judgment shall have expressly waived, the provisions, rights and benefits of Cal. Civ. Code § 1542 or any federal, state or foreign law, rule, regulation or common-law doctrine that is similar, comparable, equivalent or identical to, or that has the effect in whole or part of, Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

3.7     All Settlement Class Members and other Releasing Persons shall be bound by the releases set forth in this Section 3 whether or not they ultimately cash, negotiate or deposit any check mailed for their Individual Allocations.

3.8     Subject to the provisions of this Section 3 and the injunctions contemplated herein

and in Section 5, nothing in this Release shall preclude any filing in this Action seeking to have the Court enforce the terms of this Agreement, including participation in any of the processes detailed therein.

**4**     **The Settlement Funds and Distribution of Individual Allocations**

4.1     Pursuant to and subject to all other terms of this Agreement, and in consideration for (a) the dismissal of the Action with prejudice, (b) the Release set forth in Section 3 and the approval, entry, and enforcement thereof by the Court, and (c) the other promises and covenants in this Agreement, the PHH Defendants have agreed to make available to Plaintiffs and the Settlement Class the following monetary relief (and only the following monetary relief), subject to each and all of the terms and conditions specified herein.

4.2     This Action is brought in part under the FDCPA, which provides the following relief to persons who prevail at trial:

(a) Amount of damages

Except as provided by this section, any debt collector who fails to comply with any provision of this subchapter with respect to any person is liable to such person in an amount equal to the sum of –

(1)     any actual damage sustained by such person as a result of such failure;

(2)
        (A) in the case of any action by an individual, such additional damages as the court may allow, but not exceeding $1,000; or

        (B) in the case of a class action, (i) such amount for each named plaintiff as could be recovered under subparagraph (A), and (ii) such amount as the court may allow for all other class members, without regard to a minimum individual recovery, not to exceed the lesser of $500,000 or 1 per centum of the net worth of the debt collector . . .

15 U.S.C. § 1692k.

4.3     Plaintiffs have also asserted claims, whether in the Operative Complaint or earlier in the Action, for breach of certain state laws and certain uniform covenants in the mortgage

agreements, deeds of trust, or similar security instruments of the Settlement Class for which they could be entitled to damages, including statutory damages, were they to prevail.

4.4     For purposes of this Settlement only, the Parties stipulate that the PHH Defendants could potentially be deemed a debt collector under the FDCPA with respect to the FDCPA Class Loans, because the PHH Defendants did not own the loans but acquired servicing rights to the loans after borrowers were already 30 days or more delinquent in their payment obligations.

4.5     The PHH Defendants shall make available to the Settlement Class two Settlement Funds, the FDCPA Settlement Fund and the Florida Settlement Fund.  The Settlement Funds are a lump sum and are not designated as any specific category of monetary relief potentially available under the FDCPA, the FCCPA, the FDUTPA, and/or any other federal or state claim Plaintiffs brought or could have brought in this litigation.

4.6     The Settlement Funds shall first be applied to pay on a pro rata basis based on the size of each Settlement Fund as a percentage of the combined total of both Settlement Funds any Attorneys' Fees and Expenses and any Service Awards that may be approved by the Court, pursuant to the provisions of Section 10 of this Agreement. The PHH Defendants shall transfer to the Settlement Administrator an amount equal to the total of any Attorneys' Fees and/or Service Awards that may be approved by the Court within ten (10) business days after the Final Settlement Date.

4.7     Following the payment of any such Attorneys' Fees and Expenses and Service Awards, the remaining balances of the Settlement Funds will be distributed as Individual Allocations to Settlement Class Members. The PHH Defendants shall cause the remaining balance of each of the two Settlement Funds, after payment of any such Attorneys' Fees and Expenses and Service Award, to be transferred to the Settlement Administrator within fourteen (14) days after

the Final Settlement Date, to be divided and distributed as Individual Allocations among Plaintiffs and the Settlement Class Members.

4.8     Individual Allocations to Settlement Class Members shall be calculated as follows:

4.8.1     Each FDCPA Class Loan shall receive an Individual Allocation from the FDCPA Settlement Fund, calculated as follows: the proportion of Retained Convenience Fees paid to either Ocwen or PHH on that FDCPA Class Loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Retained Convenience Fees paid to either Ocwen or PHH on all FDCPA Class Loans during that period. Only Retained Convenience Fees paid to a servicer that serviced but did not own the FDCPA Class Loan and that acquired servicing rights to the FDCPA Class Loan when it was 30 days or more delinquent shall be included in these calculations. For the avoidance of doubt, a borrower who qualifies as an FDCPA Class Member because Ocwen acquired servicing rights when the loan was 30 days or more delinquent and did not own the loan would be entitled to an Individual Allocation for the Retained Convenience Fees paid to Ocwen on that FDCPA Class Loan. But if that same FDCPA Class Loan later service transferred to PHH when it was not 30 days or more delinquent, then that borrower on that FDCPA Class Loan would not receive any Individual Allocation from the FDCPA Settlement Fund for the Retained Convenience Fees paid to PHH after the service transfer.

4.8.2     Each Florida Class Loan shall receive an Individual Allocation from the Florida Settlement Fund, calculated based on the proportion of Retained Convenience Fees paid to Ocwen or PHH on that Florida Class Loan between March 25, 2016 and August 17, 2022 (but excluding Convenience Fee payments subject to allocations from the FDCPA Settlement Fund) as compared to the total aggregate amount of all Retained Convenience

Fees paid to and retained by either Ocwen or PHH with respect to all Florida Class loans during that period (but again excluding all Convenience Fees subject to an allocation from the FDCPA Settlement Fund).

4.8.3    Class Loans that are both Florida Class Loans and FDCPA Class Loans will receive an Individual Allocation from drawn from both Settlement Funds. From the Florida Settlement Fund, the Class Loan will receive an allocation for Retained Convenience Fees paid to Ocwen or PHH on that Class Loan from March 25, 2016 to March 24, 2019. From the FDCPA Settlement Fund, the Class Loan will receive an allocation for Retained Convenience Fees paid to Ocwen or PHH (as explained above) from March 25, 2019 to August 17, 2022.

4.8.4    The purpose of this method of allocation is to ensure that the Settlement Funds are allocated equitably based on the relative amount of Retained Convenience Fees charged to and paid with respect to each Class Loan and the presence or absence of an FDCPA claim based on the status of the loan when the loan boarded with the respective PHH Defendants, and that Settlement Class Members are treated equitably in allocating Attorneys' Fees and Expenses and Service Awards.  To further ensure that Settlement Class Members are treated equitably relative to each other, payments made on Class Loans with multiple borrowers shall be treated as joint payments for purposes of this calculation, such that each Class Loan will be entitled to only one Individual Allocation.  Co-debtors, joint-borrowers and multiple obligators on a single Class Loan are not entitled to a separate Individual Allocation on the same Class Loan.

4.9    The Parties shall cause the Settlement Administrator to distribute the Individual Allocations to Settlement Class Members no later than seventy-five (75) days following the Final

Settlement Date.  Individual Allocations shall be distributed by check and shall reduce and be paid out of the Settlement Funds.

4.10    For Individual Allocations, each such check shall be made payable—unless otherwise mutually agreed to by the Parties for good cause shown—jointly to all borrowers on each such Class Loan, in an amount equal to that Class Loan's respective Individual Allocation, payable in U.S. funds.  Each such check shall be mailed to the mailing address of record for that Class Loan as determined from the PHH Defendants' records.  All checks for Individual Allocation relief shall state on the face of the check that the check will expire and become null and void unless cashed within one hundred and eighty (180) days after the date of issuance of the check, and Settlement Class Members' failure to deposit, negotiate or otherwise cash such checks within that one hundred and eighty (180) day period shall constitute a release by those Settlement Class Members (and all other borrowers on their Class Loans) of any and all rights to said monetary relief under the Settlement.  Individual Allocation relief that remains undeliverable three hundred (300) days after the Final Settlement Date despite the Settlement Administrator's efforts to locate the Settlement Class Members shall be paid to Homes for Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured post – 9/11 Veterans, to enable them to rebuild their lives." https://www.hfotusa.org/mission/ (last visited August 15, 2022). No portion of the Settlement Funds will revert to the PHH Defendants.

4.11    Only Settlement Class Members are entitled to any distribution of Individual Allocations.  Potential Settlement Class Members who timely and properly exclude themselves from the Settlement Class as provided in this Agreement or who otherwise are specifically excluded by order of the Court are not entitled to any distribution of Individual Allocations.

## 5        Additional Consideration for the Settlement

5.1        As additional consideration for (a) the dismissal of the Action with prejudice on the merits, (b) the Release set forth in Section 3 and the approval, entry, and enforcement thereof by the Court, and (c) the other promises and covenants in this Agreement, the PHH Defendants have agreed to provide the following non-monetary relief:

5.1.1        To the extent they decide to charge Settlement Class Members for payments by telephone or internet in the future, the PHH Defendants agree to include language disclosing the following additional information at the time that borrowers pay online, to appear next to the first page of the website for the applicable form of payment:

**Paying by telephone, IVR, or internet is entirely optional and, unless otherwise specified, involves a fee retained in whole or in part by PHH. There are alternative methods of payment involving no fee, such as mailing a check or money order, or schedule monthly bank account debits, while some methods of payment involve a lower fee than others. Click here to visit the FAQ section for more details.**

In each payment transaction involving a Convenience Fee following the Final Settlement Date, the PHH Defendants shall use their best efforts to cause its customer service representatives, telephone systems, scripts, or websites involved to disclose, in substance, the following information to each Settlement Class Member, except as otherwise hereafter prescribed or proscribed by law:

      a.      the exact fee to be charged for the payment method chosen by the borrower;

      b.      the fact that the fee may include an amount retained by the PHH Defendants in excess of its third party costs;

      c.      the fact that the borrower is not required to use the payment method for which a fee is being charged;

      d.      the payment methods for which the PHH Defendants do not charge a fee;

      e.      any other optional payment methods accepted by the PHH Defendants that may involve a lower fee; and

      f.      when a material consideration in the payment transaction at issue, the applicable deadline by which payment must be received in order to avoid a late fee.

5.1.2    The PHH Defendants currently charge Convenience Fees of $7.50 per online payment transaction (other than scheduled monthly automatic debits to checking accounts).  The PHH Defendants agree to reduce the per transaction Convenience Fee for Settlement Class Members to $6.50 for a period of two years.

5.1.3    The PHH Defendants currently charge Convenience Fees of $7.50 per IVR payment transaction and $17.50 for payments by telephone with the assistance of a live agent.  The PHH Defendants agree not to increase either of those fees for Settlement Class Members class for a period of two years.

5.2    The Parties agree that the PHH Defendants will implement the non-monetary relief set forth in Paragraph 5.1 within one hundred twenty (120) days after the Final Settlement Date.

5.3    Except as expressly set forth in this Section 5, neither the Settlement, nor the Release, nor any of the relief to be offered pursuant to the Settlement shall: (a) alter or extinguish (or be construed as altering or extinguishing) the terms of the debts, promissory notes, mortgages, security interests and other pre-existing contracts of the Settlement Class Members which are still

in effect as of the Final Settlement Date; (b) constitute a novation or release of those debts, promissory notes, mortgages, security interests and other pre-existing contracts; or (c) in any way alter the rights of any party under those debts, promissory notes, mortgages, security interests and other pre-existing contracts which are still in effect as of the Final Settlement Date.  Nothing in this Agreement, the Settlement or the Release shall prevent the Released Persons from continuing to service or collect such debts, promissory notes, mortgages, security interests and other pre-existing contracts consistent with the terms of those agreements.

5.4    The Parties hereby agree and acknowledge that the provisions of this Section 5 together constitute essential and material terms of this Agreement and shall be included, approved and made effective in any Final Order and Judgment entered by the Court.

## 6    **Preliminary Approval Order**

6.1    Promptly after the execution of this Agreement, but in no event later than seven (7) court days after this Agreement is fully executed (unless such time is extended by the written agreement of Class Counsel and the PHH Defendants' Counsel), Class Counsel shall submit this Agreement together with its exhibits to the Court and shall move the Court for entry of the Preliminary Approval Order, substantially in the form of **Exhibit C** hereto.

6.2    The requested Preliminary Approval Order shall include, among other things included in Exhibit C, provision for the following:

6.2.1    Preliminary approval of the Settlement set forth in this Agreement as fair, reasonable, and adequate within the meaning of Federal Rule of Civil Procedure 23;

6.2.2    Conditional approval of the Settlement Class as for settlement purposes only;

6.2.3    Appointment of Class Counsel and Plaintiffs as the representatives of the

Settlement Class;

6.2.4    Approval of the mailing of the Class Notices, substantially in the form attached as Exhibit A, which shall include, among other things, the information identified in Paragraph 7.2.3 and all its subparagraphs;

6.2.5    Approval of the procedures set forth in the Class Notices for Potential Settlement Class Members to seek exclusion from the Settlement Class or to object to the Settlement and/or the Fee and Expense Application;

6.2.6    Approval of the appointment of a Settlement Administrator;

6.2.7    Preliminarily enjoining (i) Potential Settlement Class Members from directly or indirectly filing, commencing, participating in, or prosecuting (as class members or otherwise) any lawsuit in any jurisdiction asserting on their own behalf claims that would be Released Claims if this Settlement is finally approved, unless and until they timely exclude themselves from the Settlement Class as specified in the this Order and in the Agreement and its exhibits; and (ii) regardless of whether they opt out, Potential Settlement Class Members from directly or indirectly filing, prosecuting, commencing,  or receiving proceeds from (as class members or otherwise) any separate purported class action asserting, on behalf of any Settlement Class Members who have not opted out from this Settlement Class, any claims that would be Released Claims if this Settlement receives final approval and becomes effective; and

6.2.8    The scheduling of the Fairness Hearing.

6.3    The PHH Defendants, without admitting that the Action meets the requisites for certification of a contested litigation class under Federal Rule of Civil Procedure 23 or for class certification for any purpose other than settlement, hereby agrees, on each and all of the terms and

conditions set forth herein, and solely for purposes and in consideration of the Settlement set forth herein, not to oppose the certification of the Settlement Class for settlement purposes only, the appointment of Class Counsel as legal counsel for the Settlement Class, or the approval of Plaintiffs as the representatives of the Settlement Class.

6.4     The Court's certification of the Settlement Class for settlement purposes only (whether in the Preliminary Approval Order or Final Order and Judgment) shall not be deemed to be an adjudication of any fact or issue for any purpose other than the accomplishment of the provisions of this Settlement and this Agreement, and shall not be considered as law of the case, res judicata, judicial estoppel, promissory estoppel, or collateral estoppel in the Action or in any other proceeding unless and until the Final Settlement Date is reached.  Whether or not the Settlement reaches the Final Settlement Date, the Parties' stipulations and agreements as to class certification for settlement purposes only (and any and all statements or submission made by the Parties in connection with seeking the Court's approval of the Settlement and this Agreement) shall not be deemed to be any stipulation or grounds for estoppel or preclusion as to the propriety of class certification, nor any admission of fact or law regarding any request for class certification, in any other action or proceeding, whether or not involving the same or similar claims.  In the event the Settlement and this Agreement are not approved, or the Final Settlement Date is not reached, or this Agreement is terminated, canceled, or fails to become effective for any reason whatsoever, the Parties' stipulations and agreements as to certification of the Settlement Class shall be null and void and the Court's certification order shall be vacated, and thereafter no class or classes will remain certified, and nothing in this Agreement or other papers or proceedings related to the Settlement shall be used as evidence or argument by any party concerning whether the Action may properly be maintained as a class action under applicable law; provided, however,

that Plaintiffs and Class Counsel may thereafter seek certification of a litigation class or classes before the Court without reference to this Settlement or anything filed in support of it, and the PHH Defendants may oppose such certification on any available grounds.   In the event the Settlement and this Agreement are not approved, or the Final Settlement Date is not reached, or this Agreement is terminated, canceled, or fails to become effective for any reason whatsoever, nothing in this Settlement or this Agreement shall be admissible in any effort to certify the proposed Settlement Class as a litigation class or any other class in this or any other court under any circumstances.

**7      Notice to, and Communications with, the Settlement Class and Federal and State Officials**

7.1      **Notice to Appropriate Federal and State Officials.**   Pursuant to the notice provisions of the Class Action Fairness Act, 28 U.S.C. § 1715, within ten (10) days after this Agreement is deemed filed with the Court, the PHH Defendants will provide notice of this Action and this Agreement to the Attorney General of the United States; the Consumer Finance Protection Bureau; the Federal Trade Commission; and the Attorneys General of the States, Districts, Commonwealths and Territories in which Settlement Class Members are determined to reside based on the borrower mailing addresses for the Class Loans as reflected in the PHH Defendants' business records.

7.2      **Individual Notice to the Settlement Class**

7.2.1      The Class Notice shall be the legal notice to be provided to the Settlement Class Members, and shall otherwise comply with Federal Rule of Civil Procedure 23 and any other applicable statutes, laws, and rules, including, but not limited to, the Due Process Clause of the United States Constitution.

7.2.2      Subject to the requirements of the Preliminary Approval Order, the Parties

shall cause the Settlement Administrator to send, no later than twenty-eight (28) days after entry of the Preliminary Approval Order, the Class Notice by First-Class U.S. Mail, proper postage prepaid, to the Potential Settlement Class Members identified in the PHH Defendants' records on each Class Loan, addressed to the mailing address of record for that Class Loan as reflected in the PHH Defendants' records.  As a result, one (1) Class Notice will be sent with respect to each Class Loan, addressed jointly to all Potential Settlement Class Members identified as borrowers with respect to that Class Loan in the PHH Defendants' records.  Prior to mailing, the Settlement Administrator shall attempt to update the last known borrower mailing addresses for each Class Loan as reflected in the PHH Defendants' records through the National Change of Address system or similar databases.

      7.2.3    The Class Notice shall advise the Potential Settlement Class Members of the following:

        7.2.3.1 <u>General Terms.</u>  The Class Notice shall contain a plain, neutral, objective, and concise summary description of the nature of the Action and the terms of the proposed Settlement, including all relief that will be provided by the PHH Defendants and the Settlement Class in the Settlement, as set forth in this Agreement.   This description shall also disclose, among other things, that (a) any relief to Settlement Class Members offered by the Settlement is contingent upon the Court's approval of the Settlement, which will not become effective until the Final Settlement Date; (b) Class Counsel and Plaintiffs have reserved the right to petition the Court for an award of Attorneys' Fees and Expenses from the Settlement Funds, and the

conditional right to petition the Court for Service Awards to be paid from the Settlement Funds if and only if the Eleventh Circuit's decision in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), is vacated or reversed before the trial court enters a final approval order or *all* settlement class members unanimously approve of the service awards, as reflected by *no* settlement class member filing a timely objection to the service award; but if *NPAS* is not reversed before final approval and even one settlement class member objects to the service award, then the conditional request for service awards shall be deemed automatically withdrawn. If the petition for Service Awards is not deemed withdrawn pursuant to the foregoing, then each of Morris and Luzzi will seek an amount to be determined by the Court, but not to exceed $5,000 each. The Settlement is not contingent upon any particular amount of Service Award or Attorneys' Fees and Expenses being awarded by the Court.

7.2.3.2  The Settlement Class.  The Class Notice shall define the Settlement Class (including the FDCPA Class and the Florida Class) and shall disclose that the Settlement Class has been provisionally certified for purposes of settlement only.

