**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**FORT LAUDERDALE DIVISION**

CASE NO: 20-60633-CIV-SMITH

VINCENT J. MORRIS, and MICHAEL
LUZZI, on behalf of themselves and all
others similarly situated,

       Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability
Company,

       Defendants.

_____/

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS**
**ACTION SETTLEMENT, CLASS COUNSEL'S APPLICATION FOR ATTORNEYS'**
**FEES AND EXPENSES, AND INCORPORATED MEMORANDUM OF LAW**

**<u>INTRODUCTION</u>**

Class Counsel and Plaintiffs are very proud to formally move for final approval of this class action settlement (the "Settlement"), which was previously granted preliminary approval by this Court.  [D.E. 185] Plaintiffs and Class Counsel respectfully move, under Rule 23 of the Federal Rules of Civil Procedure, for final approval of the Settlement previously agreed to by all Defendants[1], for an order making final this Court's prior certification of the Settlement Class defined in the Preliminary Approval Order, (the "Class" or the "Settlement Class"), and for an award of attorneys' fees and litigation expenses to Class Counsel.

A final approval hearing, as required by Rule 23(e)(2), is scheduled for May 31, 2023.  The Settlement provides the establishment of a non-reversionary common fund of approximately $2,771,068 to make cash payments to nearly 142,000 Settlement Class Members from across the country, while also securing important and valuable injunctive relief. As of this date, the Parties have received only 16 opt-outs and, no objections to final approval.[2]  This response to the Settlement is overwhelmingly supportive.

The Settlement's benefits were the result of significant, rigorous arm's length negotiations by the Parties and their counsel, under the direction of a distinguished mediator, The Honorable John W. Thornton (Ret.). Per the Court-approved notice plan, notice of this Settlement was disseminated to all Class Members via the establishment of a settlement website, internet notice, and direct mail to Settlement Class Members at their last known mailing address according to Defendants' records.

Undersigned Counsel were well positioned to evaluate and negotiate this Settlement because they have substantial experience in financial services class actions and had been actively litigating this matter against the Defendants for years. Specifically, Plaintiffs' counsel investigated their claims and allegations extensively, and reviewed thousands of pages of documents regarding

---

[1] As defined in the Settlement Agreement, "Defendants" or "PHH Defendants" shall mean PHH Mortgage Corporation, ("PHH"), individually and as successor by merger to named defendant Ocwen Loan Servicing, LLC ("Ocwen"), as well as Ocwen Loan Servicing, LLC ("Ocwen"). Unless otherwise noted, capitalized terms in this motion shall have the same meanings given to them in the Second Amended Stipulation of Settlement and Release [D.E. 178-1].

[2] The deadline for Class Members to Object or Opt-Out of the Settlement occurs on April 26, 2023. Plaintiffs will file supplemental papers prior to the Final Approval Hearing to advise whether any objections or further Opt-Out Requests were received after this motion was filed. *See* Preliminary Approval Order, [D.E. 185 at ¶9].

Defendants' convenience fee practices. Despite that work, Plaintiffs and Class Members faced significant hurdles in litigating their claims to successful adversarial resolution. As such, and, given the immediate and substantial cash and other benefits the Settlement will provide to the Class, there can be no question that the Settlement is "fair, reasonable, and adequate" and should be granted final approval.

For this accomplishment, Class Counsel are asking for the Court to award them $859,031.08 in attorneys' fees (31% of the Common Fund), plus $55,421.36 in unreimbursed expenses.  This percentage would be lower if one considers the value of the significant injunctive relief.  The requested fee award is consistent with precedent from our District and the Eleventh Circuit and is warranted because of the substantial efforts Class Counsel have undertaken, the significant risks borne throughout the litigation, and the superb results achieved for the Class.

Plaintiffs and Class Counsel respectfully submit that, once the deadline for objections has passed and the Fairness Hearing takes place as previously scheduled, this Court grant final approval of the Settlement and approve the application for attorneys' fees and costs.  A Proposed Order to this effect will be submitted no later than May 22, 2023.

## FACTUAL BACKGROUND

### I.    BACKGROUND OF THE LITIGATION AND MEDIATION

This action alleges that charging Convenience Fees for phone and web payments violates the Federal Fair Debt Collection Practices Act 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), Florida state law, and class members' mortgage contracts. Plaintiffs allege that because the "Convenience Fees" are neither expressly authorized by the applicable mortgage agreements nor expressly permitted by applicable law, the FDCPA and Florida law do not allow them to be charged. And because they are not allowable fees under the FDCPA or Florida law, Plaintiffs allege that charging them also violates the standard form mortgage contracts of Settlement Class Members. Plaintiffs' counsel filed this action after having spearheaded other financial services class action litigation in over 32 nationwide class actions brought against the largest banks, mortgage servicers and force-placed insurers across the country, reaching 30 settlements to date totaling over $4.2 billion dollars for the proposed

nationwide classes of over 5.3 million homeowners.[3] Ocwen and PHH were among the defendants in some of those successful nationwide force-placed insurance class action settlements.

Defendants moved to dismiss this action on August 7, 2020. [D.E. 26]. Recognizing that many different courts had reached diametrically opposed conclusions on similar claims, and, given the existence of contradictory regulatory guidance on the issue, the Parties decided to mediate this dispute. The Parties entered into a settlement agreement and moved for preliminary approval in August 2020. [D.E. 46]. The Court held a hearing on preliminary approval of the settlement on March 23, 2021. [D.E. 128]. At that hearing, the Court raised questions regarding some aspects of the settlement. In response to the Court's questions, and to address corresponding concerns raised by the Attorneys General and the DOJ, the Parties ultimately agreed to the Amended Settlement, which provided a better resolution for the class members. *See* [D.E. 136-1 at 5]. The Court then denied as moot the motion for preliminary approval of the Original Settlement and set a briefing schedule on the new motion for preliminary approval of the Amended Settlement. *See* [D.E. 138].

While the new motion for preliminary approval was pending, on November 8, 2021, a California class of borrowers was certified in *Torliatt v. Ocwen Loan Servicing, LLC*, Case No. 19-cv-04303-WHO at [D.E. 152]. On November 11, 2021, the Parties filed a joint motion to stay this case in light of the *Torliatt* certification order. [D.E. 160]. On November 17, 2021, the Court held

---

[3] *See e.g.*, *Williams v. Wells Fargo Bank, N.A.*, No. 11-cv-21233 (S.D. Fla.) (final approval granted); *Saccoccio v. JPMorgan Chase Bank N.A.*, No. 13-cv-21107 (S.D. Fla.) (final approval granted); *Diaz v. HSBC Bank (USA), N.A.*, No. 13-cv-21104 (S.D. Fla.) (final approval granted); *Fladell v. Wells Fargo Bank, N.A.*, No. 13-cv-60721 (S.D. Fla.) (final approval granted); *Hamilton v. SunTrust Mortg., Inc.*, No. 13-cv-60749 (S.D. Fla.) (final approval granted); *Hall v. Bank of Am., N.A.*, No. 12-cv-22700 (S.D. Fla.) (final approval granted); *Lee v. Ocwen Loan Servicing, LLC*, No. 14-cv-60649 (S.D. Fla.) (final approval granted); *Braynen v. Nationstar Mortg.*, LLC, No. 14-cv-20726 (S.D. Fla.) (final approval granted); *Wilson v. Everbank*, N.A., No. 14-cv-22264 (S.D. Fla.) (final approval granted); *Montoya v. PNC Bank, N.A.*, No. 14-cv-20474 (S.D. Fla.) (final approval granted); *Almanzar v. Select Portfolio Servicing*, No. 14-cv-22586 (S.D. Fla.) (final approval granted); *Jackson v. U.S. Bank, N.A.*, No. 14-cv-21252 (S.D. Fla.) (final approval granted); *Circeo-Loudon v. Green Tree Servicing, LLC*, No. 14-cv-21384 (S.D. Fla.); *Beber v. Branch Banking & Trust Co.*, No. 15-cv-23294 (S.D. Fla.) (final approval granted); *Ziwczyn v. Regions Bank, No.* 15-cv-24558 (S.D. Fla.) (final approval granted); *McNeil v. Selene Finance, LP*, No. 16-cv-22930 (S.D. Fla.); *McNeil v. Loancare, LLC*, No. 16-cv-20830 (S.D. Fla.) (final approval granted); *Edwards v. Seterus, Inc.*, No. 15-cv-23107 (S.D. Fla.) (final approval granted); *Cooper v. PennyMac Loan Servicing*, LLC, No. 16-cv-20413 (S.D. Fla.) (final approval granted). *Strickland, et al. v. Carrington Mortgage Services, LLC, et al.*, 16-cv- 25237 (S.D. Fla.) (final approval granted for three separate settlements); *Quarashi et al v. Caliber Home Loans Inc. et al.;* 16-9245 (D.N.J.) (final approval granted).

a status conference as to the impact of the *Torliatt* certification order and requested further briefing. [D.E. 164]. On November 23, 2021, this Court granted the motion to stay, closed this case for administrative purposes, and terminated all pending motions. [D.E. 167].

After the Ninth Circuit Court of Appeals denied PHH permission to appeal the *Torliatt* class certification decision on February 28, 2022, without opinion (*see Torliatt v. Ocwen Loan Servicing, LLC, et al.*, No. 21-80117 (9th Cir. Feb. 28, 2022)), the Parties retained the services of the Honorable John Thornton (Ret.) of JAMS in order to begin mediating a revised settlement agreement that takes into account the effect of that decision and the previous class certification order entered in *Torliatt* on the Parties' previously proposed settlement.

After weeks of additional negotiations, the Parties came to a resolution to fully resolve this matter. The Parties subsequently executed the Second Amended Stipulation of Settlement and Release [D.E. 178-1] (hereinafter "Settlement Agreement" or "Agreement"). On September 15, 2022, the Parties announced their settlement and filed a joint motion to reopen this action and lift the stay. [D.E. 173]. The Court granted that motion on September 22, 2022. [D.E. 174]. Per the Court's order granting the motion to reopen the motion, on September 23, 2022, Plaintiffs filed a Second Amended Complaint. [D.E. 175].

II.    THE SETTLEMENT TERMS AND AGREEMENT

A.    *The Proposed Settlement Class*

The Agreement provides relief to the following Settlement Class:

**The FDCPA Class**:

(A) All borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH and to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers whose loans make them potential members of the proposed settlement classes in *Torliatt v.*

*Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case no. 5:21-cv-00174-JPB (Bailey) (N.D. W. Va.), whether or not those borrowers timely and validly exclude themselves from those settlement classes; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

**– and –**

**<u>The Florida Class:</u>**

All borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (c) borrowers in the "FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them. For the avoidance of doubt, a borrower in the FDCPA Class who also paid a fee to either PHH Defendant between March 25, 2016 and March 24, 2019, inclusive, and who otherwise meets the definition of the Florida Class would be in both the FDCPA Class and the Florida Class.

### B. *Monetary Relief*

The Settlement Agreement affords members of the Settlement Class significant monetary relief. (*Id.* ¶ 1.1.47.) The PHH Defendants shall make available to the Settlement Class two Settlement Funds for a total amount of $2,771,068. The first (the "FDCPA Settlement Fund") shall be equal to the sum of 32% of the Convenience Fees paid to and retained by Ocwen from March 25, 2019 through August 17, 2022, for borrowers meeting subpart (A) of the definition of the FDCPA Class and 32% of the Convenience Fees paid to and retained by PHH from March 25, 2019 through August 17, 2022, for borrowers meeting subpart (B) of the definition of the FDCPA Class. (*Id.* ¶ 1.1.16.)

The second (the "Florida Settlement Fund") shall be equal to 18% of the amounts paid as Convenience Fees to the PHH Defendants by Florida Settlement Class Members and retained by the PHH Defendants from March 25, 2016 through August 17, 2022, but excluding Convenience Fees already captured in the FDCPA Settlement Fund. Both Settlement Funds shall exclude all amounts paid to or otherwise retained by any third-party vendor to facilitate the Settlement Class Members' payments by telephone, IVR, or the internet and any Convenience Fees previously refunded or waived by the PHH Defendants on any given Settlement Class Loan.   (*Id.* ¶ 1.1.22.)

The Settlement Funds will be allocated as follows: first, they will be used to pay on a pro rata basis based on the size of each fund as a percentage of the combined total of both funds any attorneys' fee and expense award to Class Counsel. (*Id.* ¶ 4.6.)   The remaining balance of each fund will be divided and distributed as individual allocations as follows:

> i. Each FDCPA Class Loan shall receive an Individual Allocation from the FDCPA Settlement Fund, calculated as follows: the proportion of Convenience Fees paid to and retained by either Ocwen or PHH on that FDCPA Class Loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Retained Convenience Fees paid to either Ocwen or PHH on all FDCPA Class Loans during that period. Only Retained Convenience Fees paid to a servicer that serviced but did not own the FDCPA Class Loan and that acquired servicing rights to the FDCPA Class Loan when it was 30 days or more delinquent will be included in these calculations. For the avoidance of doubt, a borrower who qualifies as an FDCPA Class Member because Ocwen acquired servicing rights when the loan was 30 days or more delinquent and did not own the loan would be entitled to and Individual Allocation for the Retained Convenience Fees paid to Ocwen on that FDCPA Class Loan. But if that same FDCPA Class Loan later service transferred to PHH when it was not 30 days or more delinquent, then that borrower would not receive any Individual Allocation from the FDCPA Settlement Fund for the Retained Convenience Fees paid to PHH after the service transfer. To the extent an FDCPA Class Loan meets both subpart (A) and subpart (B) of the definition of the FDCPA Class, then the Individual Allocation for that loan will be calculated as the proportion of Convenience Fees paid to and retained by both Ocwen and PHH on that loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Convenience Fees captured in the FDCPA Settlement Fund as described above.
>
> ii. Each Florida Class Loan shall receive an Individual Allocation from the Florida Settlement Fund, calculated based on the proportion of Convenience Fees paid to and retained by Ocwen and/or PHH on that Florida Class loan between March 25, 2016 and August 17, 2022 (but excluding Convenience Fee payments captured in the FDCPA Settlement Fund) as compared to the

total aggregate amount of all Convenience Fees paid to and retained by Ocwen and/or PHH with respect to all Florida class loans during that period (but excluding Convenience Fees captured in the FDCPA settlement fund).

(*Id.* ¶¶ 4.7-4.8.)

All Settlement Class Members shall receive their individual allocations by check mailed to the last known borrower address as set forth in the PHH Defendants' records or as updated by the Settlement Administrator.  No portion of the Settlement Fund will revert to the PHH Defendants. Individual Allocation relief that remains undeliverable three hundred (300) days after the Final Settlement Date despite the Settlement Administrator's efforts to locate the Settlement Class Members shall be paid to Homes for Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured post – 9/11 Veterans, to enable them to rebuild their lives." https://www.hfotusa.org/mission/.

### C. *Injunctive Relief*

In addition to the monetary relief and release described above, the Parties have agreed in the Settlement to a number of very important injunctive relief components *(that have not been included in the above-stated value of the proposed Settlement)*.  The PHH Defendants, to the extent they continue to charge Settlement Class Members for payments by telephone or internet in the future, have agreed to include language disclosing the following additional information at the time that borrowers pay online, to appear next to the first page of the website for the applicable form of payment:

Paying by telephone, IVR, or internet is entirely optional and, unless otherwise specified, involves a fee retained in whole or in part by PHH. There are alternative methods of payment involving no fee, such as mailing a check or money order, or scheduled monthly bank account debits, while some methods of payment involve a lower fee than others. Click here to visit the FAQ section for more details.

(*Id.* ¶ 5.1.1.)

Further, in each payment transaction involving a Convenience Fee following the Final Settlement Date, the PHH Defendants have agreed to use their best efforts to cause its customer service representatives, telephone systems, scripts or websites involved to disclose, in substance, the following information to each Settlement Class Member, except as otherwise hereafter prescribed or proscribed by law:

7

a.      the exact fee to be charged for the payment method chosen by the borrower;

b.      the fact that the fee may include an amount retained by the PHH Defendants in excess of its third party costs;

c.      the fact that the borrower is not required to use the payment method for which a fee is being charged;

d.      the payment methods for which the PHH Defendants do not charge a fee;

e.      any other optional payment methods accepted by the PHH Defendants that may involve a lower fee; and

f.      when a material consideration in the payment transaction at issue, the applicable deadline by which payment must be received in order to avoid a late fee.

(*Id.*)   The PHH Defendants further agreed to the following non-monetary relief as additional consideration for the Settlement:

> The PHH Defendants currently charge a Convenience Fee of $7.50 per online payment transaction. The PHH Defendants agree to reduce the per transaction Convenience Fee for online payments for borrowers with mortgaged property in Florida or who meet the definition of the FDCPA Class to $6.50 for a period of two years.

(*Id.* ¶ 5.1.2.)   The PHH Defendants currently charge Convenience Fees of $7.50 per IVR payment transaction and $17.50 for payments made by telephone with the assistance of a live agent. (*Id.* ¶ 5.1.3.)   The PHH Defendants agree not to increase either of those fees for borrowers with mortgaged property in Florida or who meet the definition of the FDCPA class for a period of two years.

### D.   *Release of Claims against Defendants*

In exchange for the relief provided by the Settlement, Settlement Class Members will release the PHH Defendants, as well as all other entities included in the definition of "Released Persons" set forth in the Settlement Agreement from:

> each and all of the claims, causes of action, suits, obligations, debts, demands, agreements, promises, liabilities, damages (whether punitive, statutory, or compensatory and whether liquidated or unliquidated), losses, controversies, costs, expenses and attorneys' fees of any nature whatsoever, whether based on any federal law, state law, common law, territorial law, foreign law, contract, rule, regulation, any regulatory promulgation (including, but not limited to, any regulatory bulletin, guidelines, handbook, opinion or declaratory ruling), common law or equity, whether known or unknown, suspected or unsuspected, asserted or unasserted, foreseen or unforeseen, actual or contingent, that relate to or arise out of Convenience Fees charged (a) by Ocwen on FDCPA Class Loans to FDCPA Class Members meeting Subpart (A) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; (b) by PHH on FDCPA Class Loans to FDCPA Class Members meeting Subpart (B) of the definition of the FDCPA Class, during the period from March 25, 2019 through and including August 17, 2022; or (c) by Ocwen or

PHH to Florida Class Members on Florida Class Loans, during the period from March 25, 2016 through and including August 17, 2022.

(*Id.* ¶¶ 1.1.38, 1.1.39 & 3.3.)

### E.  *Class Notice*

As required by this Court's Preliminary Approval Order, Settlement Class members were previously mailed comprehensive written notice of the settlement by first-class mail at their last-known mailing address in the form attached to the Settlement Agreement as Exhibit A. The Class Notice also included a provision directing Spanish-speaking class members to the Settlement Website, which includes the relevant settlement information in Spanish and a Spanish version of the Notice created by a federally certified Spanish interpreter.  (*Id.* ¶ 7.2.8).  The notice mailing was completed on January 19, 2023.  *See* Declaration of Tina Chiango dated April 11, 2023, at ¶5 ("RG/2 Declaration") (attached as Exhibit A). The Settlement Administrator performed a search of the National Change of Address database for each mailing address prior to the mailing of the Notice. *Id.* at 6.  The Settlement Administrator also established a website on which Settlement Class members could review the settlement information.  *See* https://morrisvphhspeedpaysettlement.com/ The Settlement Administrator additionally advertised the Settlement on the internet.  The notice provided a toll-free number to call for settlement information.  Settlement Class Members were told how to opt out or object if they wished, in accordance with this Court's instructions.

### F.  *Class Counsel Fees and Expenses*

This Court previously appointed the undersigned as Class Counsel.  The Settlement provides that Class Counsel's application for attorneys' fees and expenses for all the law firms involved shall not exceed 33% of the Settlement Fund, inclusive of expenses.  The Settlement is not made contingent upon any particular amount of Attorneys' Fees and Expenses being awarded by the Court. The PHH Defendants have maintained their right and full discretion to object to Class Counsel's petition for Attorneys' Fees and Costs for any reason, but do not oppose Class Counsel's petition.  [D.E. 178-1¶ 10.1].

### G.  *Class Member Response to Notice*

To date, not a single Class Member has objected to any aspect of the Settlement, and only 16 Class Members have submitted requests to opt-out of the Settlement (representing only .0113%

of the Settlement Class). *See* Declaration of Adam Moskowitz dated April 11, 2023 ("Moskowitz Decl.") at ¶ 49 (attached as Exhibit B).[4]

## **LEGAL ARGUMENT**

**I.     THIS COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLEMENT.**

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted).

Rule 23(e) provides five requirements that must be satisfied for a proposed class settlement to secure final approval:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval.

*Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 690 (S.D. Fla. 2014) (citing Fed. R. Civ. P. 23(e)).

Each of these five requirements is readily satisfied here. The Court-approved notice program directed the best notice practicable under the circumstances to all Settlement Class Members; a final

---

[4] As previously noted, the deadline for Class Members to Object or Opt-Out of the Settlement occurs on April 26, 2023. [D.E. 185 at ¶9].

fairness hearing has been scheduled for May 31, 2023; there is no agreement other than the Settlement Agreement itself; Class Members have had an appropriate time to opt-out; and currently there have been **no** objections filed against the Settlement or Plaintiffs' Request for Attorneys' Fees.

**A.     The Notice Program Gave the Best Practicable Notice to Settlement Class Members and Satisfied Rule 23 and Due Process.**

To exercise jurisdiction over absent Class members, a court must assure itself that such class members receive notice of any settlement that is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Tr. Co.*, 339 U.S. 306, 314-15 (1950)); *see* Fed. R. Civ. P. 23(c)(2)(B). Such notice "should describe the action and the plaintiffs' rights in it," as well as provide each class member "with an opportunity to remove [itself] from the class by executing and returning an 'opt out' or 'request for exclusion' form." *Shutts*, 472 U.S. at 812. As this Court noted in its Preliminary Approval Order, the Notice Program ordered and used here constitutes "the best practicable notice under the circumstances…." [D.E. 185 at ¶13]

The Notice Program has been implemented in accordance with the Court's Order. *See* RG/2 Claims Decl. ¶¶ 5-11. 105,317 Notices were mailed to potential Settlement Class Members as identified from Defendants' records. *Id*., ¶ 5. RG/2, the notice administrator, used advanced address research and re-mailing protocols for those notices that did not reach their intended recipient, ensuring that the maximum number of Settlement Class Members received direct-mail notice. *Id*., ¶ 6. In addition, the Settlement Website has had more than 3,327 users clicking the links on the Settlement website, and RG/2 has received more than 2,659 calls to the settlement phone number. *Id*., ¶¶ 7-9.

This far-reaching Notice Program has ensured that the Court has personal jurisdiction over all Settlement Class Members, because they have received the notice required to satisfy constitutional due process. *See Shutts*, 472 U.S. at 811-12; *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 148 F.3d 283, 306 (3d Cir. 1998) ("[T]he district court obtains personal jurisdiction over the absentee class members by providing proper notice of the impending class action and providing the absentees with the opportunity to be heard or the opportunity to exclude themselves from the class."). As required, the Court-approved notice described the claims brought and "contained information reasonably necessary to make a decision to remain a class member and be

bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Class Notice directly mailed to Settlement Class Members, among other things, described the Settlement Class, the release, the amount and proposed distribution of the Settlement Funds and informed Settlement Class Members of their right to opt out or object, as well as the procedural steps required to opt out or object. The notice further informed Settlement Class Members of the time and place of the Fairness Hearing. And the Notice explained to Settlement Class Members that they would be bound by a judgment unless they opted out. The Notice additionally informed Settlement Class Members that Class Counsel would seek attorneys' fees of up to 33% of the aggregate value of the Settlement Funds, inclusive of litigation expenses. Lastly, the Notice informed Settlement Class Members that additional information would be available on the Settlement Website, where copies of the Agreement and Notice, were made available.

In short, Settlement Class Members were provided with the best practicable notice "reasonably calculated, under [the] circumstances, to apprise them of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314.

**B.** **The Settlement Is Fair, Reasonable, and Adequate**

In evaluating a proposed settlement, Courts in this circuit consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) complexity, expense and duration of litigation; (3) the stage of proceedings at which the settlement was achieved; (4) the likelihood of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *See Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Saccoccio,* 297 F.R.D. at 691–94. "In assessing these factors, the Court 'should be hesitant to substitute . . . her own judgment for that of counsel.'" *Lipuma*, 406 F. Supp. 2d at 1315 (quoting *In re Smith,* 926 F.2d 1027, 1028 (11th Cir. 1991)). Analysis of these factors compels the conclusion that this Court should approve the Settlement.

**1.** **The Settlement is the Product of Good Faith, Informed, and Arm's-Length Negotiations among Experienced Counsel.**

The first factor for final approval requires this Court to consider whether the Settlement was obtained by fraud or collusion among the parties and their counsel. Courts begin with a presumption of good faith in the negotiating process. *See Saccoccio,* 297 F.R.D. at 692 ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion")*; Hemphill v. San Diego Ass'n of Realtors, Inc.*, 225 F.R.D. 616, 621 (S.D. Cal. 2004) ("the courts

respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement"). The Settlement terms in this case are the product of significant give and take by the settling parties and were negotiated at arm's length. The Parties participated in an intensive mediation with Judge Thornton, a well-respected mediator with significant experience resolving complex cases. Judge Thornton conducted multiple mediation sessions throughout the Summer and Fall of 2022. (Moskowitz Decl., ¶¶ 11, 35).

The Parties, through regular telephonic and zoom sessions, as well as email communications, and with the assistance of Judge Thornton, negotiated the amended Agreement. *Id*. Judge Thornton has significant experience mediating complex commercial suits to resolution and was involved in every step of the process. *Id*. The very fact of his involvement weighs in favor of approval. *See, e.g., Lobatz v. U.S. In re Educ. Testing Serv. Praxis Principles of Learning & Teaching, Grades 7-12 Litig.*, 447 F. Supp. 2d 612, 619-20 (E.D. La. 2006) (use of special master to oversee mediation evidenced procedural fairness of negotiating process); *In re WorldCom, Inc. ERISA Litig.*, 2004 WL 2338151, at *6 (S.D.N.Y. Oct. 18, 2004) (fact that "[a] respected and dedicated judicial officer presided over the lengthy discussions from which this settlement emerged" belied any suggestion of collusion). The Parties' negotiations were also informed by considerable discovery obtained by Class Counsel in litigating these claims.

### A.   The Issues Presented Were Highly Complex and Settlement Approval Will Save the Class Years of Extremely Costly Litigation in this Court and on Appeal.

This case involves complex legal claims and defenses brought on behalf of over 141,000 Settlement Class Members, and includes claims for violations of the Fair Debt Collection Practices, Act 15 U.S.C. § 1692, et seq. and the Florida Consumer Collection Practices Act, § 559.55, Florida Statutes, *et seq.*, Florida Deceptive and Unfair Trade Practices Act, § 501.201, Florida Statutes, *et seq.* and breach of contract. [ECF No. 175.] Litigating these claims would have undoubtedly proven difficult and consumed significant time, money, and judicial resources. Even if Plaintiffs were ultimately to have prevailed in this litigation (which Defendants contest), that success would likely have borne fruit for the Class only after years of trial and appellate proceedings and the expenditure of millions of dollars by both sides. (Moskowitz Decl. ¶ 36); s*ee, In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mex., on Apr. 20, 2010*, 910 F. Supp. 2d 891, 932 (E.D. La. 2012), *aff'd,* 2014 WL 103836 (5th Cir. 2014) ("Even assuming litigation could obtain the results that this Settlement provides, years of litigation would stand between the class and any such recovery. Hence, this second factor weighs strongly in favor of granting final approval to the Settlement Agreement.").

By contrast, the Settlement provides immediate and substantial relief to the Settlement Class, with cash payments approximating 32% of the total Retained Convenience Fees paid by Class Members within the nationwide FDCPA Class, and 18% of total Retained Convenience Fees paid by Class Members within the Florida Class. (Moskowitz Decl. ¶¶ 43–44.) This recovery is extremely favorable and constitutes an excellent result. *See, e.g., Beber et al. v. Branch Banking & Trust Co. et al.*, No. 15-cv-23294 (S.D. Fla.) (ECF No. 109) (approving similar settlement with payment percentages of 10%, 8%, and 5%); *Saccoccio,* 297 F.R.D. at 693 (return of 12.5% of premiums charged for FPI with prospective relief "very likely exceeds what Plaintiffs could have won at trial"). These benefits come without the expense, uncertainty, and delay of litigation. In light of the costs, uncertainties, and delays of litigating through trial—possibly an appeal—"the benefits to the class of the present settlement become all the more apparent." *See Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992).

**B.     The Factual Record Was Sufficiently Developed to Enable Class Counsel to Make a Reasoned Judgment Regarding the Settlement.**

Courts consider "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating." *In re Gen. Motors Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995). At the same time, "[t]he law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Ressler*, 822 F. Supp. at 1555.

Prior to settlement, Class Counsel had been investigating and litigating these types of claims for years and familiarized themselves thoroughly with the facts of this matter. (Moskowitz Decl. ¶¶ 37, 52-53.) This knowledge and the results of similar litigation around the country led the parties to enter settlement discussions. Further, before, during, and after mediation, Class Counsel confirmed details regarding the Class Members affected, and the amount at stake to ensure the Settlement was fair and complete, and to confirm the value of the relief provided to the Settlement Class. *Id.* ¶ 37.

**D.     Plaintiffs Faced Significant Obstacles to Obtaining Relief.**

"[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *see also Ressler*, 822 F. Supp. at 1555 ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise").

14

Class Counsel and Plaintiffs believe they have a compelling case, but also recognize that Defendants would have raised significant defenses to all claims. Although Plaintiffs and Class Counsel maintain that these defenses would have lacked merit, had litigation continued, Plaintiffs and Settlement Class Members would have risked not prevailing on their claims. (Moskowitz Decl. ¶¶ 38–41). Had the Parties continued to litigate, Plaintiffs could well have recovered nothing on behalf of the Settlement Class.

### E. The Benefits Provided by the Settlement Are Fair, Reasonable, and Adequate When Considered Against the Possible Range of Recovery.

As explained above, the Settlement creates two non-reversionary Settlement Funds with an aggregate value of $2.77 million. The Settlement Funds will provide significant cash payments and injunctive relief. All Settlement Class Members will receive cash payments equal to 18% or 32% of each Convenience Fee paid to and retained by the Defendants (minus their respective shares of any fees or expenses awarded to Class Counsel). This represents a significant recovery for Settlement Class Members, especially in light of the risks of continuing to litigate. (Moskowitz Decl. ¶¶ 42–47). Moreover, the agreed-to injunctive relief freezes the amount of Convenience Fees that can be charged for two years and ensures that the Settlement Class Members are better informed of their choices when making mortgage payments. Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988) (approving recovery of $.20 per share where desired recovery was $3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Moreno v. Beacon Roofing Supply, Inc.*, No. 19CV185-GPC(LL), 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020) (holding that non-reversionary aspect of settlement supported final approval under Rule 23(e)(2)(C)(ii)). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12). The results here are clearly reasonable.

15

**F.  The Opinions of Class Counsel, the Class Representatives, and Absent Class Members Strongly Favor Settlement Approval.**

A court should give "great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation." *Warren v. Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). This Court has already found that Class Counsel and Plaintiffs will adequately represent the Class in this action, and its conclusion was warranted. *See* Preliminary Approval Order [D.E. 185 ¶ 4(e)].

Class Counsel litigated this matter aggressively and competently, reviewed thousands of pages of documents, and fully support the Settlement. Based on this specific experience, and decades of experience in litigating consumer class action lawsuits, it is Class Counsel's informed opinion that the Settlement is fair, reasonable, adequate, and in the best interests of the Settlement Class. (Moskowitz Decl. ¶ 48.)

As of April 11, 2023, of the nearly 142,000 Settlement Class Members, the Settlement Administrator has received only 16 valid opt out requests and ***no*** objections have been filed or otherwise submitted. *See* RG/2 Decl. ¶¶ 10-11. This overwhelming support is evidence of the Settlement's fairness. *See, e.g., Saccoccio*, 297 F.R.D. at 694 (opposition amounting to .018% of the class was termed as "low resistance to the settlement" and weighed "in favor of approving the settlement."). Viewed either independently or taken together, the above factors confirm that the Settlement is fair, reasonable, and adequate and in the best interests of the Settlement Class.

**II.     THE COURT SHOULD AWARD REASONABLE FEES AND COSTS.**

For their extensive work prior to the filing of the complaint and throughout the pre-trial and settlement phases of this litigation, Class Counsel seek a fee award of $859,031.08, which is 31% of the aggregate value of the Settlement Funds created for the benefit of the Settlement Class, plus $55,421.36 in unreimbursed expenses. This is a total of $914,452.44 in attorneys' fees and expenses, which equals 33% of the aggregate value of the Settlement Funds.

**A.    The Court Should Award the Requested Attorneys' Fees and Expenses.**

When a class settlement establishes a calculable monetary benefit for class members, attorneys' fees should be awarded to class counsel pursuant to the well-established common benefit doctrine, based on a percentage of the monetary benefit obtained. *Camden I Condo. Ass'n v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also*

*Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001).

The Eleventh Circuit, therefore, requires class counsel fee awards to be based on a percentage of the common fund generated through a class action settlement. In *Camden I*—the controlling authority in the Eleventh Circuit on the issue of attorneys' fees in common-fund class action cases—the court held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. The Eleventh Circuit recently reaffirmed this rule, holding that "*Camden I* and the percentage method remain the law in this Circuit." *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1280 (11th Cir. 2021).

The "majority of common fund fee awards," the Eleventh Circuit has observed, "fall between 20% to 30% of the fund." *Camden I*, 946 F.2d at 774-75; *see Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1243 (11th Cir. 2011) (affirming fee award above the "25% benchmark"); *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1294 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of $40 million). Thus, "[c]ourts nationwide," the Eleventh Circuit recently noted with approval, "have repeatedly awarded fees of 30 percent or higher." *In re Equifax*, 999 F.3d at 1281 (quoting *In re Checking Account Overdraft Litig.*, 830 F. Supp. 2d 1330, 1367 (S.D. Fla. 2011)). Class Counsel's fee request adheres to the Eleventh Circuit's guidance, particularly given the circumstances of this litigation, as detailed below. *See Waters*, 190 F.3d at 1294.

The Eleventh Circuit's factors for evaluating the reasonable percentage to award class action counsel are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. This Court may also consider the time required to reach settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. As explained below, the factors set forth in *Camden I* support the full award requested.

**1.  The Contingent Nature of the Fee, the Financial Burden Carried by Counsel, and the Economics of Prosecuting a Class Action Support the 31% Award.**

A determination of a fair fee for Class Counsel must include consideration of the contingent nature of the fee, the outlay of out-of-pocket expenses by Class Counsel, and the fact that the risks of failure and nonpayment in a class action are extremely high. *See Pinto*, 513 F. Supp. 2d at 1339. These factors weigh in favor of awarding Class Counsel a fee award equaling approximately 31% of the aggregate value of the Settlement Funds, not counting the value of the injunctive relief that PHH Defendants have also agreed to provide as part of this Settlement. Class Counsel received no compensation during the course of this litigation and incurred expenses on behalf of the Settlement Class, which they risked losing had Defendants prevailed. (Moskowitz Decl. ¶¶ 66–71.) From the time Class Counsel filed suit, there was a real possibility Class Counsel would receive no compensation whatsoever.

**2.  The Fee Request Reflects the Market Rate in Complex, Contingent, Litigation.**

A fee of approximately 31% of a settlement's monetary value is within the market for class actions. *See Waters*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of $40 million).  "The percentage method of awarding fees in class actions is consistent with, and is intended to mirror, practice in the private marketplace where attorneys typically negotiate percentage fee arrangements with their clients." *Pinto*, 513 F. Supp. 2d at 1340. In private litigation, attorneys regularly contract directly with their clients for contingent fees between 25% and 33%. These percentages are the prevailing market rates throughout the United States for contingent representation. *See id.* at 1341 (citing, *inter alia*, *Kirchoff v. Flynn*, 786 F.2d 320, 323 (7th Cir. 1986)). In making a determination of what constitutes a fair fee, this Court should be guided by such awards. A fee of approximately 31% of the aggregate value of the Settlement Funds is well within the range of the customary fee awarded in common fund cases. *See, e.g., In re Disposable Contact Lens Antitrust Litig.*, 3:15-md-02626-HESLLL, ECF No. 1258 at 5 (M.D. Fla. June 1, 2021) (awarding 33 1/3% of the anticipated net settlement fund in partial settlement of antitrust class action); *Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . ."); *Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094 (S.D. Fla. 2020) (awarding one-third of the common fund); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions).

### 3.   The Novelty and Difficulty of the Questions at Issue

As previously mentioned, this case presents novel questions of law and issues of fact. Class action matters are generally complex. Defendants' defenses regarding the legality of the Convenience Fees, would have led to contested briefing regarding class certification and on the merits, at trial, post-trial, and on appeal. (Moskowitz Decl. at ¶¶ 39, 57-59, 64). Thus, even though Class Counsel successfully reached a settlement with Defendants, the difficulty and associated risk of mastering and litigating these issues amply supports the full award requested. *Id*.

### 4.   The Skill, Experience, and Reputation of Class Counsel

This litigation required a high degree of skill and experience. Class Counsel have established their skill, experience, and reputation in the record, and in repeated cases before this court. (Moskowitz Decl. at ¶ 57); Firm Resumes at [ECF No. 178-3]. Class Counsel have many years of experience successfully litigating nationally recognized class actions, including in the financial services industry. Beyond that, Class Counsel's reputation, diligence, expertise, and skill are reflected in the results they have achieved. They resolved this dispute efficiently despite the potential hurdles presented them and the arguments raised by Defendants detailed above. The quality of Class Counsel and their achievement here is equally shown by the strength of their opponents, Bradley Arant Boult Cummings LLP, an excellent defense firm. *Id*. at ¶ 59. This factor thus also favors awarding the requested fee.

### 5.   The Result Achieved for the Class

The result achieved is a major factor to consider in making a fee award and here, it is significant and perhaps best establishes the propriety of the requested fee award. *See Hensley v. Eckerhart,* 461 U.S. 424, 436, (1983) ("critical factor is the degree of success obtained"); *Pinto*, 513 F. Supp. 2d at 1342; *Behrens,* 118 F.R.D. at 547–48 ("The quality of work performed in a case that settles before trial is best measured by the benefit obtained."). In considering the results, courts examine the value of *both* monetary and prospective relief. *See Poertner*, 618 Fed. App'x at 629; *Perez v. Asurion Corp.*, 501 F. Supp. 2d 1360 (S.D. Fla. 2007); *LiPuma,* 406 F. Supp. 2d at 1323. The results here, of more than $2.77 million in a non-reversionary Settlement Fund and the prospective relief, are excellent. Moskowitz Decl. at ¶ 72.   Defendants are required to provide meaningful disclosures regarding the fees they charge, freezing the amount of those fees, and other injunctive changes. These results are powerful evidence supporting the fee award.

19

**6.  The Time and Labor of Class Counsel**

Investigating, prosecuting, and settling the claims here demanded time and labor. (Moskowitz Decl. ¶¶ 52–56). The complexity of this case required organization by Class Counsel, including assignment of work and regular meetings and calls to ensure coordinated, productive work efforts to maximize efficiency and minimize duplication of effort. Class Counsel spent over 2,000 hours investigating the claims of many potential plaintiffs and in litigating Plaintiffs' and the Class's claims against Defendant in this action. *Id*. Plaintiffs' counsel investigated their claims and allegations through extensive discovery, including the review of thousands of pages of documents. *Id*. This work required a significant amount of resources.

**7.  The Reaction of the Class to the Settlement.**

To date, the Parties have received no objections and only 16 valid opt-out requests, which supports the fee request. *See Pinto*, 513 F. Supp. 2d at 1343; (RG/2 Claims Decl. ¶¶ 10-11.)

**B.  Class Counsel's Request For Expenses Should Be Approved.**

Class Counsel also incurred $55,421.36 in unreimbursed expenses that have been borne to date. These expenses were reasonably and necessarily incurred during the litigation. These expenses are comprised of expert fees, case investigation costs, travel costs, copying costs, court reporting, stenography, mediation fees, legal research costs, court fees, and miscellaneous costs. *See* Moskowitz Decl. at ¶¶ 75-76.  It is well understood that Class Counsel are "entitled to be reimbursed from the class fund for the reasonable expenses incurred" in pursuing actions on behalf of a Class. *Behrens*, 118 F.R.D. at 549. Accordingly, courts in this Circuit have routinely approved payment of reasonable and necessary litigation expenses from common funds created by the litigation. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2008 WL 11234103, at *6 (N.D. Ga. Mar. 4, 2008) (approving $2.4 million for reimbursement of litigation expenses).

## <u>CONCLUSION</u>

Plaintiffs and Class Counsel respectfully request that the Court grant final approval of the Settlement, as well as the application for Class Counsel's fees and expenses.

Dated: April 12, 2023                          Respectfully submitted,

                                   By: */s/ Adam Moskowitz*___
                                     Adam Moskowitz, Esq.
                                     Florida Bar No. 984280
                                     adam@moskowitz-law.com
                                     Howard M. Bushman, Esq.
                                     Florida Bar No. 0364230
                                     howard@moskowitz-law.com
                                     Joseph M. Kaye, Esq.
                                     Florida Bar No. 117520
                                     joseph@moskowitz-law.com
                                     **THE MOSKOWITZ LAW FIRM, PLLC**
                                   2 Alhambra Plaza
                                   Suite 601
                                   Coral Gables, FL 33134
                                   Telephone: (305) 740-1423

                                   -and-

                                   By: */s/ Josh Migdal*
                                   **MARK MIGDAL & HAYDEN**
                                   80 S.W. 8th Street, Suite 1999
                                   Miami, Florida 33130
                                   Telephone: (305) 374-0440
                                   Josh Migdal, Esq.
                                   Florida Bar No. 19136
                                   josh@markmigdal.com
                                   Yaniv Adar, Esq.
                                   Florida Bar No. 63804
                                   yaniv@markmigdal.com
                                   eservice@markmigdal.com
                                   *Counsel for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

      I HEREBY CERTIFY that on April 12, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States District Court, Southern District of Florida, by using the CM/ECF system, which will serve a copy of same on all counsel of record.

                                By: */s/ Adam M. Moskowitz*___
                                    Adam M. Moskowitz