**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION**

**CASE NO: 20-60633-CIV-SMITH**

VINCENT J. MORRIS, and MICHAEL
LUZZI, on behalf of themselves and all
others similarly situated,

        Plaintiffs,

v.

PHH MORTGAGE CORPORATION d/b/a
PHH MORTGAGE SERVICES, on its own
behalf and as successor by merger to OCWEN
LOAN SERVICING, LLC, a New Jersey
Corporation, and OCWEN LOAN SERVICING,
LLC, a Florida Limited Liability
Company,

        Defendants.

_____/

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL
APPROVAL OF CLASS ACTION SETTLEMENT & CLASS COUNSEL'S
APPLICATION FOR ATTORNEYS' FEES AND EXPENSES**

Pending before the Court is Plaintiffs' Motion for Final Approval of Class Action

Settlement, Class Counsel's Application for Attorneys' Fees and Expenses, and Incorporated

Memorandum of Law [DE 186], along with the related memoranda, evidence, and other exhibits

submitted thereof. On December 22, 2022, the Court entered an Order preliminarily certifying a

class for settlement purposes, granting preliminary approval of the class action settlement, and

directing the issuance of notice [DE 185] (the "Preliminary Approval Order").  In the instant

Motion and the submissions related to it, Plaintiffs demonstrate that the Parties have complied with

the requirements of the Preliminary Approval Order and request that the Court finally approve the

terms of their settlement as set forth in the Second Amended Stipulation of Settlement and Release

[DE 178-1] (the "Agreement" or "Settlement Agreement"), including the attorneys' fee provisions. On May 31, 2023 at 9:00 AM ET, the Court held a fairness hearing to consider the Motion and the Parties' additional evidence and argument for the purposes of determining whether or not to give final approval to the parties' proposed class action settlement. For the reasons stated in the Plaintiff's memoranda and for good cause shown, the Motion is **GRANTED**. Accordingly, the Court hereby **FINDS, ORDERS, ADJUDGES, AND DECREES** as follows:

## I.       Jurisdiction

The Court FINDS that it has personal jurisdiction over the Parties[1] and all Settlement Class Members as well as subject matter jurisdiction to approve the Agreement, including all attached exhibits, and to enter this Order.

## II.      Background

### A. Procedural History

Plaintiffs pursued and have settled the class action entitled *Vincent J. Morris and Michael Luzzi, individually and on behalf of a class of similarly-situated persons v. PHH Mortgage Corporation*, *et al.*, Case No. 5:20-cv-60633-CIV-Smith, currently pending before the United States District Court for the Southern District of Florida (the "Court"). The Operative Complaint [DE 175] asserts claims for violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*, the Florida Consumer Collection Practices Act, § 559.55, Florida Statutes, *et seq.*, the Florida Deceptive and Unfair Trade Practices Act, § 501.201, Florida Statutes, *et seq.*, and breach of contract based on the PHH Defendants' practice of charging Convenience Fees for borrowers'

---

[1] Unless otherwise noted, capitalized term shall have the same meaning given to them in the Parties' Settlement Agreement.

use of expedited online and telephonic payment methods.[2] Plaintiff Morris originally filed the Action on March 25, 2020.

Plaintiffs filed an Amended Complaint on July 24, 2022. (*See* DE 11.)  The PHH Defendants moved to dismiss this action on August 7, 2020.  (*See* DE 20.)  Recognizing that many different courts had reached diametrically opposed conclusions on similar claims, and given the existence of contradictory regulatory guidance on the issue, the Parties decided to mediate this dispute.  The Parties entered into a class action settlement agreement and moved for preliminary approval in August 2020.  (*See* DE 46.)  The Court held a hearing on preliminary approval of the settlement on March 23, 2021. (*See* DE 128.) At that hearing, the Court raised questions regarding some aspects of the then proposed class action settlement.  In response to the Court's questions, and to address corresponding concerns raised by the Attorneys General and the DOJ, the Parties ultimately agreed to an Amended Settlement, which provided a better resolution for the class members. (*See* DE 136-1 at 5.)  The Court then denied as moot the motion for preliminary approval of the Original Settlement and set a briefing schedule on the new motion for preliminary approval of the Amended Settlement. (*See* DE 138.)

While the new motion for preliminary approval was pending, on November 8, 2021, a California class of borrowers was certified in *Torliatt v. Ocwen Loan Servicing, LLC*, Case No. 19-cv-04303-WHO at DE 152.  On November 11, 2021, the Parties filed a joint motion to stay this case in light of the *Torliatt* certification order.  (*See* DE 160.)  On November 17, 2021, the Court held a status conference as to the impact of the *Torliatt* certification order and requested further

---

[2] For most of the period at issue in this action, PHH used Speedpay, Inc.'s "Speedpay™" service to facilitate these kinds of online and telephonic payment methods, so the Convenience Fees charged by PHH were often referred to as "Speedpay" fees.

briefing.  On November 23, 2021, this Court granted the motion to stay, closed this case for administrative purposes, and terminated all pending motions.  (*See* DE 167.)

After the Ninth Circuit Court of Appeals denied without opinion PHH's petition for permission to appeal the *Torliatt* class certification decision on February 28, 2022, *Torliatt v. Ocwen Loan Servicing, LLC, et al.*, No. 21-80117 (9th Cir. Feb. 28, 2022), a separate proposed class action settlement was reached in the *Torliatt* case, affecting borrowers with California mortgages only. In response to these developments, the parties retained the services of the Honorable John Thornton (Ret.) of JAMS in order to begin mediating a revised settlement agreement that took into account all of the foregoing developments and all concerns previously expressed by the Court.

Following mediation on May 22, 2022, and after weeks of additional negotiations before Judge Thornton, the Parties agreed to resolve any Florida state law claims of a statewide class of borrowers on Florida mortgages, including but not limited to claims for breach of contract and claims under either the FCCPA or the FDUTPA, and to resolve FDCPA claims on behalf of a nationwide class.

Consistent with the foregoing Agreement, on September 15, 2022, Plaintiffs moved to reopen this action and lift the stay.  (*See* DE 173.)  This Court granted that motion on September 22, 2022. (*See* DE 174.)  Per the Court's order granting the motion to reopen the motion, on September 23, 2022, Plaintiffs filed a Second Amended Complaint, which is the Operative Complaint.  (*See* DE 175.)

After the Parties' finalized the terms of their Settlement and negotiated and executed the operative Agreement, Plaintiffs moved for preliminary approval of the amended settlement on behalf of the proposed Settlement Class. (*See* DE 178.)  The Court granted Plaintiffs' unopposed

Motion for Preliminary Approval reflecting those proposed terms on December 22, 2022. (*See* DE 185.)

> **B.**     **Settlement Terms**

> *1.*     ***The Proposed Settlement Class***

The Agreement provides relief to a Settlement Class, defined to include each of the following:

> **The FDCPA Class**:

> (A) All borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by Ocwen and to which Ocwen acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to Ocwen that was not refunded or returned; PLUS (B) all borrowers on residential mortgage loans secured by mortgaged property in the United States whose mortgage loans were serviced but not owned by PHH and to which PHH acquired servicing rights when such loans were 30 days or more delinquent on their loan payment obligations, and who, at any time during the period from March 25, 2019 through and including August 17, 2022, paid a Convenience Fee to PHH that was not refunded or returned.

> Excluded from the FDCPA Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers whose loans make them potential members of the proposed settlement classes in *Torliatt v. Ocwen Loan Servicing, LLC*, Case Nos. 3:19-cv-04303-WHO, 3:19-cv-04356-WHO (N.D. Cal.), or *Thacker v. PHH Mortgage Corp.*, Case no. 5:21-cv-00174-JPB (Bailey) (N.D.W. Va.), whether or not those borrowers timely and validly exclude themselves from those settlement classes; (c) borrowers who are or were named plaintiffs in any civil action other than this Action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them.

> **– and –**

**The Florida Class:**

All borrowers on residential mortgage loans secured by mortgaged property in the State of Florida who, from March 25, 2016 to August 17, 2022, paid a Convenience Fee to either Ocwen or PHH that was not refunded or returned.

Excluded from the Florida Class are (a) borrowers whose loans were included as class loans in the previously approved class action settlement in *McWhorter, et al. v. Ocwen Loan Servicing, LLC, et al.*, No. 2:15-cv-01831-MHH (N.D. Ala.); (b) borrowers who are or were named plaintiffs in any civil action other than this action which challenges Convenience Fees charged by a PHH Defendant that was initiated against either PHH Defendant on or before the date the Agreement was fully executed; (c) borrowers in the "FDCPA Class" defined above who did not also make an additional Convenience Fee payment to the PHH Defendants between March 25, 2016 and March 24, 2019; (d) the PHH Defendants' board members and executive level officers; and (e) the federal district and magistrate judges assigned to this Action, along with persons within the third degree of relationship to them. For the avoidance of doubt, a borrower in the FDCPA Class who also paid a fee to either PHH Defendant between March 25, 2016 and March 24, 2019, inclusive, and who otherwise meets the definition of the Florida Class would be in both the FDCPA Class and the Florida Class.

There are 141,563 potential Settlement Class Members on 105,314 Class Loans at issue in this Action. Of those 105,314 Class Loans, 33,449 qualify for membership in the FDCPA Class, while 75,861 qualify for membership in the Florida Class. There is overlap between the FDCPA Class and Florida Class, with 3,996 loans qualifying for membership in both classes. *See* Declaration of Kevin Campbell in Support of Preliminary Approval ¶ 6 ("Campbell Decl.," DE 177-1).

### 2.  *Monetary Relief*

The PHH Defendants have agreed to create two Settlement Funds for the Settlement Class, the FDCPA and Florida Settlement Funds, for a total amount of $2,771,068. The FDCPA Settlement Fund is $1,233,381, which is equal to 32% of the Retained Convenience Fees paid from March 25, 2019 through August 17, 2022 to (1) Ocwen, for borrowers meeting subpart (A) of the FDCPA Class definition and (2) PHH for borrowers meeting subpart (B) of the FDCPA Class definition. (Agreement [DE 178-1] ¶ 1.1.16.) The Florida Settlement Fund is $1,537,687, which is 18% of the Retained Convenience Fees paid from March 25, 2016 through August 17, 2022 to

the PHH Defendants by Florida Settlement Class Members, but excluding Retained Convenience Fees already captured in the FDCPA Settlement Fund.

Every Settlement Class Member will be paid a pro rata share of the Settlement Fund (less any attorneys' fees and expenses awarded to Class Counsel). FDCPA Class Loans will receive a share of the FDCPA Settlement Fund based on the proportion of Retained Convenience Fees paid for that FDCPA Class Loan during the relevant period as compared to the total amount of Retained Convenience Fees paid for all FDCPA Class Loans during that same time period.[3] Florida Class Loans will receive a share of the Florida Settlement Fund based on the proportion of Retained Convenience Fees paid for that Florida Class Loan during the relevant period as compared to the total amount of Retained Convenience Fees paid for all Florida Class Loans during that same time period (but excluding Convenience Fees captured in the FDCPA Settlement Fund). (*Id.* ¶¶ 4.7-4.8.)

All Settlement Class Members shall receive their individual allocations by check mailed to the last known borrower address as set forth in the PHH Defendants' records or as updated by the Settlement Administrator.  No portion of the Settlement Fund will revert to the PHH Defendants.

---

[3] Only Convenience Fees paid to a servicer that serviced but did not own the FDCPA Class Loan and that acquired servicing rights to the FDCPA Class Loan when it was 30 days or more delinquent will be included in these calculations. For the avoidance of doubt, a borrower who qualifies as an FDCPA Class Member because Ocwen acquired servicing rights when the loan was 30 days or more delinquent and did not own the loan would be entitled to an Individual Allocation for the Retained Convenience Fees paid to Ocwen. But if that same FDCPA Class Loan later service transferred to PHH when it was not 30 days or more delinquent, then that borrower would not receive any Individual Allocation from the FDCPA Settlement Fund for the Retained Convenience Fees paid to PHH after the service transfer. To the extent an FDCPA Class Loan meets both subpart (A) and subpart (B) of the definition of the FDCPA Class, then the Individual Allocation for that loan will be calculated as the proportion of Convenience Fees paid to and retained by both Ocwen and PHH on that loan between March 25, 2019 and August 17, 2022, as compared to the total aggregate amount of all Convenience Fees captured in the FDCPA Settlement Fund as described above

Individual Allocation relief that remains undeliverable three hundred (300) days after the Final Settlement Date despite the Settlement Administrator's efforts to locate the Settlement Class Members shall be paid to Homes for Our Troops, "a privately funded 501(c)(3) nonprofit organization that builds and donates specially adapted custom homes nationwide for severely injured post – 9/11 Veterans, to enable them to rebuild their lives." https://www.hfotusa.org/mission/.

### 3.    *Injunctive Relief*

In addition to the foregoing monetary relief, the Parties have agreed in the Settlement to a number of injunctive relief components (that have not been included in the above-stated value of the proposed Settlement)*.* The PHH Defendants, to the extent they continue to charge Settlement Class Members for online payments in the future, have agreed to include additional website disclosures. For telephonic payments, the PHH Defendants have also agreed to cause their customer service representatives to provide a rigorous set of contemporaneous disclosures regarding the amount and avoidable nature of the Convenience Fees, as well as disclosing the other optional payment methods that involve no fee or a lower fee. (*Id.* § 5.) Further, the PHH Defendants have agreed to reduce their internet fee for borrowers with mortgaged property in Florida or who meet the definition of the FDCPA Class from $7.50 to $6.50, and to freeze the IVR and live operator fees at $7.50 and $17.50 for a period of two years. (*Id*.)

### 4.    *Release of Claims against PHH Defendants*

In exchange for the relief just described, Plaintiffs and the Settlement Class Members, upon entry by the Court of this Order, will release the PHH Defendants from any and all claims of any kind that relate to or arise from the PHH Defendants' collection of Convenience Fees during the relevant time periods for the Florida Class and FDCPA Class. (*Id.* ¶¶ 1.1.38, 1.1.39, 1.1.40 & 3.3.)

### 5.    *Payment of Notice and Administration Costs*

Based on the Settlement Agreement, the Court approved the Parties' hiring of RG/2 Claims

Administration LLC ("RG/2") to serve as Settlement Administrator. (DE 185 ¶ 10.) As Settlement

Administrator, RG/2's responsibilities include providing notice of the Settlement to the proposed

Settlement Class, including a mailed Class Notice, a Settlement Website, internet advertising, and

a toll-free number for Settlement Class Members to call to receive information about the

Settlement. The costs of distributing notice and, more generally, for Settlement Administration are

being paid by the PHH Defendants outside of, and in addition to, the Settlement Funds being

offered to Settlement Class Members. (Agreement ¶¶ 1.1.09, 7.3.)

### 6.    *Class Counsel Fees and Expenses*

Any fee and expense awards the Court approves will be paid from the Settlement Funds,

on a pro rata basis (*Id.* ¶ 10.1), but the Settlement is not conditioned upon the Court approving *any*

fee and expense awards to Class Counsel.  In fact, the PHH Defendants reserved their right to

object to the requests for attorney's fees and expenses.  (*Id.*)

In accordance with the Preliminary Approval Order, Plaintiffs have now sought attorneys'

fees of $859,031.08 which is approximately 31% of the Settlement Funds, plus $55,421.36 in

unreimbursed expenses. There have been no objections regarding the requested attorney's fees and

incentive awards. The Court will address Class Counsel's fee and expense request in section III.D,

*infra*.[4]

---

[4] Although in the Agreement, the Parties agreed that Plaintiffs Morris and Luzzi could
*conditionally* apply for *contingent* service awards to be paid from the Settlement Funds in the
amount of $5,000 each for a total sum of $10,000, the Court asked the Parties to withdraw that
portion of the Agreement during the preliminary approval hearing, based on the 11th Circuit's
decision in *Johnson v. NPAS Solutions, LLC*, 975 F.3d 1244 (11th Cir. 2020), which the Parties
did.

### C.       Notice to and Reaction of the Settlement Class

Following preliminary approval of the Settlement, and as ordered by the Court in its Preliminary Approval Order, the Parties caused the Settlement Administrator to distribute timely notice of the settlement to the Settlement Class Members.  (*See* Declaration of Tina Chiango [De 186-1] ("Chiango Decl.") ¶¶ 3-9.)

Of the 105,314 Class Loans, the Settlement Administrator received only 24 requests for exclusion on or before the April 26, 2023 deadline.  (*See* Supplemental Declaration of Tina Chiango [De 187-2] ("Supp. Chiango Decl.") *¶¶* 3–4.) Nineteen of those requests were submitted by Settlement Class Members and covered 19 Class Loans.  (*See id*. ¶¶ 3–6, Ex. A.)  Another five of those requests were submitted by persons who are not actually members of the Settlement Class. (*Id*. ¶ 6, Ex. A.)  Finally, the Settlement Administrator also received two requests for exclusion by Settlement Class Members that were received (and post-marked) after the Objection/Exclusion Deadline. One was from Settlement Class Member Sarah Tremaglio. (*See id*. ¶ 5.) The other was from Settlement Class Member Maria Jimenez, as successor in interest to Lepido Jimenez. (DE 193-1.) Because Ms. Tremaglio's and Ms. Jimenez's requests for exclusion were neither received nor postmarked on or before the Objection/Exclusion Deadline, and because receipt by the deadline was required by the Preliminary Approval Order and Class Notice, Ms. Tremaglio's and Ms. Jimenez's requests for exclusion are not valid and both shall remain Settlement Class Members.[5]

Notably, there have been no objections to the Settlement.

---

[5] The Settlement Administrator also received a belated request for exclusion from another non-Settlement Class Member, William Ward Henry. (*See* DE 194-1.)

### III.    Final Approval of the Settlement

#### A.    Final Certification of the Settlement Class

The Court previously preliminarily and conditionally certified the Settlement Class, including the FDCPA Class and Florida Class, in its Preliminary Approval Order. (*See* DE 185 ¶ 4.) The Court finds that there have been no objections to class certification and no change in circumstances to alter the Court's previous conclusion that the prerequisites for a class action under Federal Rule of Civil Procedure 23(a) and Federal Rule of Civil Procedure 23(b) have been satisfied for settlement purposes for the Settlement Class, including for each of the Florida Class and the FDCPA Class. Accordingly, the Court will make final its certification of each Settlement Class, for the reasons stated in the Preliminary Approval Order and based on the totality of the record herein. The Court specifically finds that: (a) the number of Settlement Class Members for each of the Florida Class and FDCPA Class is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Plaintiffs have fairly and adequately represented and will continue to fairly and adequately represent the interests of the Settlement Class Member for purposes of the Agreement; (e) the questions of law and fact common to the Settlement Class Members predominate over any questions affecting any individual Settlement Class Member; (f) the Settlement Class is ascertainable; and (g) a class action settlement is superior to the other available methods for the fair and efficient adjudication of the controversy.

The Court also finally appoints The Moskowitz Law Firm, PLLC as Class Counsel for the Settlement Class.  The Court also finally designates Plaintiffs Vincent J. Morris and Michael Luzzi as the class representatives.

**B.** **The Best Practical Notice was provided to the Settlement Class., and that Notice was Reasonable and Adequate**

Before granting final approval, a court must ensure that reasonable and adequate notice was provided to class members. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812–13 (1985). This is because the Due Process Clause and Rule 23 require a court to "direct notice … to all class members who would be bound by the" settlement. Fed. R. Civ. P. 23(e)(1)(B). Such notice must be "the best notice that is practicable under the circumstances," directed individually "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, both the form and content of the Class Notice, and the method of distributing notice to the Settlement Class, satisfied all applicable requirements of law.

**1.** *The form and content of the Class Notice satisfied all applicable requirements of law.*

Notice of a class action settlement is adequate if it provides sufficient information for class members to make a decision about whether to remain in the class in language that can readily be understood by the average class member. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173–74 (1974). "It is not the function of the settlement notice to fully inform the class of all the details of the settlement, but merely to put class members on notice of the general parameters of the settlement and to inform them of where information as to the specifics may be obtained." *Bennett v. Behring Corp.*, 96 F.R.D. 343, 353 (S.D. Fla. 1982), *aff'd.*, 737 F.2d 982 (11th Cir. 1984); *accord Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239–40 (11th Cir. 2011).

In this case, the Court approved the form and content of the Parties' proposed notice plan as "reasonably calculated, under the circumstances, to apprise Settlement Class Members of the pendency of this Action, the terms of the proposed Settlement, and of their rights under and with respect to the Proposed Settlement." (DE 185 ¶ 13.) There have been no objections to the form

and content of the Class Notice and there is no reason for the Court to depart from this conclusion now. The notice was reasonably calculated, under the circumstances, to apprise the Settlement Class Members of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement, and to appear at the Fairness Hearing; was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court.

        2.     ***The methods of giving notice to the Settlement Class Members satisfied all applicable requirements of law.***

The Court also previously approved the Parties' methods of delivering notice to the Settlement Class Members. (*Id.* ¶¶ 12–13.) The Settlement Administrator has now verified compliance with the Court-approved notice program, and that it reached over 98% of the Settlement Class Members. (Chiango Decl. ¶ 6.)[6] No one has objected to the method of notice and there is no fact in evidence undermining the conclusion that the notice provided was the best notice practicable and effective in its reach.

In addition, the Settlement Class Members could access the Settlement Website beginning on January 15, 2023. (*Id.* ¶ 8.) The Settlement Website allowed Settlement Class Members to view and download copies of the Class Notice (including a Spanish-language version), the Settlement Agreement, Preliminary Approval Order, and the Operative Complaint. (*Id.*) The Settlement Website also included a summary of important deadlines, instructions for opting-out or

---

[6] The Settlement Administrator attempted to send notice, via first class mail, to all members of the Settlement Class. The roster of Settlement Class Members contained 105,314 loans, with 141,563 potential Settlement Class Members as borrowers on the loans. A total of 4,114 Class Notices were returned by the United States Postal Service as undeliverable, without forwarding address information. Of those, the Settlement Administrator was unable to obtain updated address information for 1,451 Class Loans, despite using reasonable efforts to do so. *See* Chiango Decl. ¶ 6. Thus, the direct mail reach rate was 98%.

objecting, and information on how to contact the Settlement Administrator.  (*Id*.) The Settlement Administrator also created a toll-free IVR (interactive voice response) system that enabled callers to listen to answers to various questions about the settlement. (*Id.* ¶ 9.) And the Settlement Administrator arranged for an online media campaign involving Facebook and Instagram, which had over 1.7 million impressions and resulted in thousands of users clicking links to access the Settlement Website. (*Id.* ¶ 7.)

Because the Parties complied with the agreed-to notice provisions as preliminarily approved by the Court, and given that there are no developments or changes in the facts to alter the Court's previous conclusion, the Court finally concludes that the notice provided in this case satisfied all the requirements of Rule 23(c)(2)(B) and Due Process.

### C.     The Settlement is Fair, Adequate, and Reasonable.

Settlement of class actions must be approved by the Court. Fed. R. Civ. P. 23(e).  *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 690 (S.D. Fla. 2014) (citing Fed. R. Civ. P. 23(e)).  "Approval of a class action settlement is a two-step process." *Fresco v. Auto Data Direct, Inc.*, No. 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007).  Preliminary approval is the first step, requiring the Court to "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms." *Id.* In the second step, after notice to the class and opportunity for absent class members to object or otherwise be heard, the court considers whether to grant final approval. *Smith v. Wm. Wrigley Jr. Co.*, 2010 WL 2401149, at *2 (S.D. Fla. 2010). The Court has already granted preliminary approval. "When the court reviews a proposed class action settlement, it acts as a fiduciary for the class." *In re: Lumber Liquidators Chinese-Manufactured Flooring Prod. Mktg., Sales Pracs. & Prod. Liab. Litig.*, 952 F.3d 471, 483-84 (4th Cir. 2020) (citing *Sharp Farms v. Speaks*, 917 F.3d 276, 293-94 (4th Cir. 2019)).

14

Rule 23(e) provides five requirements that must be satisfied for a proposed class settlement to secure final approval:

(1) The court must direct notice in a reasonable manner to all class members who would be bound by the proposal.

(2) If the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable, and adequate.

(3) The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.

(4) If the class action was previously certified under Rule 23(b)(3), the court may refuse to approve a settlement unless it affords a new opportunity to request exclusion to individual class members who had an earlier opportunity to request exclusion but did not do so.

(5) Any class member may object to the proposal if it requires court approval under the subdivision (e); the objection may be withdrawn only with the court's approval.

Fed. R. Civ. P. 23(e).

Further, in determining whether a settlement meets the requirements of Rule 23, courts in this Circuit consider the following factors: (1) the existence of fraud or collusion behind the settlement; (2) complexity, expense and duration of litigation; (3) the stage of proceedings at which the settlement was achieved; (4) the likelihood of the plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of class counsel, class representatives, and the substance and amount of opposition received. *See Leverso v. SouthTrust Bank of Ala., N.A.*, 18 F.3d 1527, 1530 n.6 (11th Cir. 1994); *Saccoccio,* 297 F.R.D. at 691–94.

Consideration of the applicable factors reveals that the Parties' proposed Settlement Agreement merits final approval. As to Rule 23(e), the Court-approved notice program directed the best notice practicable under the circumstances to all Settlement Class Members (*see supra*), and a final fairness hearing was held on May 31, 2023.  The motion for final approval and the

15

submissions made in support of it demonstrate that there are no agreements other that the Settlement Agreement itself, Settlement Class Members have had an appropriate time to opt-out or object; and currently there have been ***no*** objections filed against the Settlement or Plaintiffs' request for attorneys' fees and expenses.

The Parties' Settlement was indeed the product of serious, informed, arm's-length, and non-collusive negotiations. Before settling this matter, the Parties seriously mediated this action at arm's-length. They exchanged informal discovery and participated in informal negotiations and mediation conducted by an experienced mediator. By the time the mediation occurred, Class Counsel and counsel for the PHH Defendants' Counsel, who are both experienced in not only prosecuting complex class action claims such as these but specifically this type of litigation, had "a clear view of the strengths and weaknesses" of their case and were in a strong position to make an informed decision regarding the reasonableness of a potential settlement. *In re Warner Commc'ns Sec. Litig.*, 618 F. Supp. 735, 745 (S.D.N.Y. 1985) *aff'd*, 798 F.2d 35 (2d Cir. 1986). The parties also negotiated this version of the Settlement with the benefit of substantial feedback on earlier versions of the Settlement from the Court and from various state and federal regulators.

The settlement has no obvious deficiencies and treats class members equitably, including by properly distinguishing between members of the FDCPA and Florida Classes, based on an assessment of the relative strength of the respective claims available to those class members. The intrinsic value of the net settlement payment to Settlement Class Members is readily apparent when one considers the risks inherent in continued and protracted litigation and the expense and delay that accompany the appeal process.

The Settlement is particularly valuable to absent Settlement Class Members who, but for the Settlement, likely would be unaware of the existence of their legal claims.  Even if they were

aware, given the relatively small amounts of money involved, absent class members and attorneys who may represent them could have little incentive to prosecute individual actions, notwithstanding the potential availability of statutory damages and attorneys' fees were they to eventually prevail. The alternative to bringing this case as a class action is bringing thousands of individual claims against the PHH Defendants. In resolving the potential claims of thousands of individuals in one fell swoop, this Settlement is much more efficient than potentially litigating thousands of individual claims.

Settlement "has special importance in class actions with their notable uncertainty, difficulties of proof, and length. Settlements of complex cases contribute greatly to the efficient utilization of scarce judicial resources, and achieve the speedy resolution of justice[.]" *Turner v. Gen. Elec. Co.*, No. 2:05-cv-186, 2006 WL 2620275, at *2 (M.D. Fla. Sept. 13, 2006) (citation omitted). For these reasons, "there exists an overriding public interest in favor of settlement, particularly in class actions that have the well-deserved reputation as being most complex." *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1314 (S.D. Fla. 2005) (citation omitted). While the Parties could have litigated the case to judgment and taxed the resources of the litigants and the Court, they chose instead rationally and reasonably to forgo the expense and uncertainty of continued litigation and focus their efforts on achieving a fair and adequate settlement that took the risks of further litigation into account. The reasonableness of that decision is supported by the fact that there is a substantial split of authority among federal courts regarding the viability of claims like these. *Compare Bardak v. Ocwen Loan Servicing, LLC*, No. 8:19-cv-1111, DE 72 (M.D. Fla. August 12, 2020) (dismissing convenience fee claims with prejudice); *Kelly v. Ocwen Loan Servicing, LLC*, No. 3:20-cv-50-J-32JRK, 2020 WL 4428470 (M.D. Fla. July 31, 2020); *Lang v. Ocwen Loan Servicing, LLC*, No. 3:20-CV-81-J-20MCR, DE 21 (M.D. Fla. July 17, 2020);

*Turner v. PHH Mortg. Corp.*, No. 8:20-CV-137-T-30SPF, 2020 WL 2517927 (M.D. Fla. Feb. 24,

2020); *Torliatt v. Ocwen Loan Servicing, LLC*, 2020 WL 1904596 (N.D. Cal. April 17, 2020)

(dismissing nationwide breach of contract and FDCPA claim); *Caldwell v. Freedom Mortgage

Corporation*, Case No. 2020 WL 4747497 (N.D Tex. August 17, 2020) (dismissing breach of

contract claims, even on mortgages with deeds of trust insured by the Federal Housing

Administration); *Mariscal v. Flagstar Bank FSB*, 2020 WL 4804983 (C.D. Cal. August 4, 2020)

(dismissing breach of contract and violations of California's Rosenthal Fair Debt Collection

Practices Act and Unfair Competition Law); *Elbert v. Roundpoint Mortg. Servicing Corp.*, 2020

WL 4818605 (N.D. Cal. August 20, 2020) (dismissing California Rosenthal Act and UCL, as well

as striking the class allegations) *with Fox v. Ocwen Loan Servicing, LLC*, No. 9:20-cv-80060-

MIDDLEBROOKS (S.D. Fla. Mar. 2, 2020) (denying motion to dismiss while finding that

convenience fees could be "incidental to" a borrower's underlying debt); *Alexander v. Carrington

Mortg. Servs. LLC*, 23 F.4d 370, 379 (4th Cir. 2022) (finding that convenience fees violated

Maryland's analogous state debt collection practices act because the fees were not authorized by

the mortgage loan documents or permitted by law).

Finally, in the absence of any evidence of collusion or inequitable treatment of class

members relative to each other, a court should give "great weight to the recommendations of

counsel for the parties, given their considerable experience in this type of litigation." *Warren v.

Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988). "'When the parties' attorneys are experienced

and knowledgeable about the facts and claims, their representations to the court that the settlement

provides class relief which is fair, reasonable, and adequate should be given significant weight.'"

*Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000). In the present case, appointed Class

Counsel, who recommends the Settlement, is skilled and experienced in consumer class actions

and specifically in the litigation of claims based on convenience fees and other mortgage-related class actions. [*See* DE 178 at 4]. The Court finds that Plaintiffs and Class Counsel adequately represented the Settlement Class for purposes of entering into and implementing the Agreement.

### D.     The Requested Attorneys' Fees and Costs are Reasonable

Awarding attorneys' fees as a percentage of the benefit to the class is the preferable and prevailing method of determining fee awards in class actions that establish common funds for the benefit of the class. Based upon the facts and circumstances of this action, the Court awards $692,767 which is 25% of the Settlement Fund created for the benefit of the Class, plus $55,421.36 in unreimbursed expenses, which is reasonable under the circumstances of this case.  Further, as part of the Settlement, the PHH Defendants maintained the right to object to Class Counsel's petition for attorneys' fees and costs.  The fact that they have not done so also supports the reasonableness of the request.

#### 1.     *The Percentage of Fund Method is the Appropriate Measure for Determining Fees.*

When a class settlement establishes a calculable monetary benefit for class members, attorneys' fees should be awarded to Class Counsel pursuant to the well-established common benefit doctrine, based on a percentage of the monetary benefit obtained. *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  In the Eleventh Circuit, "attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774; *see also Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1339 (S.D. Fla. 2007); *In re Sunbeam Sec. Litig.,* 176 F. Supp. 2d 1323, 1333 (S.D. Fla. 2001). The common fund doctrine is one of the earliest recognized exceptions to the "American Rule" which generally requires that litigants bear their own costs and attorneys' fees.  Premised on the equitable powers

19

of the court, the common fund doctrine allows a person who maintains a suit that results in the creation, preservation or increase of a fund in which others have a common interest, to be reimbursed from that fund for the litigation expenses incurred. *Cent. R.R. & Banking Co. v. Pettus*, 113 U.S. 116 (1885).

In *Camden I*—the controlling authority in the Eleventh Circuit on the issue of attorneys' fees in common-fund class action cases—the court held that "the percentage of the fund approach [as opposed to the lodestar approach] is the better reasoned in a common fund case. Henceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class." *Camden I*, 946 F.2d at 774. The Eleventh Circuit recently reaffirmed this rule, holding that "*Camden I* and the percentage method remain the law in this Circuit." *In re Equifax Inc. Customer Data Security Breach Litig.*, 999 F.3d 1247, 1280 (11th Cir. 2021).

> **2.     *The Percentage Requested by Class Counsel is Fully Supported by the Work Performed, Risks Taken, and Results Obtained.***

The Eleventh Circuit's factors for evaluating the reasonable percentage to award Class Counsel are (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client; and (12) awards in similar cases. *See Camden I,* 946 F.2d at 772 n.3. This Court may also consider the time required to reach settlement, the existence of substantial objections and non-monetary benefits, and the economics of prosecuting a class action. *Id.* at 775. As explained below,

the factors set forth in *Camden I* support the full award requested.

A fee of approximately 25% of the cash value is within the market for class actions. *See Waters*, 190 F.3d 1291 (11th Cir. 1999) (affirming fee award of 33.33% on settlement of $40 million)*; In re Disposable Contact Lens Antitrust Litig.*, 3:15-md-02626-HESLLL, DE 1258 at 5 (M.D. Fla. June 1, 2021) (awarding 33 1/3% of the anticipated net settlement fund in partial settlement of antitrust class action); *Morgan v. Pub. Storage,* 301 F. Supp. 3d 1237, 1257-58 (S.D. Fla. 2016) ("[A] fee award of 33% . . . is consistent with attorneys' fees awards in federal class actions in this Circuit . . . ."); *Sawyer v. Intermex Wire Transfer, LLC*, 2020 WL 5259094 (S.D. Fla. 2020) (awarding one-third of the common fund); *Wolff v. Cash 4 Titles*, 2012 WL 5290155, at *6 (S.D. Fla. 2012) (collecting cases and concluding that 33% is consistent with the market rate in class actions). In making a determination of what constitutes a fair fee, this Court is guided by such awards.

Further, the $2,771,068 non-reversionary Settlement Funds established by the Settlement are substantial in light of the size of the combined Settlement Classes. Judging by the fact that only 20 Settlement Class Members have attempted to opt out (one of which was late) and none have objected to the proposed Settlement, the Settlement Class Members overwhelmingly support the Settlement. Additionally, Class Counsel are skilled and experienced in class action litigation, have served as class counsel in dozens of cases, and were particularly qualified to litigate this case. (*See* DE 178-3.)

The case involved complex issues related to the PHH Defendants' policies and application of federal and state consumer protection law. Considering the possibility of appeals, resolution of the litigation could have taken years, and counsel bore a risk of nonpayment. The outcome of the case was hardly a foregone conclusion, but nonetheless Class Counsel accepted representation of

the Plaintiffs and the Settlement Class on a contingent fee basis, fronting the costs of litigation. "[T]he likelihood and extent of any recovery from the defendants absent … settlement" must be considered in assessing the reasonableness of a settlement. *See In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 314 (N.D. Ga. 1993); *Ressler v. Jacobson*, 822 F. Supp. 1551, 1555 (M.D. Fla. 1992) ("a court is to consider the likelihood of the plaintiffs' success on the merits of his claims against the amount and form of relief offered in the settlement before judging the fairness of the compromise")

"Federal courts hold that settlements providing the class with a percentage of the recovery sought in litigation are reasonable in light of the attendant risks of litigation. *See, e.g., Johnson v. Brennan*, No. 10-cv-4712, 2011 WL 4357376 (S.D.N.Y. Sept. 16, 2011) ("[T]here is no reason, at least in theory, why a satisfactory settlement could not amount to a hundredth or even a thousandth part of a single percent of the potential recovery."); *see also Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542–43 (S.D. Fla. 1988) (approving recovery of \$.20 per share where desired recovery was \$3.50 a share because "the fact that a proposed settlement amounts to only a fraction of the possible recovery does not mean the settlement is inadequate or unfair"); *Moreno v. Beacon Roofing Supply, Inc.*, No. 19CV185-GPC(LL), 2020 WL 3960481, at *5 (S.D. Cal. July 13, 2020) (holding that non-reversionary aspect of settlement supported final approval under Rule 23(e)(2)(C)(ii). "Moreover, when settlement assures immediate payment of substantial amounts to class members, even if it means sacrificing speculative payment of a hypothetically larger amount years down the road, settlement is reasonable[.]" *Johnson*, 2011 WL 4357376, at *12. The results are clearly reasonable.

The Court conducted a Final Fairness Hearing on May 31, 2023. All parties attended the Hearing and any and all class members were invited to attend. The Court was informed that there

was not a single objection by any class member and/or government entity, to the requested fee for Class Counsel.

Accordingly, consideration of all of these factors overwhelmingly support an award of 25% of the amount of the common fund established for the Settlement Class.

### 3.     *The Requested Expenses are Reasonable*

Consistent with the terms of the Agreement, as set forth in the Declaration of Adam Moskowitz, Class Counsel have incurred $55,421.36 in reasonable litigation expenses. These expenses are comprised of expert fees, case investigation costs, travel costs, copying costs, court reporting, stenography, mediation fees, legal research costs, court fees, and miscellaneous costs. It is well understood that Class Counsel are "entitled to be reimbursed from the class fund for the reasonable expenses incurred" in pursuing actions on behalf of a Class. *Behrens*, 118 F.R.D. at 549. Accordingly, courts in this Circuit have routinely approved payment of reasonable and necessary litigation expenses from common funds created by the litigation. *See Columbus Drywall & Insulation, Inc. v. Masco Corp.*, 2008 WL 11234103, at *6 (N.D. Ga. Mar. 4, 2008) (approving $2.4 million for reimbursement of litigation expenses).  The Court believes that these expenses were reasonably and necessarily incurred during the litigation, and grants Class Counsel's request for same.

## IV.   Conclusion

In accordance with the foregoing analysis, the Court **ORDERS and ADJUDGES** as follows:

1.     The Court finds and concludes that Plaintiffs and Class Counsel have adequately represented the Settlement Class for  purposes of entering into and implementing the Settlement.

2.      The Settlement Class, including the FDCPA and Florida Classes, preliminarily certified by the Court on December 2, 2022 is hereby finally certified for settlement purposes only, as it fully satisfies all the applicable requirements of Rule 23 and due process.

a.      As set forth in the supplemental declaration Tina Chiango, Director of Claims Administration for RG/2, the Settlement Administrator, there were timely received requests for exclusion covering 19 Class Loans that were submitted to the Settlement Administrator on or before the April 26, 2023 mandatory exclusion deadline and that complied with the requirements of the Agreement.  Those 19 timely and validly submitted requests for exclusion are reflected in Exhibit A to Ms. Chiango's supplemental declaration.  The Court approves each of the 19 timely and validly submitted requests for exclusion that are reflected in Exhibit A to Ms. Chiango's supplemental declaration, and thereby excludes from the Settlement Class each of the 19 Class Loans and all Potential Settlement Class Members covered by those exclusion requests.

b.      Two requests for exclusion were both post-marked and received after the Objection/Exclusion Deadline, from Potential Settlement Class Members Sarah Tremaglio and Maria Jimenez, as successor in interest to Lepido Jimenez. Because those requests were both submitted and received after the mandatory deadline, they are not valid, the Court does not approve them, and Ms. Tremaglio and Ms. Jimenez remain Settlement Class Members.

3.      The Agreement and the proposed Settlement are approved as fair, reasonable and adequate as to, and in the best interests of, the Settlement Class Members, and the Parties and their counsel are directed to implement and consummate the Agreement according to its terms and provisions;

4.      The Agreement is binding upon, and shall have res judicata and collateral estoppel effect in all pending and future lawsuits or other proceedings maintained by or on behalf of, Plaintiff and the Settlement Class Members;

5.      The Class Notice implemented pursuant to the Agreement (a) constituted the best practicable notice under the circumstances; (b) constituted notice that was reasonably calculated, under the circumstances, to apprise the Settlement Class of the pendency of the Action, their right to object or exclude themselves from the Agreement and proposed Settlement; and to appear at the Fairness Hearing; (c) was reasonable and constituted due, adequate and sufficient notice to all persons entitled to receive notice; and (d) met all applicable requirements of the Federal Rules of Civil Procedure, the Due Process Clause of the United States Constitution, and the rules of the Court;

6.      The Release set forth in Section 3 of the Agreement is incorporated herein and made effective as of the Final Settlement Date and the Released Persons are forever discharged as set forth in the Agreement;

7.      Settlement Class Members are permanently barred and enjoined from filing, commencing, prosecuting, intervening in, or participating (as class members or otherwise) in, any lawsuit or other action in any jurisdiction based on the Released Claims;

8.      The Court retains continuing and exclusive jurisdiction over all matters relating to the Settlement or the consummation of the Settlement; the validation of the Settlement; the construction and enforcement of the Settlement and any orders entered pursuant thereto; and all other matters pertaining to the Settlement or its implementation and enforcement;

9.      Neither this Final Order and Judgment, nor the Settlement, nor any other document referred to herein, nor any action taken to carry out this Final Order and Judgment, is, may be construed as, or may be used as an admission or concession by or against the PHH Defendants or the Released Persons of the validity of any claim or defense or any actual or potential fault, wrongdoing, or liability. The PHH Defendants continue to deny that the Action meets the requisites for class certification under Rule 23 for any purpose other than settlement, and nothing herein shall be construed otherwise.  Entering into or carrying out the Settlement, and any negotiations or proceedings related to it, shall not in any event be construed as, or deemed evidence of, an admission or concession as to the PHH Defendants' denials or defenses, and shall not be offered or received in evidence in any action or other tribunal for any purpose whatsoever, except as evidence to enforce the provisions of the settlement and this Final Order and Judgment; provided, however, that the settlement and Final Order and Judgment may be filed in any action brought against or by the PHH Defendants or the Released Persons to support a defense of res judicata, collateral estoppel, release, waiver, good- faith settlement, judgment bar or reduction, full faith and credit, or any other theory of claim preclusion, issue preclusion or similar defense or counterclaim.

10.     This Final Order and Judgment shall become null and void and shall be without prejudice to the rights of the parties and Settlement Class Members, all of whom shall be restored to their respective positions existing immediately before the Court entered its December 22, 2022 Preliminary Approval Order, if: (a) the Settlement does not reach the Final Settlement Date as defined in Agreement; (b) the Settlement is terminated by a Party in accordance with its provisions; or (c) the Settlement does not become legally effective for any other reason.

11.     The Action is dismissed on the merits and with prejudice (including all individual claims and class action claims presented thereby) and shall be final and entered forthwith, without fees or costs to any Person or Party except as provided in the Agreement;

12.     Without affecting the finality of the Final Order and Judgment for purposes of appeal, the Court retains jurisdiction as to the administration, consummation, enforcement and interpretation of the Agreement and the Final Order and Judgment, and for any other necessary purpose; and

13.     Pursuant to Federal Rule of Civil Procedure 23(h), the Court hereby awards Class Counsel for the Settlement Class Attorneys' Fees and Expenses in the amount of $692,767 which is 25% of the Settlement Fund created for the benefit of the Class, plus $55,421.36 in unreimbursed expenses. This is a total of $748,188.36 in attorneys' fees and expenses payable pursuant to the terms of the Settlement Agreement.

14.     All pending motions are **DENIED as moot.**

15.     This case is **CLOSED.**

**DONE AND ORDERED** in Fort Lauderdale, Florida this 15th day of June, 2023.

_____
**RODNEY SMITH**
**UNITED STATES DISTRICT JUDGE**