7.2.3.3  Opt-Out Rights.  The Class Notice shall inform the Settlement Class Members of their right to seek exclusion from the Settlement Class and the Settlement and provide the deadlines and procedures for

exercising this right.

7.2.3.4 <u>Objection to Settlement.</u>  The Class Notice shall inform Settlement Class Members of their right to object to the proposed Settlement and to appear at the Fairness Hearing and provide the deadlines and procedures for exercising these rights.

7.2.3.5 <u>Fairness Hearing.</u>  The Class Notice shall disclose the date and time of the Fairness Hearing and explain that the Fairness Hearing may be rescheduled without further notice to the Settlement Class.

7.2.3.6 <u>Release.</u>  The Class Notice shall summarize or recite the proposed terms of the Release contemplated by this Agreement.

7.2.4    **Further information.**  The Class Notice shall disclose where Settlement Class Members may direct written or oral inquiries regarding the Settlement, and also where they may obtain additional information about the Action, including instructions on how Settlement Class Members can access the case docket using PACER or in person at any of the court's locations.

7.2.5    **Class Loan Number.**  The Class Notice to be addressed to all borrowers of record on each Class Loan shall also include that Class Loan's loan number, as described in the PHH Defendants' records.

7.2.6    Following issuance of the Preliminary Approval Order, Class Counsel and the PHH Defendants' Counsel may by mutual agreement make any changes in the font, format, or content of the Class Notice or the exhibits thereto any time before the Class Notice is first mailed to Potential Settlement Class Members, so long as such changes do not materially alter the substance of the Class Notice. Non-material changes include

adjusting margins, font size, and columns to reduce the number of pages upon which the Class Notice prints. Any material substantive changes proposed by Class Counsel and the PHH Defendants' Counsel following issuance of the Preliminary Approval Order must be approved by the Court.

7.2.7    The Parties shall cause the Settlement Administrator to re-mail any Class Notices returned by the United States Postal Service with a forwarding address and shall continue to do so with respect to any such Class Notice that is received seven (7) days or more prior to the Objection/Exclusion Deadline.  With respect to Class Notices that are returned by the United States Postal Service without a new or forwarding address, the Parties shall cause the Settlement Administrator to as soon as practicable determine whether a valid address can be located through use of the United States Postal Service's National Change of Address database and/or other reasonable means and without undue cost and delay, and then promptly re-mail Class Notices for whom the Settlement Administrator is reasonably able to locate a valid address in accordance herewith, so long as the valid address is obtained by the Settlement Administrator at least seven (7) days or more prior to the Objection/Exclusion Deadline.

7.2.8    **Settlement Website.**  The Parties shall cause the Settlement Administrator to establish the Settlement Website, whose address shall be included and disclosed in the Class Notice, and which will inform Potential Settlement Class Members of the terms of this Agreement, their rights, dates, and deadlines and related information. The Settlement Website shall include, in .pdf format, a copy of the Operative Complaint, this Agreement and its exhibits, any Preliminary Approval Order entered by the Court, and a copy of the Class Notice, along with such other information as the Court may designate or the Parties

may agree to post there.  The Settlement Website will be operational and live by the date of the first mailing of the Class Notice. A Spanish-language translation of the Class Notice shall be placed on the Settlement Website by the Settlement Administrator at the time the Settlement Website becomes operational and live. The Spanish-language translation shall be created by a federally certified translator. However, in the case of conflict, the English-language version of the Class Notice shall control.

7.2.9    The Parties shall cause the Settlement Administrator to establish an automated interactive voice recognition telephone system for the purposes of providing information concerning the nature of the Action, the material terms of the Settlement, and the deadlines and procedures for Potential Settlement Class Members to exercise their opt-out and objection rights.  The Class Notice and Settlement Website shall include and disclose the telephone number of this automated interactive voice recognition telephone system.

7.2.10   Because it is recognized that Potential Settlement Class Members on Class Loans no longer serviced by the PHH Defendants may now have a different mailing address than the last address known to the PHH Defendants, the Parties shall cause the Settlement Administrator to make advertisements on the internet for the purpose of alerting Settlement Class Members to the settlement website, in a form recommended by the Settlement Administrator and mutually acceptable to the Parties, with an aggregate cost to the PHH Defendants not to exceed $15,000.

7.3    As further consideration for the dismissal of the Action with prejudice on the merits, the entry of the Release, and the other promises and covenants in this Agreement, the PHH Defendants have also agreed to pay or cause to be paid the Costs of Administration associated with

the Settlement, which amount shall be paid separate and apart from the Settlement Fund, subject to the terms of this Agreement. Funds sufficient to pay the Settlement Administrator for Costs of Administration expected to be incurred prior to the Final Settlement Date shall be paid by the PHH Defendants to the Settlement Administrator within seven (7) business days of the Preliminary Approval Order. The PHH Defendants shall pay directly to the Settlement Administrator all remaining Costs of Administration within ten (10) business days after the Final Settlement Date.

7.4     Not later than ten (10) days before the date of the Fairness Hearing, the Settlement Administrator, and to the extent necessary the Parties, shall file with the Court a declaration or declarations, based on the personal knowledge of the declarant(s), verifying compliance with these class-wide notice procedures.

7.5     The Parties agree that the PHH Defendants shall have the right to communicate with, and respond to inquiries from, Potential Settlement Class Members in the ordinary course of the PHH Defendants' business, a right which the PHH Defendants expressly reserve.  However, any inquiries about this Agreement or about the Action shall be referred to Class Counsel or to the Settlement Administrator.

7.6     **Media Communications.**

7.6.1     The Parties and their counsel agree to ensure that any comments about or descriptions of this Settlement and Agreement or its value or cost in the media or in any other public forum apart from the Action are accurate.  In addition, the Parties and their counsel agree that until such time as the Final Order and Judgment is entered:

7.6.1.1 Any press releases or public communications regarding the Agreement shall be reviewed and mutually approved and agreed to by Class Counsel and the PHH Defendants' Counsel before

dissemination or publication.

7.6.1.2 Class Counsel and the PHH Defendants' Counsel may, after mutual consultation, make only mutually agreeable press communications announcing the Settlement, but shall not otherwise issue any press release or printed or broadcast public communication about this Agreement or the Settlement.

7.6.2    Notwithstanding the foregoing, the PHH Defendants may disclose this Agreement to, and discuss this Agreement with, its parent companies, affiliated companies, customers, and clients, and each of their respective accountants, shareholders, auditors, consultants and investors, as well as with government entities as necessary to comply with applicable law, at any time before or after the Final Order and Judgment.

**8      Requests for Exclusion**

8.1    Any Potential Settlement Class Member who wishes to be excluded from the Settlement Class must mail a written "request for exclusion" to the Settlement Administrator at the address provided in the Class Notice, mailed sufficiently in advance to be received by the Settlement Administrator no later than the Objection/Exclusion Deadline.  A written request for exclusion must: (a) contain a caption or title that identifies it as "Request for Exclusion in *Morris v. PHH* (case number 0:20-cv-60633-RS)"; (b) include the Potential Settlement Class Member's name, mailing and email addresses, and contact telephone number; (c) specify that he or she wants to be "excluded from the Settlement Class" and identify the Class Loan number(s) for which he or she seeks exclusion from the Settlement; and (d) be personally signed by the Settlement Class Member.  The requirements for submitting a timely and valid request for exclusion shall be set forth in the Class Notice.

8.2     Each Potential Settlement Class Member who wishes to be excluded from the Settlement Class must submit his or her own personally signed written request for exclusion.  A single written request for exclusion submitted on behalf of more than one Potential Settlement Class Member will be deemed invalid; provided, however, that an exclusion received from one Potential Settlement Class Member will be deemed and construed as a request for exclusion by all co-debtors, joint-debtors and multiple borrowers on the same Class Loan.

8.3     Unless excluded by separate Order entered by the Court for good cause shown prior to the final approval of this Settlement, any Potential Settlement Class Member who fails to strictly comply with the procedures set forth in this Section 8 for the submission of written requests for exclusion will be deemed to have consented to the jurisdiction of the Court, will be deemed to be part of the Settlement Class, and will be bound by all subsequent proceedings, orders, and judgments in the Action, including, but not limited to, the Release, even if he or she has litigation pending or subsequently initiates litigation against the PHH Defendants relating to the Released Claims.

8.4     The Settlement Administrator shall file with the Court, no later than ten (10) days before the Fairness Hearing, a list reflecting all requests for exclusion it has received.  The list shall also identify which of those requests for exclusion were received late, and which requests for exclusion failed to comply with the requirements of this Section 8.

8.5     Potential Settlement Class Members who exclude themselves from the Settlement Class as set forth in this Section 8 expressly waive any right to the continued pursuit of any objection to the Settlement as set forth in Section 9, or to otherwise pursue any objection, challenge, appeal, dispute, or collateral attack to this Agreement or the Settlement, including to the Settlement's fairness, reasonableness, and adequacy; to the appointment of Class Counsel and

Plaintiffs as the representatives of the Settlement Class; to any Service Awards or Attorneys' Fee and Expense awards; and to the approval of the  Class Notice, and the procedures for disseminating the Class Notice to the Settlement Class.

**9**      **Objections to Settlement**

9.1      Any Settlement Class Member who has not filed a timely written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or the Service Awards, or to any other aspect or effect of the proposed Settlement, must file with the Court a written statement of his or her objection no later than the Objection/Exclusion Deadline.  To file a written statement of objection, a Settlement Class Member must (a) mail it sufficiently in advance to be received by the Clerk of the Court on or before the Objection/Exclusion Deadline, or (b) file it in person on or before the Objection/Exclusion Deadline at any location of the United States District Court for the Southern District of Florida, except that any objection made by a Settlement Class Member represented by counsel must be filed through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

9.2      A written statement of objection must: (a) contain a caption or title that identifies it as "Objection to Class Settlement in *Morris v. PHH* (case number 0:20-cv-60633-RS)"; (b) include the Settlement Class Members' name, mailing and email addresses, contact telephone number, and Class Loan number(s) for which an objection is being made; (c) state whether the objection applies only to the Settlement Class Member submitting the objection, to a specific subset of the Settlement Class, or to the entire Settlement Class; (d) state with specificity the specific reason(s), if any, for each objection, including all legal support the Settlement Class Member wishes to bring to the Court's attention and all factual evidence the Settlement Class Member wishes to introduce

in support of the objection; (e) disclose the name and contact information of any and all attorneys representing, advising, or in any way assisting the Settlement Class Member in connection with the preparation or submission of the objection; and (f) be personally signed by the Settlement Class Member.

9.3     A Settlement Class Member may file and serve a written statement of objection either on his own or through an attorney retained at his own expense; provided, however, that a written statement of objection must be personally signed by the Settlement Class Member, regardless of whether he has hired an attorney to represent him.

9.4     Any Settlement Class Member who properly files and serves a timely written objection, as described in this Section 9, may appear at the Fairness Hearing, either in person or through personal counsel hired at the Settlement Class Member's own expense, to object to the fairness, reasonableness, or adequacy of this Agreement or the proposed Settlement, or to the award of Attorneys' Fees and Expenses or Service Awards, or to any other aspect or effect of the proposed Settlement.  However, any Settlement Class Member who intends to make an appearance at the Fairness Hearing must include a statement to that effect in his or her objection.  If a Settlement Class Member hires his or her own personal attorney to represent him or her in connection with an objection, and if that attorney wishes to appear at the Fairness Hearing, the attorney must: (a) file a notice of appearance with the Clerk of Court in the Action no later than the Objection/Exclusion Deadline and (b) serve and deliver a copy of that notice of appearance to Class Counsel and the PHH Defendants' Counsel no later than the Objection/Exclusion Deadline.

9.5     Any Settlement Class Member who fails to strictly comply with the provisions and deadlines of this Section 9 shall waive any and all objections to the Settlement, its terms, or the procedures for its approval, shall forfeit any and all rights he or she may have to appear separately

and/or to object, and will be deemed to have consented to the jurisdiction of the Court, to be part of the Settlement Class, and to be bound by all subsequent proceedings, orders, and judgments in the Action, including, but not limited to, the Release.

9.6     Any Settlement Class Member who objects to the Settlement but does not file an exclusion request shall, unless he or she is subsequently excluded by Order of the Court, remain a Settlement Class Member and therefore be entitled to all of the benefits, obligations and terms of the Settlement if this Agreement and the terms contained therein are approved and the Final Settlement Date is reached.

9.7     Only Settlement Class Members may object to the Settlement as set forth in this Section 9. Potential Settlement Class Members who are excluded from the Settlement Class, whether by submitting a timely and valid request for exclusion as set forth in Section 8 or by order of the Court, have no standing to object to the Settlement.

### 10      Attorneys' Fees and Expenses and Service Awards

10.1    Class Counsel may petition the Court for an award of Attorneys' Fees and Expenses in an aggregate amount not to exceed thirty three percent (33%) of the Settlement Funds.  Class Counsel shall file its motion for an Attorneys' Fees and Expenses award no later than fourteen (14) days before the Objection/Exclusion Deadline. As soon as is practicable after filing, Class Counsel shall cause the Settlement Administrator to post on the Settlement Website all papers filed and served in support of Class Counsel's motion for an award of Attorneys' Fees and Expenses. The PHH Defendants reserve the right to oppose any petition by Class Counsel for Attorneys' Fees and Expenses that the PHH Defendants deem to be unreasonable in nature or amount or otherwise objectionable.

10.2    All attorneys' fees for, and any reimbursement of litigation expenses incurred by,

Class Counsel shall be paid out of the Settlement Funds on a pro rata basis based on the size of each Settlement Fund as a percentage of the combined total of both Settlement Funds.  Other than making available the Settlement Funds pursuant to the requirements of Section 4, the PHH Defendants and the Released Persons shall have no responsibility for, and no liability whatsoever with respect to, any payment of attorneys' fees or expenses to Class Counsel, which Class Counsel and Plaintiff shall seek to have paid only from the Settlement Funds.

      10.3   Class Counsel is solely responsible for distributing any Attorneys' Fees and Expenses to and among all attorneys that may claim entitlement to attorneys' fees or costs in the Action.  It is a condition of this Settlement that the PHH Defendants and the Released Persons shall not be liable to anyone else for any attorneys' fees or costs, or any claim by any other counsel or Settlement Class Member for additional attorneys' fees, incentive or service awards, costs or expenses, relating in any way to the Action, the Settlement, its administration and implementation, any appeals of orders or judgments relating to the Settlement, any objections or challenges to the Settlement, and/or any proceedings on behalf of Settlement Class Members who do not exclude themselves from the Settlement Class based on any of the claims or allegations forming the basis of the Action or any other claims that are defined as Released Claims in this Settlement.  If any other or additional attorneys' fees, costs, incentive or service awards, or expenses to be paid by the PHH Defendants separate from the Settlement Funds are awarded to anyone, including but not limited to any parties other than Plaintiffs and Class Counsel, the PHH Defendants at their sole option may declare this Agreement void as set forth in Section 12.

      10.4   For their endeavor on behalf of the Settlement Class, and in addition to the relief otherwise due them as members of the Settlement Classes, Lead Plaintiffs Morris and Luzzi shall conditionally apply for contingent Service Awards to be paid from the Settlement Funds in the

amount of $5,000 each for a total sum of $10,000. The application for Service Awards shall be contingent upon the following: either (i) the Eleventh Circuit's decision in *Johnson v. NPAS* is vacated or reversed prior to the entry of an order finally approving the Settlement and prior to any award; or (ii) all Settlement Class Members unanimously waive any objection to Service Awards, which shall be evidenced by the failure of any Settlement Class Member to file a timely objection to the request for Service Awards. But if even one Settlement Class Member files a timely objection to the request for Service Awards, and the Eleventh Circuit's decision in *NPAS* has not been vacated or reversed before entry by the trial court of an order granting final approval to this Settlement, then the conditional request for Service Awards shall be deemed automatically withdrawn. The PHH Defendants reserve the right to oppose any petition by Plaintiffs and Class Counsel for Service Awards that the PHH Defendants deem to be unreasonable in nature or amount or otherwise objectionable.

10.5    Within fourteen (14) days after the later of (a) the Final Settlement Date or (b) receipt of wire instructions from Class Counsel, whichever is later, the Settlement Administrator shall pay Class Counsel from the Settlement Funds any Attorneys' Fees and Expenses and Service Awards that may be awarded by the Court.  Class Counsel shall be solely responsible for supplying the Settlement Administrator with all information required by the Settlement Administrator in order to pay such awards from the Settlement Funds, and to comply with the Settlement Administrator's state and local reporting obligations.  Class Counsel will also be solely responsible for distributing such Service Awards to the Plaintiffs, in accordance with the terms and provisions of any Order entered by the Court approving such awards.

10.6    In the event the Final Order and Judgment is not entered, or this Agreement and the Settlement do not reach the Final Settlement Date, the PHH Defendants will not be liable for, and

shall be under no obligation to pay, any of the Attorneys' Fees and Expenses and Service Awards set forth herein and described in this Agreement.

10.7    The effectiveness of this Agreement and Settlement will not be conditioned upon or delayed by the Court's failure to approve in whole or in part any petition by Plaintiffs and Class Counsel for Attorneys' Fees and Expenses and Service Awards.   The denial, downward modification, or failure to grant any petition by Plaintiffs and Class Counsel for Attorneys' Fees and Expenses and Service Awards shall not constitute grounds for modification or termination of this Agreement or the Settlement proposed herein.

**11      Final Order and Judgment**

11.1    If the Preliminary Approval Order is entered by the Court, after the dissemination of the Class Notice and not later than ten (10) days before the Fairness Hearing, Class Counsel shall move the Court to enter a Final Order and Judgment.  The Final Order and Judgment shall, among other things:

11.1.1   Find that the Court has personal jurisdiction over the Parties and all Settlement Class Members and that the Court has subject matter jurisdiction to approve the Agreement, including all attached exhibits;

11.1.2   Approve the Agreement and the proposed Settlement as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members; make final the certification of the Settlement Class, including both the Florida Class and the FDCPA Class; direct the Parties and their counsel to implement and consummate the Agreement according to its terms and provisions; and declare the Agreement to be binding upon, and have res judicata and collateral estoppel effect in all pending and future lawsuits or other proceedings maintained by or on behalf of Plaintiffs and the Settlement Class Members;

11.1.3   Find that the Class Notice implemented pursuant to the Agreement (a) constituted the best practicable notice under the circumstances; (b) constituted notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement; and to appear at the Fairness Hearing; (c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

11.1.4   Find that Plaintiffs and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement;

11.1.5   Determine whether Attorneys' Fees and Expenses should be awarded by the Court to Class Counsel, and in what amount, pursuant to Federal Rule of Civil Procedure 23(h) and determine whether Service Awards should be approved by the Court to Plaintiffs, and in what amounts;

11.1.6   Incorporate the Release set forth in Section 3 of this Agreement, make the Release effective as of the Final Settlement Date, and forever discharge the Released Persons as set forth in this Agreement;

11.1.7   Permanently bar and enjoin all Settlement Class Members from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

11.1.8   Authorize the Parties, without further approval from the Court, to agree to and adopt such amendments, modifications and expansions of this Agreement and its implementing documents (including all exhibits to this Agreement) if such changes are not

materially inconsistent with the Court's Final Order and Judgment or do not materially limit, or materially and adversely affect, the rights or obligations of the Settlement Class Members under this Agreement;

11.1.9   Order that the Court retains continuing and exclusive jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validation of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; and all other matters pertaining to the Settlement or its implementation and enforcement;

11.1.10 Direct that judgment of dismissal on the merits and with prejudice of the Action (including all individual claims and class action claims presented thereby) shall be final and entered forthwith, without fees or costs to any Person or Party except as provided in this Agreement; and

11.1.11 Without affecting the finality of the Final Order and Judgment for purposes of appeal, retain jurisdiction as to the administration, consummation, enforcement and interpretation of this Agreement and the Final Order and Judgment, and for any other necessary purpose.

## 12      Modification, Disapproval, Cancellation, or Termination of this Agreement

12.1     Before entry of the Final Order and Judgment, the terms and provisions of this Agreement may be amended, modified, or expanded by written agreement of the Parties and approval of the Court; provided, however, that after entry of the Final Order and Judgment, the Parties may by mutual written agreement effect such amendments, modifications or expansions of this Agreement and its implementing documents (including all exhibits hereto) without further notice to the Settlement Class or approval of the Court if such changes are not materially

inconsistent with the Court's Final Order and Judgment and do not materially limit, or materially and adversely affect, the rights or obligations of Settlement Class Members under this Agreement.

12.2     This Agreement shall terminate at the sole option and discretion of either Party if: (a) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Agreement that the terminating Party in her or its sole judgment and discretion determine(s) is material, including, without limitation, the terms of relief, the findings or conclusions of the Court, the provisions relating to notice (including the proposed plan for the dissemination of notice to the Settlement Class as set forth in Section 7 of this Agreement), the definition of the Settlement Class and the terms and conditions for its certification, and/or the terms of the Release; or (b) the Court, or any appellate court(s), does not enter or completely affirm, or alters or expands, any portion of the Final Order and Judgment, or any of the Court's findings of fact or conclusions of law, that the terminating Party in her or its sole judgment and discretion determine(s) is material.  However, under no circumstances shall the Court's failure to approve, in whole or in part, any petition by Plaintiffs and Class Counsel for a Service Award and Attorneys' Fees and Expenses as set forth in Section 10 of this Agreement provide Plaintiffs or Class Counsel with a basis for terminating this Agreement.

12.3     The PHH Defendants may also in their sole and absolute judgment and discretion elect to terminate this Agreement if: (a) any attorneys' fees and costs, expert fees, costs, expenses, service awards or incentive awards are awarded other than from the Settlement Fund; or (b) requests for exclusion are submitted by Potential Settlement Class Members on 3,000 or more Class Loans.

12.4     Any terminating Party must exercise its option to withdraw from and terminate this Agreement, as provided in this Section 12, by a signed writing served on the other Party no later

than thirty-five (35) days after receiving notice of the event prompting the termination unless there is a motion or petition seeking reconsideration, alteration or appeal review of the event, in which case no later than thirty-five (35) days after the final conclusion of any such motion or petition seeking reconsideration, alteration, or appellate review thereof, whichever is later.

12.5     If any of the foregoing termination events occurs, no Party is required for any reason or under any circumstance to exercise that option.

12.6     If the Final Settlement Date does not occur or this Agreement is terminated pursuant to the provisions of this Section 12, then:

12.6.1    This Agreement shall be null and void and shall have no force or effect, through principles of estoppel, res judicata, or otherwise, and no Party to this Agreement shall be bound by any of its terms, except for the terms of this Paragraph 12.6 and its sub-parts;

12.6.2    This Agreement, all of its provisions, and all negotiations, statements, documents, orders, and proceedings relating to it shall be inadmissible in evidence for any purpose, and shall be without prejudice to the rights of the PHH Defendants, Plaintiffs and the Settlement Class, all of whom shall be restored to their respective positions in the Action as of the date existing immediately before the signing of this Agreement, except that the Parties shall cooperate in requesting that the Court set a new scheduling order such that neither Party's substantive or procedural rights is prejudiced by the attempted Settlement;

12.6.3    Neither this Agreement, nor the Settlement contained in this Agreement, nor any act performed or document executed pursuant to or in furtherance of this Agreement or the Settlement:

12.6.3.1       Is, may be deemed, or shall be used, offered or received

54

against the Released Persons, or each or any of them, as an admission, concession, or evidence of, the validity of any Released Claims, the truth of any fact alleged by Plaintiffs, the deficiency of any defense that has been or could have been asserted in the Action, the violation of any law or statute, the reasonableness of the Settlement amount or of Class Counsel's reasonable attorneys fees' and expenses, or of any alleged wrongdoing, liability, negligence or fault of the Released Persons, or any of them;

12.6.3.2       Is, may be deemed, or shall be used, offered, or received against Plaintiffs, the Settlement Class or each of any of them as an admission, concession, or evidence of any fault, misrepresentation, or omission with respect to any statement or written document approved or made by the Released Persons, or any of them; and

12.6.3.3       Is, may be deemed, or shall be used, offered, or received against the Released Persons, or each or any of them, as an admission or concession with respect to any liability, negligence, fault or wrongdoing as against any Released Persons, or of the certifiability of any class, in any bankruptcy, civil, criminal or administrative proceeding in any court, administrative agency, or other tribunal.  However, the Settlement, this Agreement, and any acts performed and/or documents executed in furtherance of or pursuant to this Agreement and/or Settlement may be used in any proceedings as may be necessary to effectuate or enforce the

provisions of this Agreement.  If this Agreement is approved by the Court and the Final Settlement Date is reached, any of the Parties or any of the Released Persons may file this Agreement and/or the Final Order and Judgment in any action that may be brought against such Person or Persons in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith estimate, judgment bar or preclusion, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

12.6.4   Any Settlement-related order(s) or judgments entered in this Action after the date of execution of this Agreement shall be deemed vacated, nunc pro tunc, and shall be without force or effect, and the Parties and the Settlement Class Members shall be returned to the status quo ante with respect to the Action as if they had never entered into this Agreement, and any of the Parties may move the Court to vacate any and all orders entered by the Court pursuant to the provisions of this Agreement;

12.6.5   No litigation class will be certified pursuant to or in whole or in part because of or by reference to this Agreement and the Parties stipulate that certification of the Settlement Class will be deemed to have been conditional and made only for purposes of this particular Agreement and for purposes of settlement only, and will therefore be immediately vacated and voided for all other purposes, without prejudice to or effect on subsequent motions for certification of a litigation class on grounds wholly independent of this Agreement.  In such event, the PHH Defendants and the PHH Defendants' Counsel will not be deemed to have consented to (and will not be estopped to oppose) the certification of

any class for purposes of litigation, and will retain all rights to object to or oppose any motion for certification of a class for purposes of litigation, including certification of the Settlement Class provided for in this Agreement as a litigation class or any other class(es);

12.6.6   The Released Persons expressly do not waive any, but instead affirmatively reserve all, of their defenses, arguments and motions as to all claims that have been or might later be asserted in the Action including, without limitation, the argument that the Action may not be litigated as a class action; and

12.6.7   Plaintiffs and all other Settlement Class Members expressly reserve and do not waive any motions as to, and arguments in support of, all claims that have been or might later be asserted in the Action including, without limitation, any argument concerning class certification, liability and/or available remedies.

## 13   General Matters and Reservations

13.1   The obligation of the Parties to implement and conclude the proposed Settlement is and shall be contingent upon each of the following:

13.1.1   Entry by the Court of the Preliminary Approval Order, followed thereafter by the Fairness Hearing and subsequent entry by the Court of the Final Order and Judgment approving the Settlement, from which the time to appeal has expired or which has remained unmodified after the exhaustion and final disposition of any appeal(s) or petition(s) for appellate review; and

13.1.2   Any other conditions stated in this Agreement.

13.2   The Parties: (a) acknowledge that it is their intent to consummate this Agreement; and (b) agree, subject to their fiduciary and other legal obligations, to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Agreement and

to exercise their reasonable best efforts to accomplish the foregoing terms and conditions of this Agreement.  The Parties, Class Counsel, and the PHH Defendants' Counsel agree to cooperate with one another in (a) seeking Court approval of the Preliminary Approval Order, the Agreement, and the Final Order and Judgment and in the event of any appeal(s), to use their reasonable best efforts to effect prompt consummation of this Agreement and the proposed Settlement; (b) promptly agreeing upon and executing all such other documents as may be reasonably required to obtain final approval of the Agreement; and (c) resolving any disputes that may arise in the implementation of the terms of this Agreement.

13.3    The PHH Defendants' execution of this Agreement shall not be construed to release—and the PHH Defendants expressly do not intend to release—any claim they may have or make against any insurer, reinsurer, indemnitor, client, loan investor, prior loan servicers, consultant, or vendor (including, but not limited to, Speedpay Inc., ACI Worldwide, Inc., or Western Union) for any judgment, payment, liability, cost or expense incurred in connection with this Agreement, including, without limitation, for attorneys' fees and costs.

13.4    This Agreement, complete with its exhibits, sets forth the sole and entire agreement and understanding of the Parties with respect to its subject matter, and it may not be altered, amended, or modified except by written instrument made in accordance with the provisions of this Agreement and executed by or on behalf of all Parties or their respective successors in interest. The Parties expressly acknowledge that no other agreements, arrangements, or understandings not expressed in this Agreement exist among or between them regarding the subject matter of this Agreement and that in deciding to enter into this Agreement, they each have relied solely upon their own judgment and knowledge.  This Agreement supersedes any prior agreements, understandings, or undertakings (written or oral) by and between the Parties regarding the subject

matter of this Agreement.

13.5     Any inconsistency between this Agreement and the attached exhibits will be resolved in favor of this Agreement.

13.6     To the extent not governed by federal law, this Agreement, any amendments thereto, and any claim, cause of action or dispute arising out of or relating to this Agreement shall be governed by, interpreted under, and enforced in accordance with the laws of the State of Florida without regard to any conflict-of-law principles that may otherwise provide for the application of the law of another jurisdiction.

13.7     Any disagreement and/or action seeking directly or indirectly to challenge, modify, construe, obtain relief from, extend, limit, or enforce this Agreement shall be commenced and maintained only in the Court and in this Action.  Without in any way compromising the finality of the Final Order and Judgment, the Court shall retain exclusive and continuing jurisdiction over all matters related in any way to the Settlement and the Agreement, including but not limited to the implementation of the Settlement and the interpretation, administration, supervision, enforcement and modification of this Agreement and the relief it provides to Plaintiffs and the Settlement Class Members.

13.8     Whenever this Agreement requires or contemplates that one of the Parties shall or may give notice to the other, notice shall be provided by e-mail and/or next-day (excluding Saturdays, Sundays and Legal Holidays) express delivery service as follows:

13.8.1   If to the PHH Defendants, then to Michael R. Pennington, Bradley Arant Boult Cummings LLP, 1819 Fifth Avenue North, Birmingham, Alabama 35203 (Telephone: (205) 521-8000; Email: mpennington@bradley.com).

13.8.2   If to Plaintiffs, or the Settlement Class, or Class Counsel, then to Adam M.

Moskowitz, The Moskowitz Law Firm, 2 Alhambra Plaza, Suite 601, Coral Gables, FL 33134 (Telephone: (305) 740-1423; Email: adam@moskowitz-law.com)

13.9    Subject to the terms of the Final Order and Judgment, no certifications by the Parties regarding their compliance with the terms of the Settlement and this Agreement will be required.  Any dispute as to the Parties' compliance with their obligations under the Settlement and this Agreement shall be brought and resolved only in the Action and only by the Court, and applicable appellate courts, and in no other action or proceeding.

13.10   All time periods set forth herein shall be computed in calendar days unless otherwise expressly provided.  In computing any period of time prescribed or allowed by this Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run shall not be included.  The last day of the period so computed shall be included, unless it is a Saturday, a Sunday or a Legal Holiday (as defined in Rule 6(a)(6) of the Federal Rules of Civil Procedure), or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the office of the clerk of the court inaccessible, in which event the period shall run until the end of the next day that is not one of the aforementioned days.

13.11   The time periods and dates described in this Agreement are subject to the Court's approval.  These time periods and dates may be changed by the Court or by the Parties' written agreement without notice to the Settlement Class.  The Parties reserve the right, subject to the Court's approval, to agree to any reasonable extensions of time that might be necessary to carry out any of the provisions of this Agreement.

13.12   Neither the Settlement Class, Plaintiffs, Class Counsel, the PHH Defendants nor the PHH Defendants' Counsel shall be deemed to be the drafter of this Agreement or of any

particular provision, nor shall any of them argue that any particular provision should be construed against its drafter or otherwise resort to the *contra proferentem* canon of construction.  All Parties agree that this Agreement was drafted by counsel for the Parties during and through extensive arm's length negotiations with the aid of a neutral mediator.  No parol or other evidence may be offered to explain, construe, contradict, or clarify this Agreement's terms, the intent of the Parties or their counsel, or the circumstances under which this Agreement was made or executed.

13.13   The Parties expressly acknowledge and agree that this Agreement and its exhibits, along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state.  In no event shall this Agreement, any of its provisions or any negotiations, statements or court proceedings relating to its provisions, or any documents created for the purposes of mediation, negotiation, or confirmatory due diligence or informal discovery, whether or not exchanged with opposing counsel, in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory or other proceeding, except in a proceeding to effectuate or enforce this Agreement or the rights of the Parties or their counsel.  Without limiting the foregoing, neither this Agreement nor any related negotiations, statements, or court proceedings shall be construed as, offered as, received as, used as or deemed to be evidence of an admission or concession of any proposition of fact or law or of any liability or wrongdoing whatsoever on the part of any person or entity, including, but not limited to, the Released Persons, Plaintiffs or the Settlement Class or as a waiver by the Released Persons, Plaintiffs or the Settlement Class of any applicable privileges or immunities (including, without limitation, the attorney-client privilege or work product immunity), claims or defenses.

13.14   Plaintiffs each expressly affirm that the allegations contained in the complaints, including the Operative Complaint, were made in good faith and have a basis in fact, but that they consider it desirable for the Action to be settled and dismissed because of the risks associated with continued litigation and the substantial benefits that the Settlement will provide to the Settlement Class Members.

13.15   The waiver by one of the Parties of any breach of this Agreement by another of the Parties shall not be deemed a waiver of any other prior or subsequent breaches of this Agreement.

13.16   If one Party to this Agreement considers the other Party to be in breach of its obligations under this Agreement, that Party must provide the breaching Party with written notice of the alleged breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Agreement.

13.17   No opinion concerning the tax consequences, if any, of this Agreement and Settlement as to individual Settlement Class Members or anyone else is being given or will be given by the PHH Defendants, the PHH Defendants' Counsel, Plaintiffs or Class Counsel; nor is any representation or warranty in this regard made by virtue of this Agreement or Settlement.  The Class Notice will direct Settlement Class Members to consult their own tax advisor(s) regarding the tax consequences of the Settlement and this Agreement, and any tax reporting obligations they may have with respect thereto.  Each Settlement Class Member's tax obligations, and the determination thereof, are the sole responsibility of the Settlement Class Member, and it is understood that the tax consequences may vary depending on the particular circumstances of each individual Settlement Class Member.  Nothing in this Agreement or in the Class Notice is to be construed as tax advice of any kind.

13.18   Headings contained in this Agreement are used for the purpose of convenience only

and are not intended to alter or vary the construction and meaning of this Agreement.

13.19   The recitals of this Agreement are incorporated by this reference and are part of this Agreement.

13.20   This Agreement shall be equally binding upon and inure to the benefit of the Plaintiffs and the Settlement Class Members, their representatives, heirs, successors and assigns, as upon and to the benefit of the PHH Defendants.

13.21   Nothing herein shall be deemed a waiver of any prior release individually executed between the PHH Defendants and any Settlement Class Member.

13.22   This Agreement may be signed with a facsimile or PDF format signature and in counterparts, each of which shall constitute a duplicate original.

**[THE REST OF THIS PAGE INTENTIONALLY LEFT BLANK.  SIGNATURE PAGES FOLLOW.]**

Agreed to on the date(s) indicated below.

Dated: ___10/11/2022___, 2022        By: _____
                                          VINCENT J. MORRIS, individually and on behalf
                                          of the Settlement Class

Dated: ___10/10/2022___, 2022        By: _____
                                          MICHAEL LUZZI, individually and on behalf of
                                          the Settlement Class

Dated: _____, 2022              PHH MORTGAGE CORPORATION

                                     By: _____

                                     Its: _____

APPROVED AS TO FORM BY COUNSEL:

Dated: __October 11__, 2022          THE MOSKOWITZ LAW FIRM
                                     Attorneys for Plaintiff Morris, Plaintiff Luzzi, and the
                                     Settlement Class

                                     By: _____
                                          Adam M. Moskowitz

Dated: _____, 2022              BRADLEY ARANT BOULT CUMMINGS LLP
                                     Attorneys for Defendant PHH Mortgage Corporation

                                     By: _____
                                          Michael R. Pennington

Agreed to on the date(s) indicated below.


Dated: _____, 2022          By:      _____

                                         VINCENT J. MORRIS, individually and on behalf
                                         of the Settlement Class


Dated: _____, 2022          By:      _____

                                         MICHAEL LUZZI, individually and on behalf of
                                         the Settlement Class


Dated: October 13, 2022         PHH MORTGAGE CORPORATION

                                By:      */s/ Jason A. Risk*_____


                                Its:     Vice President & Assistant General Counsel
                                         Ocwen Financial Corporation_____

APPROVED AS TO FORM BY COUNSEL:

Dated: _____, 2022          THE MOSKOWITZ LAW FIRM
                                Attorneys for Plaintiff Morris, Plaintiff Luzzi, and the
                                Settlement Class


                                By:      _____

                                         Adam M. Moskowitz


Dated: October 13, 2022         BRADLEY ARANT BOULT CUMMINGS LLP
                                Attorneys for Defendant PHH Mortgage Corporation


                                By:      */s/ Michael R. Pennington*_____
                                         Michael R. Pennington

# Exhibit A

# A class action settlement may affect your rights if you paid Ocwen or PHH a fee to make a mortgage loan payment by telephone, through an interactive voice response telephone system, or through the internet on or after March 25, 2016

*A federal court authorized this notice. This is <u>not</u> a solicitation from a lawyer.*

**PARA VER ESTE AVISO EN ESPAÑOL, VISITE www.[[___]].com**

A settlement of $2,771,068 has been reached in a class action lawsuit alleging that Ocwen Loan Servicing, LLC ("Ocwen") and PHH Mortgage Corporation ("PHH," and with Ocwen, "Defendants" or the "PHH Defendants") violated the Fair Debt Collection Practices Act ("FDCPA") to borrowers nationwide and violated the Florida Consumer Collection Practices Act ("FCCPA"), Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA"), or borrower loan agreements or mortgages as to borrowers with mortgaged property in the State of Florida, when they charged borrowers fees for making loan payments by telephone through a live operator, by telephone through an interactive voice response telephone system ("IVR"), or by the internet. These types of fees are known as "Convenience Fees." For much of the period at issue in this lawsuit, Ocwen and PHH used the "Speedpay™" service to facilitate these kinds of payments, so the Convenience Fees charged by Ocwen and PHH were often referred to as "Speedpay" fees. Ocwen and PHH deny that they did anything wrong, and the Court has not decided who is right. Ocwen, PHH, and the Plaintiffs, Vincent Morris and Michael Luzzi (together with PHH and Ocwen, the "Parties"), agreed to enter into this Settlement to avoid the uncertainties, delays, and expenses of ongoing litigation, while providing class members with definite benefits now. **The purpose of this notice is to inform you of the class action and the proposed Settlement so that you may decide whether to participate, opt out, or object.**

## QUICK SUMMARY OF SETTLEMENT

**WHO'S INCLUDED? Ocwen's and PHH's records indicate that you may be a member of the "Settlement Class" at issue in this case, or in other words, you may be a "Settlement Class Member."** The "Settlement Class" includes each of the following:

<u>**The FDCPA Class:**</u>

(A) All borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH and to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers whose loans make them potential members of the proposed settlement classes in *Torliatt v. Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case no. 5:21-cv-00174-JPB (Bailey) (N.D. W. Va.), whether or not those borrowers timely and validly exclude themselves from those settlement classes; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

– and –

**The Florida Class**:

All borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (c) borrowers in the "FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them. For the avoidance of doubt, a borrower in the FDCPA Class who also paid a fee to either PHH Defendant between March 25, 2016 and March 24, 2019, inclusive, and who otherwise meets the definition of the Florida Class would be in both the FDCPA Class and the Florida Class.

**The last page of this notice states if your Class Loan is an FDCPA Class Loan, a Florida Class Loan, or both, according to Defendants' records.**

## WHAT ARE THE SETTLEMENT TERMS?

### What the Settlement Class Members are getting:

<u>Monetary Relief.</u> Defendants have agreed to create two separate settlement funds with an aggregate combined value of $2,771,068 (the "Settlement Funds"), which will be distributed to Settlement Class Members (after first deducting any fees, expenses or service awards that the Court awards Plaintiffs

and the attorneys representing the Settlement Class ("Class Counsel")).  The Settlement Funds will be distributed on a loan-by-loan basis.

FDCPA Class Members will be entitled to an allocation from the FDCPA Settlement Fund. The FDCPA Settlement Fund has an aggregate value of $1,233,381, which is equal to the sum of 32% of the Convenience Fees paid to and retained by Ocwen from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (A) of the definition of the FDCPA Class and 32% of the Convenience Fees paid to and retained by PHH from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (B) of the definition of the FDCPA Class. Individual allocations will be calculated as explained in Section 6, below.

Florida Class Members will be entitled to an allocation from the Florida Settlement Fund. The Florida Settlement Fund has an aggregate value of $1,537,687, which is equal to 18% of the Convenience Fees that were paid to and retained by the PHH Defendants from Florida Class Members during the period from March 25, 2016 through and including August 17, 2022, but excluding Convenience Fees already subject to allocations from the FDCPA Settlement Fund. Individual allocations will be calculated as explained in Section 6, below.

Other Relief. Within 120 after the Final Settlement Date, PHH has also agreed to reduce any Convenience Fee it charges for internet payments by Settlement Class Members from $7.50 to $6.50 for a period of two years and to keep all of its future Convenience Fee charges to Settlement Class Members at or below their current levels for a period of two years.  PHH will also add additional disclosures to its website to increase borrower awareness of alternative payment methods that could have lower fees or no fees. Finally, PHH will provide training and scripting to customer service employees to provide additional information and disclosures about Convenience Fees and about alternative payment options that do not involve a fee.  See the full Settlement documents at www.{_____} for more details.

**What the Settlement Class Members are giving up:**  In return for the relief that Defendants are providing, Settlement Class Members are deemed to have agreed to the following:

- **The Florida Class will release any claims that they may have against Ocwen or PHH or their associated persons and entities relating in any way to the payment of Convenience Fees to Ocwen or PHH on Florida Class Loans during the period from March 25, 2016 through and including August 17, 2022. "Florida Class Loans" means residential mortgage loans secured by mortgaged property in the State of Florida that qualify a Florida Class Member for membership in the Florida Class as defined above;** and

- **The FDCPA Class will release any claims that they may have (a) against Ocwen for Convenience Fees charged on FDCPA Class Loans to FDCPA Class Members meeting Subpart (A) of the definition of the FDCPA Class during the period from March 25, 2019 through and including August 17, 2022 or (b) against PHH for Convenience Fees charged on FDCPA Class Loans to FDCPA Class Members meeting Subpart (B) of the definition of the FDCPA Class during the period from March 25, 2019 through and including August 17, 2022. "FDCPA Class Loans" means residential mortgage loans of FDCPA Class Members which qualify them for membership in the FDCPA Class as defined above.**

**This is only a simplified summary of the claims being released as part of the Settlement. See Section 10 for a more complete explanation of the claims being released.**

**HOW CAN I GET PAYMENT?** You do not need to take any action to share in the relief offered by the Settlement. If you have moved since March 25, 2016, you may notify the Settlement Administrator of your new mailing address by writing to: [[___]].

**WHAT ARE MY OTHER OPTIONS?**

**You can exclude yourself:** If you do not want to be bound by the Settlement, you must exclude yourself by **MONTH DAY, 20___**. Part 11 below explains what you need to do to exclude yourself. If you do not exclude yourself, and the Settlement is given final approval by the Court, you will remain a member of the Settlement Class, you will receive your individual allocation of the applicable Settlement Fund(s), and you will be bound by the Settlement, including the release of claims against Ocwen and PHH.

**You can object:** You alternatively may object to the Settlement by **MONTH DAY, 20___**. Part 16 below explains what you need to do to object to the settlement. The Court will hold a hearing on **MONTH DAY, 2023** beginning at **0:00 a.m.** to consider whether to finally approve the Settlement, as well as any request for attorneys' fees by class counsel (the "Fairness Hearing"). If you object, Part 20 explains how you may ask the Court to speak at the Fairness Hearing. Persons who exclude themselves from the Settlement Class will not be bound cannot file an objection and cannot speak at the Fairness Hearing.

The rest of this Notice provides you with a more detailed summary of the Settlement, and also more fully describes your legal rights and options. For even more information, please visit www.[[___]] (the "Settlement Website"), at which you may download a complete copy of the "Second Amended Stipulation of Settlement and Release" (together with all attached exhibits, the "Agreement"). *Please read all of this Notice carefully and in its entirety because your legal rights may be affected whether you act or don't act.*

BASIC INFORMATION

| 1. Why did I get this Notice? |
| --- |

If this Notice was addressed to you, then according to Defendants' records you may be a member of the above-referenced Settlement Class, meaning you may be a member of the FDCPA Class, the Florida Class, or both, because you paid a fee to make one or more mortgage loan payments to Ocwen or PHH by telephone, through an IVR, or through the internet during the Class Periods. Ocwen and PHH were not required by your loan documents to offer these optional payment methods, but nevertheless offered these extra payment methods in exchange for a Convenience Fee.

You have received this Notice because you have a right to know about a proposed Settlement of *Morris v. PHH Mortgage Corporation*, case number 0:20-cv-60633-RS, pending in the United States District Court for the Southern District of Florida (the "Action"). This Notice describes the lawsuit, the Settlement, your legal rights, what relief is being offered to you, how that relief will be distributed and other important information. This Notice only summarizes the Settlement, the full terms of which are available for review at www.[[___]]. If there is any conflict between this Notice and the Settlement (as set forth in the Agreement), the Settlement governs. You should review the Agreement before deciding what to do. Please share this Notice with any co-borrower(s) on your loan(s).

| 2. What is this lawsuit about? |
| --- |

Plaintiffs allege that Ocwen and PHH violated Section 1692f(1) of the FDCPA, the FCCPA, the FDUTPA, and/or  breached borrower mortgage agreements and deeds of trust by charging Convenience Fees to borrowers for making loan payments by telephone, through IVR, or through the internet.  Although Ocwen and PHH were not required to offer these payment methods, and although use of these extra payment methods was always purely optional, Plaintiffs contend that such fees were still unlawful because they were not expressly authorized by the Settlement Class Members' underlying loan documents.  Defendants deny that they did anything wrong because all customers who were charged a Convenience Fee (a) were informed in advance that the payment methods for which such fees were charged were entirely optional and the borrower's decision to use of them  would result in a disclosed charge amount, and (b) were required to expressly consent to the Convenience Fee before it was charged.  Defendants contend among other things that under both the plain language of the FDCPA and regulatory guidance issued by the Federal Trade Commission, separate fees for a separate, optional, entirely avoidable, and agreed-upon service do not violate the FDCPA. Likewise, Defendants also contend that for those same reasons, their Convenience Fees do not violate the FCCPA or the FDUTPA. Defendants also contend that Convenience Fees are permitted by state and federal law, including the law of contract.

Section 1692k of the FDCPA provides that prevailing plaintiffs may recover any actual damages sustained as a result of a defendant's violation of the FDCPA, if any, along with the costs of the action and a reasonable attorney's fee as determined by the court.  In the case of class actions, members of a prevailing class may also *share in* a classwide statutory damage award of *up to* the lesser of $500,000 or 1 per centum of the net worth of the debt collector. The same actual and classwide statutory damages are also available under the FCCPA, while damages also may be potentially available under the FDUTPA or for breach of contract.

This Settlement is a compromise of these and other potential claims described in the Settlement, as explained in Part 10 below.  Meanwhile, this Notice is only a partial summary of the details of this Action and the Settlement. Part 22 of this Notice explains how you may obtain more information about the claims in this Action and Defendants' response to those claims.  You can also visit www.[[  ]] to review Plaintiffs' operative complaint, the Parties' proposed Settlement, and other documents related to this Action.

### 3. Why is this lawsuit a class action?

In a class action, one or more people, called class representatives (here Plaintiffs Vincent Morris and Michael Luzzi), sue on behalf of all other people who have similar claims.  Together, all of these people are called a class, and the persons in it are called class members.  In a class action, one court resolves the claims of all class members, except for those who ask in writing to be excluded from the class.  The Honorable Rodney Smith of the United States District Court for the Southern District of Florida is in charge of all aspects of this case, and has already given preliminarily approval to the Settlement.  Nevertheless, because the Settlement will determine the rights of the Settlement Class, the Parties must send Settlement Class Members notice of te settlement and give them an opportunity to opt out or object before the Court decides whether to grant final approval of the Settlement.

The Court has conditionally certified the Settlement Class for settlement purposes only.  If the Settlement is not given final approval, or otherwise fails to become final, or is terminated by the Parties for any of the reasons set forth in Section 12 of the Agreement, the Settlement will become void, the Settlement Class will no longer remain certified, and the Action will proceed as if there had been no Settlement and no certification of the Settlement Class.

## 4.  Why is there a Settlement?

The Court has not decided whether Plaintiffs or Defendants would win this case.  Instead, both sides agreed to the Settlement before any judgment was entered in the case.  That way, the Parties avoid the uncertainties and expenses of ongoing litigation, and the delays of a trial and possible appeals, while providing Settlement Class Members with definite benefits now rather than the uncertain benefits potentially available from fully contested litigation years from now (if at all).  Plaintiffs and Class Counsel believe the Settlement is in the best interests of the Settlement Class because it offers significant relief now, while at the same time allowing anyone who wishes to pursue their own individual claims against Defendants to exclude themselves from the Settlement Class.

### WHO IS IN THE SETTLEMENT

## 5.  How do I know if I am part of the Settlement?

The Court decided that everyone who fits either one or both of the following descriptions is a member of the Settlement Class:

### The FDCPA Class:

(A) All borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH and to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers whose loans make them potential members of the proposed settlement classes in *Torliatt v. Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case no. 5:21-cv-00174-JPB (Bailey) (N.D. W. Va.), whether or not those borrowers timely and validly exclude themselves from those settlement classes; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

– and –

**The Florida Class**:

All borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (c) borrowers in the "FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them. For the avoidance of doubt, a borrower in the FDCPA Class who also paid a fee to either PHH Defendant between March 25, 2016 and March 24, 2019, inclusive, and who otherwise meets the definition of the Florida Class would be in both the FDCPA Class and the Florida Class.

As noted in Part 1, if this Notice was addressed to you, then according to Defendants' records, you are a member of either the FDCPA Class, the Florida Class, or both, and therefore are a member of the Settlement Class unless you timely and properly exclude yourself from the Settlement Class as described in Part 11 of this Notice. **The last page of this notice states if your Class Loan is an FDCPA Class Loan, a Florida Class Loan, or both, according to Defendants' records.**

### WHAT YOU CAN GET UNDER THE SETTLEMENT

| 6. What relief does the Settlement provide? |
| --- |

Defendants have agreed to create two Settlement Funds, the FDCPA Settlement and the Florida Settlement Fund. If the Settlement obtains final approval, each Settlement Fund will be used first to pay on a pro rata basis based on the size of each Settlement Fund as a percentage of the combined total of both Settlement Funds any Court-awarded fees and expenses to Class Counsel and service awards to Plaintiffs. Following the payment of any such fees, expenses, and service awards, the remaining balance of each Settlement Fund will be divided and distributed among Plaintiffs and the rest of the Settlement Class Members.

The FDCPA Settlement Fund shall be $1,233,381, which amount is equal to the sum of 32% of the Convenience Fees paid to and retained by Ocwen on FDCPA Class Loans from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (A) of the definition of the FDCPA Class and 32% of the Convenience Fees paid to and retained by PHH on FDCPA Class Loans from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (B) of the definition of the FDCPA Class. The Florida Settlement Fund shall be $1,537,687, which amount is equal to 18% of the Convenience Fees paid to and retained by either Ocwen or PHH on Florida Class Loans from March 25, 2016 through August 17, 2022, but excluding Convenience Fees already subject to an allocation from the FDCPA Settlement Fund. Convenience Fees paid to and retained by either Ocwen or PHH that were neither

refunded to the borrower nor paid by Ocwen or PHH to a third-party vendor to facilitate the Convenience Fee payment.

The distributions of the Settlement Funds to Settlement Class Members are called "Individual Allocations." Individual Allocations to Settlement Class Members will be calculated as follows:

Each FDCPA Class Loan will receive an Individual Allocation from the FDCPA Settlement Fund, calculated as follows: the proportion of Retained Convenience Fees paid to either Ocwen or PHH on that FDCPA Class Loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Retained Convenience Fees paid to either Ocwen or PHH on all FDCPA Class Loans during that period. Only Retained Convenience Fees paid to a servicer that serviced but did not own the FDCPA Class Loan and that acquired servicing rights to the FDCPA Class Loan when it was 30 days or more delinquent will be included in these calculations. For the avoidance of doubt, a borrower who qualifies as an FDCPA Class Member because Ocwen acquired servicing rights when the loan was 30 days or more delinquent and did not own the loan would be entitled to and Individual Allocation for the Retained Convenience Fees paid to Ocwen. But if that same FDCPA Class Loan later service transferred to PHH when it was not 30 days or more delinquent, then that borrower would not receive any Individual Allocation from the FDCPA Settlement Fund for the Retained Convenience Fees paid to PHH after the service transfer.

Each Florida Class Loan will receive an Individual Allocation from the Florida Settlement Fund, calculated based on the proportion of Retained Convenience Fees paid to Ocwen or PHH on that Florida Class Loan from March 25, 2016 to August 17, 2022 (but excluding Convenience Fee payments captured in the FDCPA Settlement Fund) as compared to the total aggregate amount of all Retained Convenience Fees paid to and retained by either Ocwen or PHH with respect to all Florida Class Loans during that period (but again excluding all Convenience Fees already subject to an allocation from the FDCPA Settlement Fund).

Class Loans that are both Florida Class Loans and FDCPA Class Loans will receive an Individual Allocation drawn from both Settlement Funds. From the Florida Settlement Fund, the Class Loan will receive an allocation for Retained Convenience Fees paid to Ocwen or PHH on that Class Loan from March 25, 2016 to March 24, 2019. From the FDCPA Settlement Fund, the Class Loan will receive an allocation for Retained Convenience Fees paid to Ocwen or PHH (as explained above) from March 25, 2019 to August 17, 2022.

The actual amount that each Settlement Class Member will receive as an Individual Allocation will ultimately depend on a variety of factors, including the delinquency of the Class Loan at the time that Defendants began servicing the loan, the number and total amount of Convenience Fees paid on each Class Loan, and whether and in what amounts the Court will approve any attorneys' fees and expenses to Class Counsel and service awards to Plaintiffs.

Starting within 120 days after the Final Settlement Date, to reduce any Convenience Fee it charges for internet payments by Settlement Class Members from $7.50 to $6.50 for a period of two years, and to keep all of its future Convenience Fee charges to Settlement Class Members at or below their current levels for a period of two years.  PHH will also add additional disclosures to its website to increase borrower awareness of alternative payment methods that could have lower fees or no fees. Finally, PHH will provide training and scripting to customer service employees to provide additional information and disclosures about Convenience Fees and about alternative payment options that do not involve a fee.

**7.  How can I get such relief?**

If you are a member of the Settlement Class, then as long as you do not exclude yourself from the Settlement Class, you will automatically receive an Individual Allocation, and you do not need to take any further action in order to receive that Individual Allocation.  If your mailing address has changed since March 25, 2016, however, you may wish to notify the Settlement Administrator of your current mailing address by contacting the Settlement Administrator at 1-_____ or [__].  This will help ensure that your Individual Allocation is mailed to the correct address.

**8.  When would I get such relief and how will it be distributed to me?**

As described in Part 18, the Court will hold a Fairness Hearing on MONTH DAY, YEAR to decide whether to grant final approval to the Settlement.  The Court must finally approve the Settlement before any relief will be distributed, and it will only do so after finding that the Settlement is fair, reasonable and adequate.  In addition, any final approval order the Court may enter may be subject to appeal.  If there are any such appeals, resolving them takes time—sometimes more than a year.  Finally, it is possible that this Settlement may be terminated for other reasons, such as those set forth in Section 12 of the Settlement (available for review at www.[[__]]).  Please be patient.

The "Final Settlement Date," as defined in the Settlement, is ten days after the order finally approving the Settlement becomes non-appealable and any appeals have been resolved in favor of the Settlement.  Individual Allocations are expected to be distributed within 75 days of the Final Settlement Date.  The Settlement Website will be updated from time to time to reflect the progress of the Settlement.

Individual Allocations will be paid by a check mailed to you, made payable jointly to all borrowers of record on your Class Loan, and addressed to the mailing address of record on your Class Loan.

NOTE:  All checks will expire and become void 180 days after they are issued and will be considered unclaimed funds.  Unclaimed funds will be considered a waiver by you and any co-borrowers on your Class Loan of the right to receive Individual Allocation relief.  Individual Allocation relief that remains unclaimed or undeliverable 300 days after the Final Settlement Date despite reasonable efforts to locate you will be donated and paid to Homes for Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured post – 9/11 Veterans, to enable them to rebuild their lives."

**9.  Will the Settlement have any tax consequences on me?**

Neither the Court nor the Parties (including their counsel) can advise you about what, if any, tax consequences might arise for you from the Settlement.  You are encouraged to consult with your own tax advisor to determine whether any potential tax consequences could arise from your receipt of an Individual Allocation.

**10.  Am I giving anything up by remaining in the Settlement Class?**

Unless you exclude yourself, you will remain in the Settlement Class, and that means that if the Settlement is given final approval and reaches the Final Settlement Date then you:

 release and shall be deemed to have released, and by operation of the Final Order and Judgment upon the Final Settlement Date shall have released, all Released Claims against all of the Released Persons, separately and severally.  In connection therewith, upon the Final Settlement Date, each of the Releasing Persons: (i) shall be deemed to have, and by

operation of the Final Order and Judgment, shall have, fully, finally, and forever waived, released, relinquished, remised, acquitted, and discharged to the fullest extent permitted by law all Released Claims against each and all of the Released Persons; (ii) shall forever be barred and enjoined from commencing, instituting, prosecuting, or participating in any fashion in any and all claims, causes of action, suits, or any other proceeding in any court of law or equity, arbitration tribunal, or other forum of any kind, directly, representatively, derivatively, or in any other capacity and wherever filed, with respect to any Released Claims against any of the Released Persons; and (iii) shall be deemed to have agreed and covenanted not to sue any of the Released Persons with respect to any Released Claims or to assist any third party in commencing or maintaining any suit against any Released Person related in any way to any Released Claims.

This Release will include claims that Settlement Class Members do not know or suspect to exist in their favor at the time final approval may be granted to the Settlement, if those claims arise from, are based on, or relate to the Released Claims. If the Settlement is given final approval and reaches the Final Settlement Date, all Settlement Class Members will be deemed to have knowingly and voluntarily waived, relinquished and released the protections of any laws that would limit this release, including, without limitation, Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

The phrase "Released Claims" means and refers to:

each and all of the claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages (whether punitive, statutory, or compensatory and whether liquidated or unliquidated), losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any regulatory bulletin, guidelines, handbook, opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, that relate to or arise out of Convenience Fees charged (a) by Ocwen on FDCPA Class Loans to FDCPA Class Members meeting Subpart (A) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; (b) by PHH on FDCPA Class Loans to FDCPA Class Members meeting Subpart (B) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; or (c) by Ocwen or PHH to Florida Class Members on Florida Class Loans, during the period from March 25, 2016 through and including August 17, 2022.

The phrase "Released Persons" means and refers to:

(a) PHH, Ocwen, and any and all of their current or former predecessors, successors, assigns, parent corporations, subsidiaries, divisions, related and affiliated companies and entities, associates, vendors, service providers, software licensors and licensees, clients and customers, principals, stockholders, directors, officers, partners, principals, members, employees, attorneys, consultants, independent contractors, representatives, and agents, transferee servicers, and all individuals or entities acting by, through, under, or in concert

with any of them; and (b) any trustee of a mortgage securitization trust which includes loans on which Settlement Class Members are borrowers, including, but not limited to, any direct or indirect subsidiary of any of them, and all of the officers, directors, employees, agents, brokers, distributors, representatives, and attorneys of all such entities.

The full terms of the Settlement's release are set forth in Section 3 of the Agreement, which is available for review at www.[[   ]].

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### 11.  How do I exclude myself from the Settlement Class?

If you don't want to be part of the Settlement, or if you want to keep the right to sue or continue suing Ocwen or PHH on your own about the Released Claims, then you must take steps to exclude yourself from the Settlement Class.  This is called excluding yourself, or "opting out."  If you exclude yourself from the Settlement Class, you will not be bound by the Settlement and will not receive any relief offered by the Settlement, but you will be free to file and then pursue your own individual lawsuit regarding the Released Claims if you wish to do so.  However, the Court has ruled that neither the Settlement, nor this Notice, nor the Court's preliminary approval order may be used as evidence in such individual lawsuits.  You should be aware that if you do exclude yourself and you plan to file your own action against Defendants, the statute of limitations applicable to your claim may prevent you from separately suing Defendants unless you act promptly.

To exclude yourself, you must mail a letter sufficiently in advance to be received by the "Settlement Administrator," RG/2 Claims Administration LLC, no later than **MONTH DAY, YEAR**, saying that you want to be excluded from the Settlement Class.  Your letter must be addressed to Morris v. PHH, c/o [[   ]], and must: (a) contain a caption or title that identifies it as "Request for Exclusion in *Morris v. PHH* (case number 0:20-cv-60633-RS);" (b) include your name, mailing and e-mail addresses, and contact telephone number; (c) specify that you want to be excluded from the Settlement Class and identify the Class Loan number(s) for which you seek exclusion from the Settlement; and (d) be *personally* signed by you. For your convenience, your Class Loan number or numbers are included on the back of this Notice.

NOTE: If your request for exclusion is late or incomplete, it will not be valid and you will remain part of the Settlement Class, you will still be bound by the Settlement and all other orders and judgments in the Action, and you will not be able to participate in any other lawsuits against Defendants and the Released Persons based on the Released Claims.  If you submit a request for exclusion, it will be deemed as a request for exclusion by you and any other co-borrowers, joint-borrowers and multiple borrowers on the Class Loan(s) identified in the exclusion request.

### 12.  If I don't exclude myself, can I sue Ocwen or PHH later for the same thing?

No.  If you do not exclude yourself from the Settlement Class and the Settlement is given final approval and reaches the Final Settlement Date, you will give up the right to sue Defendants and the Released Persons for the Released Claims.

### 13.  If I exclude myself, can I get anything from this Settlement?

No. If you exclude yourself, you will not be eligible to receive any of the individual benefits that the Settlement offers.

## THE LAWYERS REPRESENTING YOU

## 14.  Do I have a lawyer in this case?

Yes.  The Court has appointed Adam M. Moskowitz, Howard M. Bushman, Joseph M. Kaye, and Barbara C. Lewis of the law firm The Moskowitz Law Firm, PLLC to represent you and the other Settlement Class Members in this Action and for purposes of this Settlement, and for no other purpose.  These attorneys are called "Class Counsel," and they can be reached by writing them at The Moskowitz Law Firm, 2 Alhambra Plaza, Suite 601, Coral Gables, FL 33134.  You will not be separately charged for the services of Class Counsel for issues related to this Action.

You have the right to retain your own separate lawyer to represent you in this case, but you are not obligated to do so.  If you do hire your own lawyer, you will be solely responsible for all of his or her fees and expenses.  You also have the right to represent yourself before the Court without a lawyer, but if you want to appear at the Fairness Hearing you must comply with the procedures set forth in Part 20 of this Notice below.

## 15.  How will Class Counsel Be Paid?

Class Counsel have prosecuted this case on a contingent-fee basis and, so far, have not yet been paid anything for their services.  If the Settlement is approved, Class Counsel will ask the Court for an award of attorneys' fees and expenses, to be paid from the Settlement Funds in an amount not to exceed 33% of both Settlement Funds.  For their endeavor on behalf of the Settlement Class, and in addition to the relief otherwise due them as members of the Settlement Class, Lead Plaintiffs Morris and Luzzi shall *conditionally* apply for *contingent* service awards to be paid from the Settlement Funds in the amount of $5,000 each for a total sum of $10,000. The application for service awards shall be contingent upon the following: either (i) the Eleventh Circuit's decision in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), is vacated or reversed prior to the entry of an order finally approving the Settlement and prior to any award; or (ii) *all* Settlement Class Members unanimously approve of the service awards, which shall be evidenced by the failure of any Settlement Class Member to file a timely objection to the request for service awards. But if even one Settlement Class Member files a timely objection to the request for service awards, and the Eleventh Circuit's decision in *NPAS* has not been vacated or reversed before entry by the trial court of an order granting final approval to this Settlement, then the conditional request for service awards shall be deemed automatically withdrawn. Class Counsel will file with the Court their request for attorneys' fees and expenses and service awards on or before ==MONTH DAY, YEAR==, which will then be posted on www.==[[   ]]==.

Defendants reserve the right to oppose any request for attorneys' fees and expenses and service awards that Defendants deem to be unreasonable in nature or amount or otherwise objectionable.  The Settlement is not conditioned on the Court approving any specific amount of attorneys' fees and expenses or service awards.  The Court will ultimately decide whether any attorneys' fees and expenses should be awarded to Class Counsel or any service awards awarded to Plaintiffs, and in what amounts.

OBJECTING TO THE SETTLEMENT

## 16.  How do I tell the Court that I don't like the Settlement?

If you do not exclude yourself from the Settlement Class, you can object to the Settlement if you don't agree with any part of it.  You can provide reasons why you think the Court should deny approval of the Settlement by filing an objection.  However, you can't ask the Court to order a larger or different type of settlement as the Court can only approve or deny the Settlement presented by the Parties.  If the Court denies

approval, no settlement relief will be available to the Settlement Class Members and the lawsuit will continue. If you file a written objection, the Court will consider your views.

To object, you must file a written statement of objection with the Court. Your written objection must: (a) include a caption or title that identifies it as "Objection to Class Settlement in *Morris v. PHH* (case number 0:20-cv-60633-RS);" (b) include your name, mailing and email addresses, contact telephone number, and your Class Loan number(s); (c) state whether the objection applies only to you, to a specific subset of the class, or to the entire class; (d) state with specificity the specific reason(s), if any, for each of your objections, including all legal support you wish to bring to the Court's attention and all factual evidence you wish to introduce in support of your objection; (e) disclose the name and contact information of any and all attorneys representing, advising, or in any way assisting you in connection with the preparation or submission of your objection, and (f) be *personally* signed by you. For your convenience, your Class Loan number or numbers are included on the back of this Notice.

You may file your written statement of objection in person at, or you may mail it to, the Clerk of the Court, United States District Court for the Southern District of Florida, U.S. Federal Building and Courthouse, 299 East Broward Boulevard #108, Fort Lauderdale, Florida 33301. However, if you are represented by your own attorney, your attorney must file your objection through the Court's Case Management/Electronic Case Filing (CM/ECF) system. To be considered timely and valid, all statements of objection must be filed with the Court by, or mailed sufficiently in advance to be received by the Court by, MONTH DAY, 20__. Any Settlement Class Member who does not comply with the above deadline and requirements shall be deemed to have waived all objections to and shall be forever barred from challenging the Settlement.

| 17. What's the difference between objecting and excluding myself? |
| --- |

Objecting simply means telling the Court that you don't agree with something about the Settlement, but that you are still willing to be bound by it if the Settlement is finally approved despite your objection. You can object only if you stay in the Settlement Class. Excluding yourself is telling the Court that you don't want to be part of the Settlement Class at all. If you exclude yourself, you will not be subject to the Settlement and therefore cannot object to the Settlement or appear at the Fairness Hearing because the case will no longer affect you.

### THE COURT'S FAIRNESS HEARING

| 18. When and where will the Court decide whether to approve the Settlement? |
| --- |

A Fairness Hearing has been set for MONTH DAY, 20__, beginning at XX:XX a.m., before the Honorable Rodney Smith at the United States District Court for the Southern District of Florida, U.S. Federal Building and Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301 in Courtroom 310B. At the hearing, the Court will consider whether to: (1) grant final certification to the Settlement Class for settlement purposes; (2) approve the Settlement as fair, reasonable, and adequate; and (3) award any attorneys' fees and expenses to Class Counsel and service awards to Plaintiffs. The Court will also consider any and all objections to the Settlement and any other issues relating to the Settlement. After the hearing, the Court will decide whether to approve the Settlement. It is not possible to predict how long the Court's decision will take.

NOTE: The Court has reserved the right to change the date and/or time of the Fairness Hearing, or to continue it, without further notice. If you plan to attend the Fairness Hearing, you should confirm the date and time shortly before travelling to attend the hearing by checking www.[[ ]] or the Court's Public Access to Court Electronic Records (PACER) system at https://www.alnd.uscourts.gov/CMECF/default.htm.

## 19.  Do I have to come to the Fairness Hearing?

No.  Class Counsel will represent the Settlement Class at the Fairness Hearing.  But you are welcome to come at your own expense.  Even if you send an objection, you are not required to come to the Fairness Hearing to talk about it. As long as your objection is timely filed and meets the other requirements described in Part 16, the Court will consider it.  You may also hire and pay your own lawyer to attend the Fairness Hearing at your expense, but you are not required to do so.

## 20.  May I speak at the Fairness Hearing?

You may ask the Court for permission to speak at the Fairness Hearing, but only *if* you timely file an objection in full compliance with the instructions set forth in Part 16, and *if* you also state in that objection that you would like to speak at the Fairness Hearing.  However, any separate attorney you hire may appear only if he or she files through the Court's Case Management/Electronic Case Filing (CM/ECF) system a separate "Notice of Intention to Appear in *Morris v. PHH* (case number 0:20-cv-60633-RS)."  That notice must be filed with the Court no later than MONTH DAY, YEAR.  You cannot speak at the Fairness Hearing if you have excluded yourself from the Settlement Class.

### IF YOU DO NOTHING

## 21.  What if I do nothing?

If you meet the definition of the Settlement Class and you do nothing, and the Settlement is approved and reaches the Final Settlement Date, you will remain a Settlement Class Member and you will automatically receive an Individual Allocation.  You will also be bound by the Settlement's release and other terms, and therefore you will not be able to file your own lawsuit, continue with your own lawsuit, or be part of any other lawsuit against Ocwen, PHH, and the Released Persons concerning any of the Released Claims.

### GETTING MORE INFORMATION

## 22.  Where can I get additional information?

This notice summarizes the Settlement.  For the precise terms and conditions of the Settlement, please see the full Stipulation of Settlement and Release available at www.[[  ]], by accessing the Court docket in this case through the Court's Public Access to Court Electronic Records (PACER) system at https://www.flsd.uscourts.gov/CMECF, or by visiting the office of the Clerk of the Court for the United States District Court for the Southern District of Florida, U.S. Federal Building and Courthouse, 299 East Broward Boulevard, Fort Lauderdale, Florida 33301, between 8:30 a.m. and 4:30 p.m., Monday through Friday, excluding Court holidays.

### PLEASE DO NOT TELEPHONE THE COURT, THE COURT CLERK'S OFFICE, OR OCWEN TO INQUIRE ABOUT THIS SETTLEMENT.

# Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS and MICHAEL
LUZZI, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability
Company,

        Defendants.

_____/

**CLASS ACTION COMPLAINT**
**JURY DEMAND**

**SECOND AMENDED CLASS ACTION COMPLAINT AND JURY TRIAL DEMAND**

      Plaintiffs Vincent J. Morris and Michael Luzzi (collectively "Plaintiffs") bring this action, on behalf of themselves and all others similarly situated, against Defendant PHH Mortgage Corporation d/b/a PHH Mortgage Services, on its own behalf and as successor by merger to Ocwen Loan Servicing, LLC ("PHH"), and Defendant Ocwen Loan Servicing, LLC ("Ocwen") (collectively "Defendants") and state:

**NATURE OF ACTION**

      1.    Plaintiffs own homes subject to mortgages serviced by Defendants. Defendants have a uniform practice of knowingly charging illegal and improper "processing fees" when payments on the mortgage are made over the phone or online, although neither the mortgages nor applicable statutory law expressly authorize those fees. Defendants have charged these "processing fees" to Plaintiffs, who have paid them. Accordingly, Plaintiffs seek relief for themselves and all others similarly situated for violations of the Federal Fair Debt Collection Practices Act and breach of their uniform mortgage contracts.

1

## PARTIES

2.     Plaintiff Morris is a citizen and resident of Broward County, Florida, is over the age of eighteen and is otherwise *sui juris*.

3.     Plaintiff Michael Luzzi is a citizen and resident of New Haven County, Connecticut, is over the age of eighteen and is otherwise *sui juris*.

4.     Defendant PHH is a wholly-owned subsidiary of Ocwen Financial Corporation. PHH is an entity existing and incorporated pursuant to the laws of New Jersey with its principal place of business at 1 Mortgage Way, Mount Laurel, New Jersey 08054. Defendant is therefore a corporate citizen of New Jersey. Defendant is amenable to service of process c/o Corporation Service Company, 1201 Hays Street, Tallahassee, Florida 32301. PHH is a debt collector as defined by the FDCPA.

5.     Defendant Ocwen Loan Servicing, LLC is a limited liability company with a principal place of business in West Palm Beach, Florida, and is one of the nation's leading specialty loan servicing companies. Ocwen is a debt collector as defined under the FDCPA.

## JURISDICTION AND VENUE

6.     Plaintiff Luzzi has standing to bring a claim under the FDCPA and Plaintiff Morris has standing to bring a claim under the FCCPA and FDUTPA because they were directly affected by Defendants' violations of the FDCPA, FCCPA and FDUTPA were subjected to Defendants' illegal and improper debt collection activities, and suffered injury in fact as a direct consequence of Defendants' illegal and improper debt collection activities, in the form of unlawful "processing fees" paid.

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A) because this is a class action for a sum exceeding $5,000,000.00, exclusive of interest and costs, and in which at least one class member is a citizen of a state different than Defendants.

8.     This Court has personal jurisdiction over PHH because PHH is authorized to do business and is conducting business throughout the United States, including in Florida. PHH services mortgages and collects debts in the United States, including Florida, and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

9.      This Court has personal jurisdiction over Ocwen because Ocwen is a Florida corporation and is authorized to do business and is conducting business throughout the United States, including in Florida. Ocwen services mortgages and collects debts in the United States, including Florida, and has sufficient minimum contacts with this State and/or sufficiently avails itself of the markets of the various states of the United States, including Florida, to render the exercise of jurisdiction by this Court permissible.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because this action concerns a mortgage on real property in the Southern District of Florida and a substantial part of the events giving rise to Plaintiffs' claims took place in the Southern District of Florida.

## FACTUAL ALLEGATIONS

### A.  PLAINTIFF MORRIS

11.     Plaintiff Morris resides at 1868 NW 74 Avenue, Hollywood, Florida 33024. Plaintiff Morris financed this purchase with a mortgage that was entered into on March 2, 2006. A copy of the mortgage is attached as Exhibit A (the "Morris Mortgage").

12.     At all relevant times, the Morris Mortgage was serviced by Defendants. The Morris Mortgage does not expressly provide for or authorize charging processing fees for making payments online or over the phone. Furthermore, such processing fees are not expressly authorized by Florida state law.

13.     Plaintiff Morris was charged a $17.50 "processing fee" in April 2019, May 2019, and October 2019 for making a mortgage payment to Defendants over the phone or online. Plaintiff Morris was charged a $7.50 "processing fee" in June 2019, July 2019, August 2019, September 2019, November 2019, December 2019, January 2020, and February 2020 for making a mortgage payment to Defendants over the phone or online. The "processing fee" is reflected as "SpeedPay" on Plaintiff Morris's Mortgage statements.

### B.  PLAINTIFF LUZZI

14.     Plaintiff Luzzi resides at 35 Coachman Drive, Branford, Connecticut 06405. Plaintiff Luzzi made mortgage payments online and/or over the phone on property subject to a mortgage serviced by Defendants (the "Luzzi Mortgage").

15.     At all relevant times, the Luzzi Mortgage was serviced by Defendants. Plaintiff Luzzis' loan was in default when Defendants obtained the servicing rights to the Luzzi Mortgage. The Luzzi Mortgage does not expressly provide for or authorize charging processing fees for

making payments online or over the phone. Furthermore, such processing fees are not expressly authorized by Connecticut state law.

16.     During the applicable limitations period, Defendants charged Plaintiff Luzzi "processing fees" for making the mortgage payments online and/or over the phone, sent mortgage statements to Plaintiff Luzzi's home in Branford, and Plaintiff Luzzi paid these fees while in the State of Connecticut.

17.     Where, like here, neither the contract creating the debt nor applicable law expressly authorizes the charging of processing fees, such as those charged by Defendants, such fees have been held unlawful because they violate the FDCPA when the debt collector retains any portion of the fee instead of passing the entire fee through to the payment processor.

18.     Defendants do not pass the entire fee to a payment processor and instead retain a considerable portion thereof. Defendants fail to mention any third-party payment processor in any documentation available to Plaintiffs, including their payment histories. It is well known in the payment processing industry (but not by the general public) that third-party processors charge a small fraction of the amounts Defendants charge as "processing fees." Defendants' records will demonstrate the exact amount Defendants retains for each processing fee charged.

## CLASS ACTION ALLEGATIONS

19.     As detailed below in the individual counts, Plaintiffs bring this lawsuit on behalf of themselves and all others similarly situated, pursuant to Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

## CLASS DEFINITIONS

20.     Plaintiffs seek to represent the following and Florida "Classes":

**FDCPA CLASS**

(A) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by Ocwen , to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH, to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the approved and/or proposed class action settlements in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.), *Torliatt v. Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case no. 5:21-cv-00174-JPB (Bailey) (N.D. W. Va.); (b) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date this Agreement is executed; (c) the PHH Defendants' board members and executive level officers; and (d) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

**<u>FLORIDA CLASS</u>**

All borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, at any time during the period from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date this Agreement is executed; (c) borrowers in the "FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

21.     Plaintiffs reserve the right to modify or amend the definition of the proposed Classes before or after the Court determines whether such certification is appropriate as discovery progresses.

       **b.     Numerosity**

22.     The Classes are comprised of thousands, if not millions, of customers throughout the United States, many of whom pay their mortgages online or over the phone. The Classes are so numerous that joinder of all members of the Classes are impracticable. The precise number of class members is unknown to Plaintiffs, but the precise number and identity of class members are easily identifiable through Defendants' records.

### c.   Commonality/Predominance

23.     This action involves common questions of law and fact, which predominate over any questions affecting individual class members. These common legal and factual questions include, but are not limited to, the following:

(a) whether Defendants' practice of charging a "processing fee," which is not authorized by contract or any provision of existing law, violates the FDCPA, FCCPA, or FDUTPA;

(b) whether Defendants' practice of charging a "processing fee," breaches Plaintiffs' and Class Members' mortgages;

(c) whether Plaintiffs and Class members have sustained monetary loss and the proper measure of that loss; and

(d) whether Plaintiffs and Class members are entitled to other appropriate remedies, including injunctive relief.

### d.   Typicality

24.     Plaintiffs' claims are typical of the claims of the members of the Classes because, inter alia, all Class members were injured through the uniform misconduct described above, all members of the Classes have mortgages serviced by Defendants just like Plaintiffs, and Plaintiffs are advancing the same claims and legal theories on behalf of himself and all Class Members. It is well known in the mortgage industry that mortgages generally do not expressly authorize processing fees to be charged in order to make a payment online or over the phone.

### e.   Adequacy of Representation

25.     Plaintiffs will fairly and adequately protect the interests of the members of the Classes. Plaintiffs have retained counsel experienced in complex consumer class action litigation, and Plaintiffs intend to prosecute this action vigorously. Plaintiffs have no adverse or antagonistic interests to those of the Classes. Plaintiffs anticipate no difficulty in the management of this litigation as a class action. To prosecute this case, Plaintiffs have chosen the undersigned law firms, which have the financial and legal resources to meet the substantial costs and legal issues associated with this type of consumer class litigation.

### f.   Requirements of Fed. R. Civ. P. 23(b)(3)

26.     The questions of law or fact common to Plaintiffs' and each Class member's claims predominate over any questions of law or fact affecting only individual members of the Classes. All claims by Plaintiffs and the unnamed Class members are based on the common course of conduct by Defendants to charge illegal "processing fees" to Plaintiffs and the unnamed Class members.

27.     Common issues predominate when, as here, liability can be determined on a class-wide basis, even when there will be some individualized damages determinations.

28.     As a result, when determining whether common questions predominate, courts focus on the liability issue, and if the liability issue is common to the Classes as is in the case at bar, common questions will be held to predominate over individual questions.

   **g.     Superiority**

29.     A class action is superior to individual actions in part because of the non-exhaustive factors listed below:

(a)  Joinder of all Class members would create extreme hardship and inconvenience for the affected customers as they reside throughout the country;

(b)  Individual claims by Class members are impractical because the costs to pursue individual claims exceed the value of what any one Class member has at stake. As a result, individual Class members have no interest in prosecuting and controlling separate actions;

(c)  There are no known individual Class members who are interested in individually controlling the prosecution of separate actions;

(d)  The interests of justice will be well served by resolving the common disputes of potential Class members in one forum;

(e)  Individual suits would not be cost effective or economically maintainable as individual actions; and

(f)  The action is manageable as a class action.

   **h.     Requirements of Fed. R. Civ. P. 23(b)(2)**

30.     Defendants have acted and refused to act on grounds generally applicable to the Classes by engaging in a common course of conduct by Defendants to charge illegal "processing fees" to Plaintiffs and the unnamed Class members, thereby making appropriate final injunctive relief with respect to the classes as a whole.

<u>**FRAUDULENT CONCEALMENT TOLLING**</u>

31.     All applicable statutes of limitation have been tolled by Defendants' knowing and active fraudulent concealment and denial of the facts alleged herein throughout the period relevant to this action. Plaintiffs and members of the class did not and could not have known about the facts giving rise to the causes of action at any point during Defendants' charging of the illegal processing fees. Plaintiffs and class members could not have discovered the facts that would disclose Defendants' fraud despite exercising reasonable care and diligence in seeking to learn them.

Defendants fraudulently concealed the truth from its customers and, accordingly, the relevant statutes of limitation should be equitably tolled until Plaintiffs filed this action at the earliest.

33.   Instead of disclosing that Defendants collects a massive profit from charging the "processing fees," Defendants represents the fees are mandatory and authorized by either the mortgage or existing statutory law, and that borrowers are "agreeing" to pay the fees in order to be provided an additional "service," despite the fact that collecting mortgage payments from borrowers is Defendants' regular business practice. Defendants also never reveals that it does not pass the entire fee to a payment processor and instead retains a considerable portion thereof as additional profit. Defendants further fails to mention any third-party payment processor in any documentation available to Plaintiffs or class members. By making many affirmative representations that concealed the "processing fees" were merely a hidden profit center as described in this complaint, Defendants actively and successfully concealed Plaintiffs' and class members' causes of action.

33.   Furthermore, by making repeated false statements to consumers concerning the processing fees, Defendants actively and successfully concealed Plaintiffs' and class members' causes of action by fraudulent means.

<u>**COUNT I**</u>
**For Violations of the Fair Debt Collection Practices Act,**
**15 U.S.C. § 1692, et seq.**
**(On behalf of Plaintiff Luzzi and Members of the FDCPA Class)**

34.   Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–33 as if fully set forth herein.

35.   This cause of action is brought pursuant to the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692k(a)(2)(b).

36.   It is a violation of the FDCPA for a debt collector to undertake the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

37.   At all times material, Defendants were and are each a "debt collector" under the FDCPA because they regularly collect debts owed others and acquired Plaintiffs Luzzi and Upton's loans and the loans of the Class members when those loans were in default. 15 U.S.C. § 1692a(6). Moreover, Defendants were and are each a "debt collector" under the FDCPA because

each uses an instrumentality of interstate commerce or the mails in business the principal purpose of which is the collection of any debts. *Id*. Indeed, the Defendants meet the general definition of a "debt collector" under the FDCPA.

38.     As debt collectors, Defendants used instrumentalities of interstate commerce and the mail for the principal purpose of collecting debts from the Plaintiffs and the Classes.

39.     At all times material, Plaintiffs and Class Members were "consumers" because each was a natural person obligated to pay the mortgage debts at issue. 15 U.S.C. § 1692a(3).

40.     At all times material, Plaintiffs' and the Class Members' mortgage debts were "debts" because they were each an obligation of a consumer to pay money arising out of a transaction in which the property that was the subject of the transaction was primarily for personal, family, or household purposes. 15 U.S.C. § 1692a(5).

41.     The "processing fees" charged to Plaintiffs and members of the Class were incidental to the consumer debts.

42.     Defendants had no legal right to seek collection of (or to actually collect) any "processing fees" from Plaintiffs and members of the Classes. Defendants had and still has the underlying contracts in its possession, custody or control, which do not expressly authorize these "processing fees," and Defendants therefore had actual knowledge that it had no legal right to collect these fees.

43.     The "processing fee" is not authorized by the mortgage contracts of Plaintiffs and the members of the Classes or by Federal law, but Defendants collected these fees anyway. In doing so, Defendants violated the FDCPA.

44.     As a direct and primary result of Defendants' violations, Plaintiffs and members of the Classes have been harmed. Plaintiffs and the Class members are entitled to actual damages, statutory damages, and attorney's fees and costs. 15 U.S.C. § 1692k(a)(1); 15 U.S.C. § 1692k(a)(2)(A); 15 U.S.C. § 1692k(a)(3).

**COUNT II**
**Breach of Contract**
**(On behalf of Plaintiff Morris and Members of the Florida Class)**

45.     Plaintiffs reallege and incorporate by reference the allegations contained in paragraphs 1–33 as if fully set forth herein.

46.     Plaintiffs and Class Members purchased homes subject to Mortgages. *See* Ex. A.

9

47.     Defendants became parties to the Mortgages when they became Plaintiffs' and Class Members' servicers. Defendants collect monies from the Plaintiffs and Class members pursuant to those Mortgages, and avail themselves of the benefits of the Mortgages.

48.     The Mortgages contain a uniform covenant providing only that "amounts disbursed by the lender" will become debt of the borrower. *See, e.g.,* Ex. A, ¶ 7.

49.     Thus, Defendants may only charge amounts actually disbursed to pay for the cost of processing mortgage payments online or over the phone. Despite this express limitation, Defendants charge processing fees not agreed to in Plaintiffs' and Class Members' Mortgages and in excess of the amounts actually disbursed by Defendants to cover the cost of processing the mortgage payments over the phone or online.

50.     Defendants therefore breached its contracts with Plaintiffs and Class Members when they charged Plaintiffs and Class Members "processing fees" not agreed to in their Mortgages and in excess of the amounts Defendants actually disbursed to pay the costs of processing the mortgage payments over the phone or online.

51.     Defendants' charging of processing fees also directly breaches the uniform "Governing Law" provision of the Mortgages. *See, e.g.,* Ex. A ¶15 (providing the Morris Mortgage "shall be governed by Federal law and the law of the jurisdiction in which the property is located").

52.     Charging "processing fees" violates the FDCPA because Plaintiffs' and Class Members' Mortgages do not expressly authorize Defendants to charge "processing fees," nor are the "processing fees" permitted by applicable state statutory law.

53.     By violating the FDCPA, Defendants violated the Governing Law provision and breached Plaintiffs' and Class Members' Mortgages.

54.     Defendants' charging of processing fees also directly breaches the uniform "Loan Charges" provision of the Mortgages. *See, e.g.,* Ex. A ¶ 13 (providing that where "loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower").

55.     Because Defendants are not permitted to charge processing fees, the uniform Loan Charges provision of the Mortgages requires Defendants to reduce the processing fees to zero and refund the entire amounts collected.

56.     Alternatively, to the extent Defendants are permitted to charge processing fees, the processing fees Defendants charged Plaintiffs and Class Members exceed the maximum charges allowable under the law, and therefore must be reduced by the amount necessary to reduce the charge to the permitted limit, and Defendants must refund any excess sums they collected.

57.     As a direct and proximate result of Defendants' breach, Plaintiffs and members of the Class suffered actual damages, in the form of payment of non-contractual "processing fees."

### COUNT III
### For Violations of the Florida Consumer Collection Practices Act,
### § 559.55, Florida Statutes, *et seq.*
### (On behalf of Plaintiff Morris and Members of the Florida Class)

58.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–33 as if fully set forth herein.

59.     This cause of action is brought pursuant to the Florida Consumer Collection Practices Act, section 559.55, Fla. Stat., *et seq*. ("FCCPA").

60.     At all times material, Plaintiff and the members of the Florida Class were "debtors" or "consumers" as defined in section 559.55(8), Florida Statutes, because each was a natural person obligated to pay the mortgage debts at issue.

61.     At all times material, the Plaintiff's and the Florida Class's debts were "debts" or "consumer debts" as defined in section 559.55(6), Florida Statutes, because they were each an obligation of a consumer to pay money arising out of a transaction in which the property that was the subject of the transaction was primarily for personal, family, or household purposes.

62.     Section 559.72(9) provides that "[i]n collecting consumer debts, no person shall [c]laim, attempt, or threaten to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist."

63.     The "processing fees" charged to Plaintiff and members of the Florida Class were incidental to the consumer debts.

64.     However, Defendant had no legal right to seek collection of (or to actually collect) any "processing fees" from Plaintiff and members of the Florida Class. Defendant had and still has the underlying contracts in its possession, custody or control, which do not expressly authorize these "processing fees," and Defendant therefore had actual knowledge that it had no legal right to collect these fees.

11

65.     Defendant had actual knowledge that the "processing fee" is not authorized by the mortgage contracts of Plaintiff and the members of the Florida Class or by Florida law, and therefore in charging the "processing fees" knowingly violated Section 559.72(9), Florida Statutes, by claiming and attempting to enforce a debt which was not legitimate and not due and owing.

66.     As a direct and primary result of Defendant's FCCPA violations, Plaintiff and others similarly situated have been harmed. Plaintiff and the Class members are entitled to actual damages, statutory damages, declaratory and injunctive relief, and attorney's fees and costs pursuant to Fla. Stat. § 559.77(2).

**COUNT IV**
**For Violations of the Florida Deceptive and Unfair Trade Practices Act,**
**§ 501.201, Florida Statutes, *et seq.***
**(On behalf of Plaintiff Morris and Members of the Florida Class)**

67.     Plaintiff realleges and incorporates by reference the allegations contained in paragraphs 1–33 as if fully set forth herein.

68.     This cause of action is brought pursuant to the Florida Deceptive and Unfair Trade Practices Act, section 501.201, Fla. Stat., *et seq*. The stated purpose of the FDUTPA is to "protect the consuming public . . . from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." § 501.202(2), Fla. Stat.

69.     Plaintiff and Class members are consumers as defined by section 501.203, Fla. Stat. Defendants are engaged in trade or commerce within the meaning of the FDUTPA.

70.     Florida Statute section 501.204(1) declares unlawful "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce."

71.     Defendants' unfair and deceptive practices as described herein are objectively likely to mislead – and have misled – consumers acting reasonably in the circumstances.

72.     Defendants have violated the FDUTPA by engaging in the unfair and deceptive practices as described herein, which offend public policies and are immoral, unethical, unscrupulous and injurious to consumers.

73.     Plaintiff and Florida Class members are consumers who have been aggrieved by Defendants' unfair and deceptive practices by paying a "processing fee" to Defendants for making

a payment over the phone in connection with their residential mortgage loans owned or serviced by Defendants.

74.     The harm suffered by Plaintiffs and consumers in the Florida Class was directly and proximately caused by the deceptive and unfair practices of Defendants, as more fully described herein.

75.     Pursuant to sections 501.211(2) and 501.2105, Fla. Stat., Plaintiff and consumers in the Florida Class make claims for actual damages, attorneys' fees and costs.

76.     Defendants still utilize many of the deceptive acts and practices described above and is still secretly retaining money from every "processing fee" it charges consumers. Plaintiff and Florida Class members have suffered and will continue to suffer irreparable harm if Defendants continue to engage in such deceptive, unfair, and unreasonable practices. Section 501.211(1) entitles Plaintiff and Florida Class members to obtain both declaratory or injunctive relief to put an end to Defendants' unfair and deceptive scheme.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for a judgment:

   a.   Certifying the Classes as requested herein;

   b.   Awarding Plaintiffs and members of the Classes actual and statutory damages;

   c.   Awarding declaratory and injunctive relief as permitted by law or equity, including declaring Defendants' practices as set forth herein to be unlawful and enjoining Defendants from continuing those unlawful practices as set forth herein, and directing Defendants to identify, with Court supervision, victims of its conduct and pay them all money it is required to pay;

   d.   Awarding attorneys' fees and costs; and

   e.   Providing such further relief as may be just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a jury trial as to all claims so triable.

Dated: September 23, 2022

Respectfully submitted,

By: */s/ Adam M. Moskowitz*
Adam M. Moskowitz
Florida Bar No. 984280
adam@moskowitz-law.com
Howard M. Bushman
Florida Bar No. 0364230
howard@moskowitz-law.com
Joseph M. Kaye
Florida Bar No. 117520
joseph@moskowitz-law.com
Barbara C. Lewis
Florida Bar 118114
barbara@moskowitz-law.com
**THE MOSKOWITZ LAW FIRM, PLLC**
2 Alhambra Plaza, Suite 601
Coral Gables, FL 33134
Telephone: (305) 740-1423

By: */s/ Josh Migdal*
**MARK MIGDAL & HAYDEN**
80 S.W. 8th Street, Suite 1999
Miami, Florida 33130
Telephone: (305) 374-0440
Josh Migdal, Esq.
Florida Bar No. 19136
josh@markmigdal.com
Yaniv Adar, Esq.
Florida Bar No. 63804
yaniv@markmigdal.com
eservice@markmigdal.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the forgoing was filed September 23, 2022, with the Court via CM/ECF system, which will send notification of such filing to all attorneys of record.

By: */s/ Adam M. Moskowitz*
**Adam M. Moskowitz**
Florida Bar No. 984280

# Exhibit C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS and MICHAEL LUZZI,
on behalf of themselves and all others similarly
situated,

               Plaintiffs,

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN
SERVICING, LLC, a Florida Limited Liability
Company,

               Defendants.

_____/

**[PROPOSED] ORDER GRANTING MOTION FOR PRELIMINARY APPROVAL OF
CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING A CLASS FOR
SETTLEMENT PURPOSES, DIRECTING THE ISSUANCE OF CLASS NOTICE, AND
SCHEDULING A FINAL APPROVAL HEARING**

The Parties and their respective counsel have entered into a Second Amended Stipulation

of Settlement and Release (the "Agreement"), which, with its incorporated exhibits, sets forth the

terms of the Parties' agreement, to settle and dismiss this litigation on a class-action basis (the

"Settlement") subject to the Court's approval.  On October 18, 2022, Plaintiffs Vincent J. Morris

and Michael Luzzi[1] jointly filed a motion for preliminary approval of the Settlement (ECF No.

178).  Contemporaneously, Defendant PHH Mortgage Corporation ("PHH"), individually and as

---

[1] The parties agreed to dismiss without prejudice the claims of Plaintiffs Simmons and Upton, who
are not members of either Settlement Class. Simmons and Upton filed notices of voluntary
dismissal on September 23, 2022 (ECF No. 176).

successor by merger to named Defendant Ocwen Loan Servicing, LLC ("Ocwen")[2], filed a Notice of Compliance regarding the notice requirements of the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715, with respect to the Settlement (ECF No. __).  The Court has reviewed Plaintiffs' motion for preliminary approval, Defendants' separate notice motion regarding CAFA compliance (ECF No. __), the Settlement,[3] and the pleadings filed to date in this matter to determine whether the proposed Settlement Class should be preliminarily approved. Having fully considered the Parties' motions, and the arguments offered by counsel, **IT IS HEREBY ORDERED, DECREED, AND ADJUDGED AS FOLLOWS:**

1.      Plaintiffs' motion for preliminary approval of the Settlement is **GRANTED**.

2.      **Partial Stay of this Action**.  All non-settlement-related proceedings in the Action are hereby stayed and suspended until further order of the Court.

3.      **Jurisdiction**.  The Court finds that it has subject matter jurisdiction over this Action pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1332(d)(2)(A), including jurisdiction to approve and enforce the Settlement and all orders and decrees that have been entered or which may be entered pursuant thereto.  The Court also finds that it has personal jurisdiction over the Parties and, for purposes of consideration of the proposed Settlement, over each of the members of the Settlement Class defined below (*see Phillips Petroleum Co. v. Shutts*, 472 U.S. 797 (1985)), and that venue is proper in this District pursuant to 28 U.S.C. § 1391.

4.      **Conditional Class Certification for Settlement Purposes Only**.  The Court is presented with a proposed settlement prior to a decision on class certification, and must therefore

---

[2] Although named as a Defendant in this action, Ocwen no longer exists as a standalone entity. PHH is Ocwen's successor by merger for the purposes of the claims asserted in this action.  As used herein, "Defendants" refers to both PHH and Ocwen.

[3] The definitions in Section II.1 of the Agreement are hereby incorporated as though fully set forth in this Order, and capitalized terms shall have the meanings attributed to them in the Agreement.

determine whether the proposed Settlement Class satisfies the requirements for class certification under Federal Rule of Civil Procedure 23, albeit for purposes of settlement. *See, e.g.*, *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620-21 (1997). The proposed Settlement Class includes each of the following:

The **"FDCPA Class"**[4] is defined as (A) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH and to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers whose loans make them potential members of the proposed settlement classes in *Torliatt v. Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case no. 5:21-cv-00174-JPB (Bailey) (N.D. W. Va.), whether or not those borrowers timely and validly exclude themselves from those settlement classes; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

The **"Florida Class"** is defined as all borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, at any time during the period from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (c) borrowers in the

---

[4] "FDCPA" refers to the federal Fair Debt Collection Practices Act.

"FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them. For the avoidance of doubt, a borrower in the FDCPA Class who also paid a fee to either PHH Defendant between March 25, 2016 and March 24, 2019, inclusive, and who otherwise meets the definition of the Florida Class would be in both the FDCPA Class and the Florida Class.

"In deciding whether to provisionally certify a settlement class, a court must consider the same factors that it would consider in connection with a proposed litigation class—*i.e.*, all Rule 23(a) factors and at least one subsection of Rule 23(b) must be satisfied—except that the Court need not consider the manageability of a potential trial, since the settlement, if approved, would obviate the need for a trial." *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 659 (S.D. Fla. 2011). The Court must also be satisfied that the proposed class "is adequately defined and clearly ascertainable." *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012). The Court conditionally finds and concludes, for settlement purposes only, that:

a.       The Settlement Class is ascertainable. A class is ascertainable if it is "adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). Here, the proposed definitions s of the Florida Class and the FDCPA Class are based on objective criteria, all of which are determinable from PHH's business records. *See* Declaration of Kevin Campbell (ECF No. 177) ("Campbell Decl.") at ¶¶ 5-6. Individual, subjective inquiries to identify who may be a member of the Settlement Class are unnecessary. *See Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 530 (M.D. Ala. 2016) (proposed class was ascertainable where membership in the class was based on objective criteria and the defendant's data could be used to easily identify the putative class members).

b.       The Settlement Class also easily satisfies the numerosity requirement of Rule 23(a)(1). *Cox v. Am. Cast Iron Pip Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("[W]hile there

is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate, with numbers between varying according to other factors."). The Settlement is comprised of 141,563 primary, joint and/or co-borrowers on the 105,314 home mortgage loans who paid a Convenience Fee to Defendants between March 26, 2016 and August 17, 2022, inclusive, for making a loan payment by telephone, interactive voice response telephone system ("IVR") or the internet. *See* Campbell Decl. at ¶ 6. Of those 105,314 Class Loans, 33,449 qualify for membership in the FDCPA Class, while 75,861 qualify for membership in the Florida Class. *Id*. There is overlap between the FDCPA Class and Florida Class, with 3,996 loans qualifying for membership in both classes. *Id*.

      c.    The commonality requirement of Rule 23(a)(2) is also satisfied for purposes of settlement. To satisfy Rule 23(a)(2), there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met when the claims of all class members "depend upon a common contention," with "even a single common question" sufficing. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350, 359 (2011) (citation omitted); *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (commonality of claims "requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members" (internal citations omitted)). Every key issue in the Action stems from the same alleged course of conduct: Defendants charging Settlement Class Members Convenience Fees to make their mortgage payments by telephone via live operator, by IVR, or via the internet. There are issues raised in this Action that are common to each Settlement Class Member, including, among other things: (a) whether charging a fully-disclosed and agreed-to Convenience Fee for a separate payment service that a servicer is never required to offer and a borrower is not required to use violates the FDCPA, the Florida Consumer Collection Practices Act ("FCCPA"), the Florida

Deceptive and Unfair Trade Practices Act ("FDUTPA"), or any other applicable law; (b) whether Defendants' Convenience Fees are permitted by law when charged for use of a payment method not referenced in the loan documents; and (c) whether Settlement Class Members are entitled to refunds or damages under Section 1692k of the FDCPA, under the FCCPA, under the FDUTPA, or for breach of contract as a result of Defendants' alleged conduct.  As a result, for purposes of settlement only, Rule 23(a)'s commonality requirement is satisfied.  *Muzuco v. Re$ubmitit, LLC*, 297 F.R.D. 504, 515 (S.D. Fla. 2013) (concluding FDCPA class satisfied Rule 23's commonality requirement because class was uniformly charged a disputed fee); *accord Jones v. Advanced Bureau of Collections LLP*, 317 F.R.D. 284, 291 (M.D. Ga. 2016) (commonality satisfied in FDCPA class action where class members were subjected to a common course of conduct by the defendant); *Drossin v. Nat'l Action Fin. Servs., Inc.*, 255 F.R.D. 608, 615-16 (S.D. Fla. 2009) (same).

        d.      The Settlement Class also satisfies the typicality requirement of Rule 23(a)(3).  The test of typicality is "whether other members [of the class] have the same or similar injury, whether the action is based on conduct which is not unique to the named class plaintiffs, and whether other class members have been injured by the same course of conduct."  *In re Checking Account Overdraft Litig.*, 307 F.R.D. 630, 641 (S.D. Fla. 2015) (quoting *Hanon v. Dataprods. Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)).  The typicality requirement "may be satisfied even though varying fact patterns support the claims or defenses of individual class members, or there is a disparity in the damages claimed by the representative parties and the other members of the class," *In re Domestic Air Transp. Antitrust Litig.*, 137 F.R.D. 677, 698 (N.D. Ga. 1991), so long as the claims or defenses of the class and class representatives "arise from the same events, practice, or conduct and are based on the same legal theories," *Navelski v. Int'l Paper Co.*,

244 F. Supp. 3d 1275, 1306 (N.D. Fla. 2017) (citing *Kornberg v. Carnival Cruise Lines, Inc*., 741 F.2d 1332, 1337 (11th Cir. 1984)).  Here, Plaintiffs allege that they are situated identically with respect to every other Settlement Class Member.  Plaintiffs have alleged that they suffered the same injuries as every other Settlement Class Member by being charged Convenience Fees when paying their mortgage payments by telephone, IVR, or the internet, even though such fees were allegedly not authorized by their loan documents and allegedly not otherwise permitted by law. For purposes of class settlement, this is sufficient to satisfy Rule 23(a)'s typicality requirement. *Wright v. Circuit City Stores, Inc.*, 201 F.R.D. 526, 539 (N.D. Ala. 2001) ("Typicality is satisfied where the claims of the class representatives arise from the same broad course of conduct [as] the other class members and are based on the same legal theory."); *accord Hunt v. Check Recovery Sys., Inc.*, 241 F.R.D. 505, 501-11 (N.D. Cal. 2007) (concluding FDCPA class satisfied Rule 23's typicality requirement because common claim was that defendant had had attempted to collect improper fees and charges from class members); *O'Dell v. Nat'l Recovery Agency*, 291 F. Supp. 3d 687, 698-99 (E.D. Pa. 2018) (certifying FDCPA class after finding that the claims of the named plaintiff and putative class members were typical, in that the common allegation was that defendant had improperly re-aged the accounts of the class).

   e. Plaintiffs are adequate representatives of the Settlement Class under Rule 23(a)(4).  All have standing (*see* Motion for Preliminary Approval ECF No. 178 at 18), are members of the Settlement Class they seek to represent (Plaintiff Morris for the Florida Class and Plaintiff Luzzi for the FDCPA Class (*see* ECF No. 97-1 ¶ 5)), and the Court is aware of no antagonistic interests that exist between Plaintiffs and the Settlement Class Members.  The Court is also satisfied that Class Counsel have the qualifications and experience necessary to undertake this litigation and serve as counsel for the Settlement Class.  *See, e.g.*, *Feller, et al. v. Transamerica*

*Life Ins. Co.*, No. 16-cv-01378-CAS (C.D. Cal.) ("*Feller*") (appointed Plaintiffs' counsel in a finally approved $195 million life insurance settlement); *Belanger v. RoundPoint Mortgage Servicing Corporation, et al.*, Case No. 1:17-cv-23307 (S.D. Fla.) (appointed Plaintiffs' counsel as class counsel and finally approved class action settlement regarding force placed property insurance); *Checa Chong v. New Penn Financial, LLC, d/b/a Shellpoint Mortgage Servicing*, No. 9:18-cv-80948-ROSENBERG/REINHART, ECF No. 50 (S.D. Fla. Sept. 13, 2019) (same); *Quarashi v. M&T Bank Corp*, No. 3:17-cv-6675, ECF No. 83 (D.N.J. June 24, 2019); *Smith v. Specialized Loan Servicing, LLC, et al.*, No. 3:17-cv-06668, ECF No. 68 (D.N.J. Apr. 1, 2019) (same); *Rickert v. Caliber Home Loans, Inc., et al.*, No. 3:17-cv-06677 (D.N.J. Apr. 1, 2019) (same).

       f.     In addition to meeting all four of Rule 23(a)'s prerequisites for certification, a proposed class of claims seeking monetary relief also must satisfy Rule 23(b)(3)'s additional requirements—predominance and superiority.  As detailed below, both the predominance and superiority requirements of Rule 23(b)(3) are satisfied.

       i.     While Rule 23(a)(2) asks whether there are issues common to the class, Rule 23(b)(3) asks whether those common issues predominate over "issues that are subject only to individualized proof." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir. 1997).  Rule 23(b)(3)'s predominance requirement tests "whether [the] proposed class[] [is] sufficiently cohesive to warrant adjudication by representation." *Carriulo v. Gen. Motors Co.*, 823 F.3d 977, 985 (11th Cir. 2016) (citing *Anchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623–24 (1997)).  Whether common issues predominate depends on "the elements of the underlying cause of action." *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).  Here, as detailed above, the elements of the Settlement Class Members' claims present common factual

and legal questions, including but not limited to (a) whether charging a fully-disclosed and agreed-to Convenience Fee for a separate payment service that a servicer is never required to offer and a borrower is not required to use violates the FDCPA, the Florida Consumer Collection Practices Act ("FCCPA"), the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), or any other applicable law; (b) whether Defendants' Convenience Fees are permitted by law when charged for use of a payment method not referenced in the loan documents; and (c) whether Settlement Class Members are entitled to damages under Section 1692k of the FDCPA, under the FCCPA, or under the FDUTPA as a result of Defendants' alleged conduct.    For the purposes of Settlement, the Court finds that these common issues of law and fact predominate over any individualized issues. *See, e.g.*, *Hallmark v. Cohen & Slamowitz, LLP*, 293 F.R.D. 410, 418-19 (W.D.N.Y. 2013) (common issues surrounding claim that defendant violated FDCPA by attempting to collect an improper charge predominated over any individual issues in case); *Bernal v. NRA Grp., LLC*, 318 F.R.D. 64, 75-76 (N.D. Ill. 2016) (predominance satisfied in FDCPA class action alleging that defendant attempted to collect from class members an improper percentage-based collection fee).

    ii.  Rule 23(b)(3) also asks whether the class action device is "superior to other available methods for fairly and efficiently adjudicating the controversy."  For purposes of an opt-out class settlement, the Court concludes that the class action device is superior to other methods of resolving the issues in this Action given there is no negative value to each Plaintiff's claims, given the ability of Settlement Class Members to opt out, "given the large number of claims, the relatively small amount of damages available to each individual,  and given the desirability of consistently adjudicating the claims…." *Roundtree v. Bush Ross, P.A.*, 304 F.R.D. 644, 663 (M.D. Fla. 2015).  And because Plaintiffs seek class certification for settlement purposes, the Court need not inquire into whether this Action, if tried, would present intractable

management problems. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *Carriuolo*, 823 F.3d at 988; *In re Am. Int'l Grp., Inc. Sec. Litig.*, 689 F.3d 229, 242 (2d Cir. 2012) ("[M]anageability concerns do not stand in the way of certifying a settlement class.").

5.      Accordingly, for purposes of considering, approving, and effectuating the Settlement and to fairly and adequately protect the interests of all concerned with regard to all claims set forth in the Operative Complaint, the Court conditionally certifies the FDCPA Class and the Florida Class (together, the "Settlement Class") for settlement purposes only.

5.      **Appointment of Class Representatives and Class Counsel**.  The Court hereby appoints Plaintiff Michael Luzzi as the representative of the conditionally certified FDCPA Class and Vincent J. Morris as the representative of the conditionally certified Florida Class.  The Court further designates and appoints Adam M. Moskowitz, Howard M. Bushman, Joseph M. Kaye, and Barbara C. Lewis of the Moskowitz Law Firm, PLLC, who the Court finds are experienced and adequate counsel, as the legal counsel for the Settlement Class ("Class Counsel").  Class Counsel are authorized to represent Plaintiffs and the Settlement Class Members, to enter into and seek approval of the Settlement on behalf of the Settlement Class, and to bind Plaintiffs, all other Settlement Class Members, and themselves to the duties and obligations contained in the Settlement, subject to the final approval of the Settlement by the Court.

6.      **Preliminary Settlement Approval**.  The Court finds, subject to the Fairness Hearing, that the Settlement is sufficiently fair, reasonable, and adequate that it falls within the range of possible approval, and it is in the best interests of the Settlement Class that they be given the opportunity to be heard regarding the Settlement and the opportunity to exclude themselves from the proposed Settlement Class.  *See* MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004).

Further, the Settlement meets the standards for preliminary approval set forth in the amended Rule 23(e). *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 28 (E.D.N.Y. 2019). The amended Rule 23(e)(2) requires courts to consider whether:

    (a)    the class representatives and class counsel have adequately represented the class;

    (b)    the proposal was negotiated at arm's length;

    (c)    the relief provided for the class is adequate, taking into account:

        i.    the costs, risks, and delay of trial and appeal;

        ii.    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required;

        iii.    the terms of any proposed award of attorney's fees, including timing of payment; and

        iv.    any agreement required to be identified under Rule 23(e)(3); and

    (d)    the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. at 29. Providing notice to the Settlement Class Members is justified by the showing that the Court likely will be able to approve the proposed Settlement under Rule 23(e)(2).

The Court further finds that the Settlement substantially fulfills the purposes and objectives of the Action, and offers beneficial relief to the Settlement Class that falls within the range of potential recovery in successful litigation of the FDCPA and Florida state law claims asserted in this Action. Although PHH does not admit any fault or liability in the Settlement, PHH agreed to provide $2,771,068 in relief to be distributed according to the Agreement. The Parties propose that such relief be used first to satisfy any Attorney's Fees and Expenses and Service Awards that the Court may ultimately award, with the remainder then distributed as Individual Allocations to

Plaintiffs and those Settlement Class Members who do not timely exclude themselves from the Settlement Class.

Under the Settlement, PHH has agreed, among other things, to make direct cash payments via check to all Settlement Class Members.  Under the Settlement, PHH will make available two Settlement Funds. First, PHH will make available an "FDCPA Settlement Fund" of $1,233,381, which amount is equal to the sum of 32% of the Retained Convenience Fees paid to Ocwen on FDCPA Class Loans from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (A) of the definition of the FDCPA Class and 32% of the Retained Convenience Fees paid to PHH on FDCPA Class Loans from March 25, 2019 through and including August 17, 2022 for borrowers meeting subpart (B) of the definition of the FDCPA Class. Second, PHH will make available a "Florida Settlement Fund" of $1,537,687, which amount is equal to 18% of the Retained Convenience Fees paid to Ocwen or PHH by Florida Class Members on Florida Class Loans from March 25, 2016 through August 17, 2022, but excluding Retained Convenience Fees already subject to an allocation from the FDCPA Settlement Fund.

Each FDCPA Class Loan will receive an Individual Allocation from the FDCPA Settlement Fund, calculated as follows: the proportion of Retained Convenience Fees paid to either Ocwen or PHH on that FDCPA Class Loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Retained Convenience Fees paid to either Ocwen or PHH on all FDCPA Class Loans during that period. Only Retained Convenience Fees paid to a servicer that serviced but did not own the FDCPA Class Loan and that acquired servicing rights to the FDCPA Class Loan when it was 30 days or more delinquent will be included in these calculations. For the avoidance of doubt, a borrower who qualifies as an FDCPA Class Member because Ocwen acquired servicing rights when the loan was 30 days or more delinquent would be

entitled to and Individual Allocation for the Retained Convenience Fees paid to Ocwen. But if that same FDCPA Class Loan later service transferred to PHH when it was not 30 days or more delinquent, then that borrower on that FDCPA Class Loan would not receive any Individual Allocation from the FDCPA Settlement Fund for the Retained Convenience Fees paid to PHH after the service transfer.

Each Florida Class Loan will receive an Individual Allocation from the Florida Settlement Fund, calculated based on the proportion of Retained Convenience Fees paid to Ocwen or PHH from March 25, 2016 to August 17, 2022 (but excluding Convenience Fee payments captured in the FDCPA Settlement Fund) as compared to the total aggregate amount of all Retained Convenience Fees paid to and retained by either Ocwen or PHH with respect to all Florida Class Loans during that period (but again excluding all Convenience Fees already subject to an allocation from the FDCPA Settlement Fund).

The Court finds that this is an effective method of distributing relief to the Settlement Class, and treats Settlement Class Members equitably relative to each other. At this stage, the Court also finds such relief to be within the range of reasonableness,[5] especially given the risks of success on

---

[5] To warrant preliminary approval, a proposed class settlement should offer a recovery that "falls within th[e] range of reasonableness," which need not be "the most favorable possible result of litigation." *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 338 (W.D. Pa. 1997), *aff'd*, 166 F3d 581 (3d Cir. 1999). Here, the relief offered by the Settlement is roughly 20% of the Settlement Class's potential recovery, and sufficient to warrant preliminary approval of the Settlement given that since 1995, class action settlements typically "have recovered between 5.5% and 6.2% of the class member's estimated losses." *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 715 (E.D. Pa. 2001); *see also Parsons v. Brighthouse Networks, LLC*, No. 2:09-cv-267, 2015 WL 13629647, at *3 (N.D. Ala. Feb. 5, 2015) (noting that a class settlement recovery of between 13% to 20% is "frequently found … to be fair and adequate"); *In re Newbridge Networks Sec. Litig.*, No. 94-cv-1678, 1998 WL 765724, at *2 (D.D.C. 1998) ("[A]n agreement that secures roughly six to twelve percent of a potential trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness."); *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1350 (S.D. Fla. 2011) (9% class recovery "is still within the range of reasonableness").

the merits of Plaintiffs' claims.  Indeed, similar claims have been dismissed here in Florida and elsewhere.[6]  Because it is far from certain that the Settlement Class could prevail at trial or secure class certification in a contested litigation setting, both sides have ample reason to compromise on these terms. At the same time, the Settlement offers meaningful relief now, and the Release contemplated by the Settlement is a limited one, releasing only those claims that relate to or arise in whole or in part from the Convenience Fees charged by Defendants to Settlement Class Members between during the applicable class periods for making loan payments by telephone via live operator, by IVR, by the internet, or by other payment methods not authorized by their loan documents.

Furthermore, in addition to the monetary relief the Settlement provides, it also secures valuable prospective relief for the Settlement Class.  First, the Settlement includes a reduction on the amount that PHH will charge Settlement Class Members for online/web payments from $7.50 to $6.50 for the next two years.  Second, PHH has agreed that the amounts that it charges to Settlement Class Members for telephone/IVR payments—currently $17.50 for telephonic

---

[6] *See Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, ECF No. 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, ECF No. 21 (M.D. Fla. July 17, 2020); *Turner v. PHH Mortg. Corp.*, No. 8:20-CV-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24, 2020); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596 (N.D. Cal. April 17, 2020) (dismissing nationwide breach of contract and FDCPA claim); *Caldwell v. Freedom Mortgage Corporation*, Case No. 2020 WL 4747497 (N.D Tex. August 17, 2020) (dismissing breach of contract claims, even on mortgages with deeds of trust insured by the Federal Housing Administration); *Mariscal v. Flagstar Bank FSB*, 2020 WL 4804983 (C.D. Cal. August 4, 2020) (dismissing breach of contract and violations of California's Rosenthal Fair Debt Collection Practices Act and Unfair Competition Law); *Amye Elbert v. Roundpoint Mortgage Servicing Corporation*, 2020 WL 4818605 (N.D. Cal. August 20, 2020) (dismissing California Rosenthal Act and UCL, as well as striking the class allegations).

payments through a live operator and $7.50 for IVR payments—shall remain at or below those levels for a period of two years.   Third, PHH will also add additional disclosures to its website to increase borrower awareness of alternative payment methods that could have lower fees or no fees. Finally, PHH will provide training and scripting to customer service employees to provide additional information and disclosures about Convenience Fees and about alternative payment options that do not involve a fee.  This is eminently fair to all concerned.

These factors all strongly favor the Settlement's preliminary approval.  The Court also finds that the Settlement (a) is the result of serious, informed, non-collusive, arm's length negotiations involving experienced counsel informed and familiar with the legal and factual issues of the Action and reached through protracted mediation sessions with the assistance of independent mediator the Honorable John W. Thornton of JAMS; (b) is sufficient to warrant notice of the Settlement and the Fairness Hearing to the Settlement Class Members; (c) meets all applicable requirements of law, including Federal Rule of Civil Procedure 23, and the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715; (d) offers a full and fair remediation to the Settlement Class Members; and (e) is not a finding or admission of liability of Defendants. The Court further finds that Plaintiffs and Class Counsel have adequately represented the Settlement Class. Accordingly, the Court grants preliminary approval of the Settlement under Federal Rule of Civil Procedure 23(e), subject to further consideration at the Fairness Hearing after notice to the Settlement Class Members.

7.     **No Additional Agreements Required to Be Identified**:  The Court has confirmed that there are no agreements required to be identified under Rule 23(e)(3).

8.     **<u>Fairness Hearing</u>**.   A Fairness Hearing shall be held before this Court on _____,   20__,   beginning   at   __:__   a.m./p.m.,   in   Courtroom   __   of   the

_____ _____, to determine, among other things, as set forth in Section 11 of the Agreement, whether (a) the Court has personal jurisdiction over the Parties and all Settlement Class members and subject matter jurisdiction to approve the Settlement; (b) the Settlement is fair, reasonable, and adequate such that the Settlement should be granted final approval by the Court; (c) the certification of the Settlement Class should be made final for settlement purposes pursuant to Federal Rule of Civil Procedure 23; (d) the Class Notice implemented pursuant to the Agreement (i) constituted the best practicable notice under the circumstances; (ii) constituted notice that is reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement; and to appear at the Fairness Hearing; (iii) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and (iv) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court; (e) Class Counsel and Plaintiffs adequately represented the Settlement Class for purposes of entering into and implementing the Agreement; (f) to incorporate the Settlement's Release provisions in Section 3 of the Agreement, make the Release effective as of the Final Settlement Date, and forever discharge the Released Persons as set forth in the Agreement;  (g) Attorneys' Fees and Expenses should be awarded by the Court to Class Counsel, and in what amount, pursuant to Federal Rule of Civil Procedure 23(h); (h) whether Service Awards should be approved by the Court to Plaintiffs, and in what amounts; and (i) whether a Final Order and Judgment should be entered, and this Action thereby dismissed with prejudice, pursuant to the terms of the Agreement.  The Court may adjourn or reschedule the Fairness Hearing without further notice to the Settlement Class Members.

9.      **Further Submissions by the Parties**.  Any application by Class Counsel for Attorneys' Fees and Expenses and for Service Awards to the Plaintiffs shall be filed with the Court no later than fourteen (14) days before the Objection/Exclusion Deadline.  The Settlement Administrator shall promptly post any such application to the Settlement Website after its filing with the Court.  All other submissions of the Parties in support of the proposed Settlement, or in response to any objections submitted by Settlement Class Members, shall be filed no later than ten (10) days before the Fairness Hearing.  The Settlement Administrator is directed to file a list reflecting all requests for exclusion it has received from Settlement Class Members with the Court no later than ten (10) days before the Fairness Hearing.

10.     **Administration**.  The Court authorizes and directs the Parties to establish the means necessary to administer the proposed Settlement, and implement the class notification process in accordance with the terms of the Settlement.  The Parties are hereby authorized to retain RG/2 Claims Administration LLC to serve as the Settlement Administrator, at Defendants' expense, to aid in implementing the terms of the Settlement.

11.     **Notice to Federal and State Regulators**.  The Court has reviewed the Defendants' notice of compliance with the requirements of CAFA, as codified at 28 U.S.C. § 1715, and the attached exhibits.  The Court finds and concludes that the form and contents of, and information provided by, the notices given by Defendants to federal and state regulatory officials, as well as the identity of the officials to whom those notices were sent, to be reasonable, proper, and in full compliance with the requirements of 28 U.S.C. § 1715.  As such, the Court finds that Defendants need not provide any further or supplemental notices under CAFA, unless otherwise ordered or agreed in response to a request by a recipient of the CAFA notice.

12.     **Notice to the Settlement Class**.  The Court approves, as to both form and content,

the Class Notice attached to the Settlement, as well as the proposed plan and methodology for distributing that notice to the Settlement Class Members as set forth in Section 7 of the Settlement. Accordingly,

         a.     The Court orders the Settlement Administrator, within twenty-eight (28) days following entry of this Preliminary Approval Order and subject to the requirements of this Preliminary Approval Order and the Settlement, to cause the Class Notice to be mailed, by First-Class U.S. Mail, proper postage prepaid, to the Settlement Class Members identified as borrowers in Defendants' records on each Class Loan, addressed to the mailing address of record for that Class Loan as reflected in Defendants' records.   The Court further orders the Settlement Administrator to: (i) prior to mailing, attempt to update the last known mailing addresses for each Class Loan as reflected in Defendants' records through the National Change of Address system or similar databases; (ii) promptly re-mail any Class Notices that are returned by the United States Postal Service with a forwarding address and continue to do so with respect to any such returned mail that is received seven (7) days or more prior to the Objection/Exclusion Deadline; and (iii) determine, as soon as practicable, whether a valid address can be located through use of the United States Postal Service's National Change of Address database and/or other reasonable means and without undue cost or delay, for those Class Notices that are returned without a new or forwarding address, and promptly re-mail copies of the Class Notice to any Settlement Class Members for whom the Settlement Administrator is reasonably able to locate valid addresses in accordance herewith, so long as the valid addresses are obtained seven (7) days or more prior to the Objection/Exclusion Deadline.

         b.     Following the entry of this Preliminary Approval Order and prior to the mailing of notice to the Settlement Class Members, the Parties are permitted by mutual agreement

to make changes in the font, format, and content of the Class Notice provided that the changes do not materially alter the substance of that notice.  Any material substantive changes to those notices must be approved by the Court.

        c.      The Parties shall cause the Settlement Administrator to establish an internet website to inform Settlement Class Members of the terms of the Agreement, their rights, dates and deadlines, and related information.  The Settlement Website shall include, in .pdf format, materials agreed upon by the Parties and/or required by the Court, and should be operational and live by the date of the mailing of the Class Notice.  At this time, the Court orders that the Settlement Website include the following: (i) the Operative Complaint; (ii) the Agreement, and its exhibits; (iii) a copy of this Preliminary Approval Order; (iv) the Class Notice; and (v) a disclosure, on the Settlement Website's "home page," of the deadlines for Settlement Class Members to seek exclusion from the Settlement Class, to seek exclusion from or to object to the Settlement, as well as the date, time and location of the Fairness Hearing.

        d.      The Parties shall also cause the Settlement Administrator to make advertisements on the internet for the purpose of alerting Settlement Class Members to the settlement website, in a form recommended by the Settlement Administrator and mutually acceptable to the Parties, with an aggregate cost not to exceed $15,000.

        e.      The Parties shall also cause the Settlement Administrator to place a Spanish-language translation of the Class Notice on the Settlement Website at the time the Settlement Website becomes operational and live. The Spanish-language translation shall be created by a federally certified interpreter or translator. However, in the case of conflict, the English-language version of the Class Notice shall control.

        f.      No later than ten (10) days before the date of the Fairness Hearing, the

Settlement Administrator, and to the extent applicable, the Parties, shall file with the Court a declaration or declarations, verifying compliance with the aforementioned class-wide notice procedures.

13. **Findings Concerning the Notice Program**.  The Court finds and concludes that the form, content, and method of giving notice to the Settlement Class as described in this Preliminary Approval Order: (a) will constitute the best practicable notice under the circumstances; (b) is reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action, the terms of the proposed Settlement, and of their rights under and with respect to the proposed Settlement (including, without limitation, their right to object to or seek exclusion from, the proposed Settlement); (c) is reasonable and constitutes due, adequate, and sufficient notice to all Settlement Class Members and other persons entitled to receive notice; and (d) satisfies all applicable requirements of law, including, but not limited to, 28 U.S.C. § 1715, Federal Rule of Civil Procedure 23(c), and the United States Constitution (including the Due Process Clause).  The Court further finds that the Class Notice is written in simple terminology, and is readily understandable.

14. **Cost Obligations for the Notice Program**.  All Costs of Administration, including those associated with providing notice to the Settlement Class as well as in administering the terms of the Settlement, shall be paid by Defendants as set forth in the Agreement.  In the event the Settlement is not approved by the Court, or otherwise fails to become effective, neither Plaintiffs, nor Class Counsel, nor the Settlement Class Members shall have any obligation to Defendants for such costs and expenses.

15. **Communications with Settlement Class Members**.  The Court authorizes Defendants to communicate with Settlement Class Members, potential Settlement Class Members,

and to otherwise engage in any other communications within the normal course of Defendants' business. However, Defendants are ordered to refer any inquiries by Settlement Class Members or potential Settlement Class Members about the Settlement to the Settlement Administrator or Class Counsel.

16.   **Preliminary Injunction.**   To protect the Court's jurisdiction and ability to determine whether the Settlement should be finally approved, pending such decision all Potential Settlement Class Members are hereby preliminarily enjoined (i) from directly or indirectly filing, commencing, participating in, or prosecuting (as class members or otherwise) any lawsuit in any jurisdiction asserting on their own behalf claims that would be Released Claims if this Settlement is finally approved, unless and until they timely exclude themselves from the Settlement Class as specified in the this Order and in the Agreement and its exhibits; and (ii) regardless of whether they opt out, Potential Settlement Class Members are further preliminarily enjoined from directly or indirectly filing, prosecuting, commencing, or receiving proceeds from (as class members or otherwise) any separate purported class action asserting, on behalf of any Settlement Class Members who have not opted out from the Settlement Class, any claims that would be Released Claims if this Settlement receives final approval and becomes effective.

17.   **Exclusion ("Opting Out") from the Settlement Class**.   Any Settlement Class Member who wishes to be excluded from the Settlement Class must submit a written request for exclusion to the Settlement Administrator, mailed sufficiently in advance to be received by the Settlement Administrator by the Objection/Exclusion Deadline.   A request for exclusion must comply with the requirements set forth in Section 8 of the Agreement and must: (a) contain a caption or title that identifies it as "Request for Exclusion in *Morris v. PHH* (case number 0:20-

cv-60633-RS)"; (b) include the Potential Settlement Class Member's name, mailing and email addresses, and contact telephone number; (c) specify that he or she wants to be "excluded from the Settlement Class" and identify the Class Loan number(s) for which he or she seeks exclusion from the Settlement; and (d) be personally signed by the Settlement Class Member. A request for exclusion may not request the exclusion of more than one member of the Settlement Class; provided, however, that an exclusion request received from one Settlement Class Member will be deemed and construed as an exclusion request by all co-debtors, joint-debtors, and multiple borrowers on the same Class Loan.  The loan number for each Class Loan shall be included in the Class Notice sent to the Settlement Class Members identified as borrowers with respect to that Class Loan.

18.    Any Settlement Class Member who timely requests exclusion consistent with these procedures shall not: (a) be bound by a final judgment approving the Settlement; (b) be entitled to any relief under the Settlement; (c) gain any rights by virtue of the Settlement; or (d) be entitled to object to any aspect of the Settlement.

19.    Settlement Class Members who do not exclude themselves from the Settlement Class in full compliance with the requirements and deadlines of this Preliminary Approval Order shall be deemed to have forever consented to the exercise of personal jurisdiction by this Court and shall have waived their right to be excluded from the Settlement Class and from the Settlement, and shall thereafter be bound by all subsequent proceedings, orders, and judgments in this Action, including but not limited to the Release contained in the Settlement, regardless of whether they have requested exclusion from the Settlement Class (but failed to strictly comply with the procedures set forth herein) and even if they have litigation pending or subsequently initiate litigation against Defendants relating to the claims and transactions released in the Action.

20.     **Objections and Appearances**.  Any Settlement Class Member (or counsel hired at any Settlement Class Member's own expense) who does not properly and timely exclude himself or herself from the Settlement Class, and who complies with the requirements of this paragraph and the procedures specified in the Class Notice, may object to any aspect or effect of the proposed Settlement.

a.      Any Settlement Class Member who has not filed a timely and proper written request for exclusion and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, or to the certification of the Settlement Class, or to the award of Attorneys' Fees and Expenses, or to the Service Award, or to any other aspect or effect of the Settlement, or to the Court's jurisdiction, must file a written statement of objection with the Court no later than the Objection/Exclusion Deadline.

b.      An objection must be in writing, and must: (a) contain a caption or title that identifies it as "Objection to Class Settlement in *Morris v. PHH* (case number 0:20-cv-60633-RS)"; (b) include the Settlement Class Members' name, mailing and email addresses, contact telephone number, and Class Loan number(s) for which an objection is being made; (c) state whether the objection applies only to the individual objection or to the entire class or a subset of the class; (d) state with specificity the specific reason(s), if any, for each of your objections, including all legal support you wish to bring to the Court's attention and all factual evidence you wish to introduce in support of your objection; (e) disclose the name and contact information of any and all attorneys representing, advising, or in any way assisting the Settlement Class Member in connection with the preparation or submission of the objection; (f) state if the objecting Settlement Class Member intends to appear and argue at the Fairness Hearing; and (g) be personally signed by the objecting Settlement Class Member.

c.       To file a written statement of objection, an objector must mail it to the Clerk of the Court sufficiently in advance that it is received by the Clerk of the Court on or before the Objection/Exclusion Deadline, or the objector may file it in person on or before the Objection/Exclusion Deadline at any location of the United States District Court for the Southern District of Florida, except that any objection made by a Settlement Class Member represented by his or her own counsel must be filed through the Court's Case Management/Electronic Case Filing (CM/ECF) system.

d.       Any Settlement Class Member who fails to comply strictly with the provisions in this Preliminary Approval Order for the submission of written statements of objection shall waive any and all objections to the Settlement, its terms, or the procedurals for its approval and shall waive and forfeit any and all rights he or she may have to appear separately and/or to object, and will be deemed to have consented to the exercise of personal jurisdiction by the Court, consented to the Settlement, consented to be part of the Settlement Class, and consented to be bound by all the terms of the Settlement, this Preliminary Approval Order, and by all proceedings, orders, and judgments that have been entered or may be entered in the Action, including, but not limited to, the Release described in the Settlement.  However, any Settlement Class Member who submits a timely and valid written statement of objection shall, unless he or she is subsequently excluded from the Settlement Class by order of the Court, remain a Settlement Class Member and be entitled to all of the benefits, obligations, and terms of the Settlement in the event the Settlement is given final approval and the Final Settlement Date is reached.

21.     **Termination of Settlement**.   This Preliminary Approval Order, including the conditional class certification contained in this Preliminary Approval Order, shall become null and void and shall be without prejudice to the rights of the Parties or Settlement Class Members, all of

whom shall be restored to their respective positions existing immediately before this Court entered this Preliminary Approval Order, if the Settlement: (a) is not finally approved by the Court, (b) does not become final pursuant to the terms of the Settlement; (c) is terminated in accordance with the Settlement; or (d) does not become effective for any other reason.

22.     **Use of this Preliminary Approval Order**.  In the event the Settlement does not reach the Final Settlement Date or is terminated in accordance with the terms of the Settlement, then: (a) the Settlement and the Agreement, and the Court's Orders, including this Preliminary Approval Order, relating to the Settlement shall be vacated and shall be null and void, shall have no further force or effect with respect to with respect to any Party in this Action, and shall not be used or referred to in any other proceeding by any person for any purpose whatsoever; (b) the conditional certification of the Settlement Class pursuant to this Preliminary Approval Order shall be vacated automatically, without prejudice to any Party or Settlement Class Member to any legal argument that any of them might have asserted but for the Settlement, and this Action will revert to the status that existed before the Settlement's execution date; (c) this Action shall proceed pursuant to further orders of this Court; and (d) nothing contained in the Settlement, or in the Parties' settlement discussions, negotiations, or submissions (including any declaration or brief filed in support of the preliminary or final approval of the Settlement), or in this Preliminary Approval Order or in any other rulings regarding class certification for settlement purposes, shall be construed or used as an admission, concession, or declaration by or against any Party of any fault, wrongdoing, breach or liability in this Action or in any other lawsuit or proceeding, or be admissible into evidence for any purpose in the Action or any other proceeding by any person for any purpose whatsoever.  This paragraph shall survive termination of the Settlement and shall remain applicable to the Parties and the Settlement Class Members whether or not they submit a

written request for exclusion.

23. **<u>Continuing Jurisdiction</u>**.    This Court shall maintain continuing exclusive jurisdiction over these settlement proceedings to consider all further applications arising out of or connected with the Settlement or this Preliminary Approval Order, and to assure the effectuation of the Settlement for the benefit of the Settlement Classes.

**IT IS SO ORDERED** this _____ day of _____, 20__.


_____
**RODNEY SMITH**
**United States District Judge